**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CIVIL NO. 9:16-CV-80693-RNS**

| | | |
|---|---|---|
| **RICARDO SANCHEZ, JR.,** | **:** | |
| **Movant** | **:** | |
| | **:** | |
| **v.** | **:** | **THIS IS A CAPITAL CASE** |
| | **:** | |
| **UNITED STATES OF AMERICA,** | **:** | |
| **Respondent** | **:** | |

**MOTION FOR LEAVE TO INTERVIEW JURORS
AND CONSOLIDATED MEMORANDUM OF LAW**

Pursuant to Local Rule 11.1(e) and the Fifth, Sixth and Eighth Amendments to the United States Constitution, Ricardo Sanchez, through counsel, respectfully moves this Court for leave to interview the seated and alternate jurors who served at trial in this case. As set forth in Claim I of the § 2255 petition, several jurors appear to have misrepresented and/or failed to disclose material facts about their backgrounds in response to specific questions during voir dire. Good cause exists for the defense to interview both these and the other jurors to determine whether their verdicts at both guilt and sentencing are subject to legal challenge. Undersigned has conferred with counsel for the government and is advised the government opposes this motion. In support of this motion, Mr. Sanchez states:

1. Local Rule 11.1(e) permits juror interviews "after the jury has been discharged, upon application in writing and for good cause shown . . . to determine whether their verdict is subject to legal challenge." As demonstrated by the facts alleged in Claim I of Mr. Sanchez's § 2255 petition and by the law set forth below, there is good cause to interview the trial jurors here.

1

2.     Claim I alleges that Mr. Sanchez's constitutional and statutory rights were violated when jurors provided incomplete, inaccurate, and/or dishonest information in their questionnaires and during voir dire. Pet'n, ECF No. 16-1, ¶¶ 12-51. Claim I identifies six jurors who understated, misrepresented, and/or failed to disclose information regarding their backgrounds, including their family members' criminal histories. *Id*. ¶¶ 23-39. For example, a seated juror failed to disclose his son's pending prosecution on drug counts in Miami-Dade County. *Id*. ¶¶ 23-27. Another juror apparently failed to disclose her family member's former employment as a state prosecutor. *Id*. ¶¶ 28-29. An alternate juror misrepresented her own history as a convicted felon and cooperating prosecution witness. *Id*. ¶¶ 35-36. If this and the other information set forth in the petition had been fully and truthfully disclosed, Mr. Sanchez would have challenged these jurors for cause and excluded them from jury service.

3.     Undersigned counsel seek leave to contact and interview these and the remaining jurors to explore the circumstances of the misconduct and obtain the necessary facts to present to this Court. Such leave should be granted "to determine whether their verdict is subject to legal challenge." Local Rule 11.1(e). There is significant reason to believe that jurors misled the Court and the parties during voir dire about material and pertinent facts. It appears these jurors violated their oaths, the Federal Death Penalty Act, and Mr. Sanchez's constitutional rights to a fair and impartial jury under the Fifth, Sixth and Eighth Amendments. The facts pled in the § 2255 motion are simply those that Mr. Sanchez's defense team was able to uncover through record databases, social media, and various internet sites. The veracity and scope of these and related facts must be explored further to ensure a jury was constitutionally seated.

4.     The facts pled in the § 2255 motion establish strong *prima facie* evidence that juror misconduct occurred. Time and time again, jurors did not reveal material information

regarding their own criminal history or that of family members that would have resulted in a valid strike for cause. For example, alternate juror Diane Gooch, a convicted felon, was not even qualified to sit on the jury: "It is undisputed that a question about prior felony convictions is material to jury service and that an honest answer from this juror would have provided a basis to challenge her for cause." *Parker v. State of Alabama State Tenure Comm'n*, 405 F.3d 1276, 1288 (11th Cir. 2005); *see also* 28 U.S.C. § 1865(b)(5) ("a person shall be deemed qualified to serve on a grand or petit jury unless he has a charge pending against him for the commission of, or has been convicted in State or Federal court of record of, a crime punishable by imprisonment for more than one year and his civil rights have not been restored."); *United States v. Carpa*, 271 F.3d 962, 967 n.5 (11th Cir. 2001) (per curiam).  Mrs. Gooch is the same juror suspected of further misconduct in discussing the case at work in contravention of this Court's repeated admonitions.  *See* Tr. 7477.  The fact she failed to disclose her status as a convicted felon and former prosecution cooperator establishes good cause for further inquiry regarding her discussions of the case, not only at work, but with other jurors.

5.      It is plain from the juror questionnaires and voir dire that the Court and parties were concerned about venire persons' experiences with their own and their family members' drug problems and criminal histories. The jurors were expected to hear testimony describing killings and other crimes committed in the course of a large drug conspiracy. Claim I indicates that several jurors misled the Court on the very issues central to these concerns.  For example, Jury Question #24 was: "Have you or any family members or friends ever had a problem with illegal drugs?" Mr. Sollenberger stated, "yes", "three brother-in-law's – several convictions. DUI." Contrary to Mr. Sollenberger's sworn statements, a number of his family members, including his own son, appeared to have substantial problems with illegal drugs, and those

problems were not limited to DUI's.  Indeed, Mr. Sollenberger's son was arrested on multiple drug charges in Miami-Dade County in December 2008.

