United States District Court
for the
Southern District of Florida

Ricardo Sanchez, Jr., Movant )
)
v. )
) Civil Action No. 16-80693-Civ-Scola
)
United States of America, )
Respondent )

## __Order Dismissing Claims__

This matter is before the Court upon Ricardo Sanchez Jr.'s ("Movant") Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. ("Motion") (Am. Mot. ECF No. 16-1). The Movant is in the custody of the United States Bureau of Prisons after having been sentenced to death for the October 13, 2006, murders of two young children: Luis Damian Escobedo (three years old) and Luis Julian Escobedo (four years old). (Verdict, Case No. 06-CR-80171 (Hurley, J.), ECF No. 796). The Movant was also sentenced to life imprisonment for the murder of the children's parents, Jose Luis Escobedo and his wife Yessica Escobedo. The Movant's convictions and sentences were affirmed on direct appeal. *United States v. Troya,* 733 F.3d 1125 (11th Cir. 2013). The United States Supreme Court has denied a writ of certiorari. *Sanchez v. United States,* 135 S.Ct. 2048 (2015). The instant Motion has followed.

The Motion contains eleven claims for relief with multiple sub-claims: (I) juror misconduct, (II) death sentence based on impermissibly vague statute (carjacking), (III) ineligible for the death penalty (mental retardation, brain dysfunction, mental disorders), (IV) trial counsel was ineffective for failing to investigate competency to stand trial, (V) trial counsel was ineffective for failing to object when the government substituted a medical examiner who had not conducted the autopsy of the victims, (VI) *Brady* violations (six specific instances and one cumulative effect), (VII) trial counsel was ineffective during the guilt phase for failing to: challenge the composition of the jury, investigate and challenge "toolmark" evidence, investigate and present the testimony of cellular forensic expert, object to the charges in counts 7-10 and jury instructions, and object to prosecutor's closing arguments, (VIII) trial counsel was ineffective during the penalty phase for failing to: investigate and present personal background and psychological and social development, present evidence of neurological impairments, investigate psychiatric disorders, to

investigate intellectual disability, investigate competence to stand trial, properly consult with mental health experts, identify the Movant's traumatic background and disabilities, impeach the testimony of government expert, investigate aggravation evidence, object to prosecutorial misconduct, object to jury instructions, and cumulative effects of errors, (IX) death sentence violates the Eighth Amendment, (X) security measures used during trial denied the Movant due process, a jury trial, and the presumption of innocence, and (XI) cumulative effects of errors. (Am. Mot. ECF No. 16-1).

The Court has carefully reviewed the Motion and record of the prior proceedings. The Court has determined that certain of the Movant's claims should be dismissed. The dismissed claims fall into three categories: (1) claims that are procedurally barred for having not been raised on direct appeal, (2) claims, even if they were not procedurally barred, the record shows that the Movant is clearly not entitled to relief, and (3) claims not procedurally barred but the record conclusively shows that the Movant is not entitled to relief.

The claims dismissed require no further response from the Government. *See* Rule 4(b) of the § 2255 Rules. ("The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.").

### Standards Applicable to Motions Pursuant to 28 U.S.C. § 2255

28 U.S.C. § 2255 allows a prisoner in custody under sentence of a federal court to move the sentencing court to vacate, set aside or correct a sentence. To obtain relief pursuant to 28 U.S.C. § 2255, a federal prisoner must establish: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See Hill v. United States,* 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255).

Although it appears to be broad, 28 U.S.C. § 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio,* 442 U.S. 178, 185 (1979). Rather, 28 U.S.C. § 2255 is intended to

redress only "fundamental defect[s] which inherently [result] in a complete miscarriage of justice" and "omission[s] inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428. A collateral challenge under 28 U.S.C. § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982) (making clear a motion pursuant to 28 U.S.C. § 2255 will not be allowed to do service for an appeal). Consequently, "[a]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (internal quotation marks and citation omitted).

In addition, defendants ordinarily are precluded from asserting claims they failed to raise on direct appeal. *See McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001). "A defendant who has procedurally defaulted a claim by failing to raise it on direct review may raise the claim in a [28 U.S.C. § ] 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the [defendant] shows cause and prejudice."). "'[C]ause' under the cause and prejudice test must be something *external* to the [defendant], something that cannot be fairly attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)(emphasis in original). If a defendant fails to show cause, a court need not consider whether actual prejudice exists. *McCleskey v. Zant*, 499 U.S. 467, 501 (1991). Actual innocence under the actual innocence test "means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623-24; *see also McNeal*, 249 F.3d at 749 ("[A] defendant must show factual innocence, not simply legal insufficiency of evidence to support a conviction.").

The Court dismisses the following claims: (I) juror misconduct, (II) death sentence based on impermissibly vague statute (carjacking), (III) ineligible for the death penalty (mental retardation, brain dysfunction, mental disorders), (VI) *Brady* violations (six specific instances and one cumulative effect), (VII)(A) ineffective assistance of counsel for failing to "challenge the composition and selection of the grand and petit jury venires in Violation of the Fifth, Sixth, and Eighth Amendments" (IX) death sentence violates the Eighth Amendment, and (X) security measures used during trial denied the Movant due process, a jury trial, and the presumption of innocence. Claims I and X are procedurally defaulted. Claims III, VI, and IX are procedurally defaulted but, even if they were not subject to a procedural bar, would be dismissed because the Movant is clearly not entitled to relief. Claims II and VII(A) are not procedurally barred

but should be dismissed because they are claims in which the Movant is clearly not entitled to relief.

