**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CIVIL NO. 9:16-CV-80693-RNS**

| | | |
|---|---|---|
| **RICARDO SANCHEZ, JR.,** | : | |
| **Movant** | : | |
| | : | |
| **v.** | : | **THIS IS A CAPITAL CASE** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |

**MOTION TO RECONSIDER**
**ORDER DISMISSING CLAIMS AND**
**INCORPORATED MEMORANDUM OF LAW**

Matthew C. Lawry
Aren Adjoian
Federal Community Defender Office
 for the Eastern District of Pennsylvania
Curtis Center, Suite 545-West
601 Walnut Street
Philadelphia, PA 19106
Phone: (215) 928-0520
Fax: (215) 928-0826
Matthew_Lawry@fd.org
Aren_Adjoian@fd.org

Counsel for Ricardo Sanchez, Jr.

Dated:  October 19, 2016

Movant Ricardo Sanchez, through undersigned counsel, respectfully requests that this Court reconsider its Order Dismissing Claims, ECF No. 29. In support of this motion, Mr. Sanchez states the following:

1.      Pending before the Court is Mr. Sanchez's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 16-1 ("Motion").

2.      Following a status conference on July 14, 2016, this Court entered a scheduling order, requiring Respondent to file a response to the Motion by October 12, 2016, and Mr. Sanchez to file a reply and memorandum of law by November 14, 2016. ECF No. 21. The Court stated that deadlines for filing amended pleadings and dispositive motions would be set following a status conference scheduled for December 2, 2016. *Id.* The Court also ordered Mr. Sanchez to file any discovery motions by September 12, 2016, and Respondent to file a response to the discovery motion by October 12, 2016. *Id.*

3.      On September 12, 2016, Mr. Sanchez filed a motion for leave to file a discovery motion in excess of the previously prescribed ten page limit for such motions, together with his proposed discovery motion and consolidated memorandum of law. ECF No. 25. On that date, Mr. Sanchez also filed a motion for leave to interview jurors. ECF No. 26.

4.      On October 3 and 4, 2016, Respondent filed motions for extensions of time to respond to the Motion and the discovery requests. ECF Nos. 27, 28.

5.      On October 4, 2016, the Court *sua sponte* dismissed, pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, Claims I, II, III, VI, VII(A), IX and X of the Motion. Order Dismissing Claims, ECF No. 29 at 23 ("Order"). The Court also denied the discovery requests related to those claims, and the motion for leave to interview jurors, as moot. *Id.* at 30. In separate orders, the Court ordered Respondent to respond to the remaining claims and discovery requests by November 1. ECF Nos. 30, 31.

6.      In dismissing the claims set forth above, the Court acted before the parties had completed briefing the issues, before the Court had considered whether discovery was warranted, without prior notice to Mr. Sanchez, and at a time when, under the schedule set by the Court, Mr. Sanchez still had the opportunity to amend the motion to cure any potential defects in his claims. Mr. Sanchez submits that the Court's action was premature and erroneous, for the reasons set forth below.

1

## I.     GOVERNING PRINCIPLES UNDER RULES 2 AND 4(b)

7.      Rule 2 of the Rules Governing Section 2255 Proceedings provides that the moving party must "specify all the grounds for relief available to the moving party," "state the facts supporting each ground" and "state the relief requested."  Rule 2(b)(1-3).  While Rule 2 does not permit "notice" pleading, it also does not require the moving party to anticipate all potential affirmative defenses and allege that she can overcome them.  *See* § III.B, *infra*.

8.      In particular, the moving party need not allege that she can overcome potential procedural defaults, such as waiver at trial or on direct appeal.  Rather, the defense of procedural default is one that must be affirmatively raised by the government, or else is itself considered waived.  *See Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253, 1261 (11th Cir. 2013) ("the procedural-default rule is not jurisdictional, but is an affirmative defense that is subject to waiver by the government") (citing *Howard v. United States*, 374 F.3d 1068, 1073 (11th Cir. 2004); *Shukwit v. United States*, 973 F.2d 903, 904 (11th Cir. 1992); and *United States v. Jordan*, 915 F.2d 622, 629 (11th Cir. 1990)).

9.      Rule 4(b) of the Rules Governing Section 2255 Proceedings provides as follows:

The judge who receives the motion must promptly examine it.  If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must *dismiss the motion* and direct the clerk to notify the moving party.  If the motion *is not dismissed*, the judge must order the United States attorney to file an answer, motion or other response within a fixed time, or to take other action the judge may order.

10.     By its terms, the rule enables a district court to dismiss a Rule 2255 motion prior to any response from the government when the Court determines that it "plainly appears" that the moving party is not entitled to any relief.

11.     The Supreme Court has made clear that a high standard must be met before summary dismissal under Rule 4 is warranted.  The first question is whether, "if the allegations contained in the petitioner's motion … are true, he is entitled to have his sentence vacated." *Machibroda v. United* States, 368 U.S. 487, 493 (1962).

12.     If the moving party's allegations meet that standard, dismissal is appropriate only if the allegations of the motion are "in themselves so 'vague or conclusory' as to warrant dismissal," *Blackledge v. Allison*, 431 U.S. 63, 75 (1977) (quoting *Machibroda*, 368 U.S. at 495

2

(1962)); or if the allegations are so "'palpably incredible,' so 'patently frivolous or false,' as to warrant summary dismissal." *Blackledge*, 431 U.S. at 76 (citations omitted).

13.     In general, for dismissal to be appropriate under Rule 4(b), it must "plainly appear[]" that the moving party is not entitled to relief.  As the Eleventh Circuit noted in *Broadwater v. United States*, 292 F.3d 1302 (11th Cir. 2002), when, as here, there are numerous allegations and a sizable record, "it is not readily apparent" that summary dismissal is warranted.

