

LISTING PAGE        242 PALM BEACH COUNTY SHERIFF'S OFFICE                  PAGE  1
   CASE NO. 9341731                OFFENSE REPORT                    CASE NO. 9341731
==04/03/93==                                              DISPOSITION: INACTIVE
                                                             DIVISION: TRAFFIC

DWI BODILY INJR              *              *              *
                                          CODE: 5400  DATE: 03/18/93  THURSDAY
ZONE: COS GRID: 5C1     DEPUTY I.D.: 2458 NAME: PRUITT JAMES    ASSIST:    TIME O 1655 A 1655 C 1655
OCCURRED BETWEEN DATE: 03/13/93 , 1010 HOURS AND  DATE: 00/00/00 , 0000 HOURS
EXCEPTION TYPE:
INCIDENT LOCATION: 00000000   SR 7 & LANTANA         RD  APT. NO.:
           CITY: LAKE WORTH                    STATE: FL      ZIP:
NO. OFFENSES: 01 NO. OFFENDERS: 01 NO. VEHICLES STOLEN:  0  NO. PREMISES ENTERED:  0
LOCATION: HIGHWAY / ROADWAY
NO. VICTIMS: 01 NO. ARRESTED:  0  FORCED ENTRY: 0
OFFENSE NO. 1  FLORIDA STATE STATUTE:  316 193 3C2  CIS CODE 5400
--
NAME LIST:
   ROLE:
ARRESTEE            SAM W RICHE                      DOB:
            SEX: M RACE: W HT: 601 WT: 200 HR: BROWN   EYE: BROWN
VEHICLE DRIVER         SAM W RICHE                   DOB:
            SEX: M RACE: W HT: 601 WT: 200 HR: BROWN   EYE: BROWN
RESIDENCIAL ADDRESS:                        LAKE WORTH FL 33463       PHONE:
WITNESS            GLENA CRIBBS                     DOB:
            SEX: F RACE: W HT:   0 WT:   0 HR: UNKNOWN EYE: UNKNOWN
RESIDENCIAL ADDRESS:                        LAKE WORTH FL 33467       PHONE:
WITNESS            RONALD E ROSS                    DOB:       /38
            SEX: M RACE: W HT: 511 WT: 180 HR: BLOND   EYE: BLUE
RESIDENCIAL ADDRESS:                        LAKE WORTH FL 33461       PHONE:
WITNESS            RANDY ROSS                       DOB:       /75
            SEX: M RACE: W HT: 601 WT: 150 HR: BLOND   EYE: BLUE
RESIDENCIAL ADDRESS:                        LAKE WORTH FL 33461       PHONE:
WITNESS            RONALD FENSE                     DOB:       /46
            SEX: M RACE: W HT:   0 WT:   0 HR: UNKNOWN EYE: UNKNOWN
RESIDENCIAL ADDRESS:                        LAKE WORTH FL 0          PHONE:
WITNESS            STEVEN BOYD                      DOB:       /41
            SEX: M RACE: W HT:   0 WT:   0 HR: UNKNOWN EYE: UNKNOWN
RESIDENCIAL ADDRESS:                        LAKE WORTH FL 33463       PHONE:
WITNESS            JOSEPH BLACK                     DOB:       /42
            SEX: M RACE: W HT:   0 WT:   0 HR: UNKNOWN EYE: UNKNOWN
RESIDENCIAL ADDRESS:                        PALM SPRIN FL 33461       PHONE:
BUSINESS ADDRESS: JOE'S TOWING, 1017 MANOR DR., PALM SPRINGS   BUSINESS PHONE: 407 96
WITNESS            RICARDO G SANCHEZ                DOB:       /60
            SEX: M RACE: W HT: 510 WT: 175 HR: BROWN   EYE: BROWN
RESIDENCIAL ADDRESS:                        WEST PALM  FL 33415       PHONE:

Case 9:16-cv-80693-BB   Document 33-13   Entered on FLSD Docket 10/19/2016   Page 1 of 130

Case 9:16-cv-80693-BB   Document 33-13   Entered on FLSD Docket 10/19/2016   Page 2 of 130

BUSINESS ADDRESS: NONE                          BUSINESS PHONE: 407 000-0000
WITNESS               MARYANNE KERSHAW             DOB:        56
              SEX: F RACE: W HT:   0 WT:   0 HR: UNKNOWN  EYE: UNKNOWN
RESIDENCIAL ADDRESS:                            CORAL SPRI FL 0        PHONE: 407 344-8936
BUSINESS ADDRESS: SELF EMPLOYED                 BUSINESS PHONE: 407 344-8936
WITNESS               DONALD MILLER               DOB:        54
              SEX: M RACE: W HT:   0 WT:   0 HR: UNKNOWN  EYE: UNKNOWN
RESIDENCIAL ADDRESS:                            CORAL SPRI FL 33065    PHONE: 305 344-8936
BUSINESS ADDRESS: ECKERD DRUGS IN PBC AREA      BUSINESS PHONE: 407 000-0000
WITNESS               JOHNNIE B CRIBBS            DOB:        17
              SEX: M RACE: W HT:   0 WT:   0 HR:            EYE:
BUSINESS ADDRESS: RETIRED                        BUSINESS PHONE: 407 000-0000
INJURED PERSON        JOHNNIE B CRIBBS            DOB:        17
              SEX: M RACE: W HT:   0 WT:   0 HR:            EYE:
BUSINESS ADDRESS: RETIRED                        BUSINESS PHONE: 407 000-0000
VEHICLE DRIVER        JOHNNIE B CRIBBS            DOB:        17
              SEX: M RACE: W HT:   0 WT:   0 HR:            EYE:
RESIDENCIAL ADDRESS:                            LAKE WORTH FL 33467    PHONE: 407 967-6064
**
**
    OFFENSE INDICATOR: OFFENSE 1       VICTIM NUMBER: 1
VICTIM TYPE: OTHER
RESIDENCE TYPE: NOT APPLICABLE      RESIDENCE STATUS: NOT APPLICABLE
EXTENT OF INJURY: NONE
INJURY TYPE(1): NOT APPLICABLE
INJURY TYPE(2): NOT APPLICABLE
VICTIM RELATION: NOT APPLICABLE

VEH/VESS STATUS CODE: OFFENDERS      VEH/VESS TYPE: AUTO
   VEH STATE LICENSE: FL    VEH YEAR: 78
VEH LICENSE NO.
VEH MAKE: CHEVROLET     VEH MODEL: IMPALA     VEH STYLE: FOUR DOOR
VEH COLOR: TAN
VIN NUMBER:

    REPORT NUMBER: 1
FLORIDA VICTIM ? Y
REFERENCE CASE NO.: 9339808
WEATHER: CLOUDY
WITNESS TO CRIME KNOWN ? Y           SUSPECT NAME KNOWN ?........ Y
CAN VICTIM I.D. SUSPECT ? Y          SUSPECT LOCATION KNOWN ?... Y
WILL VICTIM PROSECUTE ?... Y         STOLEN PROPERTY TRACEABLE ? N
IS M.O. SIGNIFICANT ?.... Y          EVIDENCE LEFT AT SCENE ?... Y

A-001059

Case 9:16-cv-80693-BB   Document 33-13   Entered on FLSD Docket 10/19/2016   Page 3 of 130

```
LATENTS LIFTED ?.........  N            SUSPECT'S VEHICLE KNOWN ?.. Y
TAG NUMBER KNOWN ?........  Y           PROPERTY DAMAGE ?........... Y
AMOUNT OF DAMAGE .......$ 12000
VEHICLE TOWED BY ........ ECONOMY
VEHICLE TOWED TO ........ ECONOMY LOT/PBSO
EVIDENCE TAKEN BY ....... D/S PRUITT
PHOTOS TAKEN BY ......... D/S PRUITT
```

ON 031393 AT APPROX. 1PM THIS INVESTIGATOR WAS CALLED TO RESPOND TO THE INTERSECTION OF LANTANA RD. AND S.R. 7 IN REFERENCE TO AN ACCIDENT WITH A POSSIBLE FATALITY.  AT THE SCENE I SPOKE TO D/S WILLIAMS I.D. 3189. WHO ADVISED THAT AT APPROX. 10:10AM THIS DATE HE HAD BEEN CALLED TO INVESTIGATE AN ACCIDENT WHICH OCCURRED AT LANTANA RD. AND S.R. 7.  D/S WILLIAMS ADVISED THAT A 1978 CHEVY FOUR DOOR. BEARING FL. TAG [REDACTED] HAD BEEN NORTHBOUND ON S.R. 7 APPROACHING LANTANA RD.  HE FURTHER ADVISED THAT WITNESSES STATED THAT THE TRAFFIC LIGHT FOR NORTHBOUND S.R. 7 WAS A SOLID RED AND THAT THE CHEVROLET ENTERED THE INTERSECTION ON A SOLID RED SIGNAL AND THEN STRUCK A 1988 FORD PICKUP TRUCK. BEARING FL. TAG [REDACTED] THE PICKUP TRUCK WAS WESTBOUND ON LANTANA RD. ATTEMPTING TO TURN SOUTH ON S.R. 7.  AFTER THE COLLISON WITNESSES STATED THAT THE DRIVER OF THE CHEVROLET EXITED THE VEHICLE AND BEGAN SHOUTING OBSCENITIES AT THE OCCUPANTS OF THE PICKUP TRUCK.  HE THEN FLED ON FOOT IN A WESTERLY DIRECTION PROVIDING NO INFORMATION ABOUT HIMSELF OR THE VEHICLE WHICH HE HAD BEEN DRIVING.  THE DRIVER OF THE PICKUP TRUCK. JOHNNIE B. CRIBBS. W/M. DOB 021817 WAS CRITICALLY INJURED DUE TO THIS COLLISON AND TRANSPORTED TO WELLINGTON REGIONAL HOSPITAL WHERE HE WAS ADMITTED TO THE INTENSIVE CARE UNIT.  THE PASSENGER OF THE PICKUP TRUCK. GLENA L. CRIBBS. W/F. DOB 020744 WAS TRANSPORTED TO WELLINGTON REGIONAL HOSPITAL WHERE SHE WAS TREATED FOR MINOR INJURIES AND RELEASED.  AFTER COMPLETING THE INITIAL AT THE SCENE INVESTIGATION. THIS INVESTIGATOR WAS PROVIDED WITH A BROWN VINYL ZIPPER CASE CONTAINING MISC. PAPERS WHICH D/S WILLIAMS HAD FOUND INSIDE THE CHEVROLET. INSIDE THIS CASE WERE THE FOLLOWING DOCUMENTS; A BIRTH CERTIFICATE. A PRIDE INC. PROBATION MONTHLY STATEMENT. TWO FLORIDA UNIFORM TRAFFIC CITATIONS. A W-2 FORM AND OTHER MISC. PERSONAL PAPERS ALL BEARING THE NAME OF SAM W. RICHE.  A DHSMV LICENSE CHECK REVEALED THAT THE DRIVERS LICENSE ISSUED TO SAM W. RICHE HAD BEEN SUSPENDED ON 120292 FOR DRIVING UNDER THE INFLUENCE. A WANTED CHECK SHOWED THAT THERE WAS AN OUTSTANDING TRAFFIC WARRANT FOR MR. RICHE. ISSUED ON 022493 FOR FAILURE TO APPEAR.

AT APPROX. 3:45PM ON 031393 THIS INVESTIGATOR AND D/S JOHN BUCHAN I.D. 4611 RESPONDED TO 4319 VERMONT AVE. IN LAKE WORTH. FL.. THE ADDRESS FOUND ON THE PRIDE INC. PROBATION REPORT FOR MR. RICHE.  THIS WAS DONE IN AN ATTEMPT TO ARREST MR. RICHE ON THE OUTSTANDING TRAFFIC WARRANT AND QUESTION HIM IN REFERENCE TO THE AFOREMENTIONED HIT AND RUN CASE.

Case 9:16-cv-80693-BB Document 33-13 Entered on FLSD Docket 10/19/2016 Page 4 of 130

WHILE KNOCKING ON THE DOOR OF THE ABOVE ADDRESS, THIS INVESTIGATOR WAS
APPROACHED BY RONALD PENSE, W/M, DOB [redacted] WHO LIVES AT 4323 VERMONT AVE.
MR. PENSE ADVISED ME THAT NO ONE WAS [redacted] AND I INQUIRED AS
TO WHO I WAS LOOKING FOR. AFTER SPEAKING TO HIM HE STATED THAT HE KNEW MR.
RICHE AND THAT IN FACT HE WAS ASLEEP ON THE COUCH IN HIS LIVING ROOM. AT
THAT POINT I ADVISED MR. PENSE OF THE WARRANT FOR MR. RICHE'S ARREST. MR.
PENSE THEN WILLINGLY INVITED ME INTO HIS RESIDENCE WHERE I FOUND MR. RICHE
ASLEEP ON THE COUCH. MR. RICHE WAS ARRESTED ON THE OUTSTANDING TRAFFIC
WARRANT AND THEN PLACED IN THE REAR OF MY PATROL CAR. AT THAT POINT I ADVISED
HIM THAT I WAS CONDUCTING A CRIMINAL INVESTIGATION TO A HIT AND RUN ACCIDENT
IN WHICH THERE HAD BEEN SERIOUS BODILY INJURIES AND THAT HE WAS A SUSPECT.
AT THAT POINT IN THE PRESENCE OF D/S BUCHAN, I ADVISED MR. RICHE OF HIS
CONSTITUTIONAL RIGHTS, WHICH HE STATED THAT HE UNDERSTOOD. I THEN ASKED MR.
RICHE IF HE WANTED TO SPEAK TO ME IN REFERENCE TO THE ACCIDENT. HE ADVISED
ME HE HAD NO IDEA OF WHAT I WAS TALKING ABOUT.

WHILE TRANSPORTING MR. RICHE TO THE PBCJ HE BEGAN TO TALK TO ABOUT
THE ACCIDENT. HE STATED THAT HE WAS DRIVING THE CAR AND THAT THE PICKUP
RAN THE RED LIGHT AND THAT HE HAD NO TIME TO TAKE ANY EVASIVE ACTION OR TO
STOP PRIOR TO STRIKING THE PICKUP. HE STATED THAT HE KNEW HIS DRIVERS LICENSE
WAS SUSPENDED FOR SEVERAL D.U.I'S. HE STATED THAT WAS THE REASON HE FLED.
AT ONE POINT HE ADVISED ME THAT HE WOULD COOPERATE AND PROVIDE ME WITH A
TAPED STATEMENT WHEN WE ARRIVED AT THE JAIL.

AT THE TESTING CENTER WITHIN THE JAIL MR. RICHE WAS PLACED ON VIDEO
TAPE AND AGAIN ADVISED OF HIS CONSTITUTIONAL RIGHTS. AFTER BEING ADVISED OF
HIS RIGHTS AND HEARING AGAIN OF THE SERIOUSNESS OF THE INJURIES TO MR. CRIBBS,
MR. RICHE DECIDED TO INVOKE HIS CONSTITUTIONAL RIGHTS TO REMAIN SILENT.
MR. RICHE WAS THEN BOOKED INTO THE PBCJ ON THE OUTSTANDING TRAFFIC WARRANT.
AT THAT POINT I OBTAINED A PHOTOGRAPH OF MR. RICHE AND WENT TO THE EVIDENCE
SECTION OF THE PBSO AND OBTAINED FIVE OTHER SIMILAR PHOTOGRAPHS IN ORDER TO
MAKE UP A PHOTO LINEUP TO BE SHOWN TO WITNESSES.

I THEN RESPONDED TO THE WELLINGTON REGIONAL HOSPITAL WHERE I MET WITH
GLENA CRIBBS, THE PASSENGER IN THE FORD PICKUP TRUCK. AT THAT TIME I
OBTAINED A TAPE STATEMENT FROM HER IN REFERENCE TO THE ACCIDENT. DURING
THAT STATEMENT I SHOWED A PHOTO LINEUP TO MRS. CRIBBS. AT THAT TIME SHE
POSITIVELY IDENTIFIED MR. RICHE AS THE DRIVER OF THE VEHICLE THAT STRUCK
THE FORD PICKUP THAT CRITICALLY INJURED HER FATHER, MR. JOHNNIE CRIBBS.
AFTER COMPLETION OF THE INTERVIEW I RETURNED TO THE PBCJ WHERE I CHARGED MR.
RICHE WITH LEAVING THE SCENE OF A PERSONAL INJURY ACCIDENT AND DRIVING
WHILE LICENSE SUSPENDED. MR. RICHE WAS AGAIN BOOKED IN THE PBCJ.

ON 031793 THIS INVESTIGATOR BEGAN A FOLLOWUP INVESTIGATION INTO THIS
HIT AND RUN ACCIDENT. IN AN EFFORT TO OBTAIN FURTHER EVIDENCE, WITNESS
STATEMENTS AND DOCUMENTATION NECESSARY TO FILE THE CASE WITH THE S.A. OFFICE.

Case 9:16-cv-80693-BB Document 33-13 Entered on FLSD Docket 10/19/2016 Page 5 of 130

ON THIS DATE I INTERVIEWED THE FOLLOWING WITNESSES; RON ROSS, RANDY ROSS AND JOHNNIE CRIBBS. THE FOLLOWING IS A BRIEF SYNOPSIS OF THEIR STATEMENTS;
     RON ROSS ADVISED THAT HE WAS A PERSONAL FRIEND OF SAM RICHE AND THAT HE WAS PRESENT WHEN MR. RICHE PURCHASED THE 1978 CHEVROLET WHICH WAS INVOLVED IN THE HIT AND RUN COLLISON. HE STATED THAT THE VEHICLE WAS PURCHASED FROM JOE DEFER AND THAT MR. DEFER WAS HOLDING THE TITLE UNTIL MR. RICHE COMPLETED PAYING FOR THE CAR. HE STATED THAT HE HAD SEEN MR. RICHE DRIVING THE CAR PRIOR TO THE MARCH 13TH ACCIDENT. ADDITIONALLY HE STATED HE OBSERVED MR. RICHE WALKING EAST ON VERMONT AVE., THE AFTERNOON OF THE ACCIDENT AND AT THAT TIME MR. RICHE APPEARED TO BE QUITE INEBRIATED. HE FURTHER STATED THAT HE WAS VERY FAMILIAR WITH MR. RICHE AND HAD SEEN HIM ON MANY OCCASIONS. BOTH DRUNK AND SOBER AND AT THE TIME HE SAW HIM ON THE 13TH OF MARCH HE ADVISED THAT HE APPEARED EXTREMELY INTOXICATED. RANDY ROSS ADVISED THAT HE HAD PERSONAL KNOWLEDGE THAT MR. RITCHEY HAD PURCHASED THE 78 CHEVROLET AND THAT HE HAD SEEN HIM DRIVING IT ON SEVERAL OCCASIONS. HE ALSO OBSERVED MR. RICHE WALKING EASTBOUND ON VERMONT AVE., THE AFTERNOON OF THE ACCIDENT, BUT COULD PROVIDE NO FURTHER INFORMATION IN REF. TO HIS CONDITION. MR. JOHNNIE CRIBBS WAS INTERVIEWED AT HIS HOSPITAL ROOM, WELLINGTON REGIONAL HOSPITAL. HE STATED THAT ON THE 13TH OF MARCH AT APPROX. 10:10AM HE WAS STOPPED WESTBOUND ON LANTANA RD. AND S.R. 7 FOR THE RED TRAFFIC LIGHT. HE STATED HE WAS THE THIRD CAR IN LINE AND WHEN THE SIGNAL TURNED GREEN THE OTHER TWO CARS TURNED SOUTH ON S.R. 7. HE STATED THAT HE THEN PROCEEDED INTO THE INTERSECTION AND WAS STRUCK BY A NORTHBOUND VEHICLE. MR. CRIBBS LOST HIS GLASSES DURING THE ACCIDENT AND CANNOT SEE PROPERLY WITHOUT THEM. AS A RESULT MR. CRIBBS WAS UNABLE TO IDENTIFY THE DRIVER OF THE VEHICLE THAT HAD STRUCK HIM. HE STATED THAT THE DRIVER CAME RIGHT UP TO THE WINDOW AND BEGAN YELLING AT HIM. ADDITIONALLY MR. CRIBBS STATED THAT THE DRIVER "KIND OF STUTTERED LIKE HE WAS DRUNK OR SOMETHING". HE ALSO STATED THAT HE SMELLED AN ODOR OF ALCOHOL ON THE DRIVER'S BREATH AND HE FURTHER STATED THAT HE THOUGHT THAT THE DRIVER WAS DRUNK.
     AT THIS TIME MR. CRIBBS REMAINS IN CRITICAL CONDITION AT THE WELLINGTON REGIONAL HOSPITAL, THE INTENSIVE CARE UNIT. MR. CRIBBS IS SUFFERING FROM ██████████████████████████████████████ AND ████████████
     ON MARCH 18, 1993 I INTERVIEWED THE FOLLOWING: DONALD MILLER, STEVEN BOYD, RONALD PENSE AND JOSEPH DEFER. THE FOLLOWING IS A BRIEF SYNOPSIS OF THEIR RESPECTIVE STATEMENTS;
     DONALD MILLER STATED THAT HE WAS NORTHBOUND ON S.R. 7 ON MARCH 13, AT APPROX. 10:10AM. HE STATED THAT HE OBSERVED A BEIGE OR YELLOW VEHICLE TAILGATING HIM AND THE VEHICLE SWUNG OUT LEFT AND PAST HIS VEHICLE AND A TRUCK THAT WAS IN FRONT OF HIM. HE STATED THE VEHICLE NEARLY RAN OFF THE ROADWAY ONTO THE LEFT SHOULDER WHILE PASSING. HE STATED THAT THERE WERE TWO OCCUPANTS IN THE BEIGE VEHICLE AND A W/M WAS OPERATING IT. HE FURTHER

STATED THAT THEREAFTER HE CAME UPON THE ACCIDENT ON LANTANA RD. AND S.R. 7. THIS ACCIDENT INVOLVED THE VEHICLE THAT HAD PASSED HIM AND HE OBSERVED THE DRIVER OF THE VEHICLE AT THE SCENE. HE STATED THE DRIVER HAD A STRONG ODOR OF ALCOHOL AND THAT HE OBSERVED THE DRIVER REMOVE A FLOWERED BAG FROM THE BEIGE VEHICLE. HE THEN OBSERVED THE DRIVER OF THE VEHICLE PLACING BEER IN THAT BAG. ADDITIONALLY HE STATED THE DRIVER THEN LEFT THE SCENE ON FOOT IN AN EASTERLY DIRECTION. MR. MILLER POSITIVELY IDENTIFIED SAM W. RITCHEY AS THE DRIVER OF THE VEHICLE INVOLVED IN THIS HIT AND RUN ACCIDENT. THIS IDENTIFICATION WAS MADE THROUGH A PHOTO LINEUP.

THE INTERVIEW WITH STEVEN BOYD WAS CONDUCTED AT HIS RESIDENCE. MR. BOYD STATED THAT MR. RICHE CAME TO HIS HOUSE BETWEEN 12 AND 1PM ON 031393. HE STATED THAT MR. RICHE APPEARED INTOXICATED AND THAT MR. RICHE CONFESSED TO BEING INVOLVED IN THE HIT AND RUN ACCIDENT. HE FURTHER STATED THAT HE HAD SEEN MR. RICHE DRIVING THE 1978 CHEVROLET ON PREVIOUS OCCASIONS.

THE INTERVIEW OF MR. RONALD PENSE. MR. PENSE STATED THAT MR. RICHE CONFESSED TO HIS INVOLVEMENT IN THE HIT AND RUN ACCIDENT TO HIM AND THAT HE APPEARED INTOXICATED WHEN HE ARRIVED AT THE BOYD RESIDENCE. HE STATED THAT HE HAD SEEN MR. RICHE OPERATING THE 78 CHEVROLET THAT WAS INVOLVED IN THE ACCIDENT ON PREVIOUS OCCASIONS.

THE INTERVIEW WITH MR. JOE DEFER. MR. DEFER STATED THAT HE SOLD MR. RICHE 1978 CHEVROLET IN THE EARLY PART OF MARCH. HE STATED THAT HE WAS HOLDING THE TITLE UNTIL MR. RICHE RETURNED WITH FULL PAYMENT FOR THE CAR. HE PROVIDED A PHOTOCOPY OF THE SOUTH CAROLINA TITLE FOR THIS VEHICLE. BUT WAS UNABLE TO POSITIVELY IDENTIFY MR. RICHE THROUGH A PHOTO LINEUP.

ON MARCH 25, 1993 I INTERVIEWED THE FOLLOWING WITNESSES IN THIS CASE: RICARDO SANCHEZ AND MARYANNE KERSHAW. THE FOLLOWING IS A BRIEF SYNOPSIS OF THEIR RESPECTIVE STATEMENTS. MR. SANCHEZ ADVISED THAT ON MARCH 13, 1993 AT APPROX. 10:10AM HE WAS NORTHBOUND ON S.R. 7 APPROACHING LANTANA RD. HE STATED HE OBSERVED A YELLOW VEHICLE PASS HIS VEHICLE JUST SOUTH OF LANTANA RD. HE STATED THE VEHICLE RE-ENTERED THE NORTHBOUND LANE AND THEN FAILED TO STOP FOR THE RED TRAFFIC SIGNAL AT LANTANA RD. ADDITIONALLY, HE STATED THE VEHICLE ENTERED THE INTERSECTION AND STRUCK THE PICKUP TRUCK WHICH WAS ATTEMPTING TO TURN SOUTHBOUND ON LANTANA RD. HE STATED HE OBSERVED THE DRIVER OF THE NORTHBOUND VEHICLE AT THE SCENE AND THAT HE NOTICED AN ODOR OF ALCOHOL COMING FROM HIM. HE STATED HE FELT THE DRIVER HAD BEEN DRINKING PRETTY HEAVILY AND WAS PRETTY DRUNK. HE STATED THE DRIVER LEFT THE SCENE ON FOOT IN AN EASTBOUND DIRECTION. HE POSITIVELY IDENTIFIED MR. RICHE AS THE DRIVER OF THE NORTHBOUND VEHICLE INVOLVED IN THIS COLLISON. THIS IDENTIFICATION WAS OBTAINED THROUGH A PHOTO LINEUP.

I NEXT INTERVIEWED MARYANNE KERSHAW. MRS. KERSHAW STATED THAT SHE WAS NORTHBOUND ON S.R. 7 APPROACHING LANTANA RD. WITH HER BOYFRIEND, DONALD MILLER. AT APPROX. 10:10AM ON THE 13TH OF MARCH THIS YEAR, SHE OBSERVED A

Case 9:16-cv-80693-BB  Document 33-13  Entered on FLSD Docket 10/19/2016  Page 6 of 130



TAN OR YELLOW VEHICLE PASS HER VEHICLE AND NEARLY RUN OFF THE SHOULDER OF
THE ROADWAY AS IT CONTINUED NORTHBOUND. SHE STATED A SHORT TIME LATER SHE
CAME UPON THE ACCIDENT AT LANTANA RD. AND S.R. 7. WHEN SHE ARRIVED THE
DRIVER OF THE TAN VEHICLE WAS EXITING HIS VEHICLE, VIA THE PASSENGER WINDOW.
ADDITIONALLY SHE STATED THAT THE PASSENGER OF THE VEHICLE WAS STILL SEATED
IN THE PASSENGER SEAT.  SHE FURTHER STATED THAT THE DRIVER SWAYED AND SLURRED
HIS WORDS AND THAT SHE SAW BEER CANS IN THE REAR OF MR. RICHE'S VEHICLE.
SHE STATED THAT SHE WAS A MEDICAL TECHNICIAN AND THAT IN HER EXPERT OPINION
THE DRIVER OF THE NORTHBOUND VEHICLE WAS INTOXICATED.  SHE STATED "IT WASN'T
JUST A COUPLE OF BEERS.  IT HAD TO HAVE BEEN AN ALL NIGHT THING FOR HIM TO
BE AS INTOXICATED AS HE WAS. HE HAD TO HAVE AN EXTREME AMOUNT OF ALCOHOL.
SHE POSITIVELY IDENTIFIED SAM W. RICHE OF THE DRIVER OF THE NORTHBOUND
VEHICLE.  THIS IDENTIFICATION WAS MADE VIA A PHOTO LINEUP.  AT THIS TIME I
WAS ABLE TO COMPLETE THE ACTIVE INVESTIGATION OF THIS CASE AND ALL EVIDENCE,
STATEMENTS AND REPORTS WILL BE SUBMITTED TO THE S.A. OFFICE, THE FIFTEENTH
JURISDICTION DISTRICT FOR REVIEW AND POSSIBLE FILING OF ADDITIONAL CRIMINAL
CHARGES.
     AT THIS TIME I HAVE NO FURTHER INFORMATION, REFERENCE THIS CASE, BUT
WILL DECLARE IT INACTIVE UNTIL FILING WITH THE S.A. OFFICE.
D/S PRUITT#2458/PAULA/TRANS: 032993
DICTATED: 032893 AT 1750HRS

Case 9:16-cv-80603-RR Document 33-13 Entered on FLSD Docket 10/19/2016 Page 8 of 130

LISTING PAGE      294   P A L M   B E A C H   C O U N T Y   S H E R I F F ' S   O F F I C E      PAGE   1
     CASE NO. 9341731      SUPPLEMENT   1   O F F E N S E   R E P O R T      CASE NO. 9341731
                                                                   DISPOSITION: CLEARED BY ARREST
                                                                   DIVISION: TRAFFIC

DWI ALCH/DRGS                    *                    *                    *
                                              CODE: 5400   DATE: 04/01/93   THURSDAY
ZONE: C05 GRID:        DEPUTY I.D.: 2458 NAME: PRUITT JAMES   ASSIST:      TIME D 1655 A 1655 C 1655
OCCURRED BETWEEN DATE: 03/13/93 , 1010 HOURS AND  DATE: 00/00/00 , 0000 HOURS
EXCEPTION TYPE:
INCIDENT LOCATION: 00000000 _____  RD   APT. NO.:
            CITY: LAKE WORTH                STATE: FL      ZIP:
NO. OFFENSES: 01 NO. OFFENDERS: 01 NO. VEHICLES STOLEN:  0  NO. PREMISES ENTERED:  0
LOCATION: HIGHWAY / ROADWAY
NO. VICTIMS: 01 NO. ARRESTED:  1  FORCED ENTRY: 0
OFFENSE NO. 1  FLORIDA STATE STATUTE:  316 193  1A   CIS CODE 5400

