**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CIVIL NO. 9:16-CV-80693-RNS**

| | | |
|---|---|---|
| **RICARDO SANCHEZ, JR.,** | **:** | |
| **Movant** | **:** | |
| | **:** | |
| **v.** | **:** | **THIS IS A CAPITAL CASE** |
| | **:** | |
| **UNITED STATES OF AMERICA,** | **:** | |
| **Respondent** | **:** | |

**RICARDO SANCHEZ'S RESPONSE TO**
**ORDER TO SHOW CAUSE**

Matthew C. Lawry
Aren Adjoian
Federal Community Defender Office
 for the Eastern District of Pennsylvania
Curtis Center, Suite 545-West
601 Walnut Street
Philadelphia, PA 19106
Phone: (215) 928-0520
Fax: (215) 928-0826
Matthew_Lawry@fd.org
Aren_Adjoian@fd.org

Counsel for Ricardo Sanchez, Jr.

Dated:  December 19, 2016

**Relevant Procedural History**

Pending before the Court is Mr. Sanchez's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, CV-DE 16-1 ("Motion").

Following the guilty verdict and imposition of the death sentence, trial counsel sought the appointment of new counsel – specifically the Federal Community Defender Office for the Eastern District of Pennsylvania ("FCDO") and Martin McClain, Esq. – to represent Mr. Sanchez on direct appeal.  CR-DE 878.

On May 20, 2009, the Court (Hurley, J.) granted the motion and appointed David McColgin, Esq., of the FCDO and Mr. McClain as counsel for the direct appeal.  CR-DE 917.[1]

On July 14, 2014 – after the Eleventh Circuit had denied the direct appeal but while Mr. Sanchez's petition for writ of certiorari to the United States Supreme Court was still pending – Mr. Sanchez filed an unopposed motion for the reappointment of his FCDO counsel to represent him in any proceedings under 28 U.S.C. § 2255.  CR-DE 1136.  The motion represented that FCDO counsel had consulted with Mr. Sanchez, who wished the FCDO to continue representing him, and with the Federal Capital Habeas Project of the Office of Defender Services of the Administrative Office of the United States Courts, which encouraged it to do so.  *Id.* at 4.  In the motion, Mr. McClain also sought leave to withdraw as counsel upon completion of the proceedings in the United States Supreme Court.  *Id.* at 6.[2]

---

[1] Subsequently, Sarah Gannett, Esq. of the FCDO appeared as co-counsel, and Mr. McColgin withdrew as counsel when he left the FCDO.  Ms. Gannett and Mr. McClain were counsel for the remainder of the direct appeal.  Ms. Gannett has also since left the FCDO.

[2] The motion was signed by Ms. Gannett, Mr. McClain and Billy H. Nolas, Esq. of the FCDO.  It proposed that Mr. Nolas be designated as lead counsel in the § 2255 proceedings.  CR-DE 1136 at 6-7.

On July 15, 2014, Judge Hurley, who had previously ordered the appointment of the FCDO for the direct appeal, granted the motion and appointed the FCDO to represent Mr. Sanchez "in all post-conviction proceedings."  CR-DE 1137.

On October 23, 2015, following the departure of Mr. Nolas from the FCDO, Matthew Lawry, Esq. and Aren Adjoian, Esq., of the FCDO, entered their appearances on behalf of Mr. Sanchez.  CR-DE 1164.

On May 3, 2016, undersigned counsel filed the initial version of Mr. Sanchez's motion for relief pursuant to 28 U.S.C. § 2255.  CV-DE 1.

On May 10, 2016, pursuant to Internal Operating Procedure 2.12.00, Judge Hurley directed the clerk to reassign this matter.  CV-DE 7.  On May 10, 2016, the case was reassigned to this Court.  CR-DE 1202.

On May 26, 2016, undersigned counsel filed on behalf of Mr. Sanchez a corrected version of the initial § 2255 motion.  CV-DE 16-1.  On September 12, 2016, Mr. Sanchez filed discovery requests.  CV-DE 25, 26.

On October 4, 2016, the Court *sua sponte* dismissed, pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, Claims I, II, III, VI, VII(A), IX and X of the Motion. Order Dismissing Claims, CV-DE 29 at 23.  The Court denied discovery requests relating to those claims, and ordered Respondent to respond to the remaining claims and discovery requests by November 1.  CV-DE 30.

On October 19, 2016, Mr. Sanchez moved for reconsideration of the Court's Order Dismissing Claims.  CV-DE 32.  On November 1, 2016, the government filed its responses to the § 2255 Motion, CV-DE 37, and to the discovery requests.  CV-DE 35.  On November 7, 2016, the government filed its response to the motion for reconsideration.  CV-DE 40.  On November

2

15, 2016, Mr. Sanchez filed his reply on the discovery requests, CV-DE 41, and on November 17, 2016, he filed his reply in support of the motion for reconsideration.  CV-DE 42.

