**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CIVIL NO. 9:16-CV-80693-RNS**

| | | |
|---|---|---|
| **RICARDO SANCHEZ, JR.,** | **:** | |
| **Movant** | **:** | |
| | **:** | |
| **v.** | **:** | **THIS IS A CAPITAL CASE** |
| | **:** | |
| **UNITED STATES OF AMERICA,** | **:** | |
| **Respondent** | **:** | |

**MOTION TO REASSIGN CASE**
**AND INCORPORATED MEMORANDUM OF LAW**

Ricardo Sanchez, through counsel and pursuant to 28 U.S.C. § 455(a) and the Fifth and

Eighth Amendments to the United States Constitution, respectfully moves to recuse the

Honorable Robert N. Scola, Jr., and to reassign the case to another district court judge for all

subsequent proceedings.[1]

### I.    Procedural and Factual Background

In October 2006, Danny Varela, Daniel Troya, Ricardo Sanchez, Jr., and Liana Lopez

were arrested in connection with a narcotics conspiracy led by Mr. Varela. The federal

---

[1] On January 10, 2017, the government filed a document opposing Mr. Sanchez's ostensible adoption of co-defendant Daniel Troya's motion to reassign his case. CV-DE 55. Mr. Sanchez presumes that the government overlooked the Court's order of December 12, 2016, setting January 11, 2017, as the due date for Mr. Sanchez to file any motion to recuse or to affirmatively waive that opportunity. *See* CV-DE 48. Rather than trying to redraft this motion in a compressed time frame to address the government's arguments – many of which appear to be directed at Mr. Troya in any event – Mr. Sanchez is submitting this motion as previously drafted. Mr. Sanchez respectfully reserves the right to reply to any government opposition to this motion in the normal course.

1

government later indicted all four defendants for multiple narcotics and weapons offenses, and indicted Mr. Sanchez and Mr. Troya for the murders of the Escobedo family.

The Honorable Daniel T.K. Hurley presided over pretrial and trial proceedings. The government's lead prosecutors were John Kastrenakes, Esq., and Stephen Carlton, Esq.

In a joint trial of all four defendants, Mr. Sanchez and Mr. Troya were convicted of all counts. Capital sentencing proceedings were then held before the same jury, in which Mr. Sanchez and Mr. Troya were sentenced to death on two counts and to consecutive life sentences on the other murder charges.

In a consolidated appeal, the Eleventh Circuit affirmed Mr. Troya's and Mr. Sanchez's judgments and sentences. *United States v. Troya*, 733 F.3d 1125 (11th Cir. 2013). The United States Supreme Court denied certiorari. *Sanchez v. United States*, 135 S. Ct. 2048 (2015).

On May 3, 2016, Mr. Sanchez and Mr. Troya filed motions for relief pursuant to 28 U.S.C. § 2255. CV-DE 1; *Troya v. United States*, Case No. 9:16-cv-80700-RNS, DE 1.

On May 10, 2016, Judge Hurley directed the clerk to reassign both cases. CV-DE 7; *Troya*, Case No. 9:16-cv-80700-RNS, DE 10. On May 10, 2016, Mr. Sanchez's case was reassigned to the Honorable Robert N. Scola, Jr. CV-DE 8. On May 13, 2016, pursuant to Local Rule 3.8 and IOP 2.15.00 concerning the assignment of similar actions, Mr. Troya's case was reassigned to Judge Scola as well. *Troya*, Case No. 9:16-cv-80700-RNS, DE 13.

On May 26, 2016, undersigned counsel filed on behalf of Mr. Sanchez a corrected version of the initial § 2255 motion.[2] CV-DE 16-1. In Claim I, Mr. Sanchez alleged that his constitutional rights were violated where some jurors provided incomplete and inaccurate

---

[2] The corrected version of the § 2255 motion did not alter the substance of any of Mr. Sanchez's claims. All of the allegations regarding Mr. Kastrenakes's conduct were therefore raised before Judge Scola's assignment to the case.

2

information on their questionnaires and in voir dire, and that the government violated due process to the extent that it was aware of, but failed to disclose, the inaccuracies. *Id*. at 8-13. In a subsequent discovery motion, Mr. Sanchez requested such evidence from the government, explaining that the government had acknowledged conducting pretrial background checks on some potential jurors, but that such evidence apparently had not been disclosed to the defense. CV-DE-25-1 at 4-5 & n.2. Specifically, Mr. Kastrenakes stated before trial that he "had the agents check" for such background information through the N.C.I.C. Tr. 1266-67.