6.      Other jurors similarly failed to disclose their family members problems with drugs, firearms, and crime.  *See* Pet'n, ECF No. 16-1, ¶¶ 23-39.  Undersigned counsel seek to interview the jurors to establish the complete underlying facts and to determine the circumstances leading up to and following these failures.

7.      Section 2255 proceedings represent the best, and likely last, opportunity for Mr. Sanchez to investigate and litigate juror misconduct claims. Recently, District Court Judge Sessions, in granting a new trial to a capital § 2255 litigant, Donald Fell, observed that juror misconduct claims are poorly suited to resolution on direct appeal, especially where evidence of misconduct does not appear in the trial record.  *United States v. Fell*, 2014 WL 3697810, 14 *n.5 (D. Vt. July 24, 2014).  Section 2255 capital litigants are in a very different procedural posture than § 2254 capital litigants bringing their habeas claims in federal court.  By definition, § 2254 capital litigants have exhausted their federal claims in the state court and, many, particularly in Florida, have had extensive evidentiary hearings on those claims in the state courts.  A capital § 2255 litigant like Mr. Sanchez has not yet been afforded such an opportunity. Moreover, Mr. Sanchez is required to litigate all cognizable post-conviction claims within his § 2255 motion. These claims must state the facts supporting each ground for relief, and any subsequent amendments must relate back to the originally pled claims. *See* Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts (§ 2255 Rules); *see also Mayle v. Felix*, 545 U.S. 644, 650 (2005).

8.      Capital post-conviction counsel have an ethical obligation to investigate colorable claims of jury misconduct: counsel "must investigate the possibility that the defendant was

4

judged at either the guilt or penalty phase by one or more jurors who were not impartial." *See* American Bar Association, Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (February 2003), 31 Hofstra L. Rev. 913, 1017, n.197 (Feb. 2003); *see also id.* at 1051-52, n.260 ("[C]ounsel investigating a capital case should be particularly alert to the possibility that, notwithstanding surface appearances, one or more jurors were unqualified to sit at either phase of the trial and make every effort to develop the relevant facts whether by interviewing jurors or otherwise. Such inquiries can be 'critical in discovering constitutional errors.'") (citations omitted); *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) ("the standards for capital defense work articulated by the American Bar Association (ABA) [are] standards to which we have long referred as 'guides to determining what is reasonable'") (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

9. The First Circuit, while reviewing a Government appeal from a grant of a new trial in a capital § 2255 petition, aptly articulated the legal framework that governs post-conviction claims of juror dishonesty:

> It is constitutional bedrock that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury.' U.S. Const. amend VI. An impartial jury is one 'capable and willing to decide the case solely on the evidence before it.' *McDonough* [*Power Equip. v. Greenwood*], 464 U.S. [548,] 554 [(1984)]. . . . The right to an impartial jury is nowhere as precious as when a defendant is on trial for his life. *See Ross v. Oklahoma*, 487 U.S. 81, 85 . . . (1988).

*Sampson v. United States*, 724 F.3d 150, 163 (1st Cir. 2013). The District Court in *Fell* further observed that:

> The Federal Death Penalty Act ("FDPA") requires a unanimous jury to conclude that the death penalty is warranted. *See* 18 U.S.C. §§ 3593, 3594. '[E]ach juror has the power to decide that a defendant will live rather than die. Each juror must be able to make that decision based solely on the evidence, uninfluenced by personal experiences that he or she may have had.' *United States v. Sampson*, 820 F. Supp. 2d 151, 157 (D. Mass. 2011) ("*Sampson I*"). '"When possible juror

misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the [S]ixth [A]mendment."' *United States v. Lloyd*, 462 F.3d 510, 518 (6th Cir. 2006) (quoting *United States v. Shackleford*, 777 F.2d 1141, 1145 (6th Cir. 1985)). 'If even one [partial] juror is empaneled' and the death sentence is imposed, 'the [government] is disentitled to execute the sentence.' *Morgan v. Illinois*, 504 U.S. 719, 729 (1992).

*United States v. Donald Fell*, case no. 2:01-cr-12, Doc. 514 (D.Vt. Jul. 24, 2014).

10.     The threshold for relief for a claim of juror dishonesty is not high.  "To obtain a new trial for juror misconduct during voir dire, a party must: (1) demonstrate that a juror failed to answer honestly a material question on voir dire, and then (2) show that a correct response would have provided a valid basis for a challenge for cause." *Carpa*, 271 F.3d at 967 (citing *McDonough*, 464 U.S. at 556); *see also Bank Atlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1473 (11th Cir. 1992); *United States v. Perkins*, 748 F.2d 1519, 1532 (11th Cir. 1984).  The proffered inaccuracies and failures to disclose indicate that the first prong is met; under the second prong, the trial record amply demonstrates that the voir dire questions were designed, and were actually relied upon, to excuse jurors for cause. *See* Pet'n, ECF No. 16-1, ¶¶ 13-22.  In light of the evidence proffered and the governing legal standard, it is respectfully submitted that Mr. Sanchez easily meets the "good cause" requirement of Local Rule 11.1(e).