### *Procedural Default*

Under the procedural default rule, "a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). The United States Supreme Court has explained, this rule "is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

On April 3, 2012, the Movant filed his direct appeal with the United States Court of Appeals for the Eleventh Circuit. (*See* Direct Appeal, Case No. 09-12716-P, 11th Cir.). The challenge to his conviction and sentence was filed more than three years after his trial. (Case No. 06-CR-80171 (Hurley, J.), ECF. 792). The Court has reviewed the claims asserted by the Movant on direct appeal and the claims argued here. The Court concludes that certain of those claims could have and should have been made on direct appeal. Therefore, the Movant is foreclosed from raising those claims in this collateral proceeding absent one of the two limited exceptions to the procedural default rule.

The exceptions are: (1) for cause and prejudice, or (2) for a miscarriage of justice, or actual innocence. *See Lynn*, 365 F.3d at 1234. Under the cause and prejudice exception, a §2255 movant can avoid application of the procedural default bar by "show[ing] cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." *Id*. Under the actual innocence exception—as interpreted by current Supreme Court doctrine—a movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself. *See Dretke v. Haley*, 541 U.S. 386, 388 (2004).

However, the Movant has argued neither cause and prejudice nor actual innocence. Indeed, the Movant has not acknowledged that his claims should have been brought on direct appeal such that he now must meet an exception to a known and existing procedural bar in order to raise these claims in a collateral proceeding. It is noteworthy that the actual innocence exception means factual innocence, not mere legal insufficiency." *Bousley v. United*

*States*, 523 U.S. 614, 623 (1998); *Sawyer v. Whitley*, 505 U.S. 330, 339 (1992)("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence."); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). The Movant not argued that he is factually innocent. The Court finds that the Movant has failed to establish an entitlement to any exception to the well-known and established procedural default rule.

*Claim I*

In his first claim for relief, the Movant contends that six jurors "provided dishonest, inaccurate, and/or incomplete information in their juror questionnaires and during voir dire and otherwise committed misconduct." (Am. Mot. ECF No. 16-1 at 12). The transgressions alleged by the Movant range from one juror who failed to disclose that her grandson had multiple arrests on drug charges to an alternate juror who was a convicted felon in the State of New Jersey. The Movant argues that these omissions violated his right to due process and an impartial jury.

In the claim, Movant also makes passing reference to possible violations of the Government's "duties of disclosure under the Due Process Clause" and "to the extent that reasonable investigation, research or questioning by Mr. Sanchez's trial counsel would have revealed any of the undisclosed information…counsel performed deficiently and Mr. Sanchez was prejudiced by counsel's performance, in violation of his Sixth Amendment right to the effective assistance of counsel." (Am. Mot. ECF No. 16-1 at 20-21). These conclusory allegations are insufficient to establish either a *Brady* or *Strickland* claim. The 28 U.S.C. § 2255 Rules mandate "fact pleading" as opposed to "notice pleading," as authorized under Federal Rule of Civil Procedure 8(a). *See Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011). § 2255 petitioners "cannot simply laundry-list their claims and hope that the court will develop (hence, litigate) them on their behalf." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required on claims "which are based on unsupported generalizations"); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973)(no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations).

The inaccuracies and omissions alleged by the Movant in the underlying substantive claim are ones that could have been discovered either before trial, during trial, or in the three years between trial and the direct appeal. The information at issue existed at the time of trial and could have been

investigated and discovered. In order to obtain a new trial for juror misconduct, the Movant must show that "a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough v. Greenwood*, 464 U.S. 548, 556 (1984).

Despite the Movant's factual arguments here, which may or may not have merit, the threshold question is whether the Movant should have raised this issue on direct appeal. Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding. *See Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989) (and the cases cited therein), cert. denied, 494 U.S. 1018, 110 S.Ct. 1322, 108 L.Ed.2d 498 (1990).

On August 10, 2007, the defense sought court approval for the retention of a jury selection expert. (Tr. Case No. 06-CR-80171 (Hurley, J.), ECF. No. 236). Counsel estimated that the jury selection expert would expend 100 hours of time on this case. On December 3, 2008, over thirty days before trial, defense counsel was given completed juror questionnaires to analyze. (Tr. Case No. 06-CR-80171 (Hurley, J.), ECF. No. 546). During jury selection, Rebecca Lynn, the defense's jury selection expert was present in the courtroom. (Tr. Case No. 06-CR-80171 (Hurley, J.), ECF. No. 648 at 3). Jury selection began on January 6, 2009. (Tr. Case No. 06-CR-80171 (Hurley, J.), ECF. No. 648).

However, the veracity of jurors' answers were not investigated or challenged in advance of trial. Moreover, three years passed between jury selection and direct appeal without this issue being raised; despite the fact that Movant was appointed multiple appellate lawyers to research and argue his direct appeal.

The Court concludes that the Movant had ample opportunity to develop the factual basis for this claim well before filing his direct appeal. In fact, the factual basis for this claim was available to the Movant – had he looked – before his trial. "Courts have long and consistently affirmed that a collateral challenge, such as a §2255 motion, may not be a surrogate for a direct appeal." *See e.g. Frady*, 456 U.S. at 165. Accordingly, Claim I is dismissed.

*Claim X*

The Movant's tenth claim for post-conviction relief is that the "security measures used by the court during trial denied Mr. Sanchez his right to a jury trial, to the presumption of innocence, to due process, to the effective assistance of counsel, and to be free from cruel and unusual punishment." (Am. Mot. ECF No. 16-1 at 190). Similar to Claim I, the Movant could have and should have raised this claim on direct appeal. *Bousley v. United States*, 523 U.S. 614 (1998); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development").