## II.     THIS COURT'S ORDER

14.     In the Order, this Court relied on several grounds as its basis for dismissing numerous – but not all – claims alleged by Mr. Sanchez.

15.     First, the Court relied on the procedural default doctrine as precluding any claim that could have been raised on direct appeal.  Order at 4.  The Court acknowledged that a procedural default may be overcome by showing (1) cause and prejudice, or (2) innocence, but nevertheless summarily denied any claim it believed could have been raised on direct appeal, because "the Movant has argued neither cause and prejudice nor actual innocence." *Id.*

16.     Second, with respect to some claims the Court purported to determine summarily factual issues without considering either whether Mr. Sanchez was entitled to discovery to develop his claims, the legal argument contemplated in the scheduled memorandum of law, or any additional factual proffers Mr. Sanchez may make.

17.     Finally, with respect to two claims (Claims II and VII(A)), the Court found that the allegations were insufficient to establish any entitlement to relief, as a matter of law, fact, or both.

## III.     THIS COURT SHOULD RECONSIDER THE ORDER

18.     The standard for granting a motion to reconsider has been described as follows:

> [A] motion to reconsider must demonstrate why the court should reconsider its decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.  This ordinarily requires a showing of clear and obvious error where the 'interests of justice' demand correction.

*McGuire v. Ryland Group, Inc.*, 497 F. Supp. 2d 1356, 1358 (M.D. Fla. 2007) (citations and quotation marks omitted).

19.     Ordinarily, of course, an order dismissing claims is issued after the parties have fully briefed the issues.  In such circumstances, the standard for reconsideration is quite high because the parties have had the opportunity to present all pertinent facts and argument to the

court before its ruling. *Id.* In this instance, the standard should take into account that Mr. Sanchez did not have notice or an opportunity to address the Court's reasoning before it ruled. This Court should grant reconsideration for the reasons below.

### A.    The Order is Premature.

20.    The evident purpose of Rule 4(b) is to enable a district judge to dismiss an entire motion for relief under § 2255 where all of the claims in the motion either fail to state a claim for relief at all, are vague and conclusory, or are palpably incredible or patently frivolous. When used in that situation, it relieves the government of any obligation to file a responsive pleading. Care is still required to make sure that the pleading actually is subject to dismissal under the standard discussed above. *See, e.g., Williams v. United States*, 2016 WL 4651357 (11th Cir. Sept. 7, 2016) (remanding summarily dismissed § 2255 motion for an evidentiary hearing); *Broadwater*, *supra* (remanding § 2255 motion dismissed under Rule 4(b)); *Hart v. United States*, 565 F.2d 360 (5th Cir. 1978) (same).[1]

21.    The situation is different when, as here, a district court dismisses some but not all of the moving party's claims prior to the filing of any responsive pleading. Because not all of the claims have been dismissed, the government will still have to respond to the remaining claims, and Mr. Sanchez will have to brief those claims, and still has the opportunity to move to amend. Thus, the benefits of pre-response dismissal are limited outside of the context of a complete dismissal. *See Rodriguez v. Florida Dep't of Corrections*, 748 F.3d 1073, 1079 (11th Cir. 2014) ("In our experience, where the District Court does require an answer from the State, it will generally wait until it gets the answer and the petitioner's reply before fully considering jurisdictional and procedural issues.").

22.    To be sure, pre-response dismissal of claims that are patently frivolous or subject to some legal bar, such that even if proven the allegations would not entitle the moving party to relief, would save the parties the work of briefing meritless issues. But that is not true of Mr. Sanchez's claims. Rather, this Court has asserted that it can tell from the Motion alone that numerous claims are barred by procedural default, and that others will lose on the merits –

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

without having heard from Mr. Sanchez regarding the legal basis of his claims, and without having given him the opportunity to amend to cure any deficiencies.

23.     That approach is premature and unnecessary.  The government is already scheduled to file responsive pleadings, Mr. Sanchez is scheduled to file a reply and a memorandum of law, and the Court has contemplated allowing the parties time in which to file motions for leave to amend.  Dismissing claims now short-circuits the orderly presentation of the parties' positions.  As the Supreme Court explained in *Blackledge*, rather than dismiss potentially viable claims pre-response,

> [T]here exists a procedure whose purpose is to test whether facially adequate allegations have sufficient basis in fact to warrant plenary presentations of evidence.  That procedure is, of course, the motion for summary judgment.  Upon remand the warden will be free to bring such a motion, supporting it with whatever proof he wishes to attach.  If he chooses to do so, Allison will then be required either to produce some contrary proof indicating that there is a genuine issue of fact to be resolved by the District Court or to explain his inability to provide such proof.

*Blackledge*, 431 U.S. at 80-81 (citation and footnote omitted).

24.     In *Blackledge*, the Court also noted that discovery may be one way to develop the facts without necessarily requiring an evidentiary hearing.  *Id.* at 81-82.  The Order cut short the discovery process with respect to all of the dismissed claims.  Mr. Sanchez, however, like the petitioner in *Blackledge*, "is 'entitled to careful consideration and plenary processing of [his claim,] including full opportunity for presentation of the relevant facts." *Id.* (quoting *Harris v. Nelson*, 394 U.S. 286, 298 (1969)) (brackets in *Blackledge*).  The Court's premature action has deprived him of that opportunity.  Therefore, this Court should reconsider the Order.