NAME LIST:
   ROLE:
ARRESTEE              SAM W RICHE                  DOB:
            SEX: M RACE: W HT: 601 WT: 200 HR: BROWN    EYE: BROWN
VEHICLE DRIVER       SAM W RICHE                  DOB:
            SEX: M RACE: W HT: 601 WT: 200 HR: BROWN    EYE: BROWN
RESIDENCIAL ADDRESS: _____  LAKE WORTH FL 33463      PHONE:
WITNESS              GLENA CRIBBS                 DOB:
            SEX: F RACE: W HT:  0 WT:  0 HR: UNKNOWN EYE: UNKNOWN
RESIDENCIAL ADDRESS: _____  LAKE WORTH FL 33467      PHONE:
WITNESS              RONALD E ROSS                DOB:
            SEX: M RACE: W HT: 511 WT: 180 HR: BLOND    EYE: BLUE
RESIDENCIAL ADDRESS: _____  LAKE WORTH FL 33461      PHONE:
WITNESS              RANDY ROSS                   DOB:
            SEX: M RACE: W HT: 601 WT: 150 HR: BLOND    EYE: BLUE
RESIDENCIAL ADDRESS: _____  LAKE WORTH FL 33461      PHONE:
WITNESS              RONALD PENSE                 DOB:
            SEX: M RACE: W HT:  0 WT:  0 HR: UNKNOWN EYE: UNKNOWN
RESIDENCIAL ADDRESS: _____  LAKE WORTH FL 0          PHONE:
WITNESS              STEVEN BOYD                  DOB:
            SEX: M RACE: W HT:  0 WT:  0 HR: UNKNOWN EYE: UNKNOWN
RESIDENCIAL ADDRESS: _____  LAKE WORTH FL 33463      PHONE:
WITNESS              JOSEPH DEFER                 DOB:
            SEX: M RACE: W HT:  0 WT:  0 HR: UNKNOWN EYE: UNKNOWN
RESIDENCIAL ADDRESS: _____  PALM SPRIN FL 33461      PHONE:
BUSINESS ADDRESS: JOE'S TOWING, 1017 MANOR DR., PALM SPRINGS   BUSINESS PHONE: 407 96
WITNESS              RICARDO G SANCHEZ            DOB:
            SEX: M RACE: W HT: 510 WT: 175 HR: BROWN    EYE: BROWN
RESIDENCIAL ADDRESS: _____  WEST PALM FL 33415       PHONE:

0100



Case 9:16-cv-80693-BB  Document 33-13  Entered on FLSD Docket 10/19/2016  Page 9 of 130

DISPOSITION: CLEARED BY ARREST

BUSINESS ADDRESS: NONE                                      BUSINESS PHONE:
WITNESS                  MARYANNE KERSHAW               DOB: ██ ██/56
            SEX: F RACE: W HT:   0 WT:   0 HR: UNKNOWN  EYE: UNKNOWN
RESIDENCIAL ADDRESS: ██████████████ ██            CORAL SPRI FL 0
BUSINESS ADDRESS: SELF EMPLOYED                             BUSINESS PHONE:
WITNESS                  DONALD MILLER                 DOB: ██████/54
            SEX: M RACE: W HT:   0 WT:   0 HR: UNKNOWN  EYE: UNKNOWN
RESIDENCIAL ADDRESS: ████████████  TR ████ ██     CORAL SPRI FL 33065
BUSINESS ADDRESS: ECKERD DRUGS IN PBC AREA                  BUSINESS PHONE:
WITNESS                  JOHNNIE B CRIBBS              DOB: ██████/17
            SEX: M RACE: W HT:   0 WT:   0 HR:          EYE:
BUSINESS ADDRESS: RETIRED                                   BUSINESS PHONE:
VEHICLE DRIVER           JOHNNIE B CRIBBS             DOB: ██████/17
            SEX: M RACE: W HT:   0 WT:   0 HR:          EYE:
RESIDENCIAL ADDRESS: ██████████████████    LAKE WORTH FL 33467
BUSINESS ADDRESS: RETIRED                                   BUSINESS PHONE:
..
..
       OFFENSE INDICATOR: OFFENSE 1     VICTIM NUMBER: 1
VICTIM TYPE: OTHER
RESIDENCE TYPE: NOT APPLICABLE     RESIDENCE STATUS: NOT APPLICABLE
EXTENT OF INJURY: NONE
INJURY TYPE(1): NOT APPLICABLE
INJURY TYPE(2): NOT APPLICABLE
VICTIM RELATION: NOT APPLICABLE

VEH/VESS STATUS CODE: OFFENDERS     VEH/VESS TYPE: AUTO
   VEH STATE LICENSE: FL    VEH YEAR: 78
VEH LICENSE NO: ████████
VEH MAKE: CHEVROLET     VEH MODEL: IMPALA    VEH STYLE: FOUR DOOR
VEH COLOR: TAN
VIN NUMBER: ████████████

       ON 032993, THIS INVESTIGATOR MET WITH ASSISTANT STATE ATTORNEY ANNIE
NOE IN HER OFFICE IN REFERENCE TO FILING ADDITIONAL CHARGES IN THIS CASE.
       AFTER REVIEW OF THE FILING DOCUMENTS, MRS. NOE FILED THE ADDITIONAL
CHARGES OF FELONY DUI, PERSONAL INJURY, MISDEMEANOR DUI, PERSONAL INJURY
AND FAILURE TO OBEY A PHYSICAL TRAFFIC CONTROL DEVICE.
       AFTER SPEAKING WITH HER, I COMPLETED THE PAPERWORK AND WENT TO THE
PALM BEACH COUNTY JAIL, WHERE THESE CITATIONS WERE SERVED ON THE DEFENDANT.
       THIS CASE IS CLEARED BY ARREST.
       O/S JAMES PRUITT/ID 2458/TRANS. 040193/KLW/#1889
       DICT. 040193/1300 HRS.

Case 9:16-cv-80693-BB Document 33-13 Entered on FLSD Docket 10/19/2016 Page 10 of 130



LISTING PAGE      1234   PALM BEACH COUNTY SHERIFF'S OFFICE                    PAGE   1
   CASE NO. 91203185                      OFFENSE REPORT                   CASE NO. 91203185
===12/31/92===                                                      DISPOSITION: CLEARED BY ARREST
                                                                           DIVISION: K-9

ASSAULT OFFICER
ZONE: A06 GRID: 7430   DEPUTY I.D.: 3725 NAME: MATTINO RONALD   CODE: 1308  DATE: 12/25/91  WEDNESDAY
OCCURRED BETWEEN DATE: 12/25/91 , 0320 HOURS AND  DATE: 12/25/91 , 0320 HOURS   ASSIST:      TIME 0 0317 A 0318 C 0344
EXCEPTION TYPE:
INCIDENT LOCATION: ███████████                                       AV   APT. NO.:
              CITY: WEST PALM BEACH                    STATE: FL        ZIP: 33409
NO. OFFENSES: 03 NO. OFFENDERS: 01 NO. VEHICLES STOLEN:  0  NO. PREMISES ENTERED:  0
LOCATION: HIGHWAY / ROADWAY
NO. VICTIMS: 02 NO. ARRESTED:  1  FORCED ENTRY: 0 WEAPON TYPE:
OFFENSE NO. 1  FLORIDA STATE STATUTE:  784 07       CIS CODE 130A
OFFENSE NO. 2  FLORIDA STATE STATUTE:  784 03       CIS CODE 130B
OFFENSE NO. 3  FLORIDA STATE STATUTE:  843 01       CIS CODE 9090

NAME LIST:
   ROLE:
VICTIM  NO. 002        FRANCISCO SOTO                       DOB:
            SEX: M RACE: W HT: 505 WT: 150 HR: BLACK        EYE: BROWN
COMPLAINANT            FRANCISCO SOTO                        DOB:
            SEX: M RACE: W HT: 505 WT: 150 HR: BLACK        EYE: BROWN
RESIDENCIAL ADDRESS: ██████████████         WPB       FL 0
VICTIM  NO. 001        RONALD T MATTINO                     DOB:
            SEX: M RACE: W HT:  0 WT:  0 HR: UNKNOWN        EYE: UNKNOWN
BUSINESS ADDRESS: ████████████              BUSINESS PHONE:
LAW ENFORCEMENT OFFICER  RONALD T MATTINO                   DOB:
            SEX: M RACE: W HT:  0 WT:  0 HR: UNKNOWN        EYE: UNKNOWN
BUSINESS ADDRESS: ████████████              BUSINESS PHONE:
ARRESTEE              RICARDO V SANCHEZ                      DOB:
            SEX: M RACE: W HT: 510 WT: 145 HR: BROWN        EYE: BROWN
RESIDENCIAL ADDRESS: ███████████            WEST PALM  FL 33415

   OFFENSE INDICATOR: OFFENSE  1     VICTIM NUMBER: 1
VICTIM TYPE: LAW ENFORCEMENT
RESIDENCE TYPE: COUNTY      RESIDENCE STATUS: FULL YEAR
EXTENT OF INJURY: MINOR
INJURY TYPE(1): ABRASIONS / BRUISE
INJURY TYPE(2): NOT APPLICABLE
VICTIM TREAT TAKEN: P. B. GARDENS HOSPITAL
PHYSICIAN: ROSENBERG
VICTIM RELATION: UNDETERMINED

Case 9:16-cv-80693-BB Document 33-13 Entered on FLSD Docket 10/19/2016 Page 11 of 130

CNTRL PAGE 7607 * P A L M   B E A C H   C O U N T Y   S H E R I F F ' S   O F F I C E *          PAGE 01
CASE NO. 8616990        NON-CRIME        O F F E N S E   R E P O R T              CASE NO. 8616990
                                                                   DISPOSITION: ZULU
                                                                   DIVISION: ROAD PATROL

INFORMATION                                    CODE:9523  DATE:01/09/86 - THURSDAY
ZONE:84  GRID:003072 DEPUTY:3163  ===> B. SLANE              ASSIST:  TIMES: DISP/1818 ARR/1832 COMP/1853
OCCURRED BETWEEN:  DATE: 01-09-86, 1813 HOURS AND  DATE: 00-00-00,     HOURS

NAME/LOCATION:MRS TRIPP  04749N DYSON CRWPB  COMPL SAYS THERE IS A VEH PARKED IN BAC

NAME LIST:
     ROLE                                                                               HAIR  EYES
COMPL/REPORTEE   LUCINDA  GORDON  TRIPP             DOB: ███45 SEX/F RACE/B HT/507 WT/130 BROWN BROWN
          RESIDENCE ADDRESS: ████████████████████████  WPB        FL    PHONE ███████████
          BUSINESS  ADDRESS:                                            PHONE
OTHER     RICARDO  GARCIA  SANCHEZ                  DOB: ████60 SEX/M RACE/W HT/510 WT/175 BROWN BROWN
          RESIDENCE ADDRESS: ████████████████████████  WPB        FL    PHONE
          BUSINESS  ADDRESS:                                            PHONE
OTHER     JUANA  MARIA  SANCHEZ                     DOB: ████63 SEX/F RACE/W HT/410 WT/100 BLACK BROWN
          RESIDENCE ADDRESS: ████████████████████████  WPB        FL    PHONE
          BUSINESS  ADDRESS:                                            PHONE


          THE COMPL. A LUCINDA TRIPP, B/F, DOB ██████, OF 4████████████████
CIRCLE ADVISED THAT SHE HAD BEEN HAVING TROUBLE WITH A NEIGHBOR, A
RICARDO SANCHEZ, W/M, DOB ██████ SO. OF ████████████████
          SHE ADVISED THAT MR. SANCHEZ PARKS HIS CAR TO CLOSE TO HERS SO
THAT SHE CANNOT OPEN HER DOORS AND SO TONIGHT SHE PARKED IN THE MIDDLE
OF TWO SPACES AND HE THEN PARKED HIS CAR TO THE REAR OF HERS, BLOCKING
HER VEHICLE FROM BEING ABLE TO MOVE.
          MR. SANCHEZ WAS ASKED TO MOVE HIS VEHICLE WHICH HE DID.  BOTH PARTIES
WERE TOLD TO TRY TO RESOLVE THE PROBLEMS WITHOUT RESORTING TO ACTS AS THIS.
MR. SANCHEZ WAS TOLD HE COULD NOT BLOCK ANOTHER PERSONS CAR AND THE COMPL.
WAS TOLD HOW TO AVOID HAVING MR. SANCHEZ'S CAR BLOCK HER ACESS TO HER CAR.
          THIS REPORT MADE FOR INFORMATION ONLY SHOULD THE SITUATION ERUPT INTO
SOMETHING MORE SERIOUS.
D/S SLAIN #3163
TRANS: 011586 JAP

                                        FOLLOW-UP ASSIGNED TO: ─────────────────────



**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
# CRIMINAL HISTORY INFORMATION
*Search Florida's Criminal Histories*



F A L C O N

## Criminal History

---

```
Criminal History
 --FLORIDA CCH RESPONSE--
ATN/ANONCCHINET/CCHINET/LISA A MCD
FC.DLE/1565747.PUR/P.ATN/ANONCCHINET/CCHINET/LISA A MCD
         SID  NUMBER:  1565747   PURPOSE CODE:P        PAGE:   1
        BECAUSE ADDITIONS OR DELETIONS MAY BE MADE AT ANY TIME,
        A NEW COPY SHOULD BE REQUESTED WHEN NEEDED FOR FUTURE USE
                 -   FLORIDA   CRIMINAL   HISTORY   -
NAME                           STATE ID NO.   FBI NO.    DATE REQUESTED
SANCHEZ, RICARDO GARSIA        FL-01565747               09/04/2007
SEX  RACE  BIRTH DATE  HEIGHT  WEIGHT  EYES  HAIR  BIRTH PLACE  SKIN  DOC NO.
M    W     ████████    5'07''  235     BLK   BRO   ZA
--CONTINUED--


         SID  NUMBER:  1565747   PURPOSE CODE:P        PAGE:   2

FINGERPRINT CLASS   SOCIAL SECURITY NO.   MISCELLANEOUS NO.    SCR/MRK/TAT
PI 56 04 PI 16      ███████████                                TAT L ARM
14 07 06 18 15
IN AFIS - 2
OCCUPATION          ADDRESS                     CITY/STATE
LABORER             ███████████      WP         WPB, FL
---------------------------------------------------------------------
AKA                         DOB        SOC        SCR/MRK/TAT
---------------------------------------------------------------------

SANCHEZ, RICARDO GARCIA
SANCHEZ, RICARDO G
--CONTINUED--


         SID  NUMBER:  1565747   PURPOSE CODE:P        PAGE:   3
---------------------------------------------------------------------

ARREST-   1   09/22/1980   OBTS NO.-
   ARREST AGENCY-PALM BEACH COUNTY SHERIFF'S OFFICE           (FL0500000)
      AGENCY CASE-65484                     OFFENSE DATE-
      CHARGE 001-HOMICIDE-WILLFUL KILL-WEAPON-              ,ATTEMPT
             STATUTE/ORDINANCE-FL784.021        LEVEL-FELONY
      CHARGE 002-AGGRAV ASSLT-WEAPON-
```

*Handwritten: Case #8075071  8X10  290  29 photos  1 polaroid*

A-001069

```
                         BATTERY
                         STATUTE/ORDINANCE-FL784.03          LEVEL-FELONY
              CHARGE 003-FIRING WEAPON-
                         OCCUPIED BUILDING
                         STATUTE/ORDINANCE-FL790.19          LEVEL-FELONY
              CHARGE 004-LARCENY-
    --CONTINUED--


                  SID  NUMBER:  1565747   PURPOSE CODE:P          PAGE:    4


                         GRAND
                         STATUTE/ORDINANCE-FL812.014          LEVEL-FELONY
              CHARGE 005-POSSESS STOLEN PROP-
                         STATUTE/ORDINANCE-FL812.031          LEVEL-
    ----------------------------------------------------------------------------
    ARREST-   2    09/27/1980   OBTS NO.-
      ARREST AGENCY-PALM BEACH COUNTY SHERIFF'S OFFICE              (FL0500000)
         AGENCY CASE-65484                           OFFENSE DATE-
         CHARGE 001-BREAKING AND ENTERING AUTO
                  002 CNTS,
                  STATUTE/ORDINANCE-FL810.02          LEVEL-
         CHARGE 002-POSSESS STOLEN PROP-
                  002 CNTS,
    --CONTINUED--


                  SID  NUMBER:  1565747   PURPOSE CODE:P          PAGE:    5


                         STATUTE/ORDINANCE-FL812.031          LEVEL-
              CHARGE 003-LARCENY-
                         GRAND
                         STATUTE/ORDINANCE-FL812.014          LEVEL-FELONY
    ----------------------------------------------------------------------------
    ARREST-   3    11/03/1982   OBTS NO.-
      ARREST AGENCY-PALM BEACH COUNTY SHERIFF'S OFFICE              (FL0500000)
         AGENCY CASE-65484                           OFFENSE DATE-
         CHARGE 001-DRIVING UNDER INFLUENCE LIQUOR-
                  STATUTE/ORDINANCE-FL316.193          LEVEL-
         CHARGE 002-DRIVING UNDER INFLUENCE LIQUOR-
                  UNLAW BLD ALCH
                  STATUTE/ORDINANCE-FL316.193          LEVEL-
    --CONTINUED--


                  SID  NUMBER:  1565747   PURPOSE CODE:P          PAGE:    6


         CHARGE 003-NONMOVING TRAFFIC VIOL-
                  DR WHL LIC SUSP
                  STATUTE/ORDINANCE-FL322.34          LEVEL-MISDEMEANOR
    JUDICIAL-
      AGENCY-FL0500                                         (FL0500    )
         CHARGE 001 -COURT SEQ                COURT NO.-82167008TTA02
            COURT DATA-DRIVING UNDER INFLUENCE LIQUOR-
                  STATUTE/ORDINANCE-FL316.193          LEVEL-
```

A-001070

```
                    DISP DATE-05/31/1983              DISP-DISMISSED
        AGENCY-PALM BEACH COUNTY SHERIFF'S OFFICE                  (FL0500000)
        CHARGE 002 -COURT SEQ              COURT NO.-82167005TTA02
            COURT DATA-DUI-UNLAW BLD ALCH-
                    STATUTE/ORDINANCE-FL316.193              LEVEL-
--CONTINUED--


            SID  NUMBER:  1565747   PURPOSE CODE:P       PAGE:   7


                    DISP DATE-05/31/1983              DISP-DISMISSED
        AGENCY-FL0500                                             (FL0500   )
        CHARGE 003 -COURT SEQ              COURT NO.-82167002TTA02
            COURT DATA-TRAFFIC OFFENSE-
                            DR WHL LIC SUSP
                    STATUTE/ORDINANCE-FL322.34              LEVEL-
                    DISP DATE-05/31/1983              DISP-CONVICTED
                    CONFINEMENT-10D
-----------------------------------------------------------------------------
ARREST-   4    12/25/1991    OBTS NO.-0001936017
  ARREST AGENCY-PALM BEACH COUNTY SHERIFF'S OFFICE                (FL0500000)
    AGENCY CASE-65484                      OFFENSE DATE-
    CHARGE 001-BATTERY-
--CONTINUED--


            SID  NUMBER:  1565747   PURPOSE CODE:P       PAGE:   8


                    STATUTE/ORDINANCE-FL784.03         LEVEL-MISDEMEANOR
        CHARGE 002-AGGRAV BATT-POL OFF-
                    STATUTE/ORDINANCE-FL784.07         LEVEL-FELONY
        CHARGE 003-RESISTING OFFICER-
                    W VIOL
                    STATUTE/ORDINANCE-                  LEVEL-FELONY
-----------------------------------------------------------------------------
ARREST-   5    05/04/1999    OBTS NO.-0011412811
  ARREST AGENCY-PALM BEACH COUNTY SHERIFF'S OFFICE                (FL0500000)
    AGENCY CASE-65484                      OFFENSE DATE-
    CHARGE 001-BATTERY-
            LEO
                    STATUTE/ORDINANCE-FL784.07         LEVEL-FELONY
--CONTINUED--


            SID  NUMBER:  1565747   PURPOSE CODE:P       PAGE:   9


                    DISP-
        CHARGE 002-RESISTING OFFICER-
                    ARR W VIOL
                    STATUTE/ORDINANCE-FL843.01         LEVEL-FELONY
                    DISP-
        CHARGE 003-AGGRAV ASSLT-POL OFF-
                    DEAD WEAP
                    STATUTE/ORDINANCE-FL784.07         LEVEL-FELONY
                    DISP-
```

A-001071

FDLE Criminal History Information on the Internet

```
JUDICIAL-
  AGENCY-15TH CIRCUIT COURT - WEST PALM BEACH                (FL050015J)
  CHARGE 001 -COURT SEQ                 COURT NO.-99004965CFA02
    SUPPLEMENTAL ARREST DATA-
--CONTINUED--


      SID  NUMBER:  1565747   PURPOSE CODE:P           PAGE:  10


            STATUS-                           LEVEL-FELONY         ,
      PROSC DATA-                  .      BATTERY-
                             BATTERY ON A POLICE OFFICER
            ASSAULT              ,
            STATUTE/ORDINANCE-FL784.07(2B)         LEVEL-FELONY     ,3RD DEG
            STATUTE DESCRIPTN-ON OFFICER FIREFIGHTER EMT ETC
            DISP DATE-05/27/1999              DISP-N/A
      COURT DATA-BATTERY-
                          DISORDERLY CONDUCT  .
            ASSAULT              ,
            STATUTE/ORDINANCE-FL784.07(2B)         LEVEL-FELONY
            STATUTE DESCRIPTN-ON OFFICER FIREFIGHTER EMT ETC
            DISP DATE-10/06/1999              DISP-GUILTY/CONVICTED
--CONTINUED--


      SID  NUMBER:  1565747   PURPOSE CODE:P           PAGE:  11


            COUNSEL-PUBLIC    TRIAL-JURY      PLEA-NOT GUILTY
            SENT DATE-10/06/1999
                      999          ,99999999999999
            PROBATION-    6M
            FINE-                        COURT COST-  $1049
      SPECIAL SENTENCE PROVISIONS-NOT APPLICABLE
  CHARGE 002 -COURT SEQ          .      COURT NO.-99004965CFA02
    SUPPLEMENTAL ARREST DATA-
            STATUS-                           LEVEL-FELONY         ,
      PROSC DATA-                       RESISTING OFFICER-
                          RESIST ARREST WITH VIOLENCE
            STATUTE/ORDINANCE-FL843.01            LEVEL-FELONY     ,3RD DEG
            STATUTE DESCRIPTN-WITH VIOLENCE
--CONTINUED--


      SID  NUMBER:  1565747   PURPOSE CODE:P           PAGE:  12


            DISP DATE-05/27/1999              DISP-N/A
      COURT DATA-AMENDED        ,RESISTING OFFICER-
                          RESISTING ARREST WITHOUT VIOLENCE
            STATUTE/ORDINANCE-FL843.02            LEVEL-MISDEMEANOR,1ST DEG
            STATUTE DESCRIPTN-OBSTRUCT WO VIOLENCE
            DISP DATE-10/06/1999              DISP-GUILTY/CONVICTED
            COUNSEL-PUBLIC    TRIAL-JURY      PLEA-NOT GUILTY
            SENT DATE-10/06/1999
                      999          ,99999999999999
            PROBATION-  1Y
```

A-001072

```
            FINE-                                  COURT COST-  $1051
        SPECIAL SENTENCE PROVISIONS-NOT APPLICABLE
        CHARGE 003 -COURT SEQ                COURT NO.-99004965CFA02
   --CONTINUED--


            SID  NUMBER:  1565747   PURPOSE CODE:P        PAGE:  13


        SUPPLEMENTAL ARREST DATA-
                STATUS-                         LEVEL-FELONY       ,
            PROSC DATA-                   AGGRAV ASSLT-WEAPON-
                ASSAULT            ,
                STATUTE/ORDINANCE-FL784.021       LEVEL-FELONY    ,3RD DEG
                STATUTE DESCRIPTN-AGRAVATED ASSAULT
                DISP DATE-05/27/1999            DISP-N/A
            COURT DATA-AGGRAV ASSLT-WEAPON-
                ASSAULT            ,
                STATUTE/ORDINANCE-FL784.021       LEVEL-FELONY    ,3RD DEG
                STATUTE DESCRIPTN-AGRAVATED ASSAULT
                DISP DATE-10/06/1999            DISP-ACQUITTED
                COUNSEL-PUBLIC    TRIAL-NONE    PLEA-NOT GUILTY
   --CONTINUED--


            SID  NUMBER:  1565747   PURPOSE CODE:P        PAGE:  14


            SENT DATE-10/06/1999
                        999        ,99999999999999
        SPECIAL SENTENCE PROVISIONS-NOT APPLICABLE
   -------------------------------------------------------------------------

        **** THE FOLLOWING IS A STATUS RECORD -- NOT AN ARREST ****
   ARREST-   6   10/08/1999   OBTS NO.-0011415007
     ARREST AGENCY-PALM BEACH COUNTY SHERIFF'S OFFICE          (FL0500000)
        AGENCY CASE-65484                   OFFENSE DATE-
        CHARGE 001-CRIMINAL REGISTRATION (NOT AN ARREST)-
                REF ASLT BATT LEO
                DISP-NOT PROSECUTED RELEASED
   -------------------------------------------------------------------------

   ARREST-   7   11/06/2005   OBTS NO.-5003172126
   --CONTINUED--


            SID  NUMBER:  1565747   PURPOSE CODE:P        PAGE:  15


     ARREST AGENCY-PALM BEACH COUNTY SHERIFF'S OFFICE          (FL0500000)
        AGENCY CASE-5101000654              OFFENSE DATE-
        CHARGE 001-AGGRAV BATTERY-
                CAUSE BODILY HARM OR DISABILITY-DOM VIOL
                STATUTE/ORDINANCE-               LEVEL-FELONY    ,2ND DEG
                DISP-
   JUDICIAL-
     AGENCY-15TH CIRCUIT COURT - WEST PALM BEACH               (FL050015J)
        CHARGE 001 -COURT SEQ              COURT NO.-502005CF014223AXXXMB
            SUPPLEMENTAL ARREST DATA-
                STATUS-                         LEVEL-FELONY    ,2ND DEG
```

A-001073

FDLE Criminal History Information on the Internet                                              Page 6 of 6

```
            PROSC DATA-                        AGGRAV BATTERY-
                                       CONVERSION   784 045 1A12   1318 S F 000 06    AG
--CONTINUED--


            SID  NUMBER:  1565747   PURPOSE CODE:P         PAGE:  16


                STATUTE/ORDINANCE-FL784.045(1A2)       LEVEL-FELONY    ,2ND DEG
                STATUTE DESCRIPTN-PERSON USES A DEADLY WEAPON
                DISP DATE-12/08/2005             DISP-N/A
            COURT DATA-AGGRAV BATTERY-
                                       CONVERSION   784 045 1A12   1318 S F 000 06   AG
                STATUTE/ORDINANCE-FL784.045(1A2)       LEVEL-FELONY    ,2ND DEG
                STATUTE DESCRIPTN-PERSON USES A DEADLY WEAPON
                DISP DATE-08/31/2006             DISP-ACQUITTED
                COUNSEL-SELF       TRIAL-NONE      PLEA-NO PLEA ENTERE
            SPECIAL SENTENCE PROVISIONS-NOT APPLICABLE
---------------------------------------------------------------------------
THIS RECORD CONTAINS FLORIDA INFORMATION ONLY. WHEN EXPLANATION OF A CHARGE
OR DISPOSITION IS NEEDED, COMMUNICATE DIRECTLY WITH THE AGENCY THAT CONTRIBU-
--CONTINUED--


            SID  NUMBER:  1565747   PURPOSE CODE:P         PAGE:  17


TED THE RECORD INFORMATION. IF YOU DID NOT SUBMIT FINGERPRINTS, THIS RECORD IS
PROVIDED AS A RESULT OF A NAME INQUIRY ONLY. POSITIVE IDENTIFICATION CAN ONLY
BE VERIFIED BY SUBMISSION OF A FINGERPRINT CARD AND COMPARISON BY FDLE. THIS
RECORD WAS REQUESTED PURSUANT TO 943.053(3), F.S.
            AS MANDATED BY FLORIDA STATUTE 119.071(5), FULL SOCIAL
            SECURITY NUMBERS ARE NOW EXEMPT FROM PUBLIC DISCLOSURE
            AND MAY BE DISCLOSED ONLY TO GOVERNMENTAL ENTITIES AND
            CERTAIN COMMERCIAL ENTITIES (UPON A SHOWING OF BUSINESS
            NECESSITY AS DEFINED BY THE LAW). FDLE WILL, HOWEVER,
            RELEASE THE LAST FOUR DIGITS OF THE SOCIAL SECURITY NUMBER.
            EXAMPLE: XXX XX 1234.
THIS CONTAINS FLORIDA RECORD ONLY.
UNKNOWN AS TO NATIONAL RECORD STATUS.
--CONTINUED--


            SID  NUMBER:  1565747   PURPOSE CODE:P         PAGE:  18


END OF RECORD

--END--
```

<table>
<tr><td>Print History</td><td>Email History to</td><td>Frazerpi@yahoo.com</td><td>Back</td><td>New Search</td><td>Home</td></tr>
</table>

A-001074

# FEDERAL COURT INTERPRETER ORIENTATION MANUAL AND GLOSSARY



## ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS

### Court Services Office

(Last Revised May 8, 2014)

A-001075

## TABLE OF CONTENTS

MEMBERS OF MANUAL WRITING COMMITTEE...........................................................................6

PREFACE.............................................................................................................................7

INTRODUCTION....................................................................................................................8

CHAPTER 1: OVERVIEW OF THE FEDERAL JUDICIAL SYSTEM ...............................................9

    I.     Introduction ..............................................................................................9

    II.    Federal and State Courts .........................................................................9

        A.    Federal.............................................................................................9

        B.    State................................................................................................9

    III.   Types of Federal Courts .........................................................................9

        A.    District Courts ................................................................................9

        B.    Courts of Appeals ..........................................................................9

        C.    The Supreme Court.......................................................................10

    IV.   Federal Court Cases..............................................................................10

        A.    Jurisdiction ..................................................................................10

        B.    Civil Cases...................................................................................10

        C.    Criminal Cases .............................................................................10

    V.    Bringing a Case in Federal Court ..........................................................10

        A.    Civil Cases...................................................................................11

        B.    Criminal Cases .............................................................................11

    VI.   Pretrial Activity ...................................................................................11

        A.    Civil Cases...................................................................................11

        B.    Criminal Cases .............................................................................11

    VII.  The Trial..............................................................................................11

        A.    The Jury.......................................................................................12

        B.    The Judge.....................................................................................12

        C.    Role of Judge and Jury .................................................................12

        D.    The Lawyers.................................................................................12

        E.    The Parties ...................................................................................13

        F.    The Witnesses ..............................................................................13

        G.    Court Personnel ............................................................................13

        H.    Adversary Process ........................................................................13

A-001076

I.      Standards of Proof .................................................................................13

J.      *Admission of Evidence* ...........................................................................14

K.      Sentencing..............................................................................................14

VIII.   The Appeal Process................................................................................14

A.      Who Can Appeal ....................................................................................14

B.      Types of Appellate Decisions ................................................................14

C.      Appellate Procedure...............................................................................14

D.      Appellate Opinions ................................................................................15

E.      Supreme Court Review ..........................................................................15

CHAPTER 2: FEDERAL CRIMINAL PROCEEDINGS ...........................................16

I.      Arrest and Booking.................................................................................16

II.     Interview with Defense Attorney ...........................................................16

III.    Pretrial Services Interview......................................................................16

IV.     Initial Appearance...................................................................................16

A.      Charges...................................................................................................16

B.      Pretrial Release.......................................................................................16

C.      Detention Hearing...................................................................................17

D.      Nebbia Hearings .....................................................................................17

V.      Preliminary Examination.........................................................................17

A.      Grand Jury Proceedings..........................................................................17

VI.     Pretrial Preparation and Motions ...........................................................17

A.      Pretrial Motions .....................................................................................18

VII.    Case Disposition Without Trial: The Guilty Plea....................................18

VIII.   Status Conferences..................................................................................18

IX.     Criminal Bench Trials .............................................................................18

X.      Criminal Jury Trials ................................................................................18

A.      Impaneling of the Jury............................................................................18

B.      Judge's Initial Jury Instructions..............................................................19

C.      Opening Statements ................................................................................19

D.      The Prosecution's Case ..........................................................................19

E.      The Defense Case ...................................................................................19

F.      Rebuttal ..................................................................................................19

G.      Closing Arguments .................................................................................19

A-001077

    H.    Jury Instructions ........................................................................................................... 19