On November 23, 2016, the Court entered its Order to Show Cause ("OSC"), *sua sponte* raising the question whether undersigned counsel are subject to a conflict of interest.  CV-DE 45. The OSC ordered Mr. Sanchez to respond by December 7, 2016.  *Id.*  The Court subsequently granted an unopposed motion for an extension of time to respond until December 15, 2016.  CV-DE 47.

On December 12, 2016, the Court issued an Order referencing a motion to recuse filed in co-defendant Daniel Troya's case.  *See Troya v. United States*, Case No. 9:16-cv-80700-RNS, DE 64.  The Order directed Mr. Sanchez to file, by January 11, 2017, either a motion to recuse or a notice that he has "diligently evaluated the issue" and concluded that recusal is not warranted. CV-DE 48.  The Order also postponed a scheduled hearing on the discovery requests until after the recusal issue and the status of counsel issue "have been resolved."  *Id.*

On December 13, 2016, Mr. Sanchez moved for an extension of time until January 11, 2017, in which to file his response to the OSC.  CV-DE 49.  That same date, the Court granted the motion in part, extending the time for a response until December 19, 2016.  CV-DE 50.

## Discussion

The OSC raises the possibility that the FCDO may face a conflict of interest owing to the fact that FCDO counsel represented Mr. Sanchez on direct appeal, and therefore "would have to argue their own ineffectiveness" in order to raise a claim that direct appeal counsel were ineffective.  CV-DE 45 at 5.

That observation is undoubtedly true, but the possible conflict noted is purely a potential one.  There is no rule prohibiting direct appeal counsel from representing a defendant in § 2255

proceedings, and indeed this has frequently happened in capital cases.[3]  At the time of the

FCDO's re-appointment in 2014, Judge Hurley, the FCDO, the government and Mr. Sanchez

were all aware that the FCDO had represented Mr. Sanchez on direct appeal, yet none of the

parties objected to the re-appointment.  Moreover, 18 U.S.C. § 3599(e) establishes a presumption

that counsel will continue to represent the defendant until replaced, including in "all available

post-conviction process . . . ."  Counsel can and should be replaced if it is in the interests of

justice to do so.  *See Martel v. Clair*, 132 S. Ct. 1276, 1284-86 (2012).  But the idea that direct

appeal counsel should never appear in post-conviction proceedings is inconsistent with the

statute and with actual practice.

In the OSC, the Court cites an unpublished order from the District Court of Montana,

*United States v. Wright*, 13-CR-00103-BMM (D. Mont. Oct. 6, 2016), for the proposition that

direct appeal counsel should never represent a defendant in § 2255 proceedings, given the

possibility that a direct appeal lawyer who "miss[ed] something important" on appeal may "miss

the fact that he missed it" in § 2255 proceedings.  CV-45 at 6 (quoting *Wright*, Order at 1).

In the face of the practice to the contrary set forth above, this lone order does not

establish either that direct appeal counsel should never appear in § 2255 proceedings, or that it

would be in the interests of justice for the FCDO to be replaced as counsel for Mr. Sanchez.  In

part this is true because counsel who are qualified and have the resources to undertake capital §

---

[3] In a significant number of federal capital cases nationally, direct appeal counsel has represented the defendant in § 2255 proceedings.  This has occurred in at least the following cases: *United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011); *United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014); *Brown v. United States*, 583 F. Supp. 2d 1330 (S.D. Ga. 2008); *Jackson v. United States*, 638 F. Supp.2d  514 (W.D.N.C. 2009); *United States v. Johnson*, No. 1:02-cv-06998 (N.D. Ill.); *Mikos v. United States*, No. 1:10-cv-06331 (N.D. Ill.); *Paul v. United States*, 534 F.3d 832 (8th Cir. 2008); *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004) (both Roane and co-defendant Tipton were represented in §2255 proceedings by their respective direct appeal counsel); *United States v. Stitt*, 552 F.3d 345 (4th Cir. 2008); *Umana v. United States*, No. 3:16-cv-00057 (W.D.N.C.).

2255 proceedings are rare.  By itself, the potential for a conflict and the abstract idea that direct appeal counsel should not be § 2255 counsel are not enough, we submit, to justify removing counsel who are highly qualified and have a longstanding professional and personal relationship with Mr. Sanchez.

Besides relying on the theoretical possibility that the FCDO may have missed or defectively presented direct appeal claims, the OSC relies on the Court's previous rulings that certain claims are defaulted because the FCDO did not raise them on direct appeal.  *See, e.g.*, CV-DE 29 at 4; CV-DE 45 at 4-5.  A movant could allege ineffective assistance of appellate counsel to overcome such a default, but undersigned counsel is effectively precluded from raising such a claim, given that Mr. Sanchez was represented on direct appeal by counsel from the FCDO.