In Claim VI of his § 2255 motion, Mr. Sanchez alleged that the prosecution violated due process by failing to disclose several categories of evidence material to his convictions and sentence. CV-DE 16-1 at 58-72. In Claims VIIE and VIIIJ, Mr. Sanchez alleged that the prosecution committed misconduct during closing arguments at the guilt and penalty phases, respectively. *Id*. at 95-97, 162-63. Most of the objectionable arguments were made by Mr. Kastrenakes. *See id*.

On September 12, 2016, Mr. Sanchez filed discovery requests related to his claims for relief. CV-DE 25, 26.

On October 4, 2016, the Court *sua sponte* dismissed Claims I, II, III, VI, VIIA, IX and X of the § 2255 motion. Order Dismissing Claims, CV-DE 29 at 23. The Court denied discovery requests relating to those claims, and ordered Respondent to respond to the remaining claims and discovery requests by November 1. CV-DE 30.

On October 19, 2016, Mr. Sanchez moved for reconsideration of the Court's Order Dismissing Claims. CV-DE 32. On November 1, 2016, the government filed its responses to the § 2255 Motion, CV-DE 37, and to the remaining discovery requests. CV-DE 35. On November 7, 2016, the government filed its response to the motion for reconsideration. CV-DE 40. On

November 15, 2016, Mr. Sanchez filed his reply on the discovery requests, CV-DE 41, and on November 17, 2016, he filed his reply in support of the motion for reconsideration. CV-DE 42.

On December 12, 2016, the Court issued an Order referencing a motion to recuse filed in Mr. Troya's case. *See Troya*, Case No. 9:16-cv-80700-RNS, DE 64. The Order directed Mr. Sanchez to file, by January 11, 2017, either a motion to recuse or a notice that he has "diligently evaluated the issue" and concluded that recusal is not warranted. CV-DE 48. The Order also postponed a scheduled hearing on the discovery requests until after the recusal issue has been resolved. *Id.*

Mr. Troya's recusal motion states that Judge Scola and Judge Kastrenakes[3] are former colleagues who have known each other for decades, served as co-counsel in at least one capital case as prosecutors, and defended themselves in that case against claims of prosecutorial misconduct. *Troya*, Case No. 9:16-cv-80700-RNS, DE 64 at 8-9. It recounts Judge Scola's prior practice, reported upon his nomination to this Court, of recusing *sua sponte* in cases where "a claim of prosecutorial misconduct . . . and the credibility of the prosecutor who was my friend may be called into question," in order "to avoid the appearance of impropriety." *Id.* at 10. The motion argues that several of Mr. Troya's claims for relief put in issue Mr. Kastrenakes's credibility and conduct, thus requiring Judge Scola either to criticize the actions and statements of his former colleague, or to foreclose that possibility by denying Mr. Troya's requests for evidentiary development and for relief. *Id.* at 8-10. The motion recounts that the government has now disclaimed at least one statement Mr. Kastrenakes made on the record before trial. *Id.* at 6-7.

---

[3] Mr. Kastrenakes is currently a judge on the Florida Circuit Court in Palm Beach County.

After evaluating the issue pursuant to the Court's December 12 Order, Mr. Sanchez now submits this motion for Judge Scola's recusal.

## II.      Legal Standards

The federal recusal statute requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  18 U.S.C. § 455(a).  "The standard for recusal under section 455(a) is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality."  *United States v. Kelly*, 888 F.2d 732, 744-45 (11th Cir. 1989) (internal quotations omitted).  This standard "requires judges to resolve any doubts they may have in favor of disqualification."  *Id.* at 744; *accord Murray v. Scott*, 253 F.3d 1308, 1313 (11th Cir. 2001) ("Doubt must be resolved in favor of recusal.").

As is most pertinent here, "[w]hen a question arises about friendship between a judge and a lawyer, the twofold test is whether the judge feels capable of disregarding the relationship and whether others can reasonably be expected to believe that the relationship is disregarded." *United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985) (internal quotation and alteration omitted).  A relationship between the judge and a person involved in the case can give rise to the appearance of partiality in converse ways: the relationship can appear to "create[] the risk that [the judge] might bend over backwards to prove he lacked favoritism," or the judge may appear to avoid making any decisions that "might jeopardize" the personal relationship.  *Kelly*, 888 F.2d at 738.