11.     To prohibit such interviews would violate Mr. Sanchez's Fifth Amendment due process and equal protection rights because, *inter alia*, other similarly situated capital § 2255 litigants have been permitted to conduct juror interviews with even less cause—or none at all. Many federal jurisdictions do not prohibit juror interviews.  For example, in *Fell*, 944 F. Supp. 2d 297 (D. Vt. 2013), there was no rule prohibiting post-conviction juror contact. Mr. Fell's attorneys were able to contact and interview jurors, and thus developed the extra-record facts that

6

ultimately concluded in his convictions being vacated.  *Fell*, Case no. 2:01-cr-12, Doc. 514 (D. Vt. Jul. 24, 2014).

12.     Mr. Fell's case is but one example.  Many other districts also do not have rules governing post-conviction contact with jurors.  A review of all the capital § 2255 cases that have been filed within the last five years reveals only a single case where a court affirmatively denied a request to interview jurors:

| Case Name | District/Case No. | Sec. 2255 Filing Date | No Rule Limiting Juror Contact | Rule in Place; Interviews Requested | Interview Request Denied |
|---|---|---|---|---|---|
| Fell, Donald | D.Vt. 5:01Cr12 | 03/21/2011 | X | | |
| Basham, Brandon | D. SC 4:01Cr992-2 | 06/01/2011 | X | | |
| Rodriguez, Alfonso | D.ND 2:04Cr55 | 10/17/2011 | X | | |
| Davis, Len | EDLA 2:94cr00381 | 03/20/2012 | | X | |
| Lighty, Kenneth | D.MD 8:03Cr457 | 10/16/2012 | | X | X |
| Montgomery, Lisa | WDMO 4:12Cv8001 | 03/19/2013 | X | | |
| Caro, Carlos | WDVA 2:03Cr1 | 03/22/2013 | X | | |
| Barnette, Aquilia | WDNC 3:12Cv327 | 06/29/2013 | | ? | |
| Ebron, Joseph | EDTX 1:14Cv539 | 10/27/2014 | X | | |
| Garcia, Edgar | EDTX 1:13Cv723 | 02/24/2015 | X | | |
| Snarr, Mark | EDTX 1:13Cv724 | 02/24/2015 | X | | |
| Gabrion, Marvin | SDID 2:15Cv24 | 04/27/2015 | X | | |
| Hager, Thomas | EDVA 1:15Cv551 | 04/27/2015 | | | |
| Runyon, David | EDVA 4:08Cr16 | 10/05/2015 | | | |
| Lawrence, Daryl | SDOH 2:05Cr11 | 12/07/2015 | | | |
| Umana, Alejandro | WDNC 3:16Cr57 | 06/22/2016 | | | |

In the remaining fifteen cases, ten litigants were free to conduct juror interviews (either because of a grant or because the local rules do not prohibit interviews), four litigants have not yet raised the issue, and the remaining case was one for which the undersigned was unable to obtain the relevant data.

13.     Significant disadvantages to defendants, particularly capital defendants, result when they are denied or afforded only limited access to jurors, as evidenced by the successful claims presented where juror interviews were not restricted.  The other capital postconviction defendants referred to above are similarly situated individuals, and Mr. Troya should be provided the opportunity to avail himself of the same rights and opportunities granted to them. To rule otherwise would deprive Mr. Troya of due process, equal protection, and the Eighth Amendment prohibition against arbitrary infliction of the death penalty.

14.     Undersigned have conferred with counsel for the government and is advised the government opposes this motion.

8

WHEREFORE, for the foregoing reasons, Mr. Sanchez respectfully requests that the

Court grant leave for his legal team to interview the seated and alternate jurors in this case.

Respectfully submitted,


/s/ Aren Adjoian
Matthew C. Lawry
Aren Adjoian
Federal Community Defender Office
    for the Eastern District of Pennsylvania
Curtis Center, Suite 545-West
601 Walnut Street
Philadelphia, PA 19106
Phone: (215) 928-0520
Fax: (215) 928-0826
Matthew_Lawry@fd.org
Aren_Adjoian@fd.org

Counsel for Ricardo Sanchez, Jr.


Dated: September 12, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically by the Court's CM/ECF service on this 12th day of September, 2016, on the following individuals:

Stephen Carlton
United States Attorney's Office
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Phone: (561) 820-8711
Fax: (561) 659-4526
stephen.carlton@usdoj.gov
Counsel for the United States

Brandy Galler
United States Attorney's Office
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Phone: (561) 820-8711
Fax: (561) 659-4526
brandy.galler@usdoj.gov
Counsel for the United States

/s/ Aren Adjoian
Aren Adjoian