On December 17, 2008, the trial court held a status conference. (Tr. Case No. 06-CR-80171 (Hurley, J.), ECF. No. 1089). At that status conference, the trial judge advised counsel, after meeting with the United States Marshal, that the Court had established a security protocol for the jurors. The jurors were to park at an undisclosed location. The Marshal Service would pick up the jurors at the off-sight parking location and transport them to the courthouse. During trial, the jurors would eat together and be escorted back to their automobiles at the end of the day by the Marshal Service. (*Id.* at 80). In addition, there was a second magnetometer placed directly outside the courtroom and a sign-in sheet for those persons entering and exiting. (*Id.* at 86-87). Defense counsel objected. The trial judge considered counsel's arguments but concluded that "the Court has the obligation to take appropriate steps to make sure the process is safe and secure." (*Id.* at 90). The objections were overruled and the security measures, as outlined above, were implemented during trial. The legal standard on appeal of a claim such as this is abuse of discretion. The Eleventh Circuit has consistently held that "a district judge must be afforded reasonable discretion to balance the interests involved and to determine the measures necessary to guarantee the security of the courtroom." *United States v. Wilson*, 634 Fed. Appx. 718, 729 (11th Cir. 2015)(citations omitted).

However, on direct appeal, the Movant did not argue error. He is precluded from doing so here. Collateral review is not a substitute for a direct appeal. "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A

Sep. 1981)). Seven years have passed since trial. The factual basis for this claim remains unchanged. Claim X is dismissed.

### Rule 4, Rules Governing Section 2255 Proceedings

Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts mandates that the Court promptly examine the motion and if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." *See Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.* The claims summarized below are subject to dismissal. Three claims are not only procedurally barred but, even if they were not, they would be subject to dismissal pursuant to Rule 4. The remaining two are not procedurally barred but are still subject to dismissal. Following a review of the record in the underlying criminal proceedings, the Court finds that it is plain from the record that the Movant would not be entitled to relief. The five claims subject to dismissal are as follows:

### *Procedural Default and Rule 4: Entitlement to Relief*

#### *Claim III*

The Movant's third claim for relief is that he is "ineligible for the punishment of death pursuant to the Constitution of the United States and other Federal law" because he is "intellectually disabled."[1] (Am. Mot. ECF No. 16-1 at 27-28). The Movant argues that he "has demonstrated deficits in intellectual functions including reasoning, problem solving, planning, abstract thinking, judgment, academic learning, and learning from experience, throughout his life beginning in early childhood and continuing into adulthood." (*Id.* at 30).

To be sure, persons who are intellectually disabled are ineligible for the death penalty. Indeed, well before the United States Supreme Court recognized a constitutional prohibition against the execution of intellectually disabled person, the Federal Death Penalty Act prohibited the execution of "a person

---

[1] The term "intellectually disabled" was adopted by the United States Supreme Court in *Hall v. Florida*, 134 S.Ct. 1986 (2014) to replace the prior clinical terminology - "mentally retarded." The Court will likewise use the term "intellectually disabled" as synonymous with "mentally retarded" despite the fact that 18 U.S.C. §3596(c) has not been amended to reflect this change.

who is mentally retarded. A sentence of death shall not be carried out upon a person who, as a result of mental disability, lacks the mental capacity to understand the death penalty and why it was imposed on that person." 18 U.S.C. §3596(c). In 2002, the Supreme Court found that the execution of intellectually disabled persons constitutes cruel and unusual punishment in violation of the Eighth Amendment.

### *Atkins v. Virginia*, 536 U.S. 304 (2002)

In *Atkins*, the United States Supreme Court held that the execution of mentally retarded offenders is categorically prohibited by the Eighth Amendment to the U.S. Constitution. *Atkins*, 536 U.S. at 321. *Atkins* did not define mental retardation, leaving it to the states to develop appropriate ways to prohibit the execution of the mentally retarded. However, the Court did provide some guidance to the states regarding the definition of mental retardation by citing two clinical definitions of mental retardation that it noted were consistent with many state statutory definitions.

> The American Association on Mental Retardation (AAMR) defines mental retardation as follows: "Mental retardation refers to substantial limitations in present functioning. It is characterized by significantly subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18." Mental Retardation: Definition, Classification, and Systems of Supports 5 (9th ed.1992).

> The American Psychiatric Association's definition is similar: "The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 years (Criterion C). Mental Retardation has many different etiologies and may be seen as a final common pathway of various pathological processes that affect the functioning of the central nervous system." Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed. 2000). "Mild" mental retardation is typically used to

describe people with an IQ level of 50–55 to approximately 70. *Id.,* at 42–43.

*Atkins,* 536 U.S. at 308, n. 3. Since 2002, when the United States Supreme Court determined that "mentally retarded defendants are unable to contribute fully to their defenses, particularly having an under-developed conception of blameworthiness, a lack of knowledge of basic facts, and an increased susceptibility to the influence of authority figures," state courts have varied as to how to define mental retardation. *Atkins,* 536 U.S. at 318. This variance resulted from the Court not defining mental retardation; instead, leaving it up to the states to craft a definition within the bounds of the established medical community. In 2014, the Supreme Court decided that when the State of Florida required defendants to show an IQ test score of 70 or below before being permitted to submit additional intellectual disability evidence that requirement was unconstitutional. The Court found that it created an unacceptable risk that persons with intellectual disabilities will be executed.