**B.      The Court Prematurely Dismissed Claims on the Basis of Procedural Default *Sua Sponte*, Without Notice and an Opportunity to Respond.**

25.     The Court premised its dismissal of numerous claims at least in part on the doctrine of procedural default.  *See, e.g.,* Order at 5-6 (Claim I); 7 (Claim X); 13 (Claim III); 14-16 (Claim VI); and 17 (Claim IX).  The Court took this action *sua sponte*, prior to the government having filed any responsive pleading.  Thus, we do not even know if the government intends to rely on a procedural default defense with respect to any of those claims, or whether it would waive such a defense.  The Court also failed to provide Mr. Sanchez any notice of its

5

intention to dismiss claims on the basis of procedural default, or any opportunity to respond.  The Court erred.

26.     As discussed above, procedural default is an affirmative defense.  *See Bryant*, 738 F.3d at 1261.  Under the Federal Rules of Civil Procedure, which apply in § 2255 proceedings pursuant to Rule 12 of the Rules Governing Section 2255 Proceedings, the plaintiff is under no obligation to plead that he can overcome anticipated affirmative defenses.  *See, e.g., Vance v. Terrazas*, 444 U.S. 252, 269 n.11 (1980) (recognizing the well-established rule that "an affirmative defense [must] be pleaded and proved by the party attempting to rely on it."); *Twin City Fire Ins. Co. v. Hartman, Simon & Woods, LLP*, 609 F. App'x 972, 978 (11th Cir. 2015) ("a plaintiff's complaint need not anticipate and counter affirmative defenses."); *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ("plaintiffs are not required to negate an affirmative defense in their complaint") (quotation marks and alterations omitted); 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1276 (3d ed. 2016) (noting that a plaintiff "is not under any obligation to plead on the subject of [an] anticipated defense").

27.     These principles apply to § 2254 and § 2255 proceedings.  Because procedural default is an affirmative defense, it is waived if not raised by the government.  *See, e.g., Gray v. Netherland*, 518 U.S. 152, 166 (1996) ("the Commonwealth would have been obligated to raise procedural defense as a defense, or lose the right to assert the defense thereafter."); *Howard v. United States*, 374 F.3d 1068, 1073 (11th Cir. 2004) (same, with respect to § 2255 proceeding); *Shukwit v. United States*, 973 F.2d 903, 904 (11th Cir. 1992) (government waived procedural default by failing to raise defense in district court).

28.     Consistent with these principles, while a district court may raise the issue of procedural default *sua sponte*, it may not dismiss a petition or claim on those grounds unless it provides notice and an opportunity to be heard.  *See, e.g.*, *Day v. McDonough*, 547 U.S. 198, 204 210 (2006) ("before acting on its own initiative [with respect to a procedural defense], a court must accord the parties fair notice and an opportunity to present their positions"); *Rodriguez*, 748 F.3d at 1080 (quoting above passage from *Day* and explaining that "our experience . . . has repeatedly demonstrated that a petitioner must have a meaningful opportunity to challenge the propriety of rulings on procedural grounds."); *Esslinger v. Davis*, 44 F.3d 1515, 1528 & n.45 (11th Cir. 1995) ("[i]f the petitioner is to be afforded due process, he must receive notice of the court's inclination to interpose the default, an opportunity to demonstrate 'cause' for the default

and 'prejudice,' and, if material issues of fact are present, an opportunity to present his evidence.").[2]

29.     This is particularly true when the moving party may be able to show that his counsel's ineffective assistance "would provide cause to excuse the default." *Nguyen v. United States*, 420 F. App'x 875, 878 (11th Cir. 2011) (remanding for further review in district court).

30.     Here, the Order violates these principles, which are well-established in the precedents of the Supreme Court, the Eleventh Circuit, and other courts of appeal.  In the Order, this Court both raised the issue of procedural default *sua sponte* and purported to dismiss the relevant claims without giving Mr. Sanchez notice or an opportunity to respond with legal arguments, additional allegations, or by developing additional facts regarding the alleged defaults and cause and prejudice therefor.

31.     The Order overlooks that the allegations of the Motion – as it stands – at a minimum raise contested issues regarding whether the procedural default doctrine applies at all, and, if so, whether there is cause and prejudice for any default.

32.     The Order premises its default rulings on the fact that certain claims were not raised on direct appeal.  However, claims involving facts outside of the trial record normally cannot be raised on a direct appeal, which is based on the record created at trial.  Thus, claims based on extra record facts are generally not considered defaulted as the result of a failure to raise them on direct appeal.  *See Bousley v. United States*, 523 U.S. 614, 621-22 (1998) (noting there is an exception to procedural default rule "when the facts were 'dehors the record and their effect on the judgment was not open to consideration and review on appeal.'") (quoting *Waley v. Johnston*, 316 U.S. 101, 104 (1942) (per curiam)); *Mills v United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (a ground is "available" on direct appeal when "its merits can be reviewed without further factual development.").

33.     Moreover, to the extent that the facts at issue were reasonably available at trial, but not developed by trial counsel, the prisoner may allege that trial counsel was ineffective.  A

---

[2] While not controlling in this Court, other circuit courts of appeals have applied the same rule. *See, e.g.*, *Oakes v. United States*, 400 F.3d 92, 98 (1st Cir. 2005) (because the petitioner "had no duty to anticipate potential affirmative defenses," district court that raised procedural default *sua sponte* "should have . . . given notice of the court's intention and afforded an opportunity to respond."); *Acosta v. Artuz*, 221 F.3d 117, 121-22 (2d Cir. 2000) (affirmative defenses must be pled by respondent and need not be pled in the petition).