    I.    Jury Deliberation ........................................................................................................... 20

    J.    Verdict........................................................................................................................... 20

    K.    Presentence Report ....................................................................................................... 20

    L.    Sentencing Hearing........................................................................................................ 20

   XI.    Misdemeanor Cases........................................................................................................ 21

   XII.    Group Hearings and Multiple Defendant Cases.............................................................. 21

CHAPTER 3: OVERVIEW OF COURT INTERPRETING................................................................. 22

   I.    Interpreter Skills ............................................................................................................ 22

   II.    Language Skills .............................................................................................................. 22

   III.    Modes of Interpretation................................................................................................. 23

    A.    Simultaneous ................................................................................................................. 23

    B.    Consecutive................................................................................................................... 23

    C.    Sight Translation............................................................................................................ 24

   IV.    Accuracy of Performance .............................................................................................. 25

   V.    Ethical Obligations ........................................................................................................ 26

   VI.    Language Style and Register........................................................................................... 26

   VII.    Interpreters in the Courtroom ........................................................................................ 26

    A.    Location of Interpreters in Court.................................................................................... 26

    B.    Aids to the Interpreter................................................................................................... 27

    C.    Number of Interpreters per Proceeding: Teamwork ....................................................... 27

    D.    Challenges and Corrections to Interpretation.................................................................. 27

   VIII.    Simultaneous Interpretation of Recorded Audio ............................................................ 28

CHAPTER 4: INTERPRETER SUPERVISION AND CONTRACTING .............................................. 29

   I.    Orientation of Interpreters .............................................................................................. 29

   II.    Administration of Oath ................................................................................................... 29

   III.    Staff Interpreters............................................................................................................ 29

   IV.    Contract Court Interpreters ............................................................................................ 30

APPENDIX 1: THE COURT INTERPRETERS ACT ....................................................................... 33

APPENDIX 2: VOLUME 5 OF THE GUIDE TO JUDICIARY POLICY............................................. 38

APPENDIX 3: COURT INTERPRETER ETHICS AND PROTOCOL ................................................. 39

APPENDIX 4: COURT INTERPRETER CERTIFICATION .............................................................. 41

APPENDIX 5: THE TELEPHONE INTERPRETING PROGRAM (TIP)............................................. 42

4

A-001078

APPENDIX 6: COURTROOM LAYOUT ................................................................................................ 44

GLOSSARY ......................................................................................................................................... 47

A-001079

## MEMBERS OF MANUAL UPDATE COMMITTEE

Rafael Carrillo               Supervisory Staff Court Interpreter, District of New Mexico

Laura García-Hein            Staff Court Interpreter, District of Nebraska

Margarita Lloyd-Godsk        Staff Court Interpreter, Southern District of Florida

Julie Meeks                  Programs Specialist, District Court Administration Division

Rita Pomtree                 Director of Courtroom Services, Western District of Tennessee

Marcia Resler                Staff Court Interpreter, District of Arizona

Javier A. Soler              Programs Specialist, District Court Administration Division

## MEMBERS OF MANUAL WRITING COMMITTEE[1]

Douglas C. Dodge             Former District Court Executive, Eastern District of New York

Dena J. Kohn-Rizzo           Former Supervisory Interpreter, Southern District of New York

Robert M. March              Former Clerk of Court, District of New Mexico

Eliseo L. Martínez           Former Staff Interpreter, Western District of Texas

Edward B. Rock               Former Supervisory Interpreter, District of Arizona

Sofia Zahler                 Former Supervisory Interpreter, Central District of California

---

[1] This committee was appointed in 1988 by the Director's Federal Court Interpreter Advisory Board. Acknowledgments for contributions are due to many interpreters and professionals in the field of linguistics.

6

## PREFACE

Linguistic diversity in the United States is evidenced by the increasing need for interpreters in the courts. In 1990, over 66,000 judicial proceedings required interpreters, however, in more recent years these numbers have grown to approximately 325,000 judicial proceedings requiring interpreters in about 119 different languages each year. Many districts are experiencing a growing population of Limited English Proficiency (LEP) individuals. Although the use of interpreters by government agencies has become common practice, the recognition of the importance of professional interpreting in the courts is a relatively recent phenomenon in the United States. State and federal court opinions, such as United States ex. rel. Negrón v. State of New York, 434 F.2d 386 (1970), have indicated that the right to an interpreter was protected under the Constitution. In that case, opining on the importance of court interpreting, Judge Irving R. Kaufman wrote: "Not only for the sake of effective cross examination, however, but as a matter of simple humaneness, Negrón deserved more than to sit in total incomprehension as the trial proceeded."

In 1978, after an extensive review of interpreting in the federal courts, Congress passed the Court Interpreters Act, 28 U.S.C. § 1827, in order "to provide more effectively for the use of interpreters in courts of the United States." This Act requires the Director of the Administrative Office of the United States Courts to set the standard for certification of interpreters who serve in the federal courts. The Administrative Office (AO) facilitated quality interpreting by instituting certification testing, compensation standards, regulations and statistical reporting and training programs when deemed appropriate. To date, there are certified interpreters in Haitian Creole, Navajo, and Spanish (which constitutes about 96 percent of total interpreter usage). There are also Otherwise Qualified interpreters in many other languages, including American Sign Language. On November 19, 1988, President Ronald Reagan signed Public Law 100-702, the Judicial Improvements and Access to Justice Act, which made numerous amendments to the Court Interpreters Act. These amendments provide for the use of interpreters in grand jury and pretrial proceedings, mandate the use of criterion-referenced testing criteria (which is a method of objective measure) and set forth criteria for expanded certification of other languages deemed necessary by the Judicial Conference of the United States. The Court Interpreters Act, 28 U.S.C. §1827 provides payment for interpreting services for "judicial proceedings instituted by the United States." Most civil and bankruptcy proceedings are excluded because they are not instituted by the United States.

This manual outlines the major accomplishments that have occurred in the interpreting profession and serves as a guide for both new and experienced court interpreters to familiarize themselves with the Judiciary's expectations of court interpreters and the importance of court interpreters in the administration of justice. The manual was created with the advice and input of members of the Court Interpreters Advisory Group (CIAG). The CIAG was created to assist the AO in addressing current critical issues in and improvements to the court interpreting program.

A-001081

## INTRODUCTION

This manual was created and revised at the recommendation of the Court Interpreters Advisory Group (CIAG). It was the desire of the CIAG that the manual, supplemented by video resources and online modules, be created to serve as training resources for court interpreters and interpreter coordinators providing services for the federal courts.

The primary purpose of this orientation manual and glossary is to provide contract and staff court interpreters with an introduction and reference to the federal court system, as well as to document best practices for interpreters in the courts. The secondary purpose is to serve as a court interpreting reference for judicial officers and for clerks of court and their staff.

A-001082

## CHAPTER 1: OVERVIEW OF THE FEDERAL JUDICIAL SYSTEM

### I.   Introduction

Although federal court interpreting occurs almost exclusively at the district court level, the following information regarding the court system will help interpreters develop an overall view of the court structure. The limited information presented in this chapter and in this manual should be considered only a primer towards a more comprehensive knowledge of the subject matter. The following material is reproduced verbatim from the Federal Judicial Center brochure, Welcome to the Federal Courts.[2]

### II.   Federal and State Courts

There are two kinds of courts in the United States.

#### A.   Federal

Federal courts are established by the U.S. government. There are some 1,500 federal judges and about one million cases are brought each year in federal courts. Nearly 80% of these cases are bankruptcy filings and approximately 10% are minor criminal cases.

#### B.   State

State courts are established by a state, or by a county or city within the state. There are almost 30,000 state court judges, and the number of state court cases exceeds 27 million each year, not including traffic and parking violations. The cases individual citizens are most likely to be involved in—such as robberies, traffic violations, broken contracts, and family disputes—usually come before state courts.

### III.   Types of Federal Courts

Article III of the Constitution calls for a Supreme Court and whatever other federal courts Congress considers necessary. There are three types of federal courts.

#### A.   District Courts

Congress has divided the country into 94 federal judicial districts, each with its own U.S. District Court. The district courts are the federal courts where cases are tried, witnesses testify and juries serve. Each district court has a separate bankruptcy court.

#### B.   Courts of Appeals

Congress has grouped the districts into 12 regions, called circuits, each with a court of appeals. There is also a federal circuit, which covers the entire country. If a person loses a trial in a district court, that person can appeal the case to the court of appeals, which will review the case to see if the district court judge applied the law correctly. The courts of

---

[2] FED. JUDICIAL CTR., WELCOME TO THE FEDERAL COURTS (1996).

9

appeals also review cases decided by some federal agencies, such as the National Labor Relations Board.

## C. The Supreme Court

The U.S. Supreme Court in Washington, D.C., is the most famous federal court. Cases from the court of appeals in each circuit and from the state supreme courts can be appealed to the Supreme Court, but the Supreme Court does not have to hear the cases it is asked to review and, in fact, agrees to hear only a very small percentage of them.

## IV.  Federal Court Cases

### A. Jurisdiction

Jurisdiction refers to the kinds of cases a court is authorized to hear. Federal courts don't have the same broad jurisdiction that state courts have. Federal court jurisdiction is limited to the kinds of cases listed in the Constitution (Article III, Section 2). Usually, federal courts only hear cases involving the Constitution, laws passed by Congress, cases in which the United States is a party, cases involving foreign diplomats, and some special kinds of cases, such as incidents at sea and bankruptcy cases. Federal courts also hear cases that are based on state laws but that involve parties from different states.

### B. Civil Cases

Lawyers use the term "party" to describe a participant in a civil case. A party can be a person or a corporation, but, in either situation, a civil case involves a claim by one party (the plaintiff) that another party (the defendant) failed to carry out a legal duty, such as the duty not to harm others through carelessness or the duty to honor the terms of a contract. If a court finds that a defendant failed to carry out a legal duty, it may order the defendant to pay compensation to the plaintiff to make up for the harm. Most federal court cases are civil cases, such as equal employment opportunity claims, claims for benefits under federal programs, and suits against companies that may have violated federal antitrust laws. Appeals to the courts of appeals for review of federal agency decisions are also federal civil cases.

### C. Criminal Cases

In a criminal case, a party (the defendant) is accused of committing a crime—an action considered to be harmful to society as a whole, not just to a specific person. Most crimes concern matters that the Constitution leaves to the states, and thus, compared with the number of state criminal laws and cases, there are few federal criminal laws and cases. Federal criminal laws, for example, deal with robbing banks whose deposits are insured by a federal agency, importing drugs illegally into the country, or using the U.S. mails to swindle consumers.

## V.  Bringing a Case in Federal Court

For a court to decide a controversy, a person must bring it to court. Also, the controversy must involve a legal question— courts don't resolve every type of disagreement.

10

## A. Civil Cases

A federal civil case begins when someone, or someone's lawyer, files a paper with the clerk of the court that states a claim against another party, charging a failure to fulfill a legal duty. In lawyers' language, the plaintiff files a complaint against the defendant. The defendant may then file an answer to the complaint.

## B. Criminal Cases

A criminal case begins when the U.S. attorney (a lawyer for the executive branch of government) or an assistant tells a federal grand jury about evidence that indicates a specific person or organization committed a crime. If the grand jury agrees that there is enough evidence to show that the accused party probably committed the crime, it issues a formal accusation, called an indictment. The accused party— the defendant—is then brought before a judge for arraignment and is asked to plead "guilty" or "not guilty." If the defendant pleads guilty, a time is set for sentencing. If the defendant pleads not guilty, a time is set for trial.

Grand jury indictments are used mainly for felonies, the more serious crimes. For misdemeanors, the less serious crimes, and for some felonies, the U.S. attorney issues an information, which takes the place of an indictment.

## VI. Pretrial Activity

### A. Civil Cases

Pretrial conferences are held before trials to identify the issues for trial and to avoid wasting time during the trial on uncontested or irrelevant issues. Through pretrial "discovery," the lawyers examine each other's documents and interview each other's witnesses. This pretrial activity often leads to settlement of the case before trial.

### B. Criminal Cases

Lawyers for criminal defendants conduct thorough investigations before trial, frequently focusing on whether the government's evidence was obtained legally. The Fourth Amendment to the Constitution forbids "unreasonable searches and seizures," and the Supreme Court has ruled that illegally obtained evidence usually can't be used at trial. Resolution of these evidentiary issues before the trial can result either in the government's dropping the charges or in the defendant's deciding to plead guilty.

## VII. The Trial

Although there is an absolute right to trial in both civil and criminal cases, trials are often emotionally and financially draining, and a person may not wish to exercise the right to trial. Also, if the court grants a summary judgment to either party or decides to dismiss the case, no trial is held. Thus, over 90% of all civil cases never come to trial, and approximately 80% of criminal defendants plead guilty and are sentenced without a trial.

11

## A. The Jury

The group of people seated in a boxed-in area on one side of the courtroom is the trial jury (or petit jury). For federal criminal cases, there are usually 12 jurors, but for federal civil cases the number varies between 6 and 12. Prospective jurors are selected at random from lists of registered voters in the district or lists of licensed drivers. Before each trial, prospective jurors answer questions to help the judge and lawyers determine whether the jurors can be impartial in deciding the particular case. If the judge or lawyer believes that a juror cannot decide the case impartially (for example, because the juror knows one of the parties), he or she will then strike the prospective juror for cause. This means the prospective juror cannot sit on the jury. In addition to challenges for cause, the lawyers have the right to reject a certain number of jurors from the panel without giving any justification.

## B. The Judge

Federal appellate and district judges are appointed by the President, with the approval of the Senate (Constitution, Article II, Section 2). Federal judges are sometimes said to have life tenure because they can hold office for as long as they wish (Constitution, Article III, Section 1), subject to removal only by Congress through a rarely used process called impeachment and conviction for "treason, bribery, or other high crimes and misdemeanors" (Constitution, Article II, Section 4). Article III of the Constitution also prohibits the lowering of the salaries of federal judges. These two constitutional protections—life tenure and unreduced salary—allow federal judges to make legal rulings, even unpopular ones, without fear of losing their jobs or having their salaries cut.

Bankruptcy judges and magistrate judges assist the district judges by conducting some of the proceedings in federal courts. Bankruptcy judges hear almost all bankruptcy cases. Magistrate judges prepare the district judges' cases for trial and conduct trials in non-felony criminal cases and in civil cases when both parties agree to a hearing before a magistrate judge. Bankruptcy judges and magistrate judges do not have life tenure, but serve for an appointed term.

## C. Role of Judge and Jury

If the parties choose a jury trial, the jury must determine the facts over which the parties disagree. If the parties decide to leave the fact-finding task to the judge, the trial is called a bench trial. In either kind of trial, the judge decides what legal standards apply and whether any of the evidence that the parties want to use is illegal or improper. The judge also conducts the proceedings and sees that order is maintained. In a jury trial, the judge gives instructions to the jury, explaining the relevant law, how the law applies to the case being tried, and what questions the jury must decide.

## D. The Lawyers

During a trial, the lawyers for each party are either sitting at the counsel tables or speaking to the judge, a witness, or the jury. In criminal cases, the lawyer who prosecutes the claim is the U.S. attorney (or an assistant). The U.S. attorney for each judicial district is selected by the President, with the approval of the Senate.

12

The judge appoints lawyers to represent criminal defendants who can't afford to hire a lawyer. Criminal defendants or parties in a civil case occasionally present their cases themselves, without the help of a lawyer.

### E. The Parties

The parties may or may not be present at the counsel tables with their lawyers. Defendants in criminal cases have a constitutional right to be present. Parties in civil cases may be present if they wish.

### F. The Witnesses

Witnesses are individuals who testify under oath about the facts in dispute. When testifying, they sit at the witness stand, facing the courtroom. Because they are asked to testify by one party or the other, they are often referred to as plaintiff's witnesses or defense witnesses.

### G. Court Personnel

A court reporter (or sometimes a tape recorder operator) is always present at a trial because federal law requires that a word-for-word record be made of every proceeding. A courtroom deputy clerk, usually seated near the judge, administers the oaths to the witnesses, marks the exhibits, and generally helps keep the trial running smoothly.

### H. Adversary Process

Each side presents its most persuasive arguments, emphasizes the facts that support its case, and points out the flaws in its opponent's presentation. According to American judicial tradition, this "adversary process" is the most effective way to help the fact finder arrive at the truth. The jury (or judge, at a bench trial) relies on two types of evidence to decide the case: physical evidence, such as documents and photographs, and the testimony of witnesses.

### I. Standards of Proof

In criminal cases, the defendant can be convicted only if the jury (or judge) believes that the government has proven guilt "beyond a reasonable doubt." A jury verdict must be unanimous, meaning that all twelve jurors must vote either "guilty" or "not guilty." The jurors (or judge) must be certain that the defendant committed the crime; they can have no "reasonable doubt" about it. If the jurors cannot agree, the judge declares a mistrial, and the case must be presented to another jury.

In civil cases, the jury or judge decides for the plaintiff if a preponderance of the evidence shows that the defendant failed to perform a legal duty and violated the plaintiff's rights. A "preponderance of the evidence" means that more of the evidence favors the plaintiff's position than favors the defendant's.

13

A-001087

### J. Admission of Evidence

The federal courts have rules for determining what evidence may be presented in a court proceeding. Sometimes a lawyer tries to present evidence to the jury that may not be proper in light of these rules. The opposing lawyer has a right to object to the questionable evidence, and the judge must decide if it is admissible or not. If the judge rules that the evidence may not be admitted, the opposing lawyer's objection is "sustained." If the judge allows the evidence to be presented, the objection is "overruled."

### K. Sentencing

The judge sets a date for a sentencing hearing for criminal defendants who plead guilty or are found guilty at trial. Congress has required judges to base sentences on a system of guidelines that reflect the type of offense and background of the offender. Before the sentencing hearing, a federal probation officer prepares a presentence report to help the judge determine the proper sentence, which can be imprisonment, fines, supervision by a probation officer, or some combination of the three types of sentences.

## VIII. The Appeal Process

The task of the federal courts of appeals and the procedures they follow differ greatly from those of the district courts.

### A. Who Can Appeal

A defendant found guilty after a criminal trial and the losing party in a civil trial both have a right to appeal their case to the court of appeals. Appeal is not available to parties who settle a civil suit without trial, or to a criminal defendant who pleads guilty (except that guilty-plea defendants can sometimes appeal their sentences). Appeals are usually based on a claim that the district court made an error either in procedure or in interpreting the law. The government, however, cannot appeal if a criminal defendant is found not guilty. Otherwise, the defendant would be subjected to "double jeopardy," which is forbidden by the Fifth Amendment to the Constitution. The government can appeal in civil cases, as any other party can.

### B. Types of Appellate Decisions

A court of appeals can reverse a district court's decision if it finds that the trial judge interpreted the law incorrectly. When the district court is reversed, the case is usually sent back ("remanded") to the district court for further proceedings or another trial. A court of appeals can also affirm a decision of a trial judge and does so in most cases.

### C. Appellate Procedure

Courts of appeals usually deliberate in panels of three judges, who decide the case for the entire court. Sometimes, when the parties request it, the entire appeals court will reconsider a panel's decision (called an "en banc" sitting). Courts of appeals review the record (the transcript of the trial and the documents filed in the case), along with written briefs presenting the arguments for both sides. They do not use jurors, witnesses, or court reporters,

14

and the parties are usually not present. The judges may hear oral argument by lawyers in a formal courtroom session, but many cases are decided on the basis of the briefs and the record alone, without oral argument. If oral argument is permitted, the lawyers are given a limited amount of time to explain the case to the judges. The judges frequently ask them questions about their case.

## D. Appellate Opinions

The judges on the panel discuss the case in private, consider any relevant prior cases ("precedents"), and reach a decision. At least two of the three judges must agree on the outcome. One judge is chosen to write an opinion, which explains the decision. A judge who disagrees with the majority opinion may file a dissent, giving the reasons for the disagreement. Many appellate opinions are published in books called "reporters," which are read by other judges and by lawyers looking for precedents to guide them in their own cases. The accumulated judicial opinions make up case law, which is usually an accurate predictor of how future cases will be decided.

## E. Supreme Court Review

A party who is not satisfied with the decision of the court of appeals may petition the Supreme Court to accept the case for review. Like judges on the courts of appeals, the nine justices on the Supreme Court hear oral arguments, deliberate, render their decisions, and write opinions on cases they decide to review. Unlike the courts of appeals, however, the Supreme Court is not required to hear each case presented to it. It is a different kind of appeals court—its major function is not correcting errors made by trial judges, but clarifying the law when other courts disagree about the interpretation of the Constitution or federal law. Each year the Supreme Court reviews only about 100 of some 7,000 cases that losing parties ask it to review. The Court's decisions in these cases set precedents for the interpretation of the Constitution and federal law that all other federal and state courts must follow.

15

# CHAPTER 2: FEDERAL CRIMINAL PROCEEDINGS

The Court Interpreter's Act provides for the use of interpreters in matters instituted by the United States where the defendant or a witness speaks only or primarily a language other than the English language or suffers from a hearing impairment. Most frequently, this occurs in the context of a criminal case. This section will provide an overview of criminal proceedings in the Federal Courts. Interpreters should fully and accurately interpret everything that is said, either to or from English as required, during the proceeding for which they are providing services.

## I.    Arrest and Booking

After being arrested, the defendant is brought to the federal court which has jurisdiction over the matter and is processed. The first step of processing is the booking, and this takes place in the United States Marshal Service's "lock-up."

## II.    Interview with Defense Attorney

While awaiting a court appearance, the defendant will meet with an attorney. This may be a retained attorney hired by the defendant, an Assistant Federal Public Defender, or a court appointed Criminal Justice Act (CJA) panel attorney. The interpreter will assist the CJA panel attorney or Public Defender attorney during this interview which could take place in court before the hearing begins or at the United States Marshal Service's "lock-up." Either at this point or right before the initial appearance, the interpreter may be asked to sight translate the charging documents to the defendant.

## III.    Pretrial Services Interview

Prior to or very soon after the defendant's initial appearance in court, a pretrial services officer, with the assistance of the interpreter, will interview the defendant concerning his/her background, family status, family ties, friends in the area and the community, education, employment and prior convictions and arrests.

## IV.    Initial Appearance

The initial appearance is usually the defendant's first contact with the federal court system in a criminal case.

### A. Charges

If possible, the defense is furnished a copy of the complaint in advance of the initial appearance. An interpreter is used at proceedings where the defendant does not comprehend adequately the language in which the proceedings are conducted.

### B. Pretrial Release

Pretrial release and detention of criminal defendants are governed by the Eighth Amendment to the United States Constitution ("Excessive bail shall not be required"), and by the Bail Reform Act of 1984, (18 U.S.C. § 3142). In such event, the magistrate judge "shall"

16

A-001090

impose the least restrictive further condition or combination of conditions that will assure the defendant's appearance and community safety (18 U.S.C. § 3142(c)(1)(B)).

## C. Detention Hearing

Pretrial detention may be ordered if, after a detention hearing, the magistrate finds that no condition(s) of release will reasonably assure the defendant's appearance or community safety.

## D. Nebbia Hearings

In considering the release of a person on a secured personal or surety bond, the magistrate judge may conduct an inquiry concerning the source of the property to be designated for potential forfeiture or offered as collateral to secure the bond.

## V. Preliminary Examination

Unless an indictment has been returned by a grand jury or an information has been filed by the Assistant U.S. Attorney within the time limits set forth in FED R. CRIM. P. 5.1 and 18 U.S.C. § 3060, a defendant who has been charged by complaint is entitled to a preliminary examination before a magistrate judge to determine whether probable cause exists. During the preliminary examination, the magistrate judge will hear testimony from both government witnesses and, in some cases, the defendant. If the magistrate judge finds that there is sufficient evidence to establish probable cause, the defendant is held to answer in the district court. On the other hand, if the magistrate judge determines that the Government has not established probable cause to believe both that an offense has been committed and that the defendant committed it, the pending complaint must be dismissed and the defendant discharged.

## A. Grand Jury Proceedings

A grand jury consists of 16 to 23 citizens who are charged by the court to decide whether there is probable cause to require a defendant to stand trial. If so, the grand jury returns an indictment against the defendant. Grand jury proceedings are conducted in secret, and the only people permitted to be present are the grand jury members, the government attorney, the witness under examination, the court reporter, and an interpreter, if required. [3]

## VI. Pretrial Preparation and Motions

During the period between the plea and the trial, the attorney will need to interview the defendant. Interpreters may be asked either to go to the jail with the attorney or to the attorney's office if the defendant is on pretrial release. During the interview, interpreters should use the consecutive mode to interpret completely and accurately all questions and statements. Everything said by the attorney and defendant must be interpreted. If interpreters do not understand or hear a statement they must ask that it be repeated rather than leave it out.

---

[3] *How Criminal Cases Move Through District Courts, Part II: Pretrial Proceedings*, JNET, http://jnet.ao.dcn/District/Court_Reporting/Policy_and_Guidance/Federal_Court_System_Overview/How_Criminal _Cases_Move_Through_The_District_Courts/Pretrial_Proceedings.html (last visited March 27, 2013).

17

## A. Pretrial Motions[4]

Sometimes, prior to trial, motions are made by one or both parties requesting a ruling by the court on a matter in dispute. The types of motions that can be made during pretrial proceedings include a discovery motion, a motion to suppress evidence, a motion to sever a matter, a motion based on defects in the indictment or information, and a motion to dismiss the case. If the court must resolve questions of fact in order to rule on the motion, an evidentiary hearing will be held. Interpreters may be required to provide services at these hearings when an LEP defendant is present.

## VII.   Case Disposition Without Trial: The Guilty Plea

There are cases when a defendant decides to plead guilty rather than go to trial. This often happens after a motion to suppress evidence is denied. The plea of guilty is made before the presiding judicial officer assigned to the case, and in the presence of the assistant United States attorney and the defense attorney.

## VIII.   Status Conferences

Status conferences consist of determining whether the parties can stipulate to certain facts and whether or not there is a possibility of disposition and, if there is none, in setting a final day for the initiation of the trial, either court trial or jury trial.

## IX.   Criminal Bench Trials

A criminal bench trial occurs when a defendant waives the right to a trial by jury and consents to be tried by the judge alone, as sole finder of fact. These are often court trials where the judge hears and sees all the evidence and then decides the case by applying the "beyond a reasonable doubt" standard of proof. There can also be bench trials on stipulated facts, i.e., in cases where the parties agree to all or most of the facts of the case and present evidence only as to those facts not included in the stipulation. The court should provide a copy of the joint stipulation of facts to the interpreter in advance of the proceeding.

## X.   Criminal Jury Trials

### A. Impaneling of the Jury

Depending on the type and duration of the case, a jury panel consisting of 30-100 people, is called. The judge questions the jurors during a procedure called voir dire (to speak the truth). The judge may make an unlimited number of juror challenges for cause, such as a juror's inability to decide the case impartially or base a verdict on the evidence alone. The attorneys for both sides also exercise their right to challenge the jurors. Peremptory challenges (challenges without cause) are limited in number for each party. Those jurors who are challenged are excused. The jury selection process must be interpreted simultaneously to the defendant(s). Interpreters may be asked to interpret in chambers or in a separate conference room during the selection process.

---

[4] *Id.*

18

### B. Judge's Initial Jury Instructions

The judge makes a brief statement to the jury concerning basic legal principles, the manner in which the trial is to proceed, the most important duties of the jurors and the behavior of the parties and attorneys toward the jurors. This must be interpreted simultaneously to the defendant(s).

### C. Opening Statements

The prosecutor (Assistant United States Attorney) will make an opening statement to the jury. The defense attorney may also make an opening statement, but may waive it or reserve his or her opening statement for later. The opening statement or statements must be interpreted simultaneously to the defendant(s).

### D. The Prosecution's Case

It is the government's burden to prove the charges against the defendant beyond a reasonable doubt. The Assistant United States Attorney presents evidence primarily through the examination (testimony) of witnesses. At the end of the government's case, the defense usually presents one or more motions, such as a motion for judgment of acquittal. All arguments, motions, and testimony must be interpreted to the LEP defendant.

### E. The Defense Case

If the defense makes no motions mentioned above, or if those motions are denied, the defense presents its case. However, the defendant is not required to present any evidence because the burden of proof always rests with the prosecution and never shifts to the defendant. Then, the same sequence of events applies for the government's case. If the LEP defendant takes the stand, the prosecution may cross-examine the defendant. All testimony must be interpreted using the simultaneous or consecutive modes as appropriate.

### F. Rebuttal

Rebuttal is a form of evidence that is presented to contradict or nullify other evidence presented by an adverse party.

### G. Closing Arguments

The closing arguments are the final arguments made by the attorneys during the case. In the closing argument, each attorney summarizes the evidence and attempts to persuade the jury to return a verdict in his/her favor. The closing arguments must be interpreted simultaneously to the defendant(s).

### H. Jury Instructions

After the closing arguments or summations, the judge instructs the jury as to the law applicable to the case, including the elements of the criminal offense and certain basic legal concepts such as the presumption of innocence and reasonable doubt.

19

The instructions are to be interpreted to the defendant(s) in the simultaneous mode. Obtaining a copy of the instructions and other written material will help ensure accuracy in the interpretation.

## I. Jury Deliberation

Jury deliberation may last any length of time. The jury may request portions of the testimony to be read back by the court reporter, or instructions to be clarified. All read-backs must be interpreted simultaneously for the defendant, unless the defendant's presence has been waived.

## J. Verdict

After having deliberated and arrived at a finding, the jury delivers its verdict in open court. The verdict of the jury must be unanimous. Despite the fact that there may have been a break in the proceedings while the jury deliberated, an interpreter must be present to interpret when the jury delivers the verdict. During deliberation, the court may ask the interpreter to remain either in or close to the courthouse, or to provide a contact number at which he or she can be reached.

### 1. Not Guilty (Acquittal)

The judge discharges the defendant. Bail, if there was any, is exonerated.

### 2. Guilty

If the defendant is found guilty, a date is set for the sentencing hearing.