We submit that the application of those principles to this case in the Court's prior orders was erroneous.  As discussed in Mr. Sanchez's pending reconsideration motion, the Court erred in ruling that – for claims based on facts *dehors* the record – the claim was available on direct appeal, was waived when not raised on direct appeal, and therefore that the vehicle for overcoming default is an allegation that direct appeal counsel were ineffective.

The error stems from the rule that claims based on facts *dehors* the record are not even available to direct appeal counsel, who instead raise claims based on the record created at trial. Thus, claims based on extra record facts are generally not considered defaulted as the result of a failure to raise them on direct appeal.  *See Bousley v. United States*, 523 U.S. 614, 621-22 (1998) (noting there is an exception to procedural default rule "when the facts were 'dehors the record and their effect on the judgment was not open to consideration and review on appeal.'") (quoting *Waley v. Johnston*, 316 U.S. 101, 104 (1942) (per curiam)); *Mills v. United States*, 36 F.3d 1052,

5

1055 (11th Cir. 1994) (a ground is "available" on direct appeal when "its merits can be reviewed without further factual development.").

Such claims may have been available, however, to trial counsel, so the applicable cause for any default is that trial counsel (not direct appeal counsel) were ineffective for failing to investigate, develop and raise the issue at trial. Undersigned counsel have no potential conflict with respect to allegations that trial counsel were ineffective, and have raised many such claims. Thus, the potential conflict identified by the Court should not arise with respect to such allegations, and the pending reconsideration motion on those extra-record claims should be granted.

We recognize, however, that a potential conflict could ripen should the Court adhere to its prior ruling in the order dismissing claims, because under that ruling the only vehicle for raising certain claims may be to allege that direct appeal counsel were ineffective, and undersigned counsel may not allege the ineffectiveness of counsel from the FCDO.

The Court has directed counsel to suggest the appropriate course of action if it does indeed rule that the FCDO must withdraw. At a minimum, the Court should delay ruling until it decides other pressing issues. As indicated above, the Court's ruling on the pending motion to reconsider will affect whether the potential conflict actually impacts undersigned counsel's ability to represent Mr. Sanchez. Moreover, within the past week co-defendant Troya has moved to recuse the Court pursuant to 28 U.S.C. § 455(a), *Troya v. United States*, Case No. 9:16-cv-80700-RNS, DE 64 (hereafter "Troya recusal motion"), and this Court has directed Mr. Sanchez to file, by January 11, 2017, either a motion to recuse or a notice that he has "diligently evaluated the issue" and concluded that recusal is not warranted. CV-DE 48.

6

In recognition of the effect of the recusal issue on the other issues in both cases, the Court also postponed the scheduled discovery hearing, which will be rescheduled after the recusal issue is resolved. *Id*. The Court should follow the same approach with respect to the other pending issues, including the status of counsel.

While based in part on facts and claims that are specific to Mr. Troya's case, the Troya recusal motion raises serious issues that could also affect Mr. Sanchez. It points out that Judge Scola and former Assistant United States Attorney Kastrenakes – the government's lead co-counsel at this trial – are former colleagues who have known each other for decades, have served as co-counsel in at least one capital case as prosecutors, and have defended themselves in that case against claims of prosecutorial misconduct. Troya recusal motion at 8-9. It recounts Judge Scola's prior practice, reported upon his nomination to this Court, of recusing *sua sponte* from cases where "a claim of prosecutorial misconduct . . . and the credibility of the prosecutor who was my friend may be called into question," in order "to avoid the appearance of impropriety." *Id*. at 10. The Troya recusal motion argues that several of Mr. Troya's claims for relief will likely put in issue Mr. Kastrenakes's credibility, requiring that this Court decide his credibility in ruling on the claims. *Id*. at 8-10. It further requests that Judge Scola "make a record of any information relevant to the question now before the Court." *Id.* at 8 n.4 (quoting *Porter v. Singletary*, 49 F.3d 1483, 1489 (11th Cir. 1995), which in turn cited Commentary to Canon 3E(1) of Florida Code of Judicial Conduct).

Given that Mr. Sanchez must diligently evaluate whether to request recusal by January 11, 2017, Mr. Sanchez makes the same request here. *See* ABA Model Code of Judicial Conduct, Rule 2.11, Comment 5 ("A judge should disclose on the record information that the judge

believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification even if the judge believes there is no basis for disqualification.").