Mr. Sanchez's rights to due process and to be free from cruel and unusual punishment in this capital case also guarantee impartial adjudication.  Under the due process standard, courts ask, "not whether a judge harbors an actual, subjective bias, but instead whether, as an objective

matter, the average person in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (internal quotation and citation omitted).  The Eighth Amendment similarly ensures that "any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion."  *Beck v. Alabama*, 447 U.S. 625, 637 (1980) (internal quotation and citation omitted).  Under both the statutory and constitutional frameworks, courts should consider all relevant circumstances, including the nature of the issues being decided by the court.  *See Williams*, 136 S. Ct. at 1908; *Kelly*, 888 F.2d at 744-45; *see also Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872 (2009) (due process standard requires consideration of "all the circumstances of this case.").

### III.     The Circumstances of this Case Require Disqualification

A fully informed observer may reasonably entertain doubts about Judge Scola's impartial adjudication of claims that his former colleague committed misconduct in this capital case, particularly given that Judge Scola has previously recused himself for the same reason in other cases.  The circumstances here requiring disqualification under § 455(a), and giving rise to an unconstitutional potential for bias under the Fifth and Eighth Amendments, include:[4]

- the current personal relationship, if any, between Judge Scola and Judge Kastrenakes;

- their prior professional relationship as prosecutors, including as co-counsel in capital and non-capital cases, *see Troya*, Case No. 9:16-cv-80700-RNS, DE-64-2 at 48-49, and Judge Scola's consequent firsthand knowledge of and opinions about Mr. Kastrenakes's conduct and customary practices as a prosecutor;

---

[4] Mr. Sanchez and Mr. Troya have requested that Judge Scola disclose on the record any information that may be relevant to the recusal question.  CV-DE 54 at 7 (citing ABA Model Code of Judicial Conduct, Rule 2.11, Comment 5); *Troya*, Case No. 9:16-cv-80700-RNS, DE 64 at 8 n.4 (citing *Porter v. Single*tary, 49 F.3d 1483, 1489 (11th Cir. 1995)).  Mr. Sanchez may request the opportunity to supplement this motion after any such disclosure.

- Judge Scola's knowledge of allegations of prosecutorial misconduct against Mr. Kastrenakes, including any allegations in cases in which both Mr. Scola and Mr. Kastrenakes were involved as prosecutors, *see Diaz v. Dugger*, 719 So.2d 865, 867 n.2 (Fla. 1998) (indicating that capital defendant prosecuted by Mr. Scola and Mr. Kastrenakes raised a post-conviction claim regarding a violation of *Brady v. Maryland*); *State v. Castillo*, 486 So.2d 565 (Fla. 1986) (affirming grant of new trial on grounds of prosecutorial misconduct in case in which Mr. Scola and Mr. Kastrenakes were both involved);

- Judge's Scola's prior practice of recusing *sua sponte* in cases where "a claim of prosecutorial misconduct . . . and the credibility of the prosecutor who was my friend may be called into question," in order "to avoid the appearance of impropriety," and Judge Scola's representations to the United States Senate regarding that recusal practice upon his nomination to this Court, *see Troya*, Case No. 9:16-cv-80700-RNS, DE 64-2 at 43;

- the nature of the claims and issues to be determined in this proceeding and in Mr. Troya's related proceeding, including the evaluation of the propriety of Mr. Kastrenakes's arguments at Mr. Sanchez and Mr. Troya's joint trial and of Mr. Kastrenakes's compliance with duties and orders to disclose evidence to the defense, *see supra* at 2-4;

- the possible appearance of Judge Kastrenakes as a witness in this proceeding and/or in Mr. Troya's related proceeding; and

- Judge Scola's current role as the sole fact-finder and sole decision-maker regarding the contested issues in this case and in Mr. Troya's related proceeding.

Taken together, these circumstances compel Judge Scola's recusal. *See Kelly*, 888 F.2d 732 (holding that trial judge improperly failed to disqualify himself when, among other things, a close personal friend was a key defense witness); *Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir. 1988) (holding that trial judge should have disqualified himself where his law clerk's father – who himself had been the judge's law clerk – was a partner in the law firm representing one of the parties); *Murphy*, 768 F.2d 1518 (concluding that judge should have disqualified himself where he and the prosecuting attorney were close friends and planned to vacation together immediately after trial); *Hadler v. Union Bank and Trust Co. of Greenburg*, 765 F.