### *Hall v. Florida,* 134 S.Ct. 1986 (2014)

At issue in *Hall* was whether or not the Florida Supreme Court's interpretation of Florida law ("a person whose test score is above 70, including a score within the margin for measurement error, does not have an intellectual disability and is barred from presenting other evidence that would show his faculties are limited") violates the Eighth Amendment. *Id.* at 1994.  The Court held that "the Florida statute [Fla. Stat. 921.137(1)], as interpreted by its courts, is unconstitutional." *Id.* at 2000. (emphasis added). The Court, citing medical experts, agreed that "when a defendant's IQ test score falls within the test's acknowledged and inherent margin of error, the defendant must be able to present additional evidence of intellectual disability, including testimony regarding adaptive deficits." *Id.* at 2001. The Court remanded the case back to the Florida Supreme Court with the directive that the defendant "may or may not be intellectually disabled, but the law requires that he have the opportunity to present evidence of his intellectual disability, including deficits in adaptive functioning over his lifetime." *Id.*

The federal government had not adopted a rigid standard similar to Florida nor has the federal government's definition to intellectual disability been the subject of dispute. *See id.* at 1998. ("The U.S. Code likewise does not set a strict IQ cutoff. *See* 18 U.S.C. § 3596(c))."

Here, the Movant asserts that he "has been intellectually disabled throughout his life – from early childhood to the present day." (*Id.* at 29). However, the record directly contradicts this argument. The testimony presented at trial by the Movants' own expert witnesses belies this assertion.

During the penalty phase of trial, the Movant argued to the jury that he had learning disabilities and was an impressionable young man who had been manipulated by Danny Varela. (Tr. Case No. 06-CR-80171 (Hurley, J.), ECF. No. 818 at 67-89). In support of this mitigation, the Movant presented the testimony of Amy Fleming. (Tr. Case No. 06-CR-80171 (Hurley, J.), ECF. No. 823 at 110). Ms. Fleming was a Special Education Coordinator at Palm Beach County Schools. She testified the Movant's educational file did not indicate that he was intellectually disabled. (*Id.* at 153). According to her testimony, the Movant had a full scale IQ score of 80. (*Id.* at 130). Ms. Fleming testified that an IQ score of 80 is "not retarded." (*Id.* at 169).

Next, the Movant presented the testimony of Dr. Daniel Grant, a clinical psychologist. (Tr. Case No. 06-CR-80171 (Hurley, J.), ECF. No. 824 at 89). In advance of the penalty phase, Dr. Grant was retained to evaluate the Movant and determine if he was intellectually disabled. Dr. Grant testified unequivocally.

> Q. You evaluated Ricardo Sanchez and determined that he is not mentally retarded?
>
> A. He is not mentally retarded.

(*Id.* at 93). Dr. Grant determined that the Movant's full scale IQ was 77 and when also considering a general ability index, his IQ score was 81. (*Id.* at 96). In fact, when questioned regarding the Movant's IQ scores and an intellectual disability determination, Dr. Grant responded that "absolutely" the Movant was not intellectually disabled and that he did not "even see it as an issue." (*Id.* at 126).

Following Dr. Grant, the Movant called Dr. Thomas Reidy, a clinical psychologist, to testify. Dr. Reidy testified primarily about the familial relationships in the Movant's family and how they shaped his personality. However, Dr. Reidy also testified that the Movant was "not retarded" and his intellectual testing results correlated with someone who was of low average intelligence. (*Id.* at 206).

In rebuttal, the Government called Dr. Michael Brannon, a licensed psychologist. Dr. Brannon testified that nothing about the Movant's performance on educational tests or his IQ scores would lead to the conclusion that the Movant was intellectually disabled. (Tr. Case No. 06-CR-80171 (Hurley, J.), ECF. No. 846 at 130). In closing argument, the Government argued that "all the medical experts, psychologists agreed that Ricardo Sanchez is not retarded." (Tr. Case No. 06-CR-80171 (Hurley, J.), ECF. No.847 at 53). The Movant did not dispute this argument or challenge the accuracy of the statement.

Perhaps, the most clear and concise statement made during the trial regarding the Movant's intellectual abilities was defense counsel's closing argument to the jury. Counsel pointedly argued that "*[w]e are not claiming that he is mentally retarded, he is not.*" (*Id.* at 81)(emphasis added). Yet, seven years later in arguing that the Court should vacate, set aside, or correct his death sentence, this is exactly what the Movant is claiming.

The Movant's current argument that he meets the clinical criteria for an intellectually disabled diagnosis is based on the expert opinions of Dr. Kevin McGrew and Dr. Joette James. Other than a summary of Dr. McGrew's and Dr. James' opinion, the remainder of the Movant's argument is either antidotal information or simply a summary of the evidence previously presented during the penalty phase of trial. This is the same penalty phase where four qualified and trained professionals clearly testified that the Movant was not intellectually disabled.

Moreover, the Movant asserts that Dr. McGrew concludes that "a complete clinical evaluation, including consideration of adaptive behavior, *must be made* in order to determine whether he meets criteria for a diagnosis of intellectual disability." (Am. Mot. ECF No. 16-1 at 42)(emphasis added). In other words, Dr. McGrew does not opine that the Movant is intellectually disabled.