7

showing of trial counsel ineffectiveness would establish cause and prejudice for the default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Such an allegation may not be raised on direct appeal. Accordingly, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

34. Similarly, failure to disclose exculpatory facts by the government would establish cause and prejudice. *See, e.g., Banks v. Dretke*, 540 U.S. 668, 692-94 (2004) (State's failure to disclose witness's status as informant established cause for failure to raise claim); *Strickler v. Greene*, 527 U.S. 263, 289 (1999) (similar); *Julius v. Jones*, 875 F.2d 1520, 1525 (11th Cir. 1989) ("This Court is unwilling to hold on the facts of this case that, if the prosecutor failed to produce evidence which was required to be produced under *Brady* and which failure was unknown to defendant's counsel, the claim is procedurally barred because defense counsel did not ferret out the violation. Such a ruling would reward the wrongdoer because he was not timely found out.").

35. Finally, there is a fundamental miscarriage of justice that overcomes any default where the prisoner can show that she is actually innocent either of the crime, *Carrier,* 477 U.S. at 496, or – in a capital case – that she is innocent of the death sentence. *Sawyer v. Whitley,* 505 U.S. 333, 341 (1992).

36. As further discussed below, one or more of these principles applies to each of the claims that this Court found to be defaulted, precluding dismissal of the claims at this time.

37. Accordingly, this Court should reconsider the Order and give Mr. Sanchez the opportunity to develop legal arguments and factual allegations or proffers to demonstrate that his claims are not subject to procedural default.

**C.     The Court Prematurely Dismissed Claims Based on the Assertion They Were Meritless.**

38. The Court premised its dismissal of several claims at least in part on the assertion that the claims as pled lack merit. *See* Order at 12-13 (Claim III); 15-16 (Claim VI); 17 (Claim IX); 20-21 (Claim II); 22-23 (Claim VII(A)).

39. The Court took this action *sua sponte*, prior to the government having filed any responsive pleading, and prior to the filing of Mr. Sanchez's memorandum of law and motion to amend. The Court also provided no notice of its intent to take such an action. To the extent the

8

Court believed further documentary support for Mr. Sanchez's allegations was required (although Rule 2 does not require filing of such report at the time the motion is filed), Mr. Sanchez is separately filing an Appendix of supporting documents.[3]

### D. The Court Erroneously Dismissed Mr. Sanchez's Claims.

40. Mr. Sanchez's claims are not subject to dismissal. The Court erred in dismissing his claims, and should reconsider the Order. We discuss below the individual claims that the Court asserted lack merit.

### 1. Claim I

41. In Claim I, Mr. Sanchez alleges that individual jurors committed misconduct during the voir dire process, violating his rights to due process, to an impartial jury, to be free from cruel and unusual punishment, and under the Federal Death Penalty Act. *See* Motion, ¶¶ 12-51.

42. The Court denied this claim as having been defaulted because it was not raised on direct appeal. Order at 6. The Court noted that "the factual basis for this claim was available to the Movant – had he looked – before his trial." *Id.*

43. All of the facts tending to show juror misconduct alleged in Claim I are extra-record facts. Accordingly, the claim should not be considered defaulted on direct appeal, because at that stage it could not have been "reviewed without further factual development." *Mills*, 36 F.3d at 1055. *See United States v. Fell*, 2014 WL 3697810, *6 n.5 (D. Vt. July 24, 2014) (rejecting government argument that juror misconduct claim was defaulted).

44. Furthermore, Mr. Sanchez has alleged that trial counsel were ineffective to the extent that they could have developed those facts but failed to do so. Motion, ¶ 51. Accordingly, there is cause and prejudice for any default.[4]

---

[3] Documents included in the Appendix are cited as "A" followed by the Appendix page number.

[4] While this Court stated that the allegations of ineffective assistance were insufficient, Order at 5, that is not a basis for pre-response dismissal, since any deficiency in the pleading may be cured in the reply or by amending the motion. Moreover, the Court itself found that the factual basis for the claim was available to Mr. Sanchez's trial counsel. Order at 6.

### 2.     Claim II

45.     In Claim II, Mr. Sanchez alleges that his murder convictions and resulting death sentence are based on an impermissibly vague statute, in violation of due process and the Eighth Amendment.  *See* Motion, ¶¶ 52-82.

46.     The Court ruled that § 924(c)(3)(B) is narrower than ACCA's residual clause, and that relief on this claim is precluded by the Eleventh Circuit's decisions in *In re Smith*, 2016 WL 3895243 (11th Cir. July 18, 2016), and *United States v. Moore*, 43 F.3d 568, 573 (11th Cir. 1994).  Order at 20-21.

47.     As to the first ground, the issue is pending before the United States Supreme Court in *Lynch v. Dimaya*, No. 15-1498, in which the Court granted certiorari to consider whether 18 U.S.C. § 16(b) – which has the same language as § 924(c)(3)(B) – is unconstitutionally vague.  At a minimum, this Court should await the United States Supreme Court's ruling.

48.     As to the second ground, Mr. Sanchez acknowledges the decision in *Smith*, which was rendered after filing of the Motion, but submits that the correct interpretation of both subsections (A) and (B) of § 924(c)(3) presents difficult legal issues that are still percolating and will likely soon be decided by the Supreme Court.[5]  In these circumstances, Mr. Sanchez should at least be given the opportunity to fully brief and develop this claim.

### 3.     Claim III

49.     In Claim III, Mr. Sanchez alleges that he is intellectually disabled, and that he therefore is ineligible for execution under *Atkins v. Virginia*, 536 U.S. 304 (2002), and its progeny.  *See* Motion, ¶¶ 83-141.