### 3. Hung Jury

If the jury cannot reach a unanimous verdict, the judge declares a mistrial and discharges the jury.

## K. Presentence Report

The U.S. probation officer assigned to the case will conduct an investigation of the defendant's background and will conduct an interview with the defendant and sometimes also with the defendant's family or friends. If the defendant is a LEP individual, an interpreter will be assigned to assist and will interpret everything that is said using the consecutive mode.

## L. Sentencing Hearing

The sentencing hearing in many cases is a lengthy evidentiary hearing, and sometimes the testimony of witnesses is taken. Interpreters will use the simultaneous mode for arguments and discussions and the consecutive mode for testimony during questions and answers. After the sentence is imposed, the judge advises the convicted defendant of appeal rights.

20

A-001094

## XI.    Misdemeanor Cases

Misdemeanors are offenses punishable by a term of imprisonment of one year or less. Petty offenses and infractions are subcategories of misdemeanors. A defendant charged with a misdemeanor may elect to be tried before either a magistrate judge or a district judge. In order to be tried before a United States magistrate judge, the defendant must sign a written consent which specifically waives the right to trial, judgment and sentencing before a district judge. Consents to proceed before the magistrate judge are obtained in virtually all cases.

## XII.   Group Hearings and Multiple Defendant Cases

It is the responsibility of the Court to provide interpreters in multiple-defendant criminal actions and multiple-party civil actions initiated by the United States. Courts may also choose to place multiple defendants facing the same or similar charges or material witnesses into small groups for hearings. A clear line should be drawn between group hearings, which are common even in smaller courts and via the Telephone Interpreting Program (TIP), and hearings that are held en masse. Group hearings are handled in a manner which allows the Court to address the defendants in the group individually. Questions, answers or comments made by the defendants are also heard individually.

Wireless interpreting equipment is highly recommended for in-person group hearings and multiple phone headsets are required for hearings covered by TIP. The interpreter must ensure that all individuals in a group are able to hear the interpretation at all times. It is also important that all individuals in the group be close to a microphone so the interpreter and the court can hear any answer or question they may have for the Court.

It is recommended that the Court or the interpreter explain to the individuals in the group how the interpretation process will work and the order in which they are to answer. A quick orientation will prevent all defendants from answering at once or out of order. Having individual answers will guarantee a clear record and facilitate interpretation.

21

A-001095

# CHAPTER 3: OVERVIEW OF COURT INTERPRETING

Court interpreters are considered <u>officers of the court</u> with the specific duty and responsibility of interpreting between the languages specified. Interpreters help <u>ensure access to justice</u> by facilitating the full participation of LEP individuals in the judicial process.

## I.  Interpreter Skills

Although the federal courts make extensive use of written documents, court interpreters deal primarily in the oral rendition of speech from one language into another during the course of judicial proceedings. Interpretation differs from translation, which is the transfer of written words from one language to another. Interpretation can also be the transfer of discourse from verbal to sign (symbol) language and vice versa. Sight translation involves rendering written text from the source language orally into the target language.

Interpretation goes beyond having the ability to speak two languages. Interpreters must possess mastery of the source and target languages, as well as interpreting skills. Courts will often verify an interpreter's <u>credentials</u> on the record, through a structured <u>voir dire</u> process. Professional interpreter organizations and linguistic experts identify the following aspects needed for effective interpreting:

- Comprehensive knowledge of the source and target language.
- Ability to listen, comprehend, and discern the message conveyed in the source language.
- Ability to grasp and maintain communication logic and distinguish between primary and secondary points.
- Technical ability for short-term memory, simultaneous listening and note-taking.
- Well-developed vocabulary, specialized terminology, and general knowledge of many subject areas.
- Message production, good diction, and pronunciation.
- Knowledge and experience of varying dialects, colloquialisms, regionalisms and cultural differences.
- Ability to conserve language register (formal to formal and informal to informal) for a variety of speakers with divergent educational backgrounds.
- Knowledge of idiomatic expressions in both languages.
- A well-developed sense of professionalism and respect for ethical considerations.

## II.  Language Skills

Professional interpreters have a mastery of at least two languages (source and target), excellent skills in the principal modes of interpretation (<u>simultaneous and consecutive</u>), extensive knowledge of the subject matter vocabularies in question, plus mental and physical stamina. Court interpreters are highly skilled language specialists who perform sight translation, simultaneous, and consecutive interpretation. They convert the words of the speaker to the language of the listener. Interpreters are never the authors of the speech, but they must grasp the meaning and style of discourse rapidly, find an equivalent in another language, and articulate it. A common error is the belief that any person who knows two languages can interpret.

22

A-001096

While court interpreting may appear to be a field that primarily requires knowledge of legal vocabulary, the subject matter to be interpreted is often quite diverse. In an average criminal trial, sophisticated legal arguments will be interpreted, as well as the testimony of handwriting, ballistics, fingerprint, chemical, DNA, and drug experts. Interpreters must have a broad active and passive vocabulary and an excellent knowledge of regionalisms, idioms and dialectical variations of the countries in which their language is spoken. Court interpreters must have these variations of language readily available due to the diversity of witnesses and defendants.

## III.   Modes of Interpretation

### A. Simultaneous

Simultaneous interpretation is a running rendition of everything said in the source language into the target language. Simultaneous interpretation requires that interpreters listen and speak almost concurrently with the primary speaker whose words are being translated. In effect, interpreters are simultaneously performing two tasks in the field of language communication that are otherwise practiced separately: speech and understanding.

It is important to note that interpreters are not performing word-for-word translation, but transferring thoughts and ideas accurately and completely from a source to a target language. Concentrated listening is crucial for an exact rendering of the original message; thus, the importance of adequate listening conditions, acoustics, correct usage of microphones by speakers, and availability of appropriate equipment.

### B. Consecutive

Consecutive interpretation is the "question and answer" mode in which the speaker completes a statement and the interpreter begins to interpret after the statement is completed. The consecutive mode is most often utilized with witnesses on the stand. Traditionally, consecutive interpreting has been divided into long and short versions. While the long method is generally reserved for some forms of conference interpreting, the short method is preferred in the legal setting because it emphasizes the verbatim rendition required in legal proceedings. Short consecutive is a mode by which interpreters relay a message in the target language in a sequential manner after the speaker. Several unique considerations and skills come into play when consecutive interpreting is used. These include:

#### I.   Length of Testimony

Although the speaker may make natural pauses during testimony to allow for the interpretation, this is not always the case. At times, due to the complexity or excessive length of an utterance, interpreters may not be able to retain the complete message and will need the speaker to pause. Defense attorneys and prosecutors, when posing questions during direct or cross-examination, should pause at appropriate intervals. This will enable the interpreter to accurately and completely render the words into the target language.

23

## II. Interrupting the Speaker

When the need for an interruption arises, interpreters should gently signal to the speaker to pause. This may be accomplished through a hand gesture, a nod of the head, or eye contact. On occasion, such a signal may not be sufficient, in which case interpreters must interrupt the speaker.

## III. Note-Taking

Interpreters should always be prepared to take notes when interpreting. It is strongly recommended that dates, numbers, proper names, lists, addresses, etc., be written down. Note-taking should be simple, individualized and designed to assist memory.

## IV. Gestures and Emotions

When a witness makes hand gestures, i.e., indicating distances or size, interpreters should refrain from attempting to duplicate these gestures since it is impossible to preserve accuracy in such instances. Interpreters should always strive to maintain a professional demeanor and should be aware not to call unnecessary attention by making gestures or facial expressions while interpreting.

Studies of court interpreted proceedings conducted by Dr. Susan Berk-Seligson[5] have found that jurors' impressions of the defendant or witness are affected by the actions and demeanor of the interpreter. In her studies, which included actual and simulated court proceedings, she found that the unconscious manipulation of grammatical forms or modification of speech styles of witnesses, lengthening or shortening testimony, politeness, hedging and level of formality used by the interpreter were factors which influenced jurors.

## V. Mathematical Conversions

As a rule, interpreters must not make mathematical conversions or measurements; i.e., foreign currency denominations, meters into yards, kilos into pounds and so on.

## VI. Corrections by Interpreter

If the interpreter makes a mistake on the stand, it should be noted immediately by the interpreter to the presiding judicial officer for the record, or as soon as he/she becomes aware of the mistake.

## C. Sight Translation

Sight translation is conveying orally in one language the words of a text written in another language. It is a hybrid of translation and interpretation that requires the interpreter to first review the original written text, and then render it orally into the other language. The interpreter needs to read the entire text before rendering a sight translation in open court. The

---

[5] SUSAN BERK-SELIGSON, THE BILINGUAL COURTROOM: COURT INTERPRETERS IN THE JUDICIAL PROCESS (1st ed. 1990).

24

interpreter should inform the Court if additional time is needed to review the document before being able to render an accurate sight translation into the record.

## IV.   Accuracy of Performance

Interpreters must provide language services with accuracy and precision to help ensure due process for all defendants in criminal proceedings. The basic notion of fairness mandates that all defendants be fully and immediately informed of the testimony as it occurs. The accuracy of court interpretation may have a direct impact upon the decisions made during both criminal and civil proceedings. The potentially grave consequences of <u>inaccurate legal interpretation</u> mandate that great skill and caution be utilized by interpreters.

An important component of accuracy is the interpreter's ability to avoid the use of summary interpretation and provide a complete rendition of everything that is said into the target language. Summary interpretation involves paraphrasing or condensing the speaker's statement, thereby omitting some portion of what was said.[6] Such omissions are contrary to the interpreter's duty to render the speaker's complete message. Summary interpretation is not acceptable in legal proceedings because it improperly substitute's the interpreter's judgment as to which parts of a statement or testimony are most important and shifts the interpreter from their role as an impartial conduit to an active participant in the matter.

The conditions and circumstances of performing in a courtroom make the court interpreter's task of maintaining accuracy especially arduous. Unlike conference interpreters, who only have to concentrate on one speaker at a time and are generally given time to prepare in advance, court interpreters must concentrate on many speakers in a short time frame and preserve the style, language level, idiosyncrasies, idioms and other aspects of each speaker and speech pattern.

The poor acoustical quality of some courtrooms is often a vexing aspect of simultaneous court interpreting. Except in unusual circumstances, interpreters have no amplified audio support and they must often perform in oversized courtrooms without public address systems. Interpreters may find that loud, clear speech is not always delivered in courtrooms. Therefore, much interpreting will be performed while trying to decipher what has been said by someone whose back is toward the interpreter, whose voice may be low, and/or whose sentences are dropping off inaudibly. Court interpreters must hear and understand an argument or testimony while converting the words into the language of the LEP individual. Whenever possible, speakers should avoid facing away from the interpreter and use a microphone, being especially careful to remain within range of it. Since simultaneous interpreters have only a few seconds to spare, poor audibility is a major obstacle to accurate performance. If impediments to an accurate performance occur, the interpreter should bring them to the attention of the judge as respectfully and as unobtrusively as possible. By way of example, in the case of a soft-spoken party, it is helpful to rise and say, "Your Honor, the interpreter is having a hard time hearing", and in the case of a party who speaks or reads too quickly, "Your Honor, the interpreter is having a hard time keeping up."

---

[6] ARLENE M. KELLY, NAT'L ASS'N OF JUDICIARY INTERPRETERS & TRANSLATORS, SUMMARY INTERPRETING IN LEGAL SETTINGS 1 (2005).

A-001099

Among the measures that a court may implement to help interpreters operate at a high level of proficiency are:

1. Use multiple interpreters for lengthy or complex proceedings such as trials and evidentiary hearings, legal arguments on motions, and sentencing hearings with complex issues. See the Guide to Judiciary Policy, Volume 5, Chapter 5, §530.30.

2. Interpreters should vary position occasionally, e.g., combining sitting and standing beside the witness stand, if doing so will not interfere with the hearing.

3. The court should provide the interpreter drinking water and sufficient space in which to write and keep reference material. This could be either at a separate table or at the counsel table, if available. Courts should also provide all proper interpreting equipment that is available.

4. The court should provide attorneys with general guidance as to the demands that an interpreted proceeding will impose on them and other courtroom participants. This includes the use of sound equipment, the need to speak clearly, the position of the interpreter in the courtroom, the need to change interpreters periodically during lengthy proceedings, the possibility of interruption by the interpreter in order to clarify a matter, and the avoidance of social and ex parte contact with interpreters, etc.

## V.    Ethical Obligations

In addition to language considerations, court interpreters must always comply with certain ethical constraints and rules that are not binding on interpreters in other fields, such as escort and conference interpreting. Court interpreters must remain and appear independent of the defendants or witnesses, even though seated right next to them throughout lengthy proceedings. A simple conversation about the weather can be misinterpreted by English-only speaking jurors.

## VI.    Language Style and Register

The principal aim of interpreters is to give as exact a rendition as possible, using direct speech. This is true whether the language is nonsensical, fragmented and contradictory; or whether it is erudite, philosophical and highly technical discourse. Interpreters are tasked with remaining unobtrusive, so that the fact finders can concentrate on the witness rather than the interpreters.

## VII.    Interpreters in the Courtroom

### A. Location of Interpreters in Court

The interpreter should be located at a site in the courtroom where he or she can clearly hear and see the defendant, the witness, counsel, and the presiding judicial officer at all times. Normally, the most desirable location is between the witness stand and the defense table. Bulky objects should not be placed on the stand to block the interpreter's view of the witness. If the place of examination should shift from the witness stand, the interpreter should be able to follow

A-001100

the parties elsewhere in the courtroom in order to see and hear the speaker. See Appendix 6 for more information.

## B. Aids to the Interpreter

Suitable accommodations should be accessible to the interpreter if available, examples include: a chair at the witness stand, a chair at counsel table, and a glass of drinking water. There should be sufficient space in the courtroom for the interpreter to have a reasonable amount of material (i.e., glossary, dictionary) nearby for immediate reference. Additionally, many courts may have policies allowing interpreters in the courtroom to utilize electronic dictionaries, internet enabled tablet devices, or laptop computers for access to reference materials. Interpreters should check the local court rules to determine if and when they may use any of these types of resources while in the courtroom.

## C. Number of Interpreters per Proceeding: Team/Tandem Interpreting

The number of interpreters may vary according to the type and complexity of the proceeding and the availability of equipment for the number of defendants that require interpreting services. To mitigate the effects of interpreter fatigue and safeguard the integrity of interpreting services, long and/or complex proceedings may be covered by two interpreters through team, or tandem interpreting. See Guide to Judiciary Policy, Volume 5, Chapter 5, §530. When team interpreting is used, the passive interpreter should remain seated in close proximity to the active interpreter and refrain from leaving the courtroom for any significant length of time without good reason.

It is the duty of each member of a team to provide the other member(s) with all support necessary to ensure the accuracy of the interpretation in a manner consistent with the dignity and decorum of a court of law. The passive interpreter should be ready to whisper words or pass a written note to the active interpreter in case a lapse of memory or other issue arises. The passive interpreter should take care of any problems arising with the equipment the team uses and write down things such as names, addresses, and other numbers that come up, making them available for easy visual reference by the active interpreter. This reduces the amount of attention that the active interpreter must pay to things other than the interpreting task. Where necessary, the passive interpreter should research terminology for the active interpreter.

## D. Challenges and Corrections to Interpretation

When the interpreter first begins to interpret at the witness stand, the presiding judicial officer will generally identify the court interpreter as a neutral party and explain that the interpreter's rendition in English will be the record, rather than the utterance by the LEP individual. Even if the presiding judicial officer does not make a formal statement to this effect, the interpreter should still interpret the proceeding from a neutral perspective, regardless of any expectations which may be held by the parties to the case.

Should an attorney appropriately correct the interpretation, the interpreter should state "the interpreter stands corrected" followed by the correct word or phrase. When not in agreement with the correction, the interpreter should state "the interpreter stands by the interpretation." Because there is the possibility for mistrial in a situation where the interpretation is challenged, and because the interpreter must endeavor never to be the cause of a mistrial, it is important for the

27

interpreter to create a clear record to either correct or support the rendition that is challenged. A record to support the interpretation will reflect: (1) the question by the attorney; (2) the answer by the witness; (3) the objection by the attorney; and (4) a corrected answer by the witness. In any discussion that develops as a result of the challenge, the interpreter should address only the presiding judicial officer, <u>not the attorneys</u>.

A challenge from the defendant or a witness should be handled in much the same manner as above. A simple statement of correction or support by the interpreter should suffice. In any discussion, interpreters should address only the presiding judicial officer. Under certain circumstances, interpreters may request an opportunity to clarify the word or phrase at issue with the defendant/witness. This request should be made openly on the record. It should be followed by a statement of correction or support.

A correction requested by the presiding judicial officer should be tactfully handled in the same manner as a correction from any other source. Interpreters either should correct or support the interpretation for the record.

Corrections and disputes among team interpreters over interpretation should be handled privately and quietly, involving the court only if it is deemed necessary. If a correction is felt necessary, it should be whispered to the active interpreter or written down on a note passed only to that interpreter. <u>Corrections to the interpretation</u> should be handled in a professional, courteous manner, as soon as practically possible without disrupting the proceedings.

## VIII.   Simultaneous Interpretation of Recorded Audio

At a hearing or trial, interpreters may occasionally be requested to simultaneously interpret the contents of an audio file on the record. Whenever possible, interpreters should refrain from providing this type of on-the-spot simultaneous interpretation of audio recordings.[7] Interpretations of audio recordings under these circumstances will often not meet appropriate evidentiary standards due to poor sound quality, lack of preparation and research time, and lack of proper courtroom technology.[8]

In the event that the interpreter is ordered to perform this task, there are a few guidelines that should be followed. First, "the interpreter should make it clear to all parties that an immediate rendition of the material in question will likely fail to meet the high standards" of the interpreter's oath, which "mandates faithfulness and accuracy to the best of the interpreter's ability."[9] While rendering the interpretation, interpreters must refrain from making any comments or gestures indicating approval, disapproval, or opinion as to the accuracy of the transcribed translation in question, or in any way interfering with the playing of the recording. If asked or consulted in open court on the accuracy of a transcribed translation, interpreters should withhold expressing an opinion until reasonably sure of having sufficient time and opportunity to review the recording in question. Interpreters should also refrain from expressing a professional opinion outside the courtroom since terms taken out of context may vary in meaning.

---

[7] *See generally* TERESA C. SALAZAR & GLADYS SEGAL, NAT'L ASS'N OF JUDICIARY INTERPRETERS & TRANSLATORS, ONSITE SIMULTANEOUS TRANSLATION OF A SOUND FILE IS NOT RECOMMENDED 1-3 (2006).
[8] *Id.*
[9] *Id.* at 2.

28

# CHAPTER 4: INTERPRETER SUPERVISION AND CONTRACTING

## I.   Orientation of Interpreters

Sufficient orientation should be provided to new or inexperienced staff and contract court interpreters to enable them to serve effectively and without undue stress. The study of certain chapters of this manual, a tour of the courtroom, review of the case materials and a brief conversation with the defendant or witness may be useful when preparing for the assignment. Additional in-depth orientation about the court and case may also be necessary. Interpreters should also inquire about the location and usage of any available interpretation equipment or resources that the court may have.

Interpreters from outside the federal courts, in spite of their interpreting experience, may not have a sufficient understanding of the legal terminology, procedure, protocol, demeanor and the duties and responsibilities of the federal court interpreter. Similarly, while experience as an interpreter in state court may be helpful to the interpreter, the differences between the two systems are significant and may be confusing. Guidance in this area should be available to the interpreter wherever possible. For example, measures should be taken to ensure that interpreters are aware of the type of proceeding assigned. This will assist them in determining the relevant terminology likely to be encountered and also help the LEP defendant/witness to understand the nature of the proceeding. Additionally, inexperienced interpreters should be made familiar with the proper role and function of interpreters in the court proceeding, so as to guard against unwanted personal interaction with the defendant or witnesses, or other considerations such as being unobtrusive and advance preparation for future assignments.

## II.   Administration of Oath

Each interpreter takes an oath to properly discharge role and responsibilities of an interpreter, including interpreting accurately for the speakers in the proceeding and preparing properly for the assignment. In some courts, the duty of swearing the interpreter is delegated to the courtroom clerk.

Policies with regard to the oath of interpreters vary from court to court. In some, contract interpreters are sworn each day before court convenes. In others, administering the oath at the beginning of a proceeding is sufficient for the entire case, regardless of duration. Some districts keep a detailed, written oath on file, which is executed during the orientation process in order to dispense with the need to swear the interpreter in before each individual hearing.

## III.   Staff Interpreters

Staff interpreters are employees of the Office of the Clerk of Court. When a staff court interpreter has no case preparation or in-court work to perform, the clerk may assign other duties that take advantage of bilingual skills, such as telephone and over-the-counter assistance to non-English speakers. At the discretion of the clerk, staff interpreters may also be assigned to assist other courts through the Telephone Interpreting Program (TIP), if the court has the equipment necessary to provide this service. This practice is encouraged, results in cost savings to the

29

judiciary, and also helps ensure that federally certified court interpreters are available when needed.

## IV.  Contract Court Interpreters

A contract court interpreter is not an employee of the court, but is an independent contractor used for short durations to provide interpreting services. Contract court interpreters may be AO certified or otherwise qualified interpreters. For more information on interpreter certification and qualifications, see Appendix 4 of this document and the *Guide to Judiciary Policy, Volume 5, Chapter 3*.

### A. Terms and Conditions

Once a contract court interpreter has been identified for an event, his or her classification, qualifications, and suitability have been determined, and terms negotiated, the court must provide the interpreter with a completed Contract for Court Interpreter Services, comprising Part I, Terms and Conditions, and Part II, the Rate and Information Sheet. The Rate and Information Sheet must be signed by the interpreter and the original returned to the court to indicate that the interpreter has agreed to comply with the rates and information indicated in the Contract for Court Interpreter Services document. The Contracting Officer should ensure that the interpreter is given a copy of the contract with both signatures on it. A copy of the current Terms and Conditions for contract court interpreters can be found online by following the link at http://www.uscourts.gov/FederalCourts/UnderstandingtheFederalCourts/DistrictCourts/Court Interpreters.aspx.

### B. FBI Background Checks

All interpreters who wish to work for the federal courts must be fingerprinted and submit to an FBI background check. The first court to use an interpreter who has not had an FBI background check should initiate the background check; however, any federal court may request the background check. Background check information provided by the FBI to the AO is viewable only by appointing officials and their chief deputies with a specific need for the information.

### C. Fees for Daily Work

The approved maximum daily fees for AO certified, professionally qualified and language-skilled interpreters are set out in the Director's Fee Schedule, which is updated periodically. Daily fees should be negotiated between the contract court interpreter and the court prior to completing the Contract for Court Interpreter Services. Contract court interpreter rates are based on a half-day/full-day scale.

The AO provides a standard Contract for Court Interpreter Services, which includes two parts. Part I is the standard Terms and Conditions which should be used by the courts in their contracts with interpreters. Part II is the Rate and Information Sheet which must be personalized for each interpreter with the negotiated terms and conditions of payment and

30

reimbursement. The regulations in the Guide to Judiciary Policy pertaining to court interpreters may be incorporated in the contract by reference.

Interpreters whose services are authorized under the Criminal Justice Act (CJA), 18 U.S.C. § 3006A, and related statutes to facilitate communication between counsel and the defendant out-of-court are generally paid under the CJA. Therefore, the rates set forth in the Director's Fee Schedule are not mandatory in these instances, and the interpreter should negotiate the fee (utilizing the Fee Schedule, hourly rates, or other appropriate basis) with the CJA attorney. Unless unusual circumstances exist, however, the rate paid to interpreters pursuant to subsection (e) of the CJA should not exceed the rates provided by the Director's Fee Schedule or the presumptive or maximum rates adopted by a court. See the Guide to Judiciary Policy, Volume 5, Chapter 2, § 220.10 and Guide to Judiciary Policy, Volume 7A, § 320.15.10 and 320.15.20.

### D. Travel and Expenses

Contract court interpreters who are required to travel beyond the local commuting distance in the performance of their assigned duties are entitled to reimbursement in accordance with the Judiciary Staff Travel Regulations set out in the Guide to Judiciary Policy, Volume 19, Chapter 4. The local commuting distance to the courthouse is set at the discretion of each court, but it is typically an area within a 30 mile radius of the courthouse. Travel expenses within the local commuting distance have already been considered by the AO in setting the rates in the Director's Fee Schedule.

Contract court interpreters may only claim reimbursement for subsistence expenses on an actual expense (itemized) basis, with receipts for lodging and for any expense of more than $25, up to the GSA per diem rate for the date and location. Time spent traveling will generally be compensated at the daily rate of pay, i.e., minimum of a half-day fee for same day travel outside of the local commuting distance when in-court time does not exceed 4 hours.

Expenses other than ordinary travel and subsistence should be avoided if possible. The clerk should inform the contract interpreter in advance of the policy regarding such expenses. An interpreter's rental of equipment for multiple-party interpretation cannot be reimbursed.

### E. Procedures for Payment

As noted in the Guide to Judiciary Policy, the interpreter must submit an invoice for services. The Terms and Conditions for Contract Court Interpreter Services, Section 7.1 specifies that an original invoice and/or local court form for services rendered shall be submitted by the interpreter within 30 days of completion of a given assignment to the address indicated for invoices in the Rate and Information Sheet. If the interpreter is entitled to travel subsistence, an AO Form 1012, Travel Voucher, should be completed and attached. Copies of forms should be given to the interpreter at the beginning of the proceeding, usually as part of the orientation to the court. If the interpreter is to be paid during the course of a lengthy proceeding for an assignment that extends beyond one month, the contract court

A-001105

interpreter may submit an interim invoice. Payment may not be provided before the work is performed.

## F.  CJA Voucher Processing

In cases where the Office of the Clerk is charged with processing CJA interpreter vouchers, the clerk must be familiar with the statutory provisions regarding expert or other services. Limits are placed on the amounts that may be paid without advance judicial approval; limits also apply with respect to approval of the payment claim by the chief judge of the circuit court of appeals (or delegate circuit judge) and advance approval of the chief circuit judge may also be recommended or required. Since the specific fee allowances fluctuate periodically as a result of statutory changes, the clerk should refer to the Guidelines for Administering the CJA and Related Statutes, Volume 7A, Guide to Judiciary Policy, for current information. The relevant voucher is CJA Form 21, Authorization and Voucher for Expert and other Services or CJA Form 31, Death Penalty Proceedings: Ex Parte Request For Authorization and Voucher For Expert and Other Services. These limits do not apply and these vouchers are not used when a federal defender organization retains the services of an interpreter.

32

A-001106

## APPENDIX 1: THE COURT INTERPRETERS ACT

### 28 U.S.C. §1827 – Interpreters in courts of the United States

(a) The Director of the Administrative Office of the United States Courts shall establish a program to facilitate the use of certified and otherwise qualified interpreters in judicial proceedings instituted by the United States.

(b)

(1) The Director shall prescribe, determine, and certify the qualifications of persons who may serve as certified interpreters, when the Director considers certification of interpreters to be merited, for the hearing impaired (whether or not also speech impaired) and persons who speak only or primarily a language other than the English language, in judicial proceedings instituted by the United States. The Director may certify interpreters for any language if the Director determines that there is a need for certified interpreters in that language. Upon the request of the Judicial Conference of the United States for certified interpreters in a language, the Director shall certify interpreters in that language. Upon such a request from the judicial council of a circuit and the approval of the Judicial Conference, the Director shall certify interpreters for that circuit in the language requested. The judicial council of a circuit shall identify and evaluate the needs of the districts within a circuit. The Director shall certify interpreters based on the results of criterion-referenced performance examinations. The Director shall issue regulations to carry out this paragraph within 1 year after the date of the enactment of the Judicial Improvements and Access to Justice Act.

(2) Only in a case in which no certified interpreter is reasonably available as provided in subsection (d) of this section, including a case in which certification of interpreters is not provided under paragraph (1) in a particular language, may the services of otherwise qualified interpreters be used. The Director shall provide guidelines to the courts for the selection of otherwise qualified interpreters, in order to ensure that the highest standards of accuracy are maintained in all judicial proceedings subject to the provisions of this chapter.

(3) The Director shall maintain a current master list of all certified interpreters and otherwise qualified interpreters and shall report periodically on the use and performance of both certified and otherwise qualified interpreters in judicial proceedings instituted by the United States and on the languages for which interpreters have been certified. The Director shall prescribe, subject to periodic review, a schedule of reasonable fees for services rendered by interpreters, certified or otherwise, used in proceedings instituted by the United States, and in doing so shall consider the prevailing rate of compensation for comparable service in other governmental entities.

33

**(c)**

    **(1)** Each United States district court shall maintain on file in the office of the clerk, and each United States attorney shall maintain on file, a list of all persons who have been certified as interpreters by the Director in accordance with subsection (b) of this section. The clerk shall make the list of certified interpreters for judicial proceeding available upon request.

    **(2)** The clerk of the court, or other court employee designated by the chief judge, shall be responsible for securing the services of certified interpreters and otherwise qualified interpreters required for proceedings initiated by the United States, except that the United States attorney is responsible for securing the services of such interpreters for governmental witnesses.

**(d)**

    **(1)** The presiding judicial officer, with the assistance of the Director of the Administrative Office of the United States Courts, shall utilize the services of the most available certified interpreter, or when no certified interpreter is reasonably available, as determined by the presiding judicial officer, the services of an otherwise qualified interpreter, in judicial proceedings instituted by the United States, if the presiding judicial officer determines on such officer's own motion or on the motion of a party that such party (including a defendant in a criminal case), or a witness who may present testimony in such judicial proceedings—

        **(A)** speaks only or primarily a language other than the English language; or

        **(B)** suffers from a hearing impairment (whether or not suffering also from a speech impairment)

    so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witness' comprehension of questions and the presentation of such testimony.

    **(2)** Upon the motion of a party, the presiding judicial officer shall determine whether to require the electronic sound recording of a judicial proceeding in which an interpreter is used under this section. In making this determination, the presiding judicial officer shall consider, among other things, the qualifications of the interpreter and prior experience in interpretation of court proceedings; whether the language to be interpreted is not one of the languages for which the Director has certified interpreters, and the complexity or length of the proceeding. In a grand jury proceeding, upon the motion of the accused, the presiding judicial officer shall require the electronic sound recording of the portion of the proceeding in which an interpreter is used.

A-001108

**(e)**

(1) If any interpreter is unable to communicate effectively with the presiding judicial officer, the United States attorney, a party (including a defendant in a criminal case), or a witness, the presiding judicial officer shall dismiss such interpreter and obtain the services of another interpreter in accordance with this section.

(2) In any judicial proceedings instituted by the United States, if the presiding judicial officer does not appoint an interpreter under subsection (d) of this section, an individual requiring the services of an interpreter may seek assistance of the clerk of court or the Director of the Administrative Office of the United States Courts in obtaining the assistance of a certified interpreter.