We note that Mr. Kastrenakes's credibility and conduct may be at issue with respect to several of the claims and discovery requests now pending before the Court in Mr. Sanchez's case, as well as with respect to claims that were previously dismissed and are now at issue in the pending motion for reconsideration.  For example, Mr. Kastrenakes made the rebuttal closing argument, *see* Tr. 7410 *et seq.*, that is the principal source of the prosecutorial misconduct allegations in Claim VIIE.  *See* Motion at 95-97.  Mr. Kastrenakes also made the rebuttal closing argument at penalty phase, and most of the misconduct alleged in in Claim VIIIJ of the Motion, at 162-63, occurred during his argument.  This Court's reconsideration of Claims I and VI also requires it to consider allegations that the government, including Mr. Kastrenakes, improperly failed to produce to the defense information concerning the criminal backgrounds of jurors and favorable, material evidence.  Whether or not these and other matters form a proper basis for a recusal motion, and whether or not the Court would ultimately grant such a motion, it should not reach out to decide the merits of the reconsideration motion or the status of counsel while the recusal question is hanging in the air.

As we noted in a recent filing, *see* CV-DE 49 at 2, all of these issues are intertwined.  In these circumstances, this Court should give priority to the issue of recusal.  While there is no legal requirement that recusal issues be given priority over other issues, *see Moore v. Shands Healthcare, Inc.*, 617 F. App'x 924, 927 (11th Cir. 2015), the appearance of impartiality is of paramount importance, *Liteky v. United States*, 510 U.S. 540, 548 (1994).  For the Court to act on other important matters while the appearance of its impartiality is subject to question could in itself give rise to unnecessary complications.

8

The Court ordered counsel to provide a list of cases in which the FCDO "provided legal counsel on both the direct appeal and § 2255 motion to vacate, set aside, or correct sentence to a federal capital defendant."  CV-DE 45 at 7.  There are no other such cases in the FCDO, but as noted in n. 3, *supra*, there have been a number of such cases around the country.

The Court also ordered counsel to "provide a proposed course of action for the remainder of the Movant's § 2255 proceedings," in the event that counsel concurred that a conflict of interest exists.  CV-DE 45 at 7.  As indicated above, we submit that any conflict of interest is potential, rather than actual, and insufficient to require replacement of the FCDO.

If the FCDO is nonetheless replaced as counsel, it is incumbent on the Court to appoint replacement counsel who meet the qualifications of 18 U.S.C. § 3599 in all respects.  Section 3599(e) contemplates that – as happened in this case – appointed counsel will continue to represent the defendant in subsequent proceedings.  When appointed counsel is replaced, they can only be replaced by "similarly qualified counsel . . . ."  18 U.S.C. § 3599(e).  The reference to "similarly qualified counsel" necessarily implicates the requirements for capital counsel set forth in 18 U.S.C. § 3005, including that there must be at least "2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases . . . ."  18 U.S.C. § 3005.  Furthermore, in appointing counsel under § 3005, the Court "shall consider the recommendation of the Federal Public Defender organization . . . ."  *Id.*  And, while not mandated by statute, the Court should also consider the recommendation of the Federal Capital Habeas Project of the Office of Defender Services of the Administrative Office of the United States Courts.

Should replacement counsel be appointed, they will need adequate time to become familiar with the voluminous record, meet with Mr. Sanchez, consult with experts and other witnesses, and develop a plan for further litigation.  If the Court concludes that the FCDO filed

the § 2255 motion while laboring under a conflict of interest and that the FCDO should be replaced, replacement counsel would require an opportunity to amend the existing motion in order to cure the impact of any conflict.  Given that the starting point in any such proceedings would then be an amended petition rather than the existing petition, we submit that a decision on the pending claims, motion for discovery, and motion for reconsideration should be stayed until after any recusal motion is resolved, replacement counsel have been appointed, and new counsel has had the opportunity to investigate, research and prepare an amended petition.

Respectfully submitted,

/s/ Matthew C. Lawry
Matthew C. Lawry
Aren Adjoian
Federal Community Defender Office
for the Eastern District of Pennsylvania
Curtis Center, Suite 545-West
601 Walnut Street
Philadelphia, PA 19106
Phone: (215) 928-0520
Fax: (215) 928-0826
Matthew_Lawry@fd.org
Aren_Adjoian@fd.org

Counsel for Ricardo Sanchez, Jr.

Dated: December 19, 2016

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served electronically by the Court's CM/ECF service on this 19th day of December, 2016, on the following individuals:

Stephen Carlton
United States Attorney's Office
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Phone: (561) 820-8711
Fax: (561) 659-4526
stephen.carlton@usdoj.gov
Counsel for the United States

Brandy Galler
United States Attorney's Office
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Phone: (561) 820-8711
Fax: (561) 659-4526
brandy.galler@usdoj.gov
Counsel for the United States

/s/ Matthew C. Lawry
Matthew C. Lawry