7

Supp. 976, 978 (S.D. Ind. 1991) (finding recusal necessary where judge's close friend was expected to be key witness, the witness had a financial stake in the case, and the judge was the fact-finder).

A disinterested observer could reasonably believe that, as a result of their prior work as colleagues and any continuing relationship, Judge Scola and Judge Kastrenakes "have developed professional respect, appreciation, and friendship for one another, and that a natural empathy may be unavoidable in seeing a [former] colleague's reputation" implicated in a judicial proceeding. *United States v. Gordon*, 354 F.Supp.2d 524, 528 (D. Del. 2005). A reasonable observer could likewise infer that such respect and empathy would – consciously or unconsciously – inhibit Judge Scola from making a decision that "might jeopardize" his relationship with Judge Kastrenakes or, conversely, "create[] the risk that [Judge Scola] might bend over backwards to prove he lacked favoritism." *Kelly*, 888 F.2d at 738. The dispositive question is not whether Judge Scola himself perceives any impairment to his impartiality, because "[r]eal or not, partiality under these circumstances could fairly be perceived to be an issue." *Gordon*, 354 F.Supp.2d at 528.

A reasonable observer could also question Judge Scola's impartiality based on the nature of the issues in dispute. Judge Kastrenakes is not a peripheral participant in this case, and this case is not a mundane or routine matter. Mr. Kastrenakes was lead prosecutor in this capital trial and is now facing allegations of prosecutorial misconduct and questions about his on-record statements and evidentiary disclosures. Rulings in favor of Mr. Sanchez or Mr. Troya on these issues could result in relief being granted and would undoubtedly generate significant public attention and scrutiny. Under these circumstances, a disinterested observer could perceive that rulings in the defendants' favor would jeopardize Judge Scola's relationship with Judge

Kastrenakes or, conversely, that rulings in the government's favor were motivated, even unconsciously, to avoid that potential consequence.

For this very reason, Judge Scola disclosed to the United States Senate that, as a state court judge, he recused himself from post-conviction proceedings in two death penalty cases "to avoid the appearance of impropriety" because he "felt that there may someday be a claim of prosecutorial misconduct from the first trial and the credibility of the prosecutor who was my friend may be called into question." *Troya*, Case No. 9:16-cv-80700-RNS, DE 64-2 at 43.  Here, the appearance of impropriety is even more palpable because claims of prosecutorial misconduct and related discovery questions are actually pending before the Court.

Finally, an appearance of impropriety in Judge Scola presiding over Mr. Troya's case would necessarily create an appearance of impropriety in his presiding over Mr. Sanchez's case – and vice versa.  As the Court is well aware, Mr. Sanchez and Mr. Troya were tried in a joint trial prosecuted by Mr. Kastrenakes; they raise several similar claims for relief, including with respect to Mr. Kastrenakes's alleged prosecutorial misconduct; and Judge Scola was assigned to preside over both post-conviction cases because they are closely related.   Under these circumstances, a reasonable observer could question the impartiality of having Judge Scola decide issues concerning Mr. Kastrenakes's prosecutorial misconduct raised by one co-defendant were the Court to acknowledge an appearance of impartiality in having Judge Scola decide similar issues by the other co-defendant.

WHEREFORE, for the foregoing reasons, Mr. Sanchez respectfully requests that the Honorable Robert Scola be recused from this case and that the case be reassigned to another district court judge for all subsequent proceedings.

Respectfully submitted,

/s/ Aren Adjoian
Matthew C. Lawry
Aren Adjoian
Federal Community Defender Office
for the Eastern District of Pennsylvania
Curtis Center, Suite 545-West
601 Walnut Street
Philadelphia, PA 19106
Phone: (215) 928-0520
Fax: (215) 928-0826
Matthew_Lawry@fd.org
Aren_Adjoian@fd.org

Counsel for Ricardo Sanchez, Jr.

Dated: January 11, 2017

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was served electronically by the Court's CM/ECF service on this 11th day of January, 2017, on the following individuals:

Stephen Carlton
United States Attorney's Office
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Phone: (561) 820-8711
Fax: (561) 659-4526
stephen.carlton@usdoj.gov
Counsel for the United States

Brandy Galler
United States Attorney's Office
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Phone: (561) 820-8711
Fax: (561) 659-4526
brandy.galler@usdoj.gov
Counsel for the United States

/s/ Aren Adjoian
Aren Adjoian