The only differing opinion offered by the Movant is that of Dr. Joette James. According to the Movant, Dr. James found that the Movants' "impairments in intellectual and adaptive functioning arising during the developmental period in his life meet the diagnostic criteria for intellectual disability." (Am. Mot. ECF No. 16-1 at 43). Her conclusion is based upon her finding that "Mr. Sanchez exhibits significant limitations in general intellectual

functioning. . .” (*Id.*). This vague assertion does not dissuade the Court from finding that it is plain from the record that the Movant would not be entitled to relief.

Moreover, the Court finds that the Movant should have made this claim on direct appeal. In support of his claim, the Movant argues that he "has been intellectually disabled throughout his life – from early childhood to the present day." (*Id.* at 30). The Movant had more than ample opportunity to develop and assert this claim on direct appeal. He has offered no reason why his diagnosis would have changed between then and now. He has offered no argument that the clinical definition of intellectually disabled or the federal government's legal definition of intellectually disabled has changed in the intervening time between his conviction, sentence, direct appeal, and now.

Finally, even if his claim were not procedurally barred, it is clear from the record that the claim is devoid of merit. The Court finds that an evidentiary hearing is not required in this matter. *See Jones v. United States*, 304 F.3d 1035, 1045, n. 18 (11th Cir. 2002); *In re Boshears*, 110 F.3d 1538, 1541, n. 1 (11th Cir. 1997) (recognizing that "hearing and findings of fact [are] not required for [a] § 2255 motion where 'the files and records of the case conclusively show that the prisoner is entitled to no relief'" (quoting 28 U.S.C. § 2255)).

The Movant's alternate argument is that he "is ineligible for the death penalty because his brain dysfunction, mental disorders, and mental age render the penalty unconstitutionally excessive suffers." (Am. Mot. ECF No. 16-1 at 44).  In sum, even if the Movant was not intellectually disabled, it would be unconstitutional to execute him because of other health factors. In support of this argument, the Movant cites policy statements from mental health associations, international law, and *Roper v. Simmons*, 543 U.S. 551 (2005) (prohibiting the execution of minors as cruel and unusual punishment). As there is no binding precedent to support the Movant's contention, the Court rejects this argument also. Claim III is dismissed.

*Claim VI*

The Movant's sixth claim for relief is that the Government failed to disclose *Brady* material. (Am. Mot. ECF No. 16-1 at 65). The Movant argues six specific sub-claims for relief. Claim VI(A), the most detailed of the six sub-claims, asserts that the Government failed to disclose "material exculpatory

information regarding Danny Varela." (*Id.* at 66). The Movant contends that Mr. Varela had co-conspirator liability but the Government did not charge him with murder. The Movant maintains that the Government failed to disclose "all defense favorable evidence in its possession" and the "[G]overnment's knowing presentation of false evidence" violated *Brady*. (*Id.* at 65).

The Movant contends that the Government argued, during the guilt phase, that the murders were in furtherance of the drug conspiracy headed by Mr. Varela. Although Mr. Varela was not present during certain crimes, he could still be held liable pursuant to co-conspirator liability. At trial, the Government explained to the jury that while it may be that Mr. Varela was culpable, "some evidence is not proof beyond a reasonable doubt, some evidence is not good enough in a courtroom in America." (*Id.* at 70). The Movant argues that he was prejudiced at sentencing because the Government withheld evidence which would have supported his defense that Mr. Varela exerted influence over him. The Movant argues that influence caused him to behave in a way that was out of character. The Movant asserts that the Government did not disclose "information about cooperating witness Mario Davis's statement that Mr. Varela had direct involvement in the murders. The [G]overnment also did not disclose information from Philip Perez regarding Mr. Varela's large-scale drug trafficking and gun possession." (*Id.* at 74). The Movant argues that this information which "explains why it [the Government] did not charge Mr. Varela with the murders...is favorable to Mr. Sanchez." (Id.).

The Movant first raised this issue before the guilt phase of trial. (Mot. Bill of Part., 06-CR-80171 (Hurley, J.), ECF. No. 275 at 5-6). The Movant sought a bill of particulars "outlining the particular conduct of each defendant at the scene of the homicide with as much specificity as possible" citing *Brady* for support of the request. (*Id.* at 6). The magistrate judge denied the motion finding that the Movant "simply speculates as to why the Government has not sought the death penalty as to Varela." (Order, 06-CR-80171 (Hurley, J.) ECF. No. 307 at 16). The claim argued here was made and rejected before the Movant's trial began.

The Court notes that the Movant did not raise this issue on direct appeal. As such, the Movant is barred from raising this claim now on collateral attack unless the Movant can show cause for his failure to raise the issue and actual prejudice resulting from the error. *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990). He has not done so.

Moreover, "[i]n order to establish a *Brady* violation, a defendant must prove: (1) that the government possessed evidence favorable to the defense, (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence, (3) that the prosecution suppressed the evidence, and (4) that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense." *United States v. Schier*, 438 F.3d 1104, 1106, n. 1 (11th Cir. 2006) (citing *Moon v. Head*, 285 F.3d 1301, 1308 (11th Cir. 2002)).

*Brady* requires only that the prosecution disclose evidence; *Brady* does not require the prosecution to identify possible theories of defense or assist in the presentation of the defense's case. *See United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990). Finally, "neither *mere speculation* that the prosecution might possess information helpful to the defense nor base assertions, without more, of the presence of exculpatory information in the prosecution's files would be sufficient to warrant a *Brady* determination." 25 James Wm. Moore et al., Moore's Federal Practice § 616.06[2] (3d ed.1997)(emphasis added). As the Movant has not offered anything more to establish a *Brady* violation than he did when he made his argument to the magistrate judge - a motion denied on its merit – the Court does not find that the Movant is entitled to relief. Even if the claim was not procedurally barred from review, Rule 4(b) provides that, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."