50.     The Court dismissed this claim as having been defaulted because not raised on direct appeal and as meritless.  Order at 13.  The Court erred on both grounds.

#### a.     The claim is not defaulted.

51.     For several reasons, the claim is not defaulted.  Alternatively, Mr. Sanchez can establish cause and prejudice for any default and should be permitted the opportunity to plead and prove cause and prejudice.

---

[5] In addition to *Dimaya*, the Court has also granted certiorari in *Beckles v. United States*, No. 15-8544, which raises additional questions concerning the scope of *Johnson v. United States*, 135 S. Ct. 2551 (2015).

52.      First, the essence of *Atkins* is that a death sentenced prisoner who can establish that she is in fact intellectually disabled is constitutionally *ineligible* for the death penalty.  The ineligibility of an offender to be executed is not a "right" that the prisoner can waive; it is a constitutional limitation on the authority of the government.  *See Montgomery v. Louisiana*, 136 S. Ct. 718, 731 (2016).  An Eighth Amendment prohibition against an execution is one such constitutional limitation, *see id.*; *Penry v. Lynaugh*, 492 U.S. 302, 329-30 (1989).  Therefore, the concept of waiver does not apply.  *See Commonwealth v. Vandivner*, 130 A.3d 676, 697 (Pa. 2015) (Saylor, C.J., concurring).

53.      Second, the claim as pled depends on extra-record facts.  As such, the claim was not waived on direct appeal because it could not have been raised on direct appeal.  *See ¶ 32, supra*.

54.      Third, because a prisoner who has proved intellectual disability is ineligible for the death penalty, proof of the claim would also establish that Mr. Sanchez is "innocent" of the death penalty and that his execution would be a fundamental miscarriage of justice, overcoming any default.  *Sawyer*, *supra*.

**b.      The claim has merit.**

55.      In order to establish a claim for relief under *Atkins*, the death sentenced prisoner must show that he satisfies three criteria:  "significantly subaverage intellectual functioning, deficits in adaptive functioning (the inability to learn basic skills and adjust behavior to changing circumstances), and onset of these deficits during the developmental period."  *Hall v. Florida*, 134 S. Ct. 1986, 1994 (2014).

56.      Mr. Sanchez alleged that he meets all three criteria.  With respect to subaverage intellectual functioning, he alleged that his history supports that criterion, and relied on review by a highly qualified expert, Kevin McGrew, Ph.D., of numerous tests of intellectual functioning administered to Mr. Sanchez during childhood and up to the time of trial, as the result of which Dr. McGrew concluded that Mr. Sanchez's IQ scores "fall within the range of scores specified for prong 1 of an intellectual disability diagnosis."  Motion, ¶ 101; *see also id.* at ¶ 131.[6]

---

[6] Dr. McGrew's declaration, containing all of his findings and conclusions, is included in the Appendix as A777-820.

11

57.     Mr. Sanchez presented detailed allegations concerning his adaptive deficits and the onset of his deficits during the developmental period.  Motion, ¶¶ 112-30.  Moreover, Mr. Sanchez alleged that neuropsychologist Joette James, Ph.D. has concluded that Mr. Sanchez meets all three criteria for intellectual disability.  Motion, ¶¶ 134-35.[7]

58.     Given the detailed nature of Mr. Sanchez's allegations, supported by the declarations of Drs. McGrew and James, this Court's summary pre-answer dismissal of Claim III is erroneous.  *See Blackledge*, 431 U.S. at 78 (petitioner's allegations of improperly induced plea agreement were not "so 'patently false or frivolous' as to warrant dismissal.") (footnotes omitted); *Sanders v. United States*, 373 U.S. 1, 19-20 (1963) (because "the facts on which petitioner's claim [of mental incompetency] is predicated are outside the record," the "'files and records of the case' . . . could not 'conclusively show' that the claim . . . entitled the petitioner to no relief."); *Machibroda*, 368 U.S. at 494 (the District Court "did not proceed in conformity with the provisions of 28 U.S.C. § 2255 when it made findings on controverted issues of fact without notice to the petitioner and without a hearing."); *Williams*, 2016 WL 4651357 at *4 ("district court abused its discretion by denying Williams's § 2255 motion without an evidentiary hearing because his allegations were reasonably specific and supported, not affirmatively contradicted by the record, and not patently frivolous.").

59.     This Court summarily rejected Mr. Sanchez's claim on the following grounds:  (a) the experts at trial opined that he is not retarded; (b) Dr. McGrew did not opine that Mr. Sanchez is intellectually disabled; (c) Dr. James makes only a "vague assertion" that Mr. Sanchez is intellectually disabled; and (d) Mr. Sanchez has offered no reason why his diagnosis would have changed or that the definition of intellectual disability has changed.  Order at 12-13.  None of these grounds supports summary dismissal.

60.     It is a truism that experts disagree about many issues.  The fact that experts testified at trial that Mr. Sanchez is not retarded does not prove they are correct.  Whether Mr. Sanchez is intellectually disabled is now a controverted issue of fact; this Court should not have ruled on it "without notice to the petitioner and without a hearing."  *Machibroda*, 368 U.S. at 494; *see Ford v. Wainwright*, 477 U.S. 399, 415 (1986) ("Without some questioning of the

---

[7] Dr. James's declaration, containing all of her findings and conclusions, is included in the Appendix as A747-76.

experts concerning their technical conclusions, a factfinder simply cannot be expected to evaluate the various opinions, particularly when they are themselves inconsistent.").