**(f)**

(1) Any individual other than a witness who is entitled to interpretation under subsection (d) of this section may waive such interpretation in whole or in part. Such a waiver shall be effective only if approved by the presiding judicial officer and made expressly by such individual on the record after opportunity to consult with counsel and after the presiding judicial officer has explained to such individual, utilizing the services of the most available certified interpreter, or when no certified interpreter is reasonably available, as determined by the presiding judicial officer, the services of an otherwise competent interpreter, the nature and effect of the waiver.

(2) An individual who waives under paragraph (1) of this subsection the right to an interpreter may utilize the services of a noncertified interpreter of such individual's choice whose fees, expenses, and costs shall be paid in the manner provided for the payment of such fees, expenses, and costs of an interpreter appointed under subsection (d) of this section.

**(g)**

(1) There are authorized to be appropriated to the Federal judiciary, and to be paid by the Director of the Administrative Office of the United States Courts, such sums as may be necessary to establish a program to facilitate the use of certified and otherwise qualified interpreters, and otherwise fulfill the provisions of this section and the Judicial Improvements and Access to Justice Act, except as provided in paragraph (3).

(2) Implementation of the provisions of this section is contingent upon the availability of appropriated funds to carry out the purposes of this section.

(3) Such salaries, fees, expenses, and costs that are incurred with respect to Government witnesses (including for grand jury proceedings) shall, unless direction is made under paragraph (4), be paid by the Attorney General from sums appropriated to the Department of Justice.

35

(4) Upon the request of any person in any action for which interpreting services established pursuant to subsection (d) are not otherwise provided, the clerk of the court, or other court employee designated by the chief judge, upon the request of the presiding judicial officer, shall, where possible, make such services available to that person on a cost-reimbursable basis, but the judicial officer may also require the prepayment of the estimated expenses of providing such services.

(5) If the Director of the Administrative Office of the United States Courts finds it necessary to develop and administer criterion-referenced performance examinations for purposes of certification, or other examinations for the selection of otherwise qualified interpreters, the Director may prescribe for each examination a uniform fee for applicants to take such examination. In determining the rate of the fee for each examination, the Director shall consider the fees charged by other organizations for examinations that are similar in scope or nature. Notwithstanding section 3302 (b) of title 31, the Director is authorized to provide in any contract or agreement for the development or administration of examinations and the collection of fees that the contractor may retain all or a portion of the fees in payment for the services. Notwithstanding paragraph (6) of this subsection, all fees collected after the effective date of this paragraph and not retained by a contractor shall be deposited in the fund established under section 1931 of this title and shall remain available until expended.

(6) Any moneys collected under this subsection may be used to reimburse the appropriations obligated and disbursed in payment for such services.

(h) The presiding judicial officer shall approve the compensation and expenses payable to interpreters, pursuant to the schedule of fees prescribed by the Director under subsection (b)(3).

(i) The term "presiding judicial officer" as used in this section refers to any judge of a United States district court, including a bankruptcy judge, a United States magistrate judge, and in the case of grand jury proceedings conducted under the auspices of the United States attorney, a United States attorney.

(j) The term "judicial proceedings instituted by the United States" as used in this section refers to all proceedings, whether criminal or civil, including pretrial and grand jury proceedings (as well as proceedings upon a petition for a writ of habeas corpus initiated in the name of the United States by a relator) conducted in, or pursuant to the lawful authority and jurisdiction of a United States district court. The term "United States district court" as used in this subsection includes any court which is created by an Act of Congress in a territory and is invested with any jurisdiction of a district court established by chapter 5 of this title.

(k) The interpretation provided by certified or otherwise qualified interpreters pursuant to this section shall be in the simultaneous mode for any party to a judicial proceeding instituted by the United States and in the consecutive mode for witnesses, except that the

36

presiding judicial officer, sua sponte or on the motion of a party, may authorize a simultaneous, or consecutive interpretation when such officer determines after a hearing on the record that such interpretation will aid in the efficient administration of justice. The presiding judicial officer, on such officer's motion or on the motion of a party, may order that special interpretation services as authorized in section 1828 of this title be provided if such officer determines that the provision of such services will aid in the efficient administration of justice.

(l) Notwithstanding any other provision of this section or section 1828, the presiding judicial officer may appoint a certified or otherwise qualified sign language interpreter to provide services to a party, witness, or other participant in a judicial proceeding, whether or not the proceeding is instituted by the United States, if the presiding judicial officer determines, on such officer's own motion or on the motion of a party or other participant in the proceeding, that such individual suffers from a hearing impairment. The presiding judicial officer shall, subject to the availability of appropriated funds, approve the compensation and expenses payable to sign language interpreters appointed under this section in accordance with the schedule of fees prescribed by the Director under subsection (b)(3) of this section.

37

## APPENDIX 2: VOLUME 5 OF THE GUIDE TO JUDICIARY POLICY

The *Guide to Judiciary Policy* serves as "a repository of the federal judiciary's administrative policies, as determined by the Judicial Conference of the United States or the Director of the Administrative Office, or as mandated by statute or other legal requirement," see Guide to Judiciary Policy, Vol 1, § 110.

The *Guide to Judiciary Policy, Volume 5: Court Interpreting* deals specifically with policy related to the court interpreting program. It provides policy guidance on a variety of interpreting topics, such as qualifications, contracting and payment, appointment authorities, and definitions. The Chapter headings within Volume 5 include:

- Chapter 1: Overview
- Chapter 2: Appointment and Payment Authorities
- Chapter 3: Court Management and Responsibility
- Chapter 4: Funding, Contracting, and Paying
- Chapter 5: Special Interpretation Services

Volume 5 is available on the judiciary's public website at http://www.uscourts.gov/uscourts/FederalCourts/Publications/Guide_Vol05.pdf.

A-001112

## APPENDIX 3: COURT INTERPRETER ETHICS AND PROTOCOL

**Standards for Performance and Professional Responsibility for Contract Court Interpreters in the Federal Courts[10]**

**Preamble**

Federally certified court interpreters are highly skilled professionals who bring to the judicial process specialized language skills, impartiality, and propriety in dealing with parties, counsel, the court, and the jury. All contract court interpreters, regardless of certification, are appointed to serve the court pursuant to 28 U.S.C. § 1827. When interpreters are sworn in they become, for the duration of the assignment, officers of the court with the specific duty and responsibility of interpreting between English and the language specified. In their capacity as officers of the court, contract court interpreters are expected to follow the Standards for Performance and Professional Responsibility for Contract Court Interpreters in the Federal Courts.

**1: Accuracy and Completeness**

Interpreters shall render a complete and accurate interpretation or sight translation that preserves the level of language used without altering, omitting, or adding anything to what is stated or written, and without explanation. The obligation to preserve accuracy includes the interpreter's duty to correct any error of interpretation discovered by the interpreter during the proceeding.

**2: Representation of Qualifications**

Interpreters shall accurately and completely represent their certifications, training, and pertinent experience.

**3: Impartiality, Conflicts of Interest, and Remuneration and Gifts**

*Impartiality.* Interpreters shall be impartial and unbiased and shall refrain from conduct that may give an appearance of bias. During the course of the proceedings, interpreters shall not converse with parties, witnesses, jurors, attorneys, or with friends or relatives of any party, except in the discharge of their official functions.

*Conflicts of Interest.* Interpreters shall disclose any real or perceived conflict of interest, including any prior involvement with the case, parties, witnesses or attorneys, and shall not serve in any matter in which they have a conflict of interest.

*Remuneration and Gifts.* Court interpreters shall accept remuneration for their service to the court only from the court. Court interpreters shall not accept any gifts, gratuities, or valuable consideration from any litigant, witness, or attorney in a case in which the interpreter is serving the court, provided, however, that when no other court interpreters are available, the court may authorize court interpreters working for the court to provide interpreting services to, and receive compensation for such services from, an attorney in the case.

---

[10] *Standards for Performance and Professional Responsibility*, ADMIN. OFFICE OF THE U.S. COURTS, http://www.uscourts.gov/uscourts/FederalCourts/Interpreter/Standards_for_Performance.pdf.

39

A-001113

**4: Professional Demeanor**

In the course of their service to the court, interpreters shall conduct themselves in a manner consistent with the dignity of the court and shall be as unobtrusive as possible.

**5: Confidentiality**

Interpreters shall protect the confidentiality of all privileged and other confidential information.

**6: Restriction of Public Comment**

Interpreters shall not publicly discuss, report, or offer an opinion concerning a matter in which they are or have been engaged, even when that information is not privileged or required by law to be confidential.

**7: Scope of Practice**

Interpreters shall limit themselves to interpreting or translating, and shall not give legal advice, express personal opinions to individuals for whom they are interpreting, or engage in any other activities which may be construed to constitute a service other than interpreting or translating while serving as an interpreter.

**8: Assessing and Reporting Impediments to Performance**

Interpreters shall assess at all times their ability to deliver their services. When interpreters have any reservation about their ability to satisfy an assignment competently, they shall immediately convey that reservation to the appropriate judicial authority.

**9: Duty to Report Ethical Violations**

Interpreters shall report to the proper judicial authority any effort to impede their compliance with any law, any provision of these Standards, or any other official policy governing court interpreting and legal translating.

A-001114

## APPENDIX 4: COURT INTERPRETER CERTIFICATION

I.   Languages for which certification is currently offered by the Administrative Office (AO)

      A.     Spanish

II.  Languages for which AO Certified Interpreters exist

      A.     Haitian Creole
      B.     Navajo
      C.     Spanish

The Court Interpreters Act of 1978 and the subsequent Amendments of 1988 (28 U.S.C. §§ 1827-1828) require the Director of the AO to define criteria for certifying interpreters qualified to interpret in federal courts. The Act also requires the Director to maintain a list of interpreters who have been certified. Certified interpreters are placed on an eligibility list from which court interpreters may be selected by the local officials of the United States District Courts. One important impact of the 1978 federal law was the creation and implementation of the Spanish/English Federal Court Interpreter Certification Examination (FCICE) in 1980.

The FCICE introduced to the court interpreting environment the concept of performance-based interpreter testing, which is based on rigorous testing practices. The requirements for passing the examination and for becoming a Federally Certified Court Interpreter (FCCI) reflect the knowledge, skills, and abilities required for court interpreting and the difficulty of the work. Although in the past the FCICE was offered for Spanish/English, Navajo/English, and Haitian Creole/English, it is now offered only for Spanish/English, since that is the primary interpreting need in the federal judiciary.

The FCICE is a two-phase examination of language proficiency and interpretation performance, consisting of a Written Examination and an Oral Examination. The two examinations are administered in alternate years. The first phase of the examination, referred to as the Written Examination, is a multiple-choice test of language proficiency in English and Spanish, and is offered in even-numbered years. The second phase is an Oral Examination that simulates the work that interpreters do in court, and is offered in odd-numbered years.

Candidates must pass the Phase One Written Examination to be eligible to take the Phase Two Oral Examination. Candidates who pass the Oral Examination will receive a letter and certificate from the Director of the AO awarding certification as a Federally Certified Court Interpreter (FCCI). The passing score is 75 percent for the Written Examination and 80 percent for the Oral Examination.

The examination is administered under the supervision of the AO, which contracts with specialists in court interpretation and language testing for development and administration of the examination.

A-001115

## APPENDIX 5: THE TELEPHONE INTERPRETING PROGRAM (TIP)

**Introduction**

The Administrative Office of the United States Courts (AO) has established the Judiciary's Telephone Interpreting Program (TIP) to provide remote interpretation for court proceedings where certified or highly qualified court interpreters are not reasonably available locally. In 1994, the Judicial Conference approved the program to provide simultaneous interpreting for short court proceedings. Some examples of short hearings are those that typically last 60 minutes or less, such as:

- Pretrial hearings;
- Initial appearances;
- Arraignments; and
- Probation and pretrial services interviews.

Most telephone interpreting through TIP is handled by staff interpreters at the provider courts. The provider courts contract with certified or otherwise-qualified interpreters for additional support as needed. All TIP services for events requiring Spanish are provided by federally certified court interpreters.

**Benefits**

The Judiciary's TIP provides many benefits, including:

- Ensures defendants in court proceedings initiated by the United States receive quality interpreting services from certified and highly qualified interpreters.

- Provides easy access to interpretation services when resources are not available locally.

- Increases court personnel efficiency in locating certified or otherwise qualified interpreters for scheduled court proceedings. Provider courts locate, contract with, conduct security checks on, and pay contract court interpreters providing TIP services.

- Reduces expenditures because staff and contract interpreters can be used for multiple assignments on the same day.

- Reduces time and travel cost associated with importing certified and otherwise qualified interpreters from outside the area.

**Provider Courts**

Only courts with staff interpreters can provide TIP services. Staffed courts can volunteer to become TIP providers and are free to choose to handle as many or few matters as their local schedules allow.

42

**Participation in TIP**

*Equipment*
A courtroom must be equipped with a two-line telephone system as well as some special equipment to receive simultaneous telephone interpreting services. The AO will provide funding for such equipment in districts that wish to receive TIP services. Courtrooms that have received technology upgrades may already have the necessary equipment. Should courts wish to become providers of TIP services, the AO will provide funding for provider-end equipment and training of a staff interpreter.

*Access to TIP*
The TIP scheduling system is available on the J-Net by selecting "Schedule an Interpreter" from the main TIP page. A step-by-step User's Guide is available from the TIP scheduling system home page. User courts may contact the TIP Help Desk at 571-535-0576 to request a login and to create a profile.

*TIP Services by Contract Court Interpreters*
Sometimes TIP services are requested in languages other than Spanish. When this happens, it is an opportunity for a provider court from a region with many language resources to assist courts in areas with fewer resources. The provider court can contract with a contract court interpreter to cover the event in the language needed. The first time that a new contract court interpreter covers a TIP event, experienced staff from the provider court will provide orientation on the use of the TIP equipment and remain with them until they are up to speed on its operation.

43

## APPENDIX 6: COURTROOM LAYOUT

Although the exact layout of a federal courtroom can vary slightly from location to location, the same general features and components are present in courtrooms nationally.

Upon entering the first set of double doors on the way into a courtroom, there will usually be two rooms, one located on each side of the vestibule. These are the attorney/client and government/witness waiting rooms. Defense attorneys use the waiting rooms for private conferences with their investigators, out-of-custody clients or the defendant's family members. The Government uses the waiting rooms for their agents and officers and for victims and their advocates before and after hearings.

Through the next set of doors is the entrance to the courtroom itself. Immediately on the left and right, and often continuing for several rows is the public gallery, with seating for the general public on either side. Unless otherwise indicated, usually by a sign and/or locked doors, all court hearings are open to the public.

Continuing forward, there will be a railing with a set of small swinging doors, separating the public gallery from the well of the courtroom. Only authorized personnel are permitted to enter the well. The well of the courtroom is where the proceedings take place. The United States Marshal Service assists with court security and transports defendants that are detained. There are usually two Deputy United States Marshals in the courtroom when a defendant is in custody.

Once the location of the jury box has been identified, usually along an outside wall of the well, it will be easy to determine the role and location of participants present in the courtroom. The table located closest to the jury box is the Government's counsel table, usually occupied by an Assistant U.S. Attorney and sometimes an agent, depending on the hearing type. The counsel table on the opposite side is for the defense attorney and their client. The defense attorney can be either an Assistant Federal Public Defender, a Criminal Justice Act (CJA) panel attorney, or privately retained counsel.

In the middle of the well, between the counsel tables and the judge, there will usually be a lectern from which the attorneys present their arguments. In shorter proceedings such as initial appearances, the lectern is where the defendant and defense attorney stand during the event. If an interpreter is present, he or she will also stand at the lectern.

The judge sits at the bench in the very front of the courtroom. The witness stand is located on the judge's side that is closest to the jury box. The Courtroom Deputy Clerk (CD) and the Court Reporter sit lower down at the front of the courtroom, often on the opposite side of the judge from the jury box. The CD administers oaths to witnesses, marks exhibits, and helps proceedings run smoothly. The Court Reporter keeps the official record of the court proceeding using a stenographic machine.

Depending on the courthouse or hearing type, the interpreter may need to stand or sit in one of several locations in the court room.

44

**Federal District Judge Courtrooms**





★ Indicates a possible interpreter location in the courtroom.

## Federal Magistrate Judge Courtrooms





★ Indicates a possible interpreter location in the courtroom.

A-001120

# GLOSSARY

This Glossary has been compiled from a variety of sources to aid in understanding of the federal court system, the interpreting function, and general legal terminology[11,12]. Interpreters should be able to understand and identify all terminology presented in both the source and target languages.

| Accuracy | The condition or quality of being true, correct, or exact; freedom from error or defect; precision or exactness; correctness. |
|---|---|
| Acquittal | A finding that the defendant is not guilty of the charges brought by the government. This finding may be reached by the trial judge in a case tried before a judge alone or by the jury in a case tried before a jury. |
| Administrative Office of the U.S. Courts | AOUSC or AO; the central support entity for the Judicial Branch. It provides a wide range of administrative, legal, financial, management, program, and information technology services to the federal courts. The AO provides support and staff counsel to the Judicial Conference of the United States and its committees, and implements and executes Judicial Conference policies, as well as applicable federal statutes and regulations. |
| Admissible | A term used to describe evidence that may be considered by a jury or judge in civil and criminal cases. |
| Admit/Deny Hearing | A hearing at which the statutory grounds set forth in the petition are admitted or denied. |
| Adversary System | A term often applied to the Anglo-American system for resolving criminal cases because that system involves pitting two adversaries, the government and the defendant, against each other in court. The underlying theory of the adversary system is that the clash between two equally matched adversaries is likely to yield the truth in a given case, that is, what actually happened. |
| Affidavit | A sworn written statement. Complaints, search warrants, and arrest warrants must be supported by affidavits establishing probable cause. |
| Allocution | An oral pleading or argument made to the court at sentencing by counsel for the defendant, the defendant, and the prosecutor. During allocution, the speaker attempts to persuade the judge that a particular sentence should or should not be imposed. |
| Appeal | A request made after a trial by a party that has lost on one or more issues that a higher court review the decision to determine if it was correct. To make such a request is "to appeal" or "to take an appeal." The party who appeals is called the "appellant;" and the other party is the "appellee." A defendant who has been found guilty after a trial has the right to appeal the conviction to the appropriate U.S. court of appeals and seek a new trial or other relief. Similarly, when authorized by statute, a party |

---

[11] *How Criminal Cases Move Through District Courts, Glossary,* JNET, http://jnet.ao.dcn/District/Court_Reporting/Policy_and_Guidance/Federal_Court_System_Overview/How_Criminal_Cases_Move_Through_The_District_Courts/Glossary.html
[12] *Glossary,* U.S. COURTS, http://www.uscourts.gov/Common/Glossary.aspx.

47

| | |
|---|---|
| | adversely affected by a sentence imposed by the court or by a pretrial ruling of the court may appeal that sentence or ruling to the court of appeals and seek a different result. |
| **Appointed Counsel** | An attorney appointed by the court to represent a person, usually an indigent person. |
| **Arraignment** | When the defendant is brought before the court, informed of the charges, and called upon to enter a plea to the charges. The defendant is given a copy of the indictment or information before being called upon to enter a plea. This is the initial appearance of a criminal defendant (unless the matter has been continued from an earlier time). |
| **Arrest** | Occurs when, either through show of force or actual physical seizure, a law enforcement officer detains a person or otherwise leads that person to reasonably believe that he or she is not free to leave. |
| **Assistant Federal Public Defender** | The public defender fulfills the United States Constitution's Sixth Amendment right to counsel by representing those charged with a crime who cannot afford an attorney. The assistant federal public defender provides legal representation to clients charged with federal criminal offenses or involved in other matters mandated by the Act; meets with clients to establish meaningful attorney-client relationships; directs the defense investigation of alleged crimes or offenses; researches case law; prepares pretrial motions; reviews material received from the government as pretrial discovery; engages in plea negotiations; determines trial strategies and defense approaches that affect jury selection, opening statements and closing arguments, client testimony, and cross-examination of witnesses; conducts sentencing investigations and prepares sentencing memoranda, and represents clients at sentencing hearings; prepares post-trial motions; and represents clients at trial, on appeal, and in other courtroom proceedings. |
| **Assistant United States Attorney** | AUSA; A federal prosecutor who assists the U.S. Attorney in the judicial district by advocating the government's position in criminal cases before the court. |
| **Bail Bond** | The money or funds paid to secure the release of a person who has been charged with a crime for a future appearance in court; written guaranty or pledge which is purchased from a bonding company (usually an insurance firm) or by an individual (called a "bondsman") as security to guarantee some form of performance, including appearing for court hearings. |
| **Bail/Bond Hearing** | A judicial proceeding where the court determines if a person charged with a criminal offense should be released on bail and trusted to make any and all required court appearances up to and including a trial. If the court determines that there is no reason to believe the defendant will fail to show up for court appearances and that the accused is not likely to re-offend while on bail, it must release the defendant subject to whatever terms and conditions are deemed appropriate under the circumstances. Those conditions can require a defendant to maintain a specific address, report to the police, and not have contact with victims and witnesses. In |

48

| | |
|---|---|
| | addition, the court may require that one or more sureties pledge some assets or cash (via a bond) to act as assurance that the defendant will comply with the conditions of release. |
| **Bench Trial** | A trial before a judge without a jury. The judge decides questions of fact as well as questions of law. |
| **Booking** | The criminal justice system's process for creation of an administrative record of those arrested. |
| **Burden of Proof** | The duty to prove disputed facts. In civil cases, a plaintiff generally has the burden of proving his or her case. In criminal cases, the government has the burden of proving the defendant's guilt. |
| **Case law** | The law as established in previous court decisions. A synonym for legal precedent. Akin to common law, which springs from tradition and prior judicial decisions. |
| **Certified Interpreter** | An interpreter who has successfully passed all the required components of the Federal Court Interpreter Certification Examination administered under the auspices of the Administrative Office. All staff court interpreters must be federally certified court interpreters. |
| **Challenge for Cause** | A challenge to a proposed juror based on the contention that, as a matter of law, the juror cannot decide the case at hand fairly and impartially. A challenge for cause must be based on specific grounds. If granted, it has the effect of excusing the prospective juror from service on the jury. |
| **Chambers** | The offices of a judge and his or her staff. |
| **Change of Plea** | A guilty plea in a criminal case where the defendant had previously pled not guilty. It is referred to as a "change" because the defendant had pled "not guilty" to the charges during a previous proceeding, usually during the post indictment arraignment, and now has decided to plead guilty to the charges instead of going to trial. |
| **Charges** | A formal accusation made before a court by a prosecuting authority, usually in the form of a "charging document." |
| **Civil Hearing** | A hearing involving a dispute between individuals and/or organizations. The facts of the dispute could involve a contract, a lease, a physical injury experienced by an individual, a divorce, or many other issues. Nonetheless, all disputes or unresolved conflicts between individuals ultimately may be solved through civil litigation. Generally, the result desired by the person filing the lawsuit is to be compensated for damages. An alternative result is to have the court order another person to begin or stop some activity. |
| **CJA 21 form** | A court form for Authorization and Voucher for Expert and Other Services for payment requests under the Criminal Justice Act. |
| **Clerk** | The court officer who oversees administrative functions, especially managing the flow of cases through the court. With respect to the Court Interpreters Act, this is the clerk of the district court or the bankruptcy court or a court unit executive designated by the chief judge of the district court to implement the Act. |
| **Closing Argument** | The part of the trial at which each party summarizes the evidence and attempts to convince the judge or jury that the evidence supports its side |

A-001123

| | |
|---|---|
| | of the case. |
| **Colloquialism** | A word or phrase that is not formal or literary, typically one used in ordinary or familiar conversation. |
| **Common Law** | The legal system that originated in England and is now in use in the United States, which relies on the articulation of legal principles in a historical succession of judicial decisions. Common law principles can be changed by legislation. |
| **Community Defender** | Although similar to a federal public defender, technically it is actually a nonprofit corporation that receives federal grant money and acts more independently from the federal judiciary. Community defenders engage in traditional legal representation along with social service support, policymaking and lobbying efforts, and community education or other outreach efforts. |
| **Complaint (Civil)** | The initial pleading that starts a civil action and states the basis for the court's jurisdiction, the basis for the plaintiff's claim, and the demand for relief. In some states, this pleading is called a petition. |
| **Complaint (Criminal)** | A written statement of the essential facts of the offense charged, made upon oath before a magistrate judge. |
| **Conference Interpreter** | An interpreter who works in multilingual meetings and renders a message from one language into another, naturally and fluently. Unlike court interpreters, conference interpreters adopt the delivery, tone and convictions of the speaker and often make necessary adjustments to the speech. |
| **Consecutive Interpretation** | The mode of interpretation used to interpret testimony given by a limited English proficiency (LEP) individual on the witness stand, or other statements for the record involving questions and answers, as well as for situations in which dialogue with the LEP individual develops, such as interviews. The interpreter verbally conveys the original message into the target language after the speaker has paused. Note taking is an essential tool for optimal performance during consecutive interpreting. |
| **Contract Interpreter** | An interpreter who is not an employee of the court, but is an independent contractor used for short durations to provide interpreting services. Contract court interpreters may be AO certified or otherwise qualified interpreters. |
| **Counsel Table** | The long table in front of the judge's bench where the parties and lawyers sit during the hearing or trial. The prosecution, or plaintiffs' attorney in a civil case, is always seated closest to the jury box. |
| **Count** | An allegation in an indictment or information, charging a defendant with a crime. An indictment may contain allegations that the defendant has committed more than one crime. Each allegation must be listed separately. The separate allegations are referred to as the counts of the indictment. |
| **Court** | A government entity authorized to resolve legal disputes. Lawyers often refer to the district or magistrate judge presiding over their case in the third person as "the court." For example, a lawyer may say, "The court sustained the objection," in describing a ruling made by a district or |

50

A-001124

| | magistrate judge handling the case. |
|---|---|
| **Court Interpreters Act** | The Court Interpreters Act, 28 U.S.C. § 1827, provides that the Director of the Administrative Office of the United States Courts shall prescribe, determine, and certify the qualifications of persons who may serve as certified interpreters, when the Director considers certification of interpreters to be merited, for the hearing impaired (whether or not also speech impaired) and persons who speak only or primarily a language other than the English language, in judicial proceedings instituted by the United States. |
| **Court Interpreters Advisory Group** | CIAG; A group comprised of eight staff interpreters from a representative cross-section of district courts and any combination of three members who are clerks of court, district executives, chief deputy clerks, or court interpreter supervisors, which assists the AO in addressing current critical issues in and improvements to the court interpreting program. |
| **Court Reporter** | A person who makes a word-for-word record of what is said in court, generally by using a stenographic machine, shorthand or audio recording, and then produces a transcript of the proceedings upon request. |
| **Criminal Justice Act** | CJA; The Criminal Justice Act, 18 U.S.C. § 3006A, provides that all persons who are charged with federal criminal offenses and are financially unable to obtain a private attorney are entitled to appointment of counsel to represent them. |
| **Cross Examination** | The opportunity for the attorney (or an unrepresented party) to ask questions in court of a witness who has testified on behalf of the opposing party. Ordinarily, questions on cross-examination are designed to test the credibility of the witness or to emphasize facts that are favorable to the questioner's case. |
| **Decorum** | Dignified propriety of behavior, speech, dress, etc. |
| **Deposition** | An oral statement made before an officer authorized by law to administer oaths. Such statements are often taken to examine potential witnesses, to obtain discovery, or to be used later in trial. |
| **Detention Hearing** | In criminal law, a hearing to determine whether a defendant should be released pending trial. In family law, a hearing held by the juvenile court to determine whether a juvenile who is accused of delinquent conduct should be detained, continued in confinement, or released pending an adjudicatory hearing. |
| **Dictionary** | A book, optical disc, mobile device, or online lexical resource containing a selection of the words of a language, giving information about their meanings, pronunciations, etymologies, inflected forms, derived forms, etc., expressed in either the same or another language; lexicon; glossary. |
| **Direct Examination** | The initial questioning of a witness by the attorney who called that witness to the stand. |
| **Director** | The Director of the Administrative Office of the U.S. Courts or the Director's designee. |
| **Direct Speech** | The reporting of speech by repeating the actual words of a speaker. Also known as direct voice. |

51

A-001125

| Discourse | Any unit of connected speech or writing longer than a sentence. |
|---|---|
| Dismissal | Termination of an action or claim without further hearing. In criminal cases, the act of voluntarily terminating a criminal prosecution by the prosecutor or judge. In civil cases, the act of terminating a lawsuit or one of its causes of action by the party who brought the claim or by the judge. |
| Disposition | The court's final determination of a lawsuit or criminal charge. |
| District Court | In the federal court system, a trial court for federal cases in a court district, which is all or a portion of a state. It can be a local court in some states. |
| District Judge | A public official, appointed by the President with the advice and consent of Congress, to hear and decide legal matters in a federal district court. |
| Docket | A log containing the complete history of each case in the form of brief chronological entries summarizing the court proceedings. |
| Evidence | Information presented in testimony or in documents which is used to persuade the fact finder (judge or jury) to decide the case in favor of one party or the other. |
| Evidentiary Hearing | A hearing held in open court before a district or magistrate judge at which the testimony of witnesses is taken and exhibits may be introduced into evidence, as opposed to a hearing at which only legal argument is presented. |
| Exhibit | A piece of physical evidence which is then marked for identification and/or introduced into evidence. |
| Extradition Hearing | A hearing to determine whether a person wanted by the requesting jurisdiction can be forced to return to the requestor jurisdiction to stand trial. |
| Fairness Hearing | A court hearing wherein the "fairness" of a proposed settlement is evaluated by the court and any objections to a proposed settlement are heard by the court. |
| Federally Certified Court Interpreter | FCCI; A court interpreter who has successfully passed both the written and oral portions of the Federal Court Interpreter Certification Examination in Spanish, Navajo, or Haitian Creole and who has received certification from the Director of the AO. |
| Federal Public Defender | FPD; An attorney employed by the federal courts on a full-time basis to provide legal defense to defendants who are unable to afford counsel. The judiciary administers the Federal Defender Program pursuant to the Criminal Justice Act. |
| Felony | A criminal offense for which the possible penalty exceeds one year in prison. |
| Gestures | A movement or position of the hand, arm, body, head, or face that is expressive of an idea, opinion, emotion, etc. |
| Glossary | A list of terms in a special subject, field, or area of usage, with accompanying definitions. |
| Government | The sovereign power in a nation or state. |
| Grand Jury | A jury in each federal court district which serves for a term of a year and is composed of a group of citizens empaneled by the court to hear evidence and determine whether there is probable cause to return an |