The Court must reach a similar conclusion as to the remaining, but less developed, sub-claims of Claim VI. The Movant asserts that the Government failed to disclose material exculpatory information regarding: (B) information regarding Yessica Escobedo's cell phone, (C) an alleged drug deal in Daytona Beach, (D) information from the security booth at the Briar Bay neighborhood, (E) benefits provided to cooperating witness Kevin Vetere, (F) Mr. Sanchez's lessened culpability for the murders, and (G) cumulative materiality. (Am. Mot. ECF No. 16-1 at 68-72).

Similar to sub-claim (A), the Movant has provided little to no detail about what actual evidence exists that the Government withheld. More importantly, however, is the fact that these arguments were available before, during, or after trial. None were made on direct appeal. Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a §

2255 challenge. *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). The Movant has offered no explanation for his failure to raise this claim on direct appeal. A defendant cannot overcome this procedural bar unless he can demonstrate a cause for this default and show actual prejudice suffered as a result of the alleged error. *Id.* A defendant can also overcome the procedural bar created by the failure to appeal if he could show a fundamental miscarriage of justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). The Movant has not alleged that he has obtained newly discovered information showing a likelihood that the Government withheld evidence. Rather, this claim makes the same arguments which were available to him prior to his direct appeal.

More importantly, the Movant has only averred that "if such information exists" that the Government "had an obligation to disclose" the information. The Movant has not argued that such information actually exists; that it ever existed or that the Government has ever possessed such information. This claim is the textbook definition of a fishing expedition which must be dismissed pursuant to Rule 4(b). "The district court was not required to allow a fishing-expedition based only on [the defendant's] incredible allegations." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1218 (11th Cir. 2014)(citing *Machibroda v. United States*, 368 U.S. at 495, 82 S.Ct. 510 (1962)("The language of [§ 2255(b) ] does not strip the district courts of all discretion to exercise their common sense."). Claim VI is dismissed.

*Claim IX*

In his ninth claim for relief, the Movant argues that his "death sentence is unconstitutional under the Eighth Amendment to the United States Constitution because the death penalty is inconsistent with evolving standards of decency, is arbitrary, serves no valid penological purpose, and is torturous." (Am. Mot. ECF No. 16-1 at 172). The Movant asserts that his death sentence was obtained "pursuant to an arbitrary process" and "operated by means of and promoted discrimination of race." (*Id.* at 173). The Movant contends that his sentence and continued confinement deprive him of his rights to due process; equal protection, and freedom from the infliction of torture and cruel and unusual punishment as guaranteed by the "United States Constitution, decisional law, and other mandatory rules; and international law as set forth in

treaties, customary law, and international human rights law." (*Id.*).  With the limited exception of certain dissenting opinions from the United States Supreme Court, the Movant has offered no binding precedent for his argument. The Movant cites to statutes or case law from certain states within the United States that have abolished or abandoned the death penalty. The Movant also presents statistical information from the international community on the worldwide evolution of the abolition of the death penalty. The Movant contends that the administration of the death penalty lacks reliability and is arbitrary. Finally, the Movant asserts that the "physical and psychological conditions of [his] lengthy confinement are so dehumanizing, brutal, and severe as to constitute unconstitutional torture." (*Id.* at 184).

Even if the Movant makes a compelling argument regarding capital punishment, the constitutionality of the death penalty it is one that could have and should have been made before today. The Movant cites no change in the law since the affirmation of his conviction and sentence in 2013. The bulk of the Movant's argument was available to him prior to the filing of his direct appeal. When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice. The Movant has failed to provide reason for why this claim was not raised on direct appeal at the first opportunity to do so. Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding." *See Cross*, 893 F.2d at 1289. ("When a defendant fails to pursue an available issue on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error.").

Moreover, even if he was not compelled to bring this claim before filing the instant Motion, it is clear from the record and applicable law, the Movant is not entitled to relief. The Movant has failed to provide the Court with any binding legal precedent to support his argument. As such, he has failed to satisfy the standards established by *Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts*. Claim IX is dismissed.

## *Rule 4: Entitlement to Relief*

### *Claim II*

The Movant's second claim for relief is that "his murder conviction and resulting death sentence are based on an impermissibly vague statute." (Am. Mot. ECF No. 16-1 at 21). The constitutional basis for this claim is *Johnson v. United States*, 135 S.Ct. 2551 (2015). In 2015, the United States Supreme Court held "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." (*Id.* at 2563). The Movant asserts that at sentencing the "jury was instructed that it could find Mr. Sanchez guilty of a 'crime of violence' based on either on a drug trafficking crime or on carjacking in which a killing occurs, under 18 U.S.C. §2119(3)." (Am. Mot. ECF No. 16-1 at 21). The Movant argues that *Johnson* has voided 18 U.S.C. §924(c)(3)(B) for vagueness.

To begin, this claim is not procedurally barred in that *Johnson* was decided after the Movant's direct appeal in 2012. However, because "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." *See Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts,* the claim must be dismissed.

At trial, the jury was instructed:

> Now, I want to draw your attention to this. In a sense Congress set forth two ways that the predicate to the crime can be established.

> You can prove, or the Government can prove beyond a reasonable doubt that a Defendant carried or used a firearm during and in relation to a crime of violence. The crime of violence is alleged to be the armed carjacking that is set out in Count 6.

> Or carried or used a firearm during and in relation to a drug trafficking crime, and the drug trafficking crime that is alleged is the crime set out in Count 1, the count of conspiracy to possess with intent to distribute.