61.     The sole basis for the trial experts' conclusions that Mr. Sanchez is not retarded was their belief that Mr. Sanchez does not experience "significantly subaverage intellectual functioning"; they did not opine on or analyze any of the other *Atkins* criteria.  *See* ECF No. 824 at 93-97, 126-28 (Dr. Grant testifies that Mr. Sanchez is "not retarded" based on results of IQ tests); *id.* at 206 (Dr. Reidy testifies in passing, "You heard [Dr. Grant's testimony] that he is not retarded" based on the same IQ scores);[8] ECF No. 846 at 130 (Dr. Brannon testifies that Mr. Sanchez is not mentally retarded based on his IQ scores and test performance).[9]

62.     Dr. McGrew has explained in detail in his declaration, *see* A779-80, that the "reported IQ test scores between 1992 and 2008 significantly overestimate [Mr. Sanchez's] general intellectual functioning" because of well-recognized factors including "norm obsolescence (the Flynn effect)," the standard error of measurement and – with respect to some of the tests – as a result of the practice effect.  Thus, Dr. McGrew's findings substantially undercut the testimony of the trial experts, which was based on the same IQ scores that Dr. McGrew reviewed.

63.     For the same reason, the fact that Dr. McGrew did not opine that Mr. Sanchez is intellectually disabled is insignificant.  Dr. McGrew's findings explain why the testimony of the trial experts should be discounted.  At the very least, his findings create a contested issue of fact regarding the correctness of the trial experts' conclusions.

64.     Dr. James does not rely on a "vague assertion" but rather on a detailed analysis demonstrating that Mr. Sanchez satisfies all three of the *Atkins* criteria.  *See* Declaration of Joette James, Ph.D., A747-76.  Again, at the very least, this raises a contested issue of fact, precluding summary dismissal.

---

[8] While Dr. Reidy is a clinical psychologist, he was not asked to and did not evaluate Mr. Sanchez for mental retardation (or anything else).  Rather, he reviewed Mr. Sanchez's records for "risk or protective factors" that could have affected his development.  ECF No. 824 at 171-72.  His testimony that Dr. Grant testified that Mr. Sanchez was not retarded did not recount any conclusion on his part, and could have been given by anyone who was in the courtroom when Dr. Grant testified.

[9] The Court also referenced the testimony of Amy Fleming.  Order at 11.  Ms. Fleming is a teacher who testified based on her review of Mr. Sanchez's school records.  ECF No. 823 at 110.  She did not testify as an expert and was not asked to diagnose or assess mental retardation.

13

65.     Given that Mr. Sanchez's pleadings raised a contested issue of fact, this Court erred in dismissing his claim without a hearing or even the opportunity to develop his factual proffer and legal arguments.  As the Supreme Court recently explained:

> It is critical to remember . . . that in seeking an evidentiary hearing, [the prisoner] was not obligated to show that he was intellectually disabled, or even that he would likely be able to prove as much.  Rather, [he] needed only to raise a "reasonable doubt" as to his intellectual disability to be entitled to an evidentiary hearing. . . .  [I]n light of the evidence of [the prisoner's] deficiencies, none of the countervailing evidence could be said to foreclose all reasonable doubt.

*Brumfield v. Cain*, 135 S. Ct. 2269, 2281 (2015).

66.     Tellingly, in *Brumfield* the "countervailing evidence" included evidence that the prisoner had "scored 75 on an IQ test and may have scored higher on another, *id.* at 2277; and the presence of facts suggesting he had some adaptive skills.  *Id.* at 2281.  Nevertheless, the state court's failure to hold a hearing on the *Atkins* claim resulted in an unreasonable determination of the facts.  *Id.* at 2281-82.

67.     Finally, Mr. Sanchez was not required to plead a reason why his diagnosis would have changed.  To the extent the Court believes such an explanation is required, however, it is supplied by Dr. McGrew's findings and conclusions, the significant change in the legal framework applied to *Atkins* claims announced by the Supreme Court in *Hall*, and the change in diagnostic criteria for intellectual disability reflected in the Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) ("DSM-5").  *See United States v. Wilson*, 2016 WL 1060245 (E.D.N.Y. Mar. 15, 2016) (discussing effect of *Hall* and DSM-V, and granting reconsideration of *Atkins* claim).

### 4.     Claim VI

68.     In Claim VI, Mr. Sanchez alleges that the government violated its obligations pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.  *See* Motion, ¶¶ 209-54. Mr. Sanchez further alleges that, to the extent trial counsel could or should have uncovered and/or presented any of the favorable evidence withheld by the government or objected to the government's tactics, they were ineffective for failing to have done so pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  Motion, ¶ 213.

69.     The Court first addressed Claim VI.A, in which Mr. Sanchez alleges that the government withheld material exculpatory evidence pertaining to Danny Varela.  Order at 13-15.

14

In denying Claim VI.A, the Court ruled both that the claim is procedurally barred because it was not raised on direct appeal and that it lacks merit. *Id.* The Court erred on both counts.

70.     The essence of Claim VI.A is that the government's stated reason for failing to charge Mr. Varela with murder – an ostensible lack of evidence – was not the government's actual reason. The Motion details the reasons apparent from the existing record supporting Mr. Sanchez's good faith belief that the government's reasoning is implausible and thus that the government is likely in possession of information revealing a different reason for the decision not to charge Mr. Varela. Motion, ¶¶ 214-36.

71.     Mr. Sanchez has also alleged that specific favorable information regarding Mr. Varela's culpability provided by Mario Davis and Philip Perez was withheld by the government. Motion, ¶ 233; *see also* A821-22, 865. This information was obtained by Mr. Sanchez post-conviction.