52

| | indictment against a defendant. The Federal Rules of Criminal Procedure require that 16 to 23 persons sit on a grand jury. |
|---|---|
| **Guilty** | Having been convicted of a crime or civil wrongdoing or having admitted the commission of a crime or civil wrongdoing by pleading "guilty" (saying you did it). |
| **Guilty plea** | In criminal law, an accused person's formal admission in court of having committed the charged offense. A guilty plea must be made voluntarily and only after the accused has been informed of and understands his or her rights. It ordinarily has the same effect as a guilty verdict and conviction after a trial on the merits. |
| **Hearing** | A proceeding before a district or magistrate judge, without a jury, in which evidence and/or argument is presented to determine some issue of fact and/or law. |
| **Hedging** | To make advance arrangements to safeguard oneself from loss of an investment, speculation or bet, as when a buyer of commodities insures against unfavorable price changes by buying in advance at a fixed rate for later delivery. |
| **Hung Jury** | A jury which is unable to reach a unanimous agreement on a verdict in a criminal case. |
| **Idiomatic Expression** | An expression which has a figurative meaning. |
| **Impaneling of the Jury** | The act of selecting a jury from the list of potential jurors, called the "panel" or "venire." |
| **Indictment** | The formal charge issued by a grand jury stating that there is enough evidence that the defendant committed the crime to justify having a trial; it is used primarily for felonies |
| **Information** | A formal accusation by a government attorney that the defendant committed a misdemeanor. |
| **Initial Appearance** | A proceeding at which the magistrate judge informs the defendant of the nature of the charges. The defendant is also informed of the right to counsel, the right to remain silent, and the right to have a preliminary examination. After informing the defendant of these rights, the magistrate judge decides whether to release or detain the defendant. The Federal Rules of Criminal Procedure require that following an arrest, the defendant be taken before the nearest available magistrate judge without unnecessary delay. |
| **Innocent** | Freedom from legal or specific wrong; guiltlessness. In our criminal justice system, a defendant is considered innocent until proven guilty. Interpreters should be careful not to conflate a plea or verdict of "not guilty" with being a plea or verdict of innocence. |
| **Interpretation** | The oral rendering of the full and accurate meaning of speech from one language into another. |
| **Interrogatories** | A form of discovery consisting of written questions to be answered in writing and under oath. |
| **Joinder** | The joining together of two or more offenses, or two or more defendants, in the same indictment for purposes of trial. |

53

| Judge | An official of the Judicial Branch with authority to decide lawsuits brought before courts. Used generically, the term judge may also refer to all judicial officers, including Supreme Court justices. |
|---|---|
| Judgment | The official decision of a court finally resolving the dispute between parties to the lawsuit. |
| Judge or Presiding Judicial Officer | A U.S. district judge, bankruptcy judge, or magistrate judge. |
| Judicial Conference of the United States | The policy-making entity for the federal court system. A 27-judge body whose presiding officer is the Chief Justice of the United States. |
| Jurisdiction | The legal authority of a court to hear and decide a certain type of case. It also is used as a synonym for venue, meaning the geographic area over which the court has territorial jurisdiction to decide cases. |
| Jury | The group of persons selected to hear the evidence in a trial and render a verdict on matters of fact. In a criminal trial, there are 12 jurors plus alternates. The jury's duty is to weigh the evidence fairly and impartially and then decide whether the defendant is guilty or not guilty. |
| Jury Instructions | Directives given by a judge to a jury during a trial prescribing the manner in which the jurors should proceed in deciding the case at bar and providing guidance on the relevant law. |
| Jury Poll | The practice of affirming the assent of each jury member individually. After a jury verdict is returned but before it is officially recorded, the jury may be polled at the request of either party, usually the defense. During the poll, each juror is asked whether he or she agrees with the verdict announced by the foreperson. |
| Jury Selection | The process by which the adversaries select a jury. The prosecutor and the defense attorney jointly select the jury by using challenges to eliminate those jurors that they believe are biased or unsympathetic to their respective case. |
| Jury Trial | A trial of a lawsuit or criminal prosecution in which the case is presented to a jury and the factual questions and the final judgment are determined by a jury. |
| Language of Limited Diffusion | LLD; A language used in a country by a group which is significantly smaller in number than the rest of the population, also called a linguistic or language minority. Those who speak the language may be nationals of the country, but they have distinguishing ethnic, religious, or cultural features which they wish to safeguard. |
| Languages other than Spanish | LOTS; All languages other than the Spanish language. Sometimes referred to as OTS. |
| Leading Question | A question which, by its phrasing, suggests to the witness the answer desired by counsel. For example, the phrasing of the question, "The car was blue, wasn't it?" suggests that the questioner wants the witness to testify that the car was blue. Leading questions are allowed on cross-examination but not on direct examination. |
| Limited English Proficiency Person | LEP; Individuals who speak only or primarily a language other than the English language. Sometimes referred to as a limited English proficient individual. |

54

| Local Rules | A particular set of rules for each court governing matters not determined by the Federal Rules of Procedure. Each U.S. district court is authorized to "make and amend rules governing its practice not inconsistent with" the Federal Rules of Procedure. |
|---|---|
| Lock-up | The area in a courthouse where detained defendants in a criminal matter are held until a hearing is called. Security for the lock-up is under the jurisdiction of the U.S. Marshal. |
| Magistrate judge | A judicial officer of a federal district court, who conducts initial proceedings in criminal cases, decides criminal misdemeanor cases, conducts many pretrial civil and criminal matters on behalf of district judges, and decides civil cases with the consent of the parties. |
| Misdemeanor | A criminal offense that is less serious than a felony and for which the maximum penalty is one year in prison. |
| Mistrial | A ruling by the court that the trial is to be terminated and given no effect because of an error in the proceedings. The court may also declare a mistrial when the jury is unable to agree on a verdict. When a mistrial is declared, the trial must start again with the selection of a new jury. |
| Motion | A request by either the government (or plaintiff in a civil case) or the defense for a ruling by the court on a particular matter. Motions filed before trial are generally referred to as pretrial motions. All motions, other than those made during a trial or hearing must be in writing, unless the court permits them to be made orally. |
| Motion Hearing | A motion hearing is a proceeding in which each party has the opportunity to present his or her side of an issue of particular importance to a case in court. |
| Motion to Suppress | A motion (usually on behalf of a criminal defendant) to disallow certain evidence, alleged to have been seized illegally. |
| Nebbia Hearing | A hearing in which the court must decide whether or not the money or property posted as bail is the fruit of unlawful or criminal conduct. |
| Nolo Contendere | No contest. As far as the criminal sentence is concerned, a plea of nolo contendere has the same effect as a plea of guilty. However, this plea may not be considered as an admission of guilt for any other purpose. |
| Not guilty | 1) plea of a person who claims not to have committed the crime of which he/she is accused, made in court when arraigned (first brought before a judge) or at a later time set by the court.<br>2) verdict after trial stating that the prosecution has not proved the defendant guilty of a crime beyond a reasonable doubt or that the defendant was insane at the time the crime was committed. |
| Note-taking | The practice of writing down pieces of information in a systematic way. |
| Objection | When an attorney alerts the judge to potential problems which may be caused by admission of evidence. An attorney who disagrees with a ruling by the court must register an objection to that ruling in order to make the trial record clear and establish the right to object to the ruling before the appellate court, should there be an appeal. |
| Opening statement | The initial address to the jury that the attorneys for each side make after the jury is sworn to explain what evidence they intend to present during |

| | the course of the trial and what they believe that evidence will show. |
|---|---|
| **Opinion** | A judge's written explanation of the decision of the court. |
| **Oral Argument** | An opportunity for lawyers to summarize their position before the court and also to answer the judges' questions. |
| **Otherwise Qualified Interpreter** | An interpreter, not certified by the AO, who can competently interpret in court proceedings. Interpreters who meet specific AO standards described in §320.20 of Volume 5 of the *Guide to Judiciary Policy* may be deemed "professionally qualified." |
| **Overrule** | The ruling of the court when there is no merit to an objection made to a question asked of a witness. The witness is then allowed to answer the question. |
| **Panel attorney** | A private attorney who represents an indigent defendant at the government's expense. A panel attorney is usually a member of an affiliated list and assigned by a court to a particular case. |
| **Peremptory Challenge** | A challenge to a prospective juror for which no specific reason need be given. A successful peremptory challenge has the effect of excusing the prospective juror from service on a particular jury. The number of peremptory challenges available to the government and the defense varies, depending on whether the case is a capital felony, felony, or misdemeanor. |
| **Petit jury** | A jury (usually consisting of 6 or 12 persons) summoned and impaneled in the trial of a specific case. |
| **Plea** | In a criminal case, the defendant's statement pleading "guilty" or "not guilty" in answer to the charges. |
| **Plea Agreement** | An agreement between the government and the defendant to resolve a pending criminal case by the defendant's entry of a guilty plea rather than going to trial. The prosecutor may agree to dismiss or reduce certain charges, or to recommend or request a certain sentence in return for the defendant's entering a plea of guilty. |
| **Plea Hearing** | A hearing scheduled for the entry of a plea, usually a guilty plea associated with a plea bargain. |
| **Preliminary Hearing** | A hearing to determine if a person charged with a felony should be tried for the crime charged, based on whether there is sufficient evidence that he/she committed the crime. Sometimes referred to as a preliminary examination. |
| **Presentence Investigation and/or Report** | An inquiry into the defendant's background, financial condition, criminal offense(s), and criminal history performed by the probation officer. The probation officer incorporates the information revealed by this investigation in a presentence report. The report is prepared to assist the judge in deciding how to sentence the defendant. The investigation is sometimes referred to informally as the PSI (presentence investigation) and the resulting document is often called the PSR (presentence report). |
| **Pretrial Conference** | Pretrial hearing; an informal meeting at which opposing attorneys confer to work toward the disposition of the case by discussing matters of evidence and narrowing the issues that will be tried. |
| **Pretrial Proceedings** | The events that occur between the time the defendant first appears in |

56

|  | court and the time of trial. These events may include a detention hearing, a preliminary examination, an arraignment, discovery, and filing pretrial motions. |
|---|---|
| **Pretrial Release** | Occurs when a judge allows a criminal defendant pre-trial freedom, based on the past history of the defendant, roots in the community, regular employment, the recommendation of the AUSA, the type of crime, the likelihood of the defendant making all appearances in court, and the improbability that the defendant will commit another crime while awaiting trial. |
| **Pretrial Services** | Functions performed by a federal court before committing a person to trial. It involves screening services and investigation which may lead to community supervision that takes place after a person has been charged and arrested with a federal crime |
| **Pretrial Services Interview** | An initial interview of a defendant that assists the court in deciding whether a defendant will be released or kept in custody pending trial. The Pretrial Services Officer shall advise the defendant of the right to speak with a lawyer before answering questions, and shall further advise the defendant that if the defendant cannot afford a lawyer, one will be appointed. |
| **Pretrial services officer** | An officer who works with defendants prior to trial, but after they're charged with federal crimes. Pretrial services officers help ensure that defendants released to the community before trial commit no crime while awaiting trial and return to court as required. |
| **Probable cause** | Sufficient reason based upon known facts to believe a crime has been committed or that certain property is connected with a crime; more than a bare suspicion. |
| **Probation** | A court-imposed criminal sentence that, subject to stated conditions, releases a convicted person into the community instead of sending the criminal to jail or prison. |
| **Probation Officer** | An officer who is responsible for conducting presentence investigations and preparing presentence reports prior to sentencing and for supervising probationers and persons on supervised release. Probation officers also serve as parole officers for offenders released by the United States Parole Commission, that is, offenders sentenced for offenses committed before November 1, 1987. |
| **Prosecute** | To charge someone with a crime. An AUSA tries a criminal case on behalf of the government. |
| **Public defender** | A staff lawyer, usually publicly appointed, whose duty is to represent indigent criminal defendants. |
| **Re-arraignment** | The process of arraignment of a defendant after amendment of the accusatory pleading or the substitution of an indictment or information for another. |
| **Reasonable doubt** | The doubt that prevents one from being firmly convinced of a defendant's guilt, or the belief that there is a real possibility that a defendant is not guilty. |
| **Record** | A written account of the proceedings in a case, including all pleadings, |

57

A-001131

| | evidence, and exhibits submitted in the course of the case. |
|---|---|
| **Regionalisms** | A feature, such as an expression, a pronunciation, or a custom that is characteristic of a geographic area. |
| **Relay Interpretation** | A type of interpretation that occurs when no interpreter is available to interpret a language of limited diffusion (LLD) into English, but one can interpret the needed language into another language for which there is an available, qualified interpreter. The non-English speaking interpreter "relays" the interpretation into the common language and the second interpreter relays this into English and vice versa. (Examples: Mixteco to Spanish to English or Tactile Signing to American Sign Language (ASL) to English.) *Guide to Judiciary Policy*, Vol. 5, Ch. 1, §140. |
| **Rendition** | Translation; interpretation. |
| **Retained counsel** | Legal counsel who are members of the bar working in the private sector, either individually or in law firms, who are hired to provide legal services, generally for a fee. |
| **Reverse** | The act of a court setting aside the decision of a lower court. A reversal is often accompanied by a remand to the lower court for further proceedings. |
| **Revocation of probation or supervised release** | An offender who violates one or more conditions of probation runs the risk that the sentence of probation may be revoked. Upon revocation, the offender may be sentenced to a term of imprisonment. The same is true for persons on supervised release. |
| **Sentence** | A judgment of the court imposing punishment upon a defendant for criminal conduct. |
| **Sentencing Hearing** | The hearing that takes place after the defendant is found guilty of a crime. The purpose of a sentencing hearing is to determine what punishment the defendant deserves for the crime he/she committed. At the hearing, the court considers the attorneys' comments on the probation officer's recommendations, allows the attorneys to state their positions regarding sentencing, and gives the defendant an opportunity to make a statement. |
| **Settlement Hearing** | A settlement hearing is a hearing in which both parties try to reach an agreement on what will be paid or charged regarding an offense or civil judgment. |
| **Sight Translation** | Conveying orally in one language the meaning of a text written in another language. It is a hybrid of translation and interpretation that requires the interpreter to first review the original written text, and then render it orally into the other language. |
| **<u>Simultaneous Interpretation</u>** | The full and accurate rendering of speech from one language into another while the speaker or signer is still talking. This requires the interpreter to listen, comprehend, translate, and reproduce a speaker or signer's message while the speaker or signer continues to speak or sign, typically lagging a matter of seconds behind the speaker or signer's communication. The <u>simultaneous mode</u> is used by interpreters when interpreting all that is said in courtroom proceedings for non-English speaking defendants or other participants as defined in the Guide, Vol 5 § |

58

| | 210.10 and § 255.20(c). |
|---|---|
| **Simultaneous Interpretation Equipment** | Electronic equipment that allows the interpreter to interpret into a microphone and the interpreted speech to be sent in real time via a transmitter to a receiver (earphones) for one or more defendants. The use of such equipment also enables interpreters to better position themselves where they can hear and see the speakers without strain and to serve multiple defendants at the same time. |
| **Source Language** | The language from which a statement in another language is translated or interpreted. |
| **Staff Interpreter** | An employee of the court who has passed the necessary written and oral exams to be certified as Federally Certified Court Interpreter (FCCI) |
| **Standard of Proof** | Degree of proof required. In criminal cases, prosecutors must prove guilt "beyond a reasonable doubt." The majority of civil lawsuits require proof "by a preponderance of the evidence" (50 percent plus), but in some the standard is higher and requires "clear and convincing" proof. |
| **Status Conference** | A pre-trial meeting of attorneys before a judge required under Federal Rules of Civil Procedure and in many states required to inform the court as to how the case is proceeding, what discovery has been conducted (depositions, interrogatories, production of documents), any settlement negotiations, probable length of trial and other matters relevant to moving the case toward trial. |
| **Status Hearing** | An informal discussion between the judge, the prosecution and the defendant about the case. After considering the case, the defendant can decide whether to change his/her plea or to continue with trial. |
| **Stipulation** | An agreement between the defendant and the prosecutor. The stipulation may take the form of an agreed-upon term or condition in a legal document or an agreement between the parties establishing a certain fact as evidence during a trial. When a fact is stipulated to during a trial, no evidence of that fact is required because the parties have agreed to accept it as true. |
| **Subpoena** | A court order requiring a person to appear at a trial or hearing for the purpose of testifying as a witness. Under the Sixth Amendment, a criminal defendant has the right to compulsory process, that is, the right to subpoena witnesses to testify for the defense at trial. The government may also subpoena witnesses for trial. A subpoena may also order a witness to bring to a trial or hearing certain documents which are relevant to the case. |
| **Substitution of Counsel** | Occurs when an individual/party to a case wishes to change legal representation or substitute another attorney/law firm for the one currently handling the matter, and petitions the court to do so. |
| **Summary Interpreting** | The rendering of speech from one language into another while paraphrasing and condensing the speaker's statement. Unlike simultaneous and consecutive interpreting, summary interpreting does not provide a full and accurate rendering of everything that is said into the target language. Summary interpreting should not be used in the legal setting. For more information, visit to watch a short video. |

59

A-001133

| | |
|---|---|
| **Summons** | A court order commanding an individual to appear before a magistrate judge at a certain time to answer charges. A summons is similar to an arrest warrant, except that a summons directs the defendant to appear on his own before a magistrate judge. An arrest warrant is a court order that he or she be arrested and be brought to the nearest available district or magistrate judge by a law enforcement officer. |
| **Supervised Release** | A term of supervision served after a person is released from prison. The court imposes supervised release during sentencing in addition to the sentence of imprisonment. Unlike parole, supervised release does not replace a portion of the sentence of imprisonment but is in addition to the time spent in prison. U.S. probation officers supervise people on supervised release. |
| **Suppression Hearing** | An opportunity to have a judge look at the evidence against a defendant and determine whether it will be allowed at trial. Generally, this is the time when opposing parties will present their arguments to a judge regarding a Motion to Suppress. |
| **Sustain** | The ruling of the court when it determines that the objection to a question asked of a witness has merit and that the questions must not be answered. For example, if the court sustains a prosecutor's objection to the form of a question posed by defense counsel, the witness is not allowed to answer the question until counsel phrases it properly. |
| **Target Language** | The language into which a statement in another language is translated or interpreted. |
| **Team Interpreting** | The use of two or more interpreters for trials or lengthy hearings. The interpreter not actively interpreting (known as the passive interpreter) researches terms, takes notes, monitors the interpretation being provided, Guide to Judiciary Policy, Vol. 5, Ch. 1, §140, and provides support to the active interpreter. Team interpreters alternate roles during the interpreted event. Also known as tandem interpreting. |
| **Teamwork** | A coordinated effort on the part of a group of persons acting together as a team or in the interests of a common cause. |
| **Telephone Interpreting** | A service that connects interpreters via telephone to individuals who need to communicate with each other but do not share a common language. Interpretation over the telephone most often takes place in consecutive mode, which means that the interpreter waits until the speaker finishes an utterance before rendering the interpretation into the target language. |
| **Telephone Interpreting Program** | TIP; A system which provides simultaneous and consecutive interpreting for short proceedings using specialized equipment. TIP provides remote interpreting in situations where on-site court interpreters are not available or cost-effective. |
| **Testimony** | Oral evidence given under oath by a witness in answer to questions posed by attorneys at trial or at a deposition (questioning under oath outside of court). |
| **Transcription** | The production of a written text that reflects an oral message as it is spoken. Both the original spoken message and the parallel written text |

60

| | are in the same language. |
|---|---|
| **Transcription and Translation of Recordings** | The reproduction in writing of the original spoken words recorded on tape or other media in a source language, and their subsequent translation into the target language as part of a transcript. |
| **Translation** | The transference of meaning of a written document from the source language into the target language in writing. The translator is given a text and prepares an accurate parallel text in writing, without the pressure of immediate delivery. |
| **Transparency** | Openness, clarity; lack of guile and attempts to hide damaging information. The word is used of financial disclosures, organizational policies and practices, lawmaking, and other activities where organizations interact with the public. |
| **Trial** | A formal judicial examination of evidence and determination of legal claims in an adversarial proceeding. |
| **United States Attorney** | A lawyer appointed by the President in each judicial district to prosecute and defend cases for the federal government. The U.S. Attorney employs a staff of Assistant U.S. Attorneys who appear as the government's attorneys in individual cases. |
| **Unites States Marshals Service** | The U.S. Marshals Service is the nation's enforcement arm of the federal courts, involved in virtually every federal law enforcement initiative. Presidentially appointed, U.S. marshals direct the activities of 94 districts — one for each federal judicial district. Among their many duties, they protect the federal judiciary, apprehend federal fugitives, seize property acquired by criminals through illegal activities, house and transport federal prisoners and operate the Witness Security Program. |
| **Unobtrusive** | Inconspicuous, unassertive, or reticent. |
| **Uphold** | The appellate court agrees with the lower court decision and allows it to stand. |
| **Utterance** | An oral or written statement; a stated or published expression |
| **Verdict** | The decision of a trial jury or a judge that determines the guilt or innocence of a criminal defendant, or that determines the final outcome of a civil case. |
| **Voir dire** | The jury selection process of questioning prospective jurors, to ascertain their qualifications and determine any basis for challenge. A voir dire process may also be used by the presiding judicial officer to question an interpreter on the record about their credentials and qualifications for the interpreting assignment. |
| **Waiver** | The act of knowingly, intentionally, and voluntarily giving up a certain right. For example, a defendant who intends to plead guilty must first waive his/her right to a jury trial in order for the guilty plea to be accepted by the court. |
| **Warrant** | Court authorization, most often for law enforcement officers, to conduct a search or make an arrest. |
| **Witness** | A person called upon by either side in a legal proceeding to give testimony before the court or jury. |

61

A-001135

Federal Court Interpreter Orientation Manual

jmeeks

**CSO Control:**

Manual:

P:\DCAD\Subject-Projects\Court Interpreting\Court Interpreter Manual\Federal Court Interpreter Orientation Manual 2014.1.16.pdf

Memo:

P:\DCAD\Subject-Projects\Court Interpreting\Training\Court Interpreter Manual\Interpreter Manual Announcement Memo- updated URL

_____ J. Soler

_____ B. Lowney

This document has been shared with the CIAG members, several of whom provided minor comments. Their comments have been considered and incorporated.

A-001136

# Guide to Judiciary Policy

Vol 5: Court Interpreting

## Ch 1: Overview

§ 110 Purpose

§ 120 Authority

§ 130 Applicability

§ 140 Definitions

---

### § 110 Purpose

This volume is designed to provide guidance on the use of interpreters for participants in court proceedings who speak only or primarily a language other than English, or who are hearing-impaired or have communications disabilities.  It also provides references and links to other policy guidance when interpreters are used in other instances.

### § 120 Authority

(a)     These guidelines are promulgated by the Director of the Administrative Office of the U.S. Courts (AO) as authorized by the Court Interpreters Act (Act), as amended, 28 U.S.C. § 604(a)(14), (15), and (16), § 1827, and § 1828.

(b)     The guidelines also incorporate references to Judicial Conference policy and case law related to the use of court interpreters.

(c)     Under 28 U.S.C. § 602(d), the Director may delegate any functions, powers, duties, and authority to other officers and employees of the judicial branch of the government, subject to such terms and conditions as the Director may consider appropriate.

### § 130 Applicability

This volume applies to the federal courts as defined in 28 U.S.C. § 610.  It does not apply to the Supreme Court of the United States.

*Last revised (Transmittal 05-005) April 6, 2016*

| § 140 Definitions | |
|---|---|
| Ad hoc interpreter | An interpreter rated as language skilled. |
| Auxiliary aids and services | Effective methods of making aurally delivered materials available to individuals with hearing impairments including qualified interpreters; assistive listening devices or systems; |
| Certified Interpreters | Interpreters who have successfully passed all the required components of the Federal Court Interpreter Certification Examination administered under the auspices of the AO.  Also known as Federally Certified Court Interpreters (FCCIs).  **See:**  Guide, Vol 5, § 320.10. |
| Conference Interpreters | Interpreters who work in multilingual meetings and render messages from one language into another, naturally and fluently.  Unlike court interpreters, conference interpreters adopt the delivery, tone and convictions of the speaker and often make necessary adjustments to the speech. |
| Consecutive Interpretation | This mode is used to interpret testimony given by a limited English proficiency (LEP) individual on the witness stand, or other statements for the record involving questions and answers, as well as for situations in which dialogue with the LEP individual develops, such as interviews.  The interpreter verbally conveys the translation of the original message into the target language after the speaker has paused. |
| Contract Interpreters | Interpreters who are not employees of the court, but are independent contractors used for specific periods of time to provide interpreting services. |
| Court Proceedings | In-court events, such as trials, hearings, ceremonies and other public programs or activities conducted by a judicial officer. |
| Event | Any matter held in court or out of court requiring an interpreter under the Court Interpreters Act. |
| Federal Court Interpreter Certification Examination (FCICE) | A criterion-referenced performance examination (28 U.S.C. § 1827(b)(1)) developed and administered under the supervision of the AO's Court Services Office. |
| Federally Certified Court Interpreters (FCCIs) | **See:**  Certified Interpreters. |
| Judge or Presiding Judicial Officer | A U.S. district judge, bankruptcy judge, magistrate judge, and, in the case of a grand jury proceeding, a U.S. attorney. |

| § 140 Definitions ||
|---|---|
| Language of Limited Diffusion (LLD) | A language used by a group which is significantly smaller in number than the rest of the population, also called a linguistic or language minority. |
| Languages other than Spanish (LOTS) | All non-English languages other than Spanish.  Also known as "Other than Spanish" (OTS). |
| Language Skilled Interpreters | Interpreters who do not qualify as AO certified or professionally qualified interpreters, but who can demonstrate to the satisfaction of the court the ability to interpret court proceedings from English to a designated language and from that language into English. |
| Limited English Proficiency (LEP) Person | An individual who speaks only or primarily a language other than English. |
| Otherwise-Qualified Interpreters | Interpreters that are either "professionally qualified" or "language skilled/ad hoc."  **See:**  Guide, Vol 5, § 320.20. |
| Participants | Parties, attorneys, and witnesses of in-court or out-of-court events. |
| Professionally Qualified Interpreters | Interpreters who meet specific AO standards described in § 320.20.10 of this volume may be deemed "professionally qualified." This rating applies to all languages except those for which the AO has certified interpreters (Spanish, Navajo, and Haitian Creole). |
| Relay Interpretation | This occurs when no interpreter is available to interpret a language of limited diffusion (LLD) into English, but one can interpret the needed language into another language for which there is an available, qualified interpreter.  The non-English speaking interpreter "relays" the interpretation into the common language and the second interpreter relays this into English and vice versa.  (Examples:  Mixtec to Spanish to English, or Tactile Signing to American Sign Language (ASL) to English.) |
| Simultaneous Interpretation | The rendering of the full and accurate meaning of speech from one language into another while the speaker or signer is still talking. |
| Simultaneous Interpretation Equipment | Electronic equipment that allows the interpreter to interpret into a microphone and the interpreted speech to be sent in real time via a transmitter to a receiver (earphones) for one or more defendants. |
| Sight Translation | Conveying orally in one language the meaning of a text written in another language.  It is a hybrid of translation and interpretation that requires the interpreter to first review the original written text, then render it orally into the other language. |
| Source Language | The language from which a statement in another language is translated or interpreted. |

| § 140 Definitions | |
|---|---|
| Staff Interpreters | Interpreters who are employees of the court. **See:** Guide, Vol 5, § 310.10. |
| Target Language | The language into which a statement in another language is translated or interpreted. |
| Team Interpreting | The use of two or more interpreters for trials or lengthy hearings. The interpreter not actively interpreting (known as the passive interpreter) researches terms, takes notes, monitors the interpretation being provided, and provides support to the active interpreter. Team interpreters alternate roles during the interpreted event. |
| Telephone Interpreting Program (TIP) | Simultaneous and consecutive remote interpreting for short proceedings in situations where on-site court interpreters are not available or cost-effective. |
| Transcription | The production of a written text that reflects an oral message as it is spoken. Both the original spoken message and the parallel written text are in the same language. |
| Transcription and Translation of Recordings | The reproduction in writing of the original spoken words recorded on tape or other media in a source language, and their subsequent translation into the target language as part of a transcript. |
| Translation | The transference of meaning of a written document from the source language into the target language in writing. |

# Guide to Judiciary Policy

Vol 5: Court Interpreting

## Ch 2: Appointment and Payment Authorities

§ 210 Criminal and Civil Actions Instituted by the United States
    § 210.10 Appointment of Interpreters in Judicial Proceedings Instituted by the
        United States
    § 210.20 Waivers of Appointment
    § 210.30 Funds Available for Payment of Interpreters

§ 215 Government Witnesses

§ 220 Criminal Justice Act (CJA)
    § 220.10 Payment for Interpreters Appointed under the CJA
    § 220.20 Services for Short Attorney-Client Interviews
    § 220.30 Payment of Fees, Expenses, and Cost of Interpreters for CJA
        Representation

§ 225 Retained Counsel
    § 225.10 General
    § 225.20 Payment of Interpreters Obtained by Retained Counsel

§ 230 Habeas Corpus Petitions

§ 235 Probation and Pretrial Services Events
    § 235.10 General
    § 235.20 Payment for Interpreter Services for Probation and Pretrial Treatment
        Services

§ 240 Bankruptcy Proceedings
    § 240.10 Bankruptcy Appeals and Bankruptcy Cases
    § 240.20 Section 341 Meetings of Creditors

§ 245 Court-Sponsored Alternative Dispute Resolution Programs

§ 250 Special Master Proceedings
    § 250.10 General
    § 250.20 Special Masters Appointed in Prison Condition Cases

§ 255 Services to the Hearing Impaired and Others with Communication Disabilities
    § 255.10 General
    § 255.20 Auxiliary Aids and Services

*Last revised (Transmittal 05-005) April 6, 2016*

§ 255.30 Provision for and Payment of Juror Services
§ 255.40 Procedures
§ 255.50 Reporting
§ 255.60 Funding

§ 260 Civil Proceedings Not Initiated by the Government

§ 265 Cost Reimbursement

---

## § 210 Criminal and Civil Actions Instituted by the United States

### § 210.10 Appointment of Interpreters in Judicial Proceedings Instituted by the United States

(a)    A judge must appoint interpreters in judicial proceedings instituted by the United States, if the judge determines that a party or a witness speaks only or primarily a language other than English or has a hearing impairment (whether or not suffering also from a speech impairment), so as to inhibit that person's comprehension or communication in the proceeding.

(1)    This may include the assignment of an interpreter to assist in facilitating communication between counsel and the party, even if it results in multiple in-court interpreters. **See:** Guide, Vol 5, § 215(a) and § 220.

(2)    Judicial proceedings instituted by the United States include all in-court criminal proceedings and any in-court civil proceeding in which the United States is the plaintiff.

(b)    A judge may also appoint interpreters for defense witnesses in judicial proceedings instituted by the United States. **See:** 28 U.S.C. § 1827(d)(1) and (c)(2).

For bankruptcy court proceedings, **see:** Guide, Vol 5, § 240.

### § 210.20 Waivers of Appointment

Individuals other than witnesses who are entitled under 28 U.S.C. § 1827(f) to court-provided interpreter services may waive their right to such services and utilize the services of an interpreter of their choice. A judge should consider the requirements of the statute in accepting a waiver of interpreter services.

## § 210.30 Funds Available for Payment of Interpreters

Funds are available in a general authorization account for the payment of interpreters appointed by a judge as described above.  For more information on the use of the general authorization account, **see:**  Guide, Vol 5, § 410.