> So let's look at this particular crime, that is, the crime of carrying or using a firearm during and in relation to a crime of violence and/or a drug trafficking crime.
>
> It is a federal crime or offense for anyone to use a firearm -- to use or carry during and in relation to a crime of violence or a drug trafficking crime which results in the death of a person that would be murder as described under federal law.
>
> Now, I want you to know as a matter of law the crime of carjacking is in fact classified as a crime of violence. So the crime that is set forth in Count 6 is in fact classified under the law as a crime of violence. The crime that is set out in Count 1, the crime of conspiracy to possess with intent to distribute controlled substances, as a matter of law that is classified as a drug trafficking crime.
>
> * * *
>
> You know that Count 1, the conspiracy to possess with intent to distribute controlled substances, I told you that is a drug trafficking crime. And that is the specific drug trafficking crime that is referred to in this count.
>
> You remember I also told you that the crime of armed carjacking is in fact categorized as a crime of violence. That is the specific crime of violence that is alleged in this count.

(Tr. Case No. 06-CR-80171 (Hurley, J.), ECF No. 771 at 61-64). The jury unanimously found that "the Government has established beyond a reasonable doubt that the Defendant, Ricardo Sanchez, Jr. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to the persons in Count 6 of the indictment." (Tr. Case No. 06-CR-80171 (Hurley, J.), ECF No. 857 at 25). Specifically, the jury determined that the Movant was guilty of "knowingly carr[ying] or us[ing] a firearm during and in relation to a crime of violence and/or a drug trafficking crime. . ." (Verdict Form, Case No. 06-CR-80171 (Hurley, J.), ECF No. 796 at 3). The indictment clearly states that armed carjacking is a crime of violence. (Indictment, Case No. 06-CR-80171 (Hurley, J.), ECF No. 305 at 8-12). The Movant's argument here is contingent upon finding that carjacking is not uniformly considered a crime of violence.

While the specific jury instruction that the Movant takes issue was given during the guilt phase, his claim is that the Federal Death Penalty Sentencing

statute's §924(c)(3)(B) residual clause is vague and unconstitutional. The Movant argues that because the Armed Career Criminal Act's ("ACCA") residual clause (18 U.S.C. §924 (e)(2(B)(ii)) was found to be unconstitutionally vague in *Johnson* and §924(c)(3)(B) is materially indistinguishable, it must be "similarly stricken." (Am. Mot. ECF No. 16-1 at 22).

The Court disagrees. The Court finds that the statutory language of 924(c)(3)(B) is distinctly narrower that the residual clause of the ACCA and the Supreme Court was clear in limiting the holding in *Johnson* to those circumstances prescribed by the ACCA's residual clause. *See United States v. Taylor,* 814 F.3d 340 (6th Cir. 2016)("the *Johnson* opinion itself stressed that its reasoning did not control other statutes that refer to predicate crimes."); *see, e.g., Leocal v. Ashcroft,* 125 S.Ct. 377, n.7 (2004) (comparing 18 U.S.C. § 16(b) with U.S.S.G. § 4B1.2(a)(2), which contains the same language as the ACCA residual clause); *United States v. Serafin,* 562 F.3d 1105, 1109, 1114 (10th Cir. 2009) (comparing § 924(c)(3)(B) with U.S.S.G. § 4B1.2(a)(2) and with the ACCA residual clause).

More importantly, it is without question that the United States Court of Appeals for the Eleventh Circuit has held that the crime of carjacking "is always and without exception a crime of violence." *See United States v. Moore*, 43 F.3d 568, 573 (1994)(citing *United States v. Singleton,* 16 F.3d 1419, 1422 (5th Cir. 1994). The Court recently denied a claim virtually identical to the one made here by the Movant.

> Even assuming that *Johnson* invalidated § 924(c)'s residual clause, that conclusion would not assist Smith because the elements of the underlying conviction on which his § 924(c) conviction was based—carjacking, in violation of 18 U.S.C. § 2119—meet the requirements that the force clause in § 924(c)(3)(A) sets out for a qualifying underlying offense. In fact, our precedent says just that. In *United States v. Moore*, 43 F.3d 568 (11th Cir. 1994), we held:
>
>> The term "crime of violence" as Congress defined it in 18 U.S.C § 924(c)(3) clearly includes carjacking. "Tak[ing] or attempt[ing] to take by force and violence or by intimidation," 18 U.S.C. § 2119, encompasses "the use, attempted use, or threatened use of physical force...." 18 U.S.C. § 924(c)(3)(A).
>
> *Id.* at 572–73 (emphasis added). Stated another way, an element requiring that one take or attempt to take by force and violence or by intimidation, which is what the federal carjacking statute does,

> satisfies the force clause of § 924(c), which requires the use, attempted use, or threatened use of physical force. In short, our precedent holds that carjacking in violation of § 2119 satisfies § 924(c)'s force clause, and that ends the discussion.
>
> Accordingly, regardless of the validity of § 924(c)'s residual clause, Smith's § 924(c) conviction meets the requirements of that statute's force clause.

*In re Smith*, 2016 WL 3895243 (11th Cir., July 18, 2016). Whether the Movant's argument regarding the vagueness of 924(c)'s residual clause under *Johnson* is correct, it is inapplicable to his claim because the offense of carjacking is rooted in the force clause of the statute which remains unaffected by *Johnson*. Claim II is dismissed.