72.     The claim is not defaulted. The Court's assertion that Mr. Sanchez "has not offered anything more to establish a *Brady* violation than he did when he made his argument to the magistrate judge" is thus erroneous. Order at 15. In addition to the Mario Davis and Philip Perez documents, Mr. Sanchez has noted that the government did not fully explain its decision not to charge Mr. Varela with murder until its closing argument at trial. *See* Motion, ¶ 232. While the magistrate judge dismissed Mr. Sanchez's pre-trial motion as speculative, the magistrate judge was not yet aware of what position the government would take at trial. *Id.*

73.     Whether more properly viewed as a *Brady* claim or an ineffectiveness claim, Claim VI.A necessarily depends on evidence that was not a part of the record at trial or on direct appeal. It is erroneous to fault Mr. Sanchez for failing to raise on appeal a claim that depends on extra-record evidence. *See* ¶ 32, *supra*. Mr. Sanchez is now seeking to develop the necessary record in § 2255 proceedings through discovery and an evidentiary hearing.

74.     Moreover, even if this claim were defaulted, the government's withholding of evidence and/or trial counsel's ineffectiveness would serve as cause and prejudice to excuse the default. *See Carrier*, 477 U.S. at 488; *Banks*, 540 U.S. at 691 (cause and prejudice "'parallel two of the three components of the alleged *Brady* violation itself.' Corresponding to the second *Brady* component (evidence suppressed by the State), a petitioner shows 'cause' when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence; coincident with the third *Brady* component (prejudice), prejudice within the

15

compass of the 'cause and prejudice' requirement exists when the suppressed evidence is 'material' for *Brady* purposes.") (citations omitted).

75.     The Court also erred in prematurely dismissing this claim on its merits.  Mr. Sanchez's allegations, if true, would entitle him to relief.  If, as Mr. Sanchez has claimed, the government did have enough evidence to charge Mr. Varela with murder but elected not to and inaccurately told the jury that they declined to prosecute because they lacked the evidence to do so, Mr. Sanchez would be entitled to relief.  Mr. Sanchez is not claiming that the government was required "to identify possible theories of defense or assist in the presentation of the defense's case."  Order at 15.  Rather, Mr. Sanchez claims that the government had a duty to disclose favorable evidence in its possession.  It is premature for the Court to have denied this claim without requiring an answer from the government, without permitting evidentiary development, and without the opportunity for legal briefing.

76.     The Court addressed the remainder of Claim VI collectively, without individual analysis, again finding the remainder of the claim procedurally defaulted.  Order at 15-16.  The Court erred in making these procedural default rulings for the same reasons it erred with respect to Claim VI.A.

77.     The Court further ruled that the remainder of Claim VI.A constitutes a "fishing expedition" because Mr. Sanchez has not argued that the information he is seeking actually exists or that the government possessed it.  *Id.* at 16.  This ruling is likewise erroneous because the allegations set forth violations of *Brady* on which relief can be granted.

78.     For example, in Claim VI.D, Mr. Sanchez alleged that Special Agent David Weeks testified that he personally viewed the security footage from the Briar Bay security cameras covering the time period following the shooting.  Motion, ¶¶ 244-48.  The most reasonable inference from the fact that the government did not present this footage as evidence at trial is that it did not support the government's case.  The fact that the government was in possession of this favorable evidence is thus plain from the trial transcript and from Mr. Sanchez's motion.

79.     Rather than prematurely dismiss the claim, the Court should have first analyzed whether Mr. Sanchez is entitled to discovery that could support Mr. Sanchez's allegations (e.g., access to the tape reviewed by Special Agent Weeks).  Only after first deciding whether to grant

16

discovery and reviewing the parties' submissions – including any post-discovery amendment to the Motion – should this Court have addressed the merits of Mr. Sanchez's claims.

80.     Because Claim VI is not procedurally defaulted and states a claim on which relief could be granted, this Court should reconsider the Order.

### 5.     Claim VII.A

81.     In this claim, Mr. Sanchez alleges that trial counsel unreasonably failed to challenge the composition and selection of the grand and petit jury venires.  Motion, ¶¶ 257-80.

82.     The Court denied the claim by ruling that Mr. Sanchez inadequately pled the deficient performance prong of the claim.  Order at 21-23.  The Court erred for three reasons.

83.     First, Mr. Sanchez specifically alleged that capital defense counsel's professional duties at the time of trial included "preserv[ing], on all federal grounds, any given question for review"; that the Federal Rules of Criminal Procedure required that objections to grand jury venire composition be lodged before trial; that "the defense bar widely recognized the viability" of such challenges; that "the composition and selection of Southern District of Florida jury venires raised serious concerns of which counsel was or reasonably should have been aware"; that "[i]nformation and records reflecting the composition and selection process were reasonably available to trial counsel"; but that counsel "failed to investigate, research, or challenge the process" and "thus failed to preserve and litigate a meritorious claim."  Motion, ¶¶ 257-58.

84.     The claim then proceeded to discuss in detail the information and records available to trial counsel, and to analyze the constitutional errors those records reflected.  *See id*. at ¶¶ 266-80.  These allegations amply pled the deficient performance prong of an ineffectiveness claim.  *See, e.g., Smith v. Wainwright*, 777 F.2d 609, 617 (11th Cir. 1985) ("The reasonableness of trial counsel's failure to [litigate an error] depends upon whether trial counsel conducted a reasonable investigation into the merits of such a motion, or whether he made a reasonable decision that such an investigation was unnecessary.") (citing *Strickland*); *see also Townsend v. Sain*, 372 U.S. 293 (1963) (habeas petitioner must only allege facts which, if proven, would entitle him to relief).