## § 215 Government Witnesses

(a)     If a government witness speaks only or primarily a language other than English and requires an interpreter, the U.S. attorney is responsible for securing and paying for such services (28 U.S.C. § 1827(c)(2)).  **See:** Guide, Vol 5, § 330.10(a).

    (1)     There is no statutory requirement that the same interpreter serve all persons who require interpreter services in a case.

    (2)     The statute leaves the decision of whether an interpreter is needed to the judge's discretion.

(b)     If the U.S. attorney utilizes a court-provided contract interpreter, the court may (28 U.S.C. § 1827(g)(3)) bill the portion of services for government witnesses to the Department of Justice (DOJ) if the costs are sufficient to offset the accounting administrative cost.

    (1)     Similarly, if a staff interpreter is utilized for a government witness, the court may bill for reimbursement of salary at the hourly rate that is equal to the interpreter's salary plus benefits (e.g., government contribution to retirement, overhead).

    (2)     Reimbursed funds must be deposited into the appropriation originally charged (28 U.S.C. § 1827(g)(3)).  For reimbursement procedures, contact the Finance and Accounting Division of the Administrative Office of the U.S. Courts (AO).

## § 220 Criminal Justice Act (CJA)

## § 220.10 Payment for Interpreters Appointed under the CJA

(a)     Interpreters whose services are obtained by defense counsel appointed under the CJA, 18 U.S.C. § 3006A, to facilitate communication between counsel and the defendant out-of-court are generally paid under that

statute. These services are not provided for under 28 U.S.C. § 1827, but rather under the CJA as necessary defense services.

(b) The interpreter fee schedule for contract court interpreters does not apply to interpreting services obtained under the CJA. While the Director's fee schedule established pursuant to the Court Interpreters Act is not binding on the CJA, it should serve as a "guidepost" for determining the reasonableness of rates, including hourly rates, for interpreting services under the CJA. **See:** Guide, Vol 7A, § 320.15.10 and § 320.15.20.

## § 220.20 Services for Short Attorney-Client Interviews

(a) Interpreter services by a contract or staff interpreter may be provided at no expense to the Defender Services appropriation for short CJA attorney-client consultation (for the public defender or CJA panel attorneys) between attorney and client:

    (1) **if** interpreting occurs in the courthouse immediately before and/or after a proceeding (as covered by 28 U.S.C. § 1827), and

    (2) **only if** the matter is incidental to a court proceeding that was already scheduled to take place.

(b) Such interpreting arrangements should be authorized in advance by a judge, the clerk of court, or the judge's or clerks's designee.

## § 220.30 Payment of Fees, Expenses, and Cost of Interpreters for CJA Representation

The fees, expenses, and costs of interpreters for CJA representation are paid from the Defender Services appropriation.

## § 220.30.10 Determination and Approval of Claims and Rates

Rates may be negotiated between the interpreter and the federal defender or CJA panel attorney. When interpreters are authorized under the CJA or related statutes to render services to CJA panel attorneys, interpreters must complete the applicable CJA voucher form and return it to counsel for certification that the services itemized were rendered. The court will review the voucher for reasonableness. **See:** Guide, Vol 7A, § 320.15.20.

## § 220.30.20 Contract Court Interpreters

Contract court interpreters may not bill or receive funds from any other federal court unit, federal public defender, community defender organization, or other attorneys or

entities obtaining interpreting services under the CJA or the related statutes for any services rendered during the same half- or full-day for which the contract court interpreter is being compensated pursuant to the contract. **See:** Contract Court Interpreter Services Terms and Conditions.

## § 225 Retained Counsel

### § 225.10 General

In any civil or criminal proceeding, retained counsel may hire interpreters to facilitate communication with a client or witness who speaks a language other than English.

### § 225.20 Payment of Interpreters Obtained by Retained Counsel

The cost of interpreters used to facilitate communication between a client or witness and retained counsel in preparation for and following court proceedings are paid by the party, and the rates may be negotiated between the interpreter and the party. For guidance on payment of court interpreters for in-court proceedings, **see:** Guide, Vol 5, § 210 and § 260.

## § 230 Habeas Corpus Petitions

Habeas corpus petitions filed under 28 U.S.C. §§ 2241 or 2254 and § 2255 motions are considered "judicial proceedings instituted by the United States" as defined by 28 U.S.C. § 1827(j). A judge must appoint an interpreter for such in-court proceedings when:

    (a)    the petitioner speaks only or primarily a language other than the English language or suffers from a hearing impairment; and

    (b)    this fact inhibits either:

        (1)    the petitioner's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or

        (2)    a witness' comprehension of questions and the presentation of testimony.

## § 235 Probation and Pretrial Services Events

### § 235.10 General

(a)    Probation and pretrial services interviews conducted to prepare presentence reports and pretrial services reports, while not addressed by statute, are considered within the scope of the court interpreting program in the federal courts, as they are integral parts of the judicial process.

(b)    Interpreter services needed to assist a probation or pretrial services officer in interviewing an individual or third party for purposes of verifying information, presentence interviews, and preparing presentence reports or pretrial services reports may be paid from the general authorization, as noted in Guide, Vol 5, § 410.

### § 235.20 Payment for Interpreter Services for Probation and Pretrial Treatment Services

The general authorization for contract court interpreters must not be used to pay for interpreter services provided to assist probation or pretrial services officers when treatment or medical services are administered to offenders.  Interpreter services used in these instances should be paid from the same funds used by the AO's Probation and Pretrial Services Office to provide treatment and medical services. (e.g., drug or anger management counseling).

## § 240 Bankruptcy Proceedings

### § 240.10 Bankruptcy Appeals and Bankruptcy Cases

(a)    In a bankruptcy appeal in a district court or a bankruptcy case in bankruptcy court, the parties are responsible for providing interpreter services for court proceedings as well as communications between counsel and the parties, except in very limited instances:

(1)    when the bankruptcy proceedings are instituted by the United States or

(2)    when the parties have a hearing impairment (whether or not suffering also from a speech impairment).

(b)    If the proceedings are instituted by the United States, the procedures outlined in § 210 should be followed, and payment may be made from the

general authorization.  Matters instituted by the United States are adversary proceedings initiated by agencies such as:

- the U.S. Trustee (UST);
- the Internal Revenue Services (IRS);
- the Securities and Exchange Commission (SEC); and
- the Federal Deposit Insurance Corporation (FDIC).

## § 240.20 Section 341 Meetings of Creditors

(a)    In the majority of bankruptcy courts, Section 341 meetings (meeting of creditors) are not considered to be instituted by the United States, and interpreter services, including the selection of an interpreter and the payment for the services, are the responsibility of the parties.

(b)    However, in the six courts with bankruptcy administrators, such meetings are considered to be instituted by the United States and interpreter services required by a party in interest or a witness at a Section 341 meeting are therefore paid from the general authorization.

## § 245 Court-Sponsored Alternative Dispute Resolution Programs

In the case of court-sponsored alternative dispute resolution programs, interpreter services must be provided for hearing impaired individuals as noted below in § 255, but not for parties who speak languages other than English unless the United States instituted the proceeding.

## § 250 Special Master Proceedings

## § 250.10 General

Proceedings before a special master are not judicial proceedings, unless a U.S. magistrate judge is acting as the special master.  The clerk may assist a special master in locating an interpreter, but the cost of the interpreter is ordinarily a reimbursable expense of the special master as directed by the court appointing the special master. **See:**  Fed. R. Civ. P. 53.  For exception information, **see:**  § 250.20.

## § 250.20 Special Masters Appointed in Prison Condition Cases

(a)    The only exception to the general policy set forth in § 250.10 is for special masters appointed in prison condition cases where compensation for the

reasonable costs of experts, including interpreters, must be paid by a court (18 U.S.C. § 3626(f)(4)).

(b)   Charges for interpreter services provided to special masters in prison condition cases should be made to the fiscal year when the obligation was incurred (fund 092000, budget organization DXXPLRX, Cost Organization Code ending with X, and BOC 2529).

## § 255 Services to the Hearing Impaired and Others with Communication Disabilities

### § 255.10 General

(a)   Under Judicial Conference policy, a court **must** provide sign language interpreters or other auxiliary aides and services to participants in federal court proceedings who are deaf, hearing-impaired or have communication disabilities and **may** provide these services to spectators when the court deems appropriate (JCUS-SEP 95, p. 75). This policy provides for services in addition to those required by the Court Interpreters Act (28 U.S.C. § 1827).

(b)   The court should honor a participant's choice of auxiliary aid or service, unless it can show that another equally effective means of communication is available, or that use of the means chosen would result in a fundamental change in the nature of the court proceeding or an undue financial or administrative burden.

For information on policies for employees with disabilities, **see:** Guide, Vol 12, Ch 2 (Fair Employment Practices).

### § 255.20 Auxiliary Aids and Services

(a)   When deemed appropriate by a court, computer-assisted real-time translation (CART) is one of the services that may be provided under these guidelines, but solely in furtherance of the limited purposes for which the guidelines have been adopted. Thus, real-time reporting should be provided only for as long as necessary and for those specific purposes required by a participant. An example would be to provide real-time reporting only for the duration of a deaf witness' testimony.

(b)   Real-time reporting provided under these guidelines is to be used solely to assist in communication and is not to be used in lieu of conventional means of producing the official record.

(c) Real-time services provided under these guidelines will be limited to a video display of spoken words, and may not include enhancements such as keyword searching or the provision of unedited daily transcripts.

(d) The need to provide appropriate sign language interpreters and other auxiliary aids and services is not an authorization to purchase and install real-time court reporting equipment in the courtroom. Such purchase is governed by Judicial Conference policy on court reporting. **See:** Guide, Vol 6, § 320.

## § 255.30 Provision for and Payment of Juror Services

(a) When an individual is found to be legally qualified to serve as a juror, but has a communications disability, payment for services necessary to address the communications disability should be made from the jury fee appropriation.

(b) Services provided under these guidelines include a sign language interpreter or other appropriate auxiliary aids.

(c) The determination of whether a prospective juror with a communications disability is legally qualified to serve as a juror is one for the judgment of the trial court under the Jury Selection and Service Act, 28 U.S.C. §§ 1861, et seq., and that determination is not governed or affected by these guidelines.

## § 255.40 Local Procedures

(a) Each court is required to identify a specific office or individual(s) to serve as access coordinator from whom participants in court proceedings may request auxiliary aids or services.

    (1) The access coordinator must:

        (A) be familiar with the judiciary's policy of providing reasonable accommodations to persons with communications disabilities to ensure that the policy is properly implemented.

        (B) have a ready working knowledge of the types of auxiliary aids and services available to serve the needs of disabled persons and of the local sources from which auxiliary aids and services may be procured.

(2)    Personnel in each court are to be instructed as to the judiciary's policy and the identity and location of the access coordinators in their particular court.

(3)    Each court will appropriately publicize the identity and location of its access coordinator through, for instance:

- courthouse signs,
- bulletin board announcements,
- pamphlets, and
- announcements in the local press.

(b)    Courts may, but are not required to, establish specific procedures through which requests for auxiliary aid services are to be submitted, such as requiring that they be submitted to the access coordinator in writing or that they be submitted in advance of the court proceeding involved.

(1)    Courts may also establish procedures through which persons dissatisfied with the court's proposed provision of auxiliary aids and services may seek review or reconsideration.

(2)    Any such procedures must be appropriately publicized.

**Note:**  These guidelines are not intended to extend or modify existing law.

## § 255.50 Reporting

In all situations in which services are provided under these guidelines, regardless of whether any costs are incurred, courts are to file reports with the AO on forms provided for this purpose. **See:**  Guide, Vol 5, § 370.

## § 255.60 Funding

Except as noted in § 215 and § 255.30, payment for sign language interpreters or other auxiliary aids should be from the general authorization. **See:**  Guide, Vol 5, § 410.

## § 260 Civil Proceedings Not Initiated by the Government

Interpreter services needed to assist parties to civil proceedings not instituted by the United States, both in-court and out-of-court, are the responsibility of the parties to the action, except as noted above in § 210 through § 255.

### § 265 Cost Reimbursement

(a)  In any proceeding not instituted by the United States, the presiding judge or the clerk or designee may make the services of an interpreter "available to that person on a cost-reimbursable basis, but the presiding judge may also require the prepayment of the estimated expenses of providing such services" (28 U.S.C. § 1827(g)(4)).

(b)  Because of the administrative burden placed on the judiciary in having to subsequently track and collect the reimbursed costs of these services, interpreter services should be provided on a cost-reimbursable basis only in limited circumstances when no other options are available.

# Guide to Judiciary Policy

Vol 5: Court Interpreting

## Ch 3: Court Management and Responsibility

§ 310 Types of Interpreters
    § 310.10 Staff Court Interpreters
    § 310.20 Contract Court Interpreters

§ 320 Qualifications of Interpreters
    § 320.10 Certified Interpreters
    § 320.20 Otherwise-Qualified Interpreters

§ 330 Locating Interpreters
    § 330.10 Responsibility
    § 330.20 Resources
    § 330.30 Selection of Interpreters

§ 340 Orientation of Interpreters
    § 340.10 General Orientation
    § 340.20 Prior Contact with Case or Any Party or Witness in the Case

§ 350 Administration of Oaths

§ 360 Supervising Staff Court Interpreters and Managing Contract Court Interpreter Resources
    § 360.10 Staff Court Interpreters
    § 360.20 Contract Court Interpreters
    § 360.30 Effective Use of Interpreters
    § 360.40 Background Security Check Requirements

§ 370 Statistical Reporting
    § 370.10 Interpreter Statistical Reporting
    § 370.20 Reporting of Usage for Communication Disabilities

---

### § 310 Types of Interpreters

There are two types of court interpreters:

- staff; and
- contract.

*Last revised (Transmittal 05-005) April 6, 2016*

## § 310.10 Staff Court Interpreters

All staff court interpreters must have passed the Federal Court Interpreter Certification Examination (FCICE) to be certified as Federally Certified Court Interpreters (FCCIs).

## § 310.10.20 Authorization for Staff Court Interpreter Positions

(a) New staff court interpreter positions are authorized by the Judicial Conference of the United States, upon recommendation of its Committee on Judicial Resources.

(b) The appointment authority for staff court interpreters comes from 28 U.S.C. § 751, which establishes a clerk for each district court and authorizes clerks to appoint employees with the approval of the court.

(c) The court may not select an employee of the government (as defined in 5 U.S.C. § 2105), other than a staff court interpreter, to serve as a court interpreter during that employee's assigned work period.

## § 310.20 Contract Court Interpreters

Contract court interpreters may be certified or otherwise-qualified interpreters.

## § 310.20.20 Authorization to Hire Contract Court Interpreters

Authority to hire contractors to perform interpreting duties is derived from 28 U.S.C. § 1827(c)(2), which states, "[t]he clerk of the court, or other court employee designated by the chief judge, shall be responsible for securing the services of certified interpreters and otherwise-qualified interpreters required for proceedings initiated by the United States, except that the United States attorney is responsible for securing the services of such interpreters for governmental witnesses."

## § 310.20.30 Fee Schedule for Contract Court Interpreters

The Court Interpreters Act, 28 U.S.C. § 1827(b)(3), requires the Director of the AO to prescribe and periodically update a schedule of reasonable fees for services rendered by interpreters, both certified and otherwise-qualified, who provide services in proceedings instituted by the United States. For the current fee schedule, **see:** Fee Schedule for Contract Court Interpreters page in JNet's Contract Court Interpreters area.

## § 320 Qualifications of Interpreters

### § 320.10 Certified Interpreters

(a)   A certified interpreter has successfully passed the Federal Court Interpreter Certification Examination (FCICE).

(b)   Certification testing programs have been developed and administered for Spanish, Navajo, and Haitian Creole.

(c)   For information on the certification program, **see:** Federal Court Interpreters page on the judiciary's public website.

### § 320.20 Otherwise-Qualified Interpreters

For languages for which the AO has not developed a certification program, an interpreter is considered "otherwise-qualified," and is classified as either professionally qualified or language skilled/ad hoc depending on the interpreter's credentials.

### § 320.20.20 Professionally Qualified Interpreters

The category of professionally qualified interpreters applies to all languages, except those for which the AO has certified interpreters (Spanish, Navajo, and Haitian Creole). Credentials for professionally qualified interpreters require sufficient documentation and authentication, and must meet the criteria in one of the following:

(a)   Passed the U.S. Department of State conference or seminar interpreter test in a language pair that includes English and the target language. The U.S. Department of State's escort interpreter test is not accepted as qualifying.

(b)   Passed the interpreter test of the United Nations in a language pair that includes English and the target language.

(c)   Is a current member in good standing of:

(1)   the Association Internationale des Interprètes de Conférence (AIIC); or

(2)   The American Association of Language Specialists (TAALS).

The language pair of the membership qualification must be English and the target language.

(d)     For sign language interpreters, someone who holds the Specialist Certificate: Legal (SC:L) of the Registry of Interpreters for the Deaf (RID).

## § 320.20.30 Language Skilled or Ad Hoc Interpreters

(a)     An interpreter who does not qualify as an AO certified or professionally qualified interpreter, but who can demonstrate to the satisfaction of the court the ability to interpret court proceedings from English to a designated language and from that language into English, will be classified as a language skilled/ad hoc interpreter.

(b)     This group includes all individuals not certified or professionally qualified, who, through a precisely structured *voir dire* process, can be deemed competent to handle simultaneous and/or consecutive interpretation and/or sight translation with sufficient language proficiency in both English and the target language.

(c)     In some instances, the presiding judge may need to take extra time and make special accommodations to ensure that the proceedings can be conveyed through the language skilled/ad hoc interpreter.

     (1)     For example, in some languages of limited diffusion, it may be difficult or impossible to find interpreters with the skills to interpret a court proceeding simultaneously.

     (2)     In addition, some interpreters may profess to have simultaneous skills that prove inadequate for a court proceeding.  When this occurs, the presiding judge may need to instruct the parties to speak slowly in order to allow the interpreter time to interpret consecutively.

     (3)     The presiding judge and parties may also need to simplify the language they use, or explain the meaning of some legal terms, so that the interpreter may understand what the parties are saying and transmit it to the non-English speaker.

## § 330 Locating Interpreters

## § 330.10 Responsibility

(a)     The clerk or the clerk's designee is responsible for locating certified or otherwise-qualified interpreters for court proceedings instituted by the United States.  However, U.S. attorney's offices are responsible for

locating, contracting, and paying interpreters for government witnesses. **See:** 28 U.S.C.§ 1827(g)(3).

**Note:**  As noted in § 215(b), if a staff court interpreter is utilized for a government witness, the court may bill for reimbursement of salary at the hourly rate that is equal to the interpreter's salary plus benefits.

(b)     Where the appointment of an interpreter for in-court proceedings is not required by statute or Conference policy, the clerk may provide assistance to the parties in locating an available interpreter. **See:**  Guide, Vol 5, § 330.20.30.

## § 330.20 Resources

## § 330.20.10 National Court Interpreter Database (NCID)

(a)     By statute, the Director is required to maintain a current master list of all certified interpreters and otherwise-qualified interpreters (28 U.S.C. § 1827(b)(3)).  This master list, the National Court Interpreter Database (NCID), is in InfoWeb.  Searches can be performed by language, qualification level, and state.

(b)     AO staff maintains current contact information for certified interpreters. Courts with updates to information on Federally Certified Court Interpreters (FCCIs) should email the information to the AO's Court Services Office at NCID_help@ao.uscourts.gov.

(c)     Each court will maintain the names and contact information of otherwise-qualified interpreters if the court was satisfied with the interpreter's performance and is willing to refer them for use in other courts.  The names, addresses, and phone numbers of professionally qualified and language skilled/ad hoc interpreters should be submitted to the AO for review and entry into the NCID.

(d)     A background check must be performed for all contract court interpreters. Information on use of the NCID for requesting a Federal Bureau of Investigation (FBI) background check and on reviewing the FBI report on a contract court interpreter may be found on JNet's Human Resources page.  The clerk may add a professionally qualified or a language skilled/ad hoc interpreter to the NCID for purposes of requesting an FBI background check. **See:**  Guide, Vol. 5, § 360.40.

A-001156

### § 330.20.20 Local Rosters (Lists) of Interpreters

(a)   In addition to the list of professionally qualified and language skilled/ad hoc interpreters maintained in the NCID, each court should maintain a local roster of interpreters available to perform interpreting services.  The roster should include as much information as possible about the qualifications of the interpreters.  The court may require interpreters who ask to be included on the court's local roster to:

   (1)   submit documentation evidencing their stated credentials; and

   (2)   consent to FBI background checks according to Judicial Conference requirements.  **See:**  Guide, Vol. 5, § 360.40.

(b)   Listings for otherwise-qualified interpreters provided to the parties or attorneys should contain a statement that the interpreters have not been tested or certified to interpret the language in question in the courts and that neither the AO nor the clerk's office can attest to the level of interpreting skills of the listed interpreters.

### § 330.20.30 Availability of NCID Information and Local Rosters

(a)   Upon request of a party to a case, information concerning locally available interpreters should be made available to that party (28 U.S.C. § 1827(c)(1)) either from the NCID or from the court's local roster.

   (1)   Specifically, an individual who desires the assistance of an interpreter, but is not entitled to the appointment of an interpreter under the Act, may examine the roster of local interpreters during ordinary business hours or online, if available.  The roster may also be utilized by attorneys and others involved in the court system.

   (2)   For this reason, the court must maintain current business contact information for the interpreters (telephone numbers and addresses), but must not disclose personal identifiers (e.g., social security numbers).

(b)   Clerks' offices may also distribute their local roster of interpreters or listings of interpreters from the NCID to other federal or state agencies for reciprocal assistance in locating interpreter resources.  A partial or full list of names of interpreters may not be shared with private or commercial entities for the purpose of the private or financial gain by these entities.

## § 330.20.40 Additional Resources

For additional information, including a list of professional associations, the Registry of Interpreters for the Deaf (RID), and government agencies to contact for help in locating interpreters, **see:** JNet's Court Interpreting page.

## § 330.30 Selection of Interpreters

(a)    The AO's Office of General Counsel advised in December 1993, and reaffirmed in March 2015, as follows:

> Legislative history makes it clear that the Congressional intent behind the requirement to use certified interpreters is to improve the quality of interpretation services in the Federal courts. Thus, to prohibit the use of certified interpreters for certain proceedings or when funding is tight appears to be inconsistent with that statute. Therefore, courts should use non-certified interpreters only when a certified interpreter cannot be found for a given proceeding, not as a money saving measure.

(b)    Courts may also contact the AO's Court Services Office, or other federal courts, for assistance in locating interpreters. The preferred order in which interpreters should be considered is indicated below:

(1)    Staff court interpreter, since all are certified.

(2)    Certified contract court interpreter from a court's local roster or from the NCID if there is sufficient time for travel.

(3)    Certified interpreter through the Telephone Interpreting Program (TIP) if the proceeding is less than one hour and not too complex and the courtroom is equipped for TIP. **See:** Guide, Vol 5, § 540.

(4)    Professionally qualified interpreter from a court's local roster or from the NCID if there is sufficient time for travel.

(5)    Professionally qualified interpreter through the TIP if the proceeding is less than one hour and not too complex and the courtroom is equipped for TIP. **See:** Guide, Vol 5, § 540.

(6)    Language skilled/ad hoc interpreter from a court's local roster or from the NCID if there is sufficient time for travel.

(7)     Language skilled interpreter through the TIP if the proceeding is less than one hour and not too complex and the courtroom is equipped for TIP. **See:**  Guide, Vol 5, § 540.

(8)     Interpreter from interpreter organizations and other sources, such as interpreting agencies.  For further information on working with interpreter agencies, **see:**  Guide, Vol 5, § 420.60.

(c)     The presiding judge may voir dire the interpreter as to the interpreter's qualifications to ensure that the individual has the requisite skills and abilities to interpret for the required proceedings.  When selecting otherwise-qualified interpreters, each court should ensure that professionally qualified interpreters meet the qualification requirements as stated in Guide, Vol 5, § 320.20.30.

## § 340 Orientation of Interpreters

## § 340.10 General Orientation

(a)     An orientation program for staff or contract court interpreters with little or no experience serving in a federal court can improve the service they provide to the courts.  New interpreters may be given the opportunity to view orientation material available on the Court Interpreter Training page in JNet's Court Interpreting area.

(b)     The ethics and protocol required of federal court interpreters are included in the contract form, found in JNet's Court Interpreter Services area.  This document should be reviewed with new or infrequently used contract court interpreters to ensure that they are aware of its requirements.  Staff court interpreters (e.g., judicial branch employees) are required to observe the Code of Conduct for Judicial Employees (Guide, Vol 2A, Ch 3).

## § 340.20 Prior Contact with Case or Any Party or Witness in the Case

The court may require an interpreter to disclose to the court and to the parties any prior involvement with the case or with any party or witness involved in the case.

## § 350 Administration of Oaths

(a)     Under Fed. R. Evid. 604, the presiding judge should ensure that each interpreter takes an oath to discharge properly the interpreter function,

including accurately interpreting for the speakers in the proceeding and properly preparing for the assignment.

**Note:** In some courts, the duty of administering an oath to the interpreter is delegated to the clerk. In taking the oath, the interpreter becomes an officer of the court with the specific duty and responsibility of interpreting between English and the target language.

| § 350(a) Sample Oaths | |
|---|---|
| **Version 1** | **Version 2** |
| Do you solemnly swear that you will well and truly act as an interpreter in this matter now before the court, so help you God?<br><br>Or alternatively:<br><br>Do you solemnly affirm that you will well and truly act as an interpreter in this matter now before the court; do you so affirm? | Do you solemnly swear that you will interpret faithfully and accurately in this matter now before the court, so help you God?<br><br>Or alternatively:<br><br>Do you solemnly affirm that you will interpret faithfully and accurately in this matter now before the court; do you so affirm? |

(b)    Policies with regard to the oath of interpreters vary from district to district and from judge to judge.

    (1)    In some courts, contract court interpreters are sworn in each day.

    (2)    In others, administering the oath at the beginning of a proceeding is sufficient for the entire case, regardless of duration.

    (3)    Some courts administer the oath to staff and contract court interpreters at the beginning of their service or contract.

    (4)    Courts may also have the interpreter sign an oath to keep on file.

(c)    The name of the interpreter serving during any court proceeding will be noted in the record of the case.

(d)    All staff court interpreters are deputy clerks appointed under 28 U.S.C. § 751. As deputy clerks, staff court interpreters may administer oaths and affirmations under the authority of 28 U.S.C. § 953, which confers oath-administering authority on all deputy clerks.

## § 360 Supervising Staff Court Interpreters and Managing Contract Court Interpreter Resources

### § 360.10 Staff Court Interpreters

### § 360.10.10 Supervision

Staff court interpreters assigned to courts are under the supervision of the clerk of court.

### § 360.10.20 Additional Duties

The clerk may find it desirable to add duties to the job description of the staff court interpreter, consistent with good human resources practices.

(a)    When a staff court interpreter has no case preparation or in-court work to perform, the clerk may assign other duties that take advantage of the interpreter's language/interpreting skills, such as telephone and over-the-counter assistance to non-English speakers.

(b)    At the discretion of the clerk, staff court interpreters may also be assigned to assist other courts through the TIP, if the court has the equipment necessary to provide this service.  This practice is encouraged and may result in savings to the judiciary and also help ensure that federally certified court interpreters are available.  For further information on TIP, **see:**  Guide, Vol 5, § 540.

### § 360.10.30 Use of Staff Court Interpreters

(a)    Staff court interpreters are employed to provide interpreting services at the request of judges, the clerk's office, and probation and pretrial services offices for events instituted by the United States in their respective districts.  Staff court interpreters may be used by other federal courts when deemed available by the employing court.  Inter-district travel must be authorized through the AO's Court Services Office. **See:**  Guide, Vol 19, § 420.20.60(b).

- For the provision of staff court interpreters for CJA events, **see:** Guide, Vol 5, § 220.20.

- For utilization of staff court interpreters for government witnesses, **see:**  Guide, Vol 5, § 215(b).

(b)     Prohibition of hiring staff court interpreters

(1)     A judiciary contracting officer may not knowingly award a contract to a relative of a judiciary employee; another judiciary employee, including staff court interpreters; or a business concern (or other organization) owned or substantially owned or controlled by a judiciary employee(s) or a relative(s) of judiciary employees. **See:** Guide, Vol 14, § 150.40.20. If, however, a compelling reason exists for such an award, full information must be provided to the Procurement Executive, for consideration of an approved written exception. **See:** Guide, Vol 14, § 150.40 (Standards of Conduct).

(2)     Likewise, executive branch agencies and organizations are generally prohibited from contracting with staff court interpreters under the Federal Acquisition Regulations (FAR), 48 CFR subpart 3.6. The FAR states that a contracting officer may not knowingly award a contract to a government employee or to a business concern or other organization owned or substantially owned or controlled by one or more government employees. This policy is intended to avoid any conflict of interest that might arise between the employees' interests and their government duties, and to avoid the appearance of favoritism or preferential treatment by the government toward its employees.

(3)     A staff court interpreter may be hired by non-government entities or retained counsel to provide interpreting services. If the services are required during the interpreter's tour of duty hours, the interpreter must use approved annual leave or authorized leave without pay in order for the interpreter to provide interpreting services to those entities. Such outside employment must be authorized by the clerk and within the requirements of the Guide, Vol 2A, Ch 3 (Code of Conduct for Judicial Employees).

## § 360.20 Contract Court Interpreters

## § 360.20.10 Rotation of Contract Court Interpreter Assignments

(a)     Contract court interpreters certified by the AO should be placed on the court's local roster of interpreters.

(b)     Courts should observe fair practices in rotating assignments to all locally available certified or professionally qualified interpreters.

(c)     If only language skilled/ad hoc interpreters are available, rotation should also be fair, but courts must always give preference to interpreters who are most competent and have the best interpreting credentials and skills.

## § 360.30 Effective Use of Interpreters

(a)     A number of measures may be employed to protect the accuracy of the record and avoid errors, including:

    (1)     positioning interpreters so they can hear and see the parties whose messages must be interpreted;

    (2)     providing the interpreter with drinking water in the courtroom; and

    (3)     providing attorneys with general guidance as to the demands that an interpreted proceeding will impose on them and other courtroom participants, including the:

        (A)     use of sound equipment;

        (B)     need to speak clearly;

        (C)     location of the interpreter in the courtroom;

        (D)     need to change interpreters periodically during lengthy proceedings (**see:** Guide, Vol 5, § 140 (Team Interpreting));

        (E)     possibility of interruption by the interpreter to clarify a matter; and

        (F)     need to avoid social and *ex parte* contact with interpreters.

(b)     It is important to guard against diminished performance caused by fatigue, poor acoustics, and attorneys inexperienced in the proper use of interpreters. Interpreting court proceedings is an intense and tiring task, and every reasonable measure must be taken to ensure proper performance. The physical and mental stress of interpreting over a long period may lead to a reduction in interpreting accuracy.

## § 360.40 FBI Background Check Requirements

FBI background checks must be conducted according to established Judicial Conference policies as described in Guide, Vol 12, § 570 (Background Checks and

Investigations) and in the instructions for conducting background checks on contract court interpreters.