*Claim VII(A)*

The Movant's final claim subject to dismissal is Claim VII(A). Claim VII(A) is that counsel was ineffective for failing to "challenge the composition and selection of the Grand and Petit Jury Venires in Violation of the Fifth, Sixth, and Eighth Amendments." (Am. Mot. ECF No. 16-1 at 80). After review the Court finds that this claim is entirely without merit and does not require an evidentiary hearing.

Any analysis of an ineffective assistance of counsel claim should begin with *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the United States Supreme Court set forth the two-prong test that a convicted defendant must meet to demonstrate that his or her counsel rendered ineffective assistance. First, a defendant "must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 688. Second, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Court defines a "reasonable probability" as one "sufficient to undermine confidence in the outcome." *Id.* And "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. In 2011, the Supreme Court clarified the *Strickland* standard.

> In *Strickland*, this Court made clear that "the purpose of the effective assistance guarantee of the Sixth Amendment is not to

improve the quality of legal representation ... [but] simply to ensure that criminal defendants receive a fair trial." 466 U.S., at 689, 104 S. Ct. 2052. Thus, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*, at 686, 104 S. Ct. 2052 (emphasis added). The Court acknowledged that "[t]here are countless ways to provide effective assistance in any given case," and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.*, at 689, 104 S. Ct. 2052.

*Cullen v. Pinholster,* 131 S. Ct. 1388, 1403 (2011).

The Movant's sole argument on the deficiency prong of *Strickland* is that "at the time of trial, the defense bar widely recognized the viability of challenges to the grand and petit jury venire selection process; as such challenges had been available for decades." (*Id.* at 81). The underlying constitutional claim is that his jury was not selected from a "fair cross section of the community." (*Id.* at 82). The Movant's claim suffers from a fatal infirmity because it fails to assert, other than in a conclusory fashion, that counsel's performance was deficient. Indeed, there is only a singular paragraph devoted to the argument that counsel's performance was unconstitutional. (Am. Mot. ECF No. 16-1 at 81). The Movant cites no law or fact to support his argument.

Effectively, the Movant is contending that between 2006 - 2009 the Southern District of Florida's jury selection process did not comport with the constitutional requirement that the jury pool be selected from a fair racial cross section of the community. In support, the Movant has provided statistical data and census information for Palm Beach County, Florida. (*Id.* at 82-88). Some of the Movant's data came from this Court's statistical records while the remainder came from outside sources. The Movant alleged that the Court's AO 12 reports ("Report on Operation of the Jury Selection Plan") inaccurately reported the percentage of Hispanics and African-American residing in Palm Beach County, Florida at the time of the Movant's trial. According to the Movant, this inaccuracy resulted in minority groups being underrepresented in the jury pool. The Movant has not asserted that *his* jury specifically was underrepresented by minority venire persons; rather, simply that the entire jury selection process in the Southern District of Florida was flawed. While the Court specifically rejects this assertion, it will for the sake of resolving this claim without an evidentiary hearing, assume that this assertion was true. In

fact, for the sake of argument, the Court will also assume that the Movant's actual jury was statistically underrepresented by racial minorities.

However, these assumptions, in and of themselves, do not make a meritorious claim for ineffective assistance of counsel. Simply because the underlying claim may be a valid claim for relief had it been made, this is not enough to prevail. The Movant must also show that a constitutionally effective lawyer should have and would have known that this was a claim worthy of pursuit and investigation. The Movant has not done so; indeed, he has not even made the argument.

The Movant would have to show that defense counsel should have known that the Southern District of Florida was inaccurately reporting statistical data and that inaccurate reporting resulted in an unconstitutionally disproportionate amount of racial minorities being underrepresented in the jury pool in Palm Beach County, Florida from 2006 - 2009. In other words, every defense lawyer in the Southern District of Florida should have been challenging the racial make-up of its' clients juries from 2006-2009. The Court finds no support in the record for this argument.

"The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Instead the test is whether some reasonable attorney could have acted in the circumstances . . . [as this attorney did]-whether what . . . [this attorney] did was within the 'wide range of reasonable professional assistance.'" *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995)(en banc)(quoting *Strickland*, 466 U.S. at 689)(citation omitted). *See also Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) (stating that to show unreasonableness "a petitioner must establish that no competent counsel would have made such a choice."). The Court cannot find that no competent counsel would have proceeded to trial without challenging the jury selection process in the Southern District of Florida from 2006 - 2009. Claim VII(A) is dismissed because it plainly appears that the Movant is not entitled to relief.

It is **ordered and adjudged** as follows:

1. The Motion to Vacate, Set Aside, or Correct Sentence (Am. Mot. ECF No. 16-1) is **DISMISSED,** in part. Claims I, II, III, VI, VII(A), IX, and X are **DISMISSED.**

2. The Movant's Motion for Leave to Interview Jurors and Consolidated Memorandum of Law (Mot. ECF No. 26) is **DENIED** as moot.

3. The Movant's Motion for Permission to File Overlength Discovery Motion and Consolidate Memorandum of Law (Mot. ECF No. 25) is **DENIED**, in part. Based on the dismissal of certain claims herein, Request 1 (Claim I), Request 2 (Claim III), Request 4 (Claim VI), Request 5 (Claim VII(A)), Request 9 (Claim IX), Request 10 (Claim X), are **DENIED** as moot. As to the remaining requests, the Government shall file a timely response. The Movant's request to file a motion exceeding the ten page limit previously ordered is **GRANTED**.

**Done and ordered**, at Miami, Florida, on October 4, 2016.

Robert N. Scola, Jr.
United States District Judge