85.     Second, even assuming, *arguendo*, that the Motion's allegations were insufficient to state a claim for relief, that was not a basis for pre-response dismissal, since any deficiency in the pleading could be cured in the reply or by amending the motion.  It was error for the Court to

17

grant and then revoke an opportunity to cure any deficiencies without notice and without even awaiting the government's answer.

86.     Third, the primary constitutional errors underlying this claim derive from the Sixth Amendment's guarantee of grand and petit jury venires drawn from a fair cross section of the community, and from the Equal Protection Clause's comparable guarantees.  *See* Motion, ¶¶ 259-60.  The Court's dismissal Order did not find that those underlying errors were inadequately pled.  The Court's Order instead addressed the ineffectiveness component of this claim, which operates to overcome any procedural default.  *See supra*.  Accordingly, the Court's dismissal committed the same error discussed above; it *sua sponte* invoked and credited an affirmative procedural defense without giving Mr. Sanchez notice and an opportunity to be heard.

### 6.     Claim IX

87.     In Claim IX, Mr. Sanchez alleges that his death sentence violates the Eighth Amendment because it is inconsistent with evolving standards of decency, is arbitrary, serves no valid penological purpose, and is torturous.  *See* Motion, ¶¶ 552-606.

88.     The Court dismissed the claim without evidentiary development or briefing by determining that it is procedurally defaulted and by concluding, on the merits, that Mr. Sanchez "failed to provide the Court with any binding legal precedent to support his argument."   Order at 17.  For the reasons already discussed, the Court erred in asserting an affirmative procedural defense on the government's behalf without first providing Mr. Sanchez with notice and an opportunity to respond.

89.     In addition, the Court erred because an Eighth Amendment bar to an execution cannot be waived under these circumstances.  "[A]s a general principle, . . . a court has no authority to leave in place a conviction or sentence that violates a substantive rule, regardless of whether the conviction or sentence became final before the rule was announced."  *Montgomery*, 136 S. Ct. at 731.  An Eighth Amendment prohibition against an execution is one such substantive rule, *see id*., and Mr. Sanchez's challenge is therefore cognizable in these § 2255 proceedings.

90.     On the merits, the Court erred in concluding that there is no "binding legal precedent" to support this claim.  In fact, the claim relies on the binding constitutional principles set forth in, *inter alia*, *Graham v. Florida*, 560 U.S. 48 (2010), *McCleskey v. Kemp*, 481 U.S. 279 (1987), *Zant v. Stephens*, 462 U.S. 862 (1983), *Gregg v. Georgia*, 428 U.S. 153 (1976), *Furman*

18

*v. Georgia*, 408 U.S. 238 (1972), and *Trop v. Dulles*, 356 U.S. 86 (1958). *See* Motion, ¶¶ 554, 557, 566, 568, 570, 578, 581. More particularly, the Court reached this conclusion *sua sponte*, in response to Mr. Sanchez's fact petition. The Court should await briefing and evidentiary development before resolving this claim.

### 7. Claim X

91. In Claim X, Mr. Sanchez alleges that the court's security measures denied him his rights to a jury trial, to the presumption of innocence, to due process, to the effective assistance of counsel, and to be free from cruel and unusual punishment. *See* Motion, ¶¶ 607-13.

92. The Court ruled that the claim was defaulted because it was not raised on direct appeal. Order at 7. The Court erred because there is cause and prejudice for any default, and because the claim relies in part on extra-record evidence.

93. As the Court notes, there was a discussion of the Court's security plans at a status conference on December 15, 2008, at which trial counsel briefly objected to the plans. Tr. 12/15/08 at 87-89. The Court overruled the objection at that time. *Id.* at 90.

94. Mr. Sanchez alleges that trial counsel ineffectively failed to renew their objection as it became clear that the security measures were prejudicial. In particular, counsel did not object when government witness Kevin Vetere was afforded additional security during his testimony. *See* Motion, ¶ 611.

95. Mr. Sanchez alleges that counsel's failure to renew their objection was deficient performance that prejudiced him. Motion, ¶ 613. Because ineffective assistance of counsel constitutes cause and prejudice for any default, this Court erred in dismissing Claim X.

96. Undersigned counsel have conferred with counsel for the government and are advised that the government opposes this motion.

19

WHEREFORE, for the foregoing reasons, Mr. Sanchez respectfully requests that the Court reconsider and revoke its dismissal order; provide Mr. Sanchez with an opportunity to demonstrate cause and prejudice for any claims subject to procedural default; provide Mr. Sanchez with an opportunity to amend and cure any pleading deficiencies in his claims; order discovery; and grant such other relief as is necessary and proper.

Respectfully submitted,


/s/ Aren Adjoian
Matthew C. Lawry
Aren Adjoian
Federal Community Defender Office
for the Eastern District of Pennsylvania
Curtis Center, Suite 545-West
601 Walnut Street
Philadelphia, PA 19106
Phone: (215) 928-0520
Fax: (215) 928-0826
Matthew_Lawry@fd.org
Aren_Adjoian@fd.org

Counsel for Ricardo Sanchez, Jr.


Dated: October 19, 2016

20

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served electronically by

the Court's CM/ECF service on this 19th day of October, 2016, on the following individuals:

Stephen Carlton
United States Attorney's Office
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Phone: (561) 820-8711
Fax: (561) 659-4526
stephen.carlton@usdoj.gov
Counsel for the United States

Brandy Galler
United States Attorney's Office
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Phone: (561) 820-8711
Fax: (561) 659-4526
brandy.galler@usdoj.gov
Counsel for the United States

/s/ Aren Adjoian
Aren Adjoian