## § 370 Statistical Reporting

## § 370.10 Interpreter Statistical Reporting

### § 370.10.10 Requirement to Report

Under the Court Interpreters Act (28 U.S.C. § 1827(b)(3)), "[t]he Director ... shall report periodically on the use and performance of both certified and otherwise-qualified interpreters in judicial proceedings instituted by the United States[.]"

### § 370.10.20 Reporting Frequency

To monitor usage and provide the information required in the annual report to Congress, courts must report their usage statistics on a quarterly basis through the judiciary's InfoWeb. Courts must provide this information even if no interpretation services were required during that quarter.

### § 370.10.30 Report Submission Dates

Quarterly reports must be submitted by the 15th day of the month following the end of the quarter (January 15, April 15, July 15, and October 15).

### § 370.10.40 Report Contents

(a)    The report should contain a summary of the preceding quarter's use of interpreters for court proceedings and probation or pretrial services events under the Court Interpreters Act. Each district has the discretion to determine whether the district court and the probation or pretrial services office will provide separate or combined reports.

(b)    Each report should indicate the number of docketed events in which certified staff, certified contractor, or otherwise-qualified interpreters were provided, by language. An event for the purpose of this reporting requirement is: one interpreter, one date, one case number, equals one event.

(c)    For specific reporting requirements and format, **see:** JNet's Reporting Requirements page.

## § 370.20 Reporting of Usage for Communication Disabilities

### § 370.20.10 Services for Participants

If interpreter services for participants with communication disabilities are required for court proceedings, courts should identify the sign language the party needing the interpreter services uses.

### § 370.20.20 Services for Spectators

**See:**  Guide, Vol 5, § 255.10(c) and § 255.20(c)(1).

### § 370.20.30 Reporting Requirements

Where interpreter services are provided under these guidelines, courts are to file reports with the AO on Form AO 50 (Report of Services Provided to Persons with Communications Disabilities).

### § 370.20.40 Further Guidance

For additional information on providing services to the hearing impaired and other persons with communications disabilities, **see:**  Guide, Vol 5, § 255.10.

# Guide to Judiciary Policy

Vol 5: Court Interpreting

## Ch 4: Funding, Contracting, and Paying Contract Court Interpreters

§ 410 Funding Authorization
    § 410.10 General Authorization Fund

§ 420 Delegation of Procurement Authority
    § 420.10 Negotiations of Interpreter Contracts or Agreements
    § 420.20 Contracts for Court Interpreters
    § 420.40 Use of Interpreting Agencies

§ 430 Paying Contract Court Interpreters
    § 430.10 Rate Determination and Review
    § 430.20 Prompt Payments to Contract Court Interpreters
    § 430.30 Payment Procedures

---

## § 410 Funding Authorization

### § 410.10 General Authorization Fund

(a)    The general authorization fund for contract court interpreters (BOC 2523, under fund #092000, organization code, court's Cost Organization Code) is for use by all court units when paying the approved invoices submitted by contract court interpreters who have provided service under the Court Interpreters Act in proceedings initiated by the United States, or by providers of appropriate accommodations, including sign language interpreters, for participants in court proceedings who have a hearing impairment or communications disability.

(b)    Charges for interpreter services provided under the Court Interpreters Act should be made to the fiscal year in which the obligation was incurred.

(c)    The following organization codes should be used when paying approved invoices:

| | |
|---|---|
| Appellate | AXXBBCX |
| Bankruptcy | BXXBBCX |
| District Court | DXXBBCX |
| Probation and Pretrial | PXXBBCX |

*Last revised (Transmittal 05-005) April 6, 2016*

A-001166

(d)     For guidance on when it is appropriate to use this account, **see:**  Guide, Vol 5, §§ 210, 235.10, 240, and 255.


## § 420 Delegation of Procurement Authority

## § 420.10 Negotiations of Interpreter Contracts or Agreements

## § 420.10.10 Authority

All negotiations and execution of contracts are subject to the delegation of procurement authority by the Director of the Administrative Office of the U.S. Courts (AO).

## § 420.10.20 Location of Instructions and Forms

Further information, including the Contract Court Interpreter Services Terms and Conditions ("the Contract") and attachments, and the Instructions and Procedures for Locating and Procuring Contract Court Interpreter Services ("Contract Instructions"), is on JNet.  The Contract and attachments and other information for contract court interpreters are also available on the Federal Court Interpreters page on the judiciary's public website.

## § 420.20 Contracts for Court Interpreters

(a)     Each court must negotiate, execute, and sign the contract with each non-staff interpreter according to the contract instructions provided.

(b)     The contract, attachments, and instructions used must be the most recently published version so to ensure compliance with judiciary procurement policy and guidelines and to provide a degree of consistency for contract court interpreters, especially those who serve in multiple districts.

(c)     The negotiation and the execution of the written agreement should take place before services are rendered.  This will ensure that payment, reimbursement, travel authorization and terms, cancellation terms, and other working conditions are established and agreed upon before services are rendered.

(d)     A presiding judicial officer's selection of a person to serve as an interpreter does not constitute an appointment of that person as an employee of the United States, except in respect to an interpreter who otherwise is an employee of the United States by prior appointment. The interpreter's

relationship with the United States is that of an independent contractor. **See:**  Guide, Vol 5, § 330.30(a).

(e)     Income taxes and social security taxes are not deducted from a contract court interpreter's compensation.  Social security benefits for a contract court interpreter are based entirely on the interpreter's contributions as a self-employed individual and the government makes no contribution as an employer.

(f)     For information on contracts with government employees or employee-controlled business concerns, **see:**  Guide, Vol 5, § 360.10.30(d).

## § 420.30 [Reserved]

## § 420.40 Use of Interpreting Agencies

(a)     Since there is no guarantee of the certification or skill level of any interpreter provided by agencies and contracting with an agency will increase the cost to the judiciary, procuring interpreters through interpreting agencies should be considered carefully.

(b)     Engaging an interpreter through an interpreting agency involves special contracting issues.

    (1)     The Contract Court Interpreter Services Terms and Conditions and related documents are only appropriate for contracting with individual interpreters, but can be used when the individual is a corporation and is the person who will be providing interpreting services directly.

    (2)     However, when contracting with agencies that hire individuals to perform interpreting services, the Judiciary Small Purchase Procedures should be followed, using a purchase order (PO) instead of the Terms and Conditions document.  The PO must include procurement Clause 3-3.  **See:**  Guide, Vol 14, Appx 1B. Courts have the authority to enter into commercial agreements under the Level 3 delegation (General Contracting Authority under the Contracting Officer's Certification Program).  **See:**  Guide, Vol 14, § 140.30.

(c)     For languages of limited diffusion (LLD) requirements, courts may have to obtain services through translation or interpretation agencies.

(d)     There must also be a statement of the required skill level of the interpreter, and of the court's requirement for simultaneous and consecutive interpretation and sight translation, including a stipulation that summary interpretation is not acceptable.  The statement should also cover performance and protocol issues and the required FBI background check. For information on FBI background check requirements, **see:**  Guide, Vol 5, § 360.40.

## § 430 Paying Contract Court Interpreters

## § 430.10 Rate Determination and Review

(a)     Fees for interpreter services are set by the Director and are subject to periodic review.

(b)     Interpreters providing services under the Court Interpreters Act, 28 U.S.C. § 1827, must not be compensated at a rate higher than the maximum rates established by the Director of the AO, unless an exception is authorized per § 420.60.  For further guidance on payment of AO certified interpreters, **see:**  Contract Instructions.

(c)     Compensation for language skilled/ad hoc interpreters is set at a lower rate than that set for certified and professionally qualified interpreters.

(d)     The following must be negotiated and established using the Contract document before the interpreter performs the work or travels to the assignment, unless unusual circumstances prevent advance arrangements:

    (1)     fees;

    (2)     compensation for authorized travel time;

    (3)     reimbursement of authorized travel expenses; and

    (4)     cancellation terms.

(e)     For information on current rates, **see:**  JNet's Fee Schedule for Contract Court Interpreters page and the Current Fees for Contract Court Interpreters page on the judiciary's public website.

## § 430.20 Prompt Payments to Contract Interpreters

The willingness of interpreters to work for the courts may be affected over time by the promptness with which they are paid. Although the judiciary is not subject to the Prompt Payment Act of 1982, timely payment of proper invoices for service rendered under the Court Interpreters Act or the CJA will help to facilitate subsequent recruitment.

## § 430.30 Payment Procedures

(a)   The Contract advises the interpreter what information is required in an invoice, and to whom the invoice should be submitted. The Contract instructions provide information to the court on processing of invoices.

(b)   Interim payments for work already performed are allowed for lengthy proceedings, but payment may not be provided before the work is performed. Some interpreting agencies demand payment in advance, but the government is not authorized to pay for interpreting services or interpreter travel expenses in advance of the service being rendered.

# Guide to Judiciary Policy

Vol 5: Court Interpreting

## Ch 5: Special Interpretation Services

§ 510 Simultaneous Interpreting in Government-Initiated Multiple-Defendant Cases
    § 510.10 Courts' Responsibility to Provide Services
    § 510.20 Equipment Purchase
    § 510.30 Reimbursement for Use of Personal Equipment

§ 520 Simultaneous Interpreting in Multiple-Party Cases Not Initiated by the Government

§ 530 Mitigating Demands on Interpreters
    § 530.05 Use of Multiple Interpreters (Team Interpreting)
    § 530.10 Makeup of Interpreting Teams
    § 530.30 Proceedings Typically Warranting Multiple Interpreters
    § 530.40 Proceedings Not Typically Warranting Multiple Interpreters

§ 540 Telephone Interpreting Program (TIP)
    § 540.10 Purpose
    § 540.20 Proceedings Where TIP Is Appropriate
    § 540.30 TIP Interpretation for Spanish or Other Languages
    § 540.40 Court Responsibility for Interpreting Arrangements and Payment
    § 540.50 TIP Equipment Funding

§ 550 Documents in Languages Other than English
    § 550.10 English Language Requirement
    § 550.20 Translation of Documents Filed with the Court
    § 550.30 Translation of Documents Prepared by the Court

---

## § 510 Simultaneous Interpreting in Government-Initiated Multiple-Defendant Cases

### § 510.10 Courts' Responsibility to Provide Services

Each court should provide for simultaneous interpreting services in multiple-defendant criminal actions and multiple-party civil actions initiated by the United States (28 U.S.C. § 1828(a)).

*Last revised (Transmittal 05-005) April 6, 2016*

## § 510.20 Equipment Purchase

Each court is authorized to purchase equipment to be used in providing simultaneous interpretation services in multiple-defendant criminal cases and multiple-party civil cases initiated by the United States.  Clerks' offices are provided with funds for such purchases in the aggregate allotment.

## § 510.30 Reimbursement for Use of Personal Equipment

There are no provisions or authorization to reimburse interpreters for use of an interpreter's personal equipment.

## § 520 Simultaneous Interpreting in Multiple-Party Cases Not Initiated by the Government

In multiple-party civil cases not initiated by the United States, the clerk of court, with the approval of the presiding judge, may make the court's simultaneous interpretation equipment available to interpreters hired by and paid for by the parties (28 U.S.C. § 1828(b)).  Contract interpreters, even when using court-provided equipment, should be contracted and paid directly by the parties in these cases.

## § 530 Mitigating Demands on Interpreters

The mental and physical demands on interpreters in lengthy or multiple-defendant trials are a particular area of concern.  To safeguard the integrity of interpreting services, and to ensure that the quality does not decrease due to interpreter fatigue, the presiding judge may:

(a)   designate two or more interpreters to work as a team (recommended for trials or lengthy proceedings); or

(b)   provide frequent breaks for an interpreter working alone.

## § 530.05 Use of Multiple Interpreters (Team Interpreting)

## § 530.10 Makeup of Interpreting Teams

Teams of interpreters may be comprised of a combination of staff interpreters, individually contracted interpreters, interpreters contracted by an agency under a single contract, or interpreters contracted through more than one agency.

## § 530.20 [Reserved]

## § 530.30 Proceedings Typically Warranting Multiple Interpreters

Some examples of the type of lengthy proceedings for which multiple interpreters may be necessary include:

- trials and evidentiary hearings;
- legal arguments on motions;
- sentencing hearings at which complex issues are argued; and
- any other complex proceeding.

## § 530.40 Proceedings Not Typically Warranting Multiple Interpreters

Examples of events that can normally be covered by a single interpreter may include shorter assignments such as:

- initial appearances;
- arraignments;
- pretrial services interviews;
- status conferences;
- pleas;
- sentences; and
- other proceedings that are relatively simple and brief.

## § 540 Telephone Interpreting Program (TIP)

## § 540.10 Purpose

The Judicial Conference approved the judiciary's Telephone Interpreting Program (TIP) in 1994 to provide simultaneous and consecutive interpreting for short proceedings (JCUS-MAR 94, pp. 16-17). TIP provides remote interpreting in situations where on-site court interpreters are not available or cost-effective.

## § 540.20 Proceedings Where TIP Is Appropriate

(a)   Courts should consider the use of TIP for the following short proceedings when certified or qualified interpreters are not available locally, and it is not feasible to have interpreters travel from outside the area:

- pretrial hearings;
- initial appearances;
- arraignments; and
- probation and pretrial services interviews.

(b)    Requests for telephone interpreting services may be made via the judiciary's intranet, and provider courts will respond to the request.  For information on equipment requirements and related telephone interpreting information, **see:**  JNet's TIP page.

(c)    For more information on TIP and to schedule TIP services, **see:**  JNet's TIP page.

### § 540.30 TIP Interpretation for Spanish or Other Languages

(a)    All TIP interpretation for Spanish is done by certified interpreters, usually court staff interpreters.

(b)    Interpretation via TIP for other languages is done by contract interpreters known to the provider court (where the interpreter is physically located), and skilled in the use of the TIP equipment.

### § 540.40 Court Responsibility for Interpreting Arrangements and Payment

(a)    The court providing the interpreter handles all the logistical arrangements, including negotiating terms, executing the contract, and paying the invoice.

(b)    The user court (where the hearing is located) only needs to make the request, initiate the telephone call at the time of the hearing, and report the event on the quarterly usage report.

### § 540.50 TIP Equipment Funding

The Administrative Office of the U.S. Courts (AO) will fund the purchase of equipment needed for provider courts or user courts to participate in TIP, subject to the availability of funding.  For information on purchasing equipment, contact the Courtroom Technology staff in the AO's Facilities and Security Office at 202-502-1200.

### § 550 Documents in Languages Other than English

### § 550.10 English Language Requirement

(a)    Except for the District of Puerto Rico (48 U.S.C. § 864), there is no federal statute requiring documents to be filed in English.  Some courts have addressed the language requirements for the filing of documents through local rules.

(b)    When an evidentiary document is submitted to the court in a language other than English, the presiding judge may issue an order to the party submitting the documents, requiring the documents to be filed in English. Translation of evidentiary documents is the responsibility of the party tendering the documents to the court.

## § 550.20 Translation of Documents Filed with the Court

### § 550.20.10 Finding Qualified Translators

(a)    While it is generally expected that all documents filed with the court will be in English, occasionally there is a need to have documents translated into English.  The Court Interpreters Act does not address written translation requirements, and the Federal Court Interpreter Certification Examination (FCICE) tests high-level interpreting skills in both English and Spanish but does not test for translation skills.

(b)    Qualified translators can be located through the American Translators Association or any other organization that tests translation ability in the appropriate language combination, such as the Language Services Unit of the State Department or the Language Services Section of the Federal Bureau of Investigation.

### § 550.20.20 Rates for Document Translation

(a)    When a court needs documents translated, the rates should be negotiated between the translator and the court.  Payment can be:

- per word or per page translated; or
- per hour of real time translation work.

(b)    The current State Department rates for translation are available on the Interpreting Program page on JNet and may be used for reference in negotiating rates for translations required by the court.  The daily interpreter fee rates do not apply to the translation of documents.

### § 550.20.30 Rates for Transcription of Recorded Materials

If required by the presiding judge, the transcription of recorded materials, which is documenting a spoken communication in a language primarily other than English, can be negotiated by the half-day, the full-day, or by the hour for the actual time spent on the task.

### § 550.20.40 Payment Responsibility for Translations and Transcriptions

(a)     Translations and transcriptions are not within the scope of the Court Interpreters Act, and payment for such services may not be funded from the general authorization for contract court interpreting.

(b)     Local funds should be used to award a contract for translation and transcription services.

### § 550.30 Translation of Documents Prepared by the Court

(a)     In practice, English is the language used by the courts, and all official documents of the court should be written in English.  The recipient of an official court document is responsible for translation to another language if necessary for that party's understanding of the official document.

(b)     A number of courts have responded to changing demographics and now make available (either on the courts' websites or at the courthouses) unofficial forms and other information for individuals with limited English proficiency.

FEBRUARY 2006

# Model Judges Bench Book on Court Interpreting

[State] Administrative Office of the Courts
Address
City, State, Zip

For questions or comments, please contact:

Name of Program Manager
Title
Phone Number
E-mail Address

The purpose of this document is to provide program managers with a sample of what should be included in a judge's bench book, without having to gather all the information and conduct independent research. This document has been prepared so that it may be easily adapted to each state.

A-001177

# ˙Acknowledgements

This document consists of excerpted material from a variety of sources. A reference section has been prepared to give credit to the major contributors.

This document was compiled from various sources. Because the National Center for State Courts and all of the member states of the Consortium for State Court Interpreter Certification so freely exchange information, copies of documents, publications, best practices, and procedures, it may be impossible to identify where a theory or idea actually originated. Because of that, thanks and acknowledgments are extended to each state in the Consortium, to staff at the National Center for State Courts, and to the federally certified interpreters who act as trainers, consultants, and national leaders in the field of interpreting in the courts. [Florida]

# Table of Contents

1.  **Introduction** .................................................................................... 1
    Access to Justice
    Demographics of State
    Racial and Ethnic Task Force and/or Court Interpreter Advisory Committee
    Administrative Office of the Courts' Program Administration
    Consortium for State Court Interpreter Certification

2.  **Existing Law and Policy** ......................................................... 4
    United States Constitution and [state] Constitution
    Title VI of the Civil Rights Act
    Americans with Disabilities Act
    State Statute, Rule, Order, and Policies
    Caselaw

3.  **Training and Certification** ...................................................... 7
    Training and Certification Process
    Importance and Purpose of Certification

4.  **Determining Whether or Not A Court Interpreter Is Needed** ................................ 9

5.  **Waiving the Right to an Interpreter** ................................. 11
    Waiver Must Be Knowing and Voluntary
    Waiver is Revocable at Any Time

6.  **Appointment of A Court Interpreter** .............................. 12
    When the Court is Required by Law to Appoint an Interpreter
    Priority of Appointment
    Determining an Interpreter's Qualifications
    Appointing Multiple Interpreters to a Proceeding
    Resources to Locate Interpreters

7.  **Role of the Court Interpreter and Professional Code of Ethics** .................................. 19
    Role of the Court Interpreter
    Code of Professional Responsibility in the Judiciary
    Reporting Policy Violations by Interpreters

8.  **Conducting Court Proceedings Using Interpreters and Other Practical Considerations for Facilitating the Interpreter's Performance of Duties** ............................ 23
    Interpreter Oath
    Preparation of the Court Interpreter
    Preparation of Other Participants for Use of the Interpreter

A-001179

Practical Considerations for Facilitating the Interpreter's Performance of Duties
Modes of Interpreting
Use of Multiple Interpreters
Handling Interpreter Error and Allegations of Interpreter Error
Selecting and Instructing Jurors for Trials Where A Court Interpreter Has Been
    Appointed
Other Jury Issues
Other Instructions

9.    **Best Practices for Working with Interpreters** ............................................... **34**
What Court Interpreters Would Tell You If They Were Here
What Should I Expect from an Interpreter?
What Are the Red Flags I Should Watch for?
What Should I Do to Assist the Interpreter?
I Speak the Language.  Can't I Help?

10.    **Interpreters for Persons Who Are Deaf or Hard of Hearing** ...................... **40**
Modes of Communication
Relay Interpreting
Facial Grammar or Body Shifting
Positioning of Sign Language Interpreters
Certification of Interpreters for the Deaf

11.    **Definitions and Terminology** .......................................................................... **44**

12.    **Resources** ............................................................................................................ **46**

13.    **References** ........................................................................................................... **47**

14.    **Appendix A** .......................................................................................................... **48**

# 1. Introduction

## Access to Justice

Thousands of cases every year in Idaho's courts require the skills of an interpreter or assistance for the hearing impaired and the need is growing. Idaho law requires that when a participant in a legal proceeding is not able to understand or speak English that "the court shall appoint a qualified interpreter to interpret the proceedings (§9-205)." The United States Constitution and Idaho law guarantees individuals the right to due process and the right to meaningful participation in the proceedings before them. [Idaho]

As time-consuming and resource intensive as interpreting may be, we must demand recognition that the ability to effectively communicate in court is a fundamental and basic right of all persons. Without competent interpretation, participation in our legal process is meaningless; it is the same as being unable to hear or speak. This is not an issue of providing more resources or special treatment – it is placing the non-English speaking person on *equal footing* with an English speaking person – nothing more, nothing less. It is up to us to make sure that our courts provide a "level playing field" and … Equal Justice for All. [Washington]

## Demographics of State

Nearly one out of every seven Americans over the age of five does not use English as a primary language. Of those 32 million persons, nearly half speak English "less than 'very well.'" Because of our geographic location, Washington proportionately has even greater numbers of non-English speaking persons. Washington's non-English population has increased by more than 10 percent over the past 10 years. [Washington]

## Racial and Ethnic Task Force and/or Court Interpreter Advisory Committee [Washington]

The Court Interpreter Certification Advisory Commission (Commission) was established by Supreme Court order on June 3, 1999. The Commission was given specific direction and tasks to be completed within five years, at which time the order expired. The order stated, "The Commission shall be responsible for developing a comprehensive court interpreter certification program plan, aimed at improving the access of non-English-speaking persons to legal proceedings in the court system of the state of Washington and carry out the provisions of RCW 2.43 et seq. and GR 11, 11.1, and 11.2." The Commission was given the following directives:

- Criteria and standards for certification of court interpreters;
- Criteria and standards for appointment of court interpreters by the courts;
- Criteria for reviewing appointment of court interpreters (certified and non-certified) by courts;
- Procedures for testing of interpreters, both written and oral;

- Procedures for appeals of test results;
- Development of continuing education curriculum;
- Fee schedule for interpreters and action to be taken for nonpayment of dues;
- Administrative action to be taken for failure to comply with the continuing education requirement;
- Disciplinary action for violations of the Code of Conduct pursuant to GR 11.1 and RCW 2.43.080;
- Court rules or statutes as the Commission deems necessary to implement the plan

The Commission developed education, testing, and program administration policies that are contained in the *Interpreter Program Manual*. The Commission maintains subcommittees to determine the appropriate course of action on the following issues: discipline, continuing education, and judicial education.

## Administrative Office of the Courts' Program Administration [Washington]

The Commission advises the Administrative Office of the Courts (AOC) on elements of the Interpreter Program. The AOC is responsible for establishing and administering a comprehensive testing and certification program for language interpreters (RCW 2.43.070). The AOC worked with the Commission to standardize the testing and scoring process, implement a continuing education/court hour requirement, pass a disciplinary process, and publish a directory of court certified interpreters on the AOC website www.courts.wa.gov/programs&orgs/certifiedcourtinterpreters.

Every court certified interpreter is issued an ID badge with a picture identifier and expiration date. Interpreters are encouraged to wear their badge in court proceedings and judges are equally encouraged to ask and see the interpreter's badge. However, court administrators are strongly advised to check the AOC website to ensure that interpreters used in court are current on their certification requirements.

## Consortium for State Court Interpreter Certification [NCSC website FAQ's]

The Consortium was officially founded in July 1995 by Minnesota, New Jersey, Oregon, and Washington. The came about as a consequence of findings and professional relationships established during research by the National Center for State Courts between 1992 and 1995 (See Hewitt, William E., *Court Interpretation: Model Guides for Policy and Practice in the State Courts*, Williamsburg, VA, National Center for State Courts, 1995).

The Consortium is a multi-state partnership dedicated to developing court interpreter proficiency tests, making tests available to member states, and regulating the use of the tests. Consortium resources achieve economies of scale across jurisdictional and organizational boundaries.

The Consortium addresses resource shortages by defining and implementing standards for identifying proficient, qualified interpreters. Without those standards, state courts risk

employing unqualified interpreters, leaving equal access to justice by linguistic minorities an unfulfilled obligation.

Consortium members have established core curriculum and training materials for basic orientation workshops for all interpreters employed in the courts, regardless of language. Members of the Consortium maintain communication, share problems and solutions, and stand together as a body capable of influencing policy and practice for improving the quality of interpreter services nationwide. Information exchange among the members results in shared policy documents, court rules, forms, and statistics.

As of August 2005, there are 34 member states representing over two-thirds of the nation's non-English speaking population.

A-001183

## 2. Existing Law and Policy

### United States Constitution and [state] Constitution

The United States Constitution and the [state] Constitution guarantees individuals the right to due process and the right to meaningful participation in the proceedings before them.

### Title VI of the Civil Rights Act

[Excerpted from the United States Department of Justice Civil Rights Division homepage found at http://www.usdoj.gov/crt/cor/coord/titlevi.htm.]

Overview of Title VI of the Civil Rights Act of 1964

Title VI, 42 U.S.C. § 2000d et seq., was enacted as part of the landmark Civil Rights Act of 1964. It prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance. As President John F. Kennedy said in 1963:

> Simple justice requires that public funds, to which all taxpayers of all races [colors, and national origins] contribute, not be spent in any fashion which encourages, entrenches, subsidizes or results in racial [color or national origin] discrimination.

If a recipient of federal assistance is found to have discriminated and voluntary compliance cannot be achieved, the federal agency providing the assistance should either initiate fund termination proceedings or refer the matter to the Department of Justice for appropriate legal action. Aggrieved individuals may file administrative complaints with the federal agency that provides funds to a recipient, or the individuals may file suit for appropriate relief in federal court. Title VI itself prohibits intentional discrimination. However, most funding agencies have regulations implementing Title VI that prohibit recipient practices that have the effect of discrimination on the basis of race, color, or national origin.

To assist federal agencies that provide financial assistance, the wide variety of recipients that receive such assistance, and the actual and potential beneficiaries of programs receiving federal assistance, the U.S. Department of Justice has published a Title VI Legal Manual. The Title VI Legal Manual sets out Title VI legal principles and standards. Additionally, the Department has published an Investigation Procedures Manual to give practical advice on how to investigate Title VI complaints. Also available on the Coordination and Review Website are a host of other materials that may be helpful to those interested in ensuring effective enforcement of Title VI.

Additional information regarding Title VI compliance can be found at www.lep.gov.

**Americans with Disabilities Act** [Oregon]

The Americans with Disabilities Act (ADA), 42 USC § 12115-12161, specifically Title II, prohibits discrimination against people with disabilities in state and local government services. 42 USC § 12102(2). The definition of a person with disabilities is as follows:

A person:
a. with a physical or mental impairment that substantially limits one or more of the major life activities of such individual,
b. with a record of such an impairment, or
c. who is regarded as having such an impairment.

[Minnesota Best Practices]

Title II of the Americans with Disabilities Act ("ADA") requires local and state courts to provide qualified sign language interpreters or other auxiliary aids such as transcription or assistive listening systems, to ensure effective communication with deaf and hard of hearing persons. Unlike Minnesota law, Title II covers all persons with disabilities and is not limited to litigants or witnesses.  Title II also requires that when selecting the appropriate reasonable accommodation, deference be given to the deaf or hard of hearing individual's choice of what auxiliary aid he or she needs:

> In determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with disabilities.

In its analysis, the Justice Department states:

> The public entity shall honor the choice of the individual with disabilities for a particular auxiliary aid] unless it can demonstrate that another effective means of communication exists or that use of the means chosen would not be required under § 35.164.

> Deference to the request of the individual with a disability is desirable because of the range of disabilities, the variety of auxiliary aids and services, and different circumstances requiring effective communication.  For instance, some courtrooms are now equipped for "computer-assisted transcripts," which allow virtually instantaneous transcripts of courtroom argument and testimony to appear on displays.  Such a system might be an effective auxiliary aid or service for a person who is deaf or has a hearing loss who uses speech to communicate, but may be useless for someone who uses sign language.

> Although in some circumstances a notepad and written materials may be sufficient to permit effective communication, in other circumstances they may not be sufficient.  For example, a qualified interpreter may be necessary when the information being communicated is complex, or is exchanged for a lengthy period of time.  Generally, factors to be considered in determining whether an interpreter

is required include the context in which the communication is taking place, the number of people involved, and the importance of the communication.

The regulation specifies the qualifications that will be required of an interpreter:

Qualified interpreter means an interpreter who is able to interpret effectively, accurately, and impartially both receptively and expressively, using any necessary specialized vocabulary.

Note, however, that this definition may not be controlling if state law requires a higher degree of competence, such as a state law which requires court interpreters to possess a particular level of skill or certification, as in Minnesota.

## State Statute, Rule, Order, and Policies

*This section left for state specific information.  See Minnesota and Washington bench books for example.*

## Caselaw

*This section left for state specific information.  See Minnesota and Washington bench books for example.*

# 3. Training and Certification

## Training and Certification Process

As a member of the Consortium for State Court Interpreter Certification, the [state] Administrative Office of the Courts has access to certification exams in the following languages: Arabic, Cantonese, Hatian-Creole, Hmong, Korean, Laotian, Mandarin, Russian, Somali, Spanish, and Vietnamese.

In order to become a certified court interpreter an individual must complete the following steps:

[Insert state certification process below.  See following steps for example.]

### Step One:  The Orientation Workshop

The two-day orientation workshop is a prerequisite to the written exam, as well as the skill-building workshop and the certification exam.  The workshop includes the following topics:

- Code of Conduct:  Principles and Practice
- Skills and Modes of Interpreting
- Small Group Discussion and Role-Playing
- Breakout Sessions to Practice the Modes of Interpreting
- Criminal Procedure and Legal Terminology
- Resources, References, and Self-Study
- Vocabulary Development
- What A Certification Exam Looks Like

### Step Two:  The Written Screening Exam

The written exam is a prerequisite to the optional skill-building workshop and the certification exam.  The exam consists of three parts:  general language proficiency, court-related terms and ethics and professional conduct.  The exam contains 135 multiple-choice questions.

The written exam is constructed to measure entry-level knowledge that a minimally competent person entering the court interpreting field would need, including:  English general vocabulary, common words and phrases likely to be heard in court, the typical progression of cases through the court system, provisions of the code of professional responsibility, and written translation.

In order to pass the test, 80 percent of the multiple-choice items must be answered correctly. Individuals who are unable to pass this exam should consider attending classes at a college or university to enhance their proficiency in the English language.  The time frame within which you can register to retake the written exam is one year.  Passing this test does not mean that an individual is a "certified" or "approved" court interpreter.

A-001187