**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CIVIL NO. 9:16-CV-80693-RNS**

| | | |
|---|---|---|
| **RICARDO SANCHEZ, JR.,** | : | |
| **Movant** | : | |
| | : | |
| **v.** | : | **THIS IS A CAPITAL CASE** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |

**MOTION TO REASSIGN CASE**
**AND INCORPORATED MEMORANDUM OF LAW**

Ricardo Sanchez, through counsel and pursuant to 28 U.S.C. § 455(a) and the Fifth and Eighth Amendments to the United States Constitution, respectfully moves to recuse the Honorable William P. Dimitrouleas, and to reassign the case to another district court judge for all subsequent proceedings.

**I.       Procedural and Factual Background**

In October 2006, Danny Varela, Daniel Troya, Ricardo Sanchez, Jr., and Liana Lopez were arrested in connection with a narcotics conspiracy led by Mr. Varela. The federal government later indicted all four defendants for multiple narcotics offenses, and indicted Mr. Sanchez and Mr. Troya for the murders of the Escobedo family.  In a joint trial of all four defendants, the Honorable Daniel Hurley presiding, Mr. Troya was represented by Ruben Garcia and James Eisenberg, and Mr. Sanchez was represented by Michael Cohen and Donnie Murrell. As the government has explained, "[s]everal times during the trial extensive cross examination was conducted by defense counsel [for one defendant] and not repeated by separate defense

1

counsel [for other defendants]."  CV-DE 59 at 2.  In other words, the defenses of Mr. Troya and Mr. Sanchez were at times coordinated.  *See id.*

Mr. Sanchez and Mr. Troya were convicted of all counts.  Capital sentencing proceedings were held before the same jury, in which Mr. Sanchez and Mr. Troya were sentenced to death on two counts and to life sentences on the other murder charges.   In a consolidated appeal, the Eleventh Circuit affirmed Mr. Troya's and Mr. Sanchez's judgments and sentences. *United States v. Troya*, 733 F.3d 1125 (11th Cir. 2013).

On May 3, 2016, Mr. Sanchez and Mr. Troya filed motions for relief pursuant to 28 U.S.C. § 2255.  CV-DE 1; *Troya v. United States*, Case No. 9:16-cv-80700-RNS, DE 1.

On May 10, 2016, Judge Hurley directed the clerk to reassign both cases.  CV-DE 7; *Troya*, Case No. 9:16-cv-80700-RNS, DE 10.   Mr. Sanchez's case was reassigned to the Honorable Robert N. Scola, Jr.  CV-DE 8.  On May 13, 2016, pursuant to Local Rule 3.8 and IOP 2.15.00 concerning the assignment of similar actions, Mr. Troya's case was reassigned to Judge Scola as well.  *Troya*, Case No. 9:16-cv-80700-RNS, DE 13.

On May 31, 2016, post-conviction counsel for Mr. Troya filed an amended § 2255 motion.  *Troya*, Case No. 9:16-cv-80700-RNS, DE 25.  The motion raised multiple claims of ineffective assistance of trial counsel Mr. Garcia and Mr. Eisenberg, including with respect to their failure to challenge the composition of the grand and petit jury venires (Claim VI); their failure to retain, consult, and utilize appropriate pathology, ballistics, fingerprint, and cellphone tracking experts (Claim XI); their failure to object to the prosecution's guilt-phase arguments (Claim XII); and their failure to object to improper questioning of and to effectively cross-examine cooperating witnesses (Claim XV).  *Id.*  These claims raise issues of fact regarding the coordination of defenses by Mr. Troya's and Mr. Sanchez's trial counsel.  For example, in Claim

XI, Mr. Troya alleges that "[c]ounsel for Mr. Troya did not speak with any of those experts, deferring to counsel for Mr. Sanchez to handle consultation with and presentation of their testimony, if those attorneys so decided." *Id.* at 93.[1]  Thus, in alleging the ineffectiveness of his own counsel, Mr. Troya's motion asserts facts suggesting the ineffectiveness of Mr. Sanchez's counsel.  *See id.*; *see also id.* at 107-11, 116-20, 144-46, 155-61.  Similarly, given the coordinated efforts in cross-examining government witnesses, the alleged deficiency of one co-defendant's counsel implicates the performance of the other co-defendant's counsel.  *See id.* at 209-21.  As the government has recognized, the defenses' coordination is therefore "relevant when a court considers whether or not trial counsel rendered adequate representation guaranteed under the Sixth Amendment."  CV-DE 59 at 2.

Mr. Sanchez's § 2255 motion raised similar claims as Mr. Troya's motion.  *See* CV-DE 16-1 at 50-57 (Claim V: ineffectiveness alleged with respect to expert medical examiner testimony), 74-80 (Claim VII: ineffectiveness alleged with respect to failure to challenge the composition of the grand and petit jury venires), 81-91 (Claim VII: ineffectiveness alleged with respect to use of ballistics and cellphone tracking experts), 95-97 (Claim VII: ineffectiveness alleged with respect to the failure to object to the prosecution's guilt-phase arguments).  The government has noted that "[b]oth § 2255 petitions make similar allegations based on the same underlying record[.]"  CV-DE 59 at 2.

On January 13, 2017, Judge Scola recused himself from this proceeding based on his "personal and professional relationship" with one of the trial prosecutors, whose credibility could become at issue.  CV-DE 57 at 1.  On the same day, Judge Scola recused himself from Mr. Troya's case for the same reason.  *Troya*, Case No. 9:16-cv-80700-RNS, DE 72.

---

[1] Pin cites refer to the page number on the original document, not the page number assigned by the ECF system.

The cases were reassigned: Mr. Sanchez's to the Honorable William P. Dimitrouleas and Mr. Troya's to the Honorable Kathleen M. Williams.  On January 19, 2017, the government filed notices that the cases were related and asked that they be assigned to the same judge.  CV-DE 59; *Troya*, Case No. 9:16-cv-80700-RNS, DE 73.   On January 20, 2017, Judge Williams reassigned Mr. Troya's case to Judge Dimitrouleas.  *Troya*, Case No. 9:16-cv-80700-RNS, DE 74.

Judge Dimitrouleas has now notified the parties that he and attorney Michael Gelety "have been close friends since 1977 when we were both trial prosecutors . . . in Broward County"; that he has previously recused himself from a § 2255 proceeding in which Mr. Gelety's ineffectiveness was alleged; and that Mr. Gelety and Mr. Troya's trial counsel Mr. Garcia have shared office space since before the time of trial.  CV-DE 58; *Troya*, Case No. 9:16-cv-80700-RNS, DE 75.  The Court directed Mr. Sanchez and Mr. Troya to file any motions for Judge Dimitrouleas' recusal by February 7, 2017.

Publicly accessible listings and records reflect that currently (and presumably also at the time of trial) Mr. Gelety and Mr. Garcia share an office phone number, mailing address, and relatively small office space in Fort Lauderdale.  *See* Ex. 1 (Google Maps photograph of the shared office, including a sign reading: "Law Offices / Michael D. Gelety / Ruben M. Garcia...").  According to Mr. Troya's recently filed recusal motion, Mr. Gelety and Mr. Garcia are the two principals of a Florida Domestic Profit Corporation that is located at and owns the law office building.  *See Troya*, Case No. 9:16-cv-80700-RNS, DE 76 at 2.  Mr. Gelety's and Mr. Garcia's law practices share staff and office space, and are not operated so as to ensure that all confidential client information and records are inaccessible to each other.  *See id.*  In addition,

4

Mr. Gelety's son was previously employed as a summer intern for Judge Dimitrouleas.[2] *See id.* at 5-6.

## II.    Legal Standards

The federal recusal statute requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  18 U.S.C. § 455(a).  "The standard for recusal under section 455(a) is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality."  *United States v. Kelly*, 888 F.2d 732, 744-45 (11th Cir. 1989) (internal quotations omitted).  This standard "requires judges to resolve any doubts they may have in favor of disqualification."  *Id.* at 744; *accord Murray v. Scott*, 253 F.3d 1308, 1313 (11th Cir. 2001) ("Doubt must be resolved in favor of recusal.").

As is most pertinent here, "[w]hen a question arises about friendship between a judge and a lawyer, the twofold test is whether the judge feels capable of disregarding the relationship and whether others can reasonably be expected to believe that the relationship is disregarded." *United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985) (internal quotation and alteration omitted).  A relationship between the judge and a person involved in the case can give rise to the appearance of partiality in converse ways: the relationship can appear to "create[] the risk that [the judge] might bend over backwards to prove he lacked favoritism," or the judge may appear

---

[2] If there are additional relevant circumstances of which the Court is aware, including information concerning Mr. Gelety's and Mr. Garcia's affiliation; or concerning Judge Dimitrouleas' own relationship with Mr. Garcia, if any; or concerning any knowledge of or communications about Mr. Garcia's work or about this case that Judge Dimitrouleas has acquired outside of his judicial role, Mr. Sanchez respectfully requests that the Court disclose that information on the record.  *See* ABA Model Code of Judicial Conduct, Rule 2.11, Comment 5 ("A judge should disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification even if the judge believes there is no basis for disqualification.").

to avoid making any decisions that "might jeopardize" the personal relationship. *Kelly*, 888 F.2d at 738.

The rights to due process and to be free from cruel and unusual punishment in this capital case also guarantee impartial adjudication. Under the due process standard, courts ask, "not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, the average person in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (internal quotation and citation omitted). The Eighth Amendment similarly ensures that "any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." *Beck v. Alabama*, 447 U.S. 625, 637 (1980) (internal quotation and citation omitted). Under both the statutory and constitutional frameworks, courts should consider all relevant circumstances, including the nature of the issues being decided by the court. *See Williams*, 136 S. Ct. at 1908; *Kelly*, 888 F.2d at 744-45; *see also Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872 (2009) (due process standard requires consideration of "all the circumstances of this case.").

With respect to the relationship between Mr. Garcia and Mr. Gelety, the Court should be guided both by the appearance of partiality standard discussed above, and by principles governing the imputation of legal conflicts. As set forth in § 123 of the Restatement (Third) of Law Governing Lawyers (2000) (Oct. 2016 update), "the restrictions upon a lawyer imposed by [conflict of interest rules] also restrict other affiliated lawyers who: . . . (3) share office facilities without reasonably adequate measures to protect confidential client information so that it will not be available to other lawyers in the shared office." The Rules Regulating the Florida Bar[3] likewise provide for the imputation of conflicts of interest for affiliated lawyers. *See* Rules

---

[3] Pursuant to Local Rule 11.1(c), the Rules Regulating the Florida Bar apply in the Southern District of Florida courts.

Regulating the Florida Bar, Rule 4-1.10.   These proscriptions apply even "in the case of independent practitioners, [where the question of] whether the lawyers should be treated as associated with each other can depend on the particular rule that is involved and on the specific facts of the situation."  Rules Regulating the Florida Bar, Rule 4-1.10 (comment).

### III.       The Circumstances of this Case Require Disqualification

A fully informed observer may reasonably entertain doubts about Judge Dimitrouleas' impartial adjudication of claims that a lawyer affiliated with the judge's close friend provided constitutionally inadequate representation in this capital trial.  An observer also could reasonably suspect that Mr. Gelety had day-to-day contact with Mr. Garcia during pretrial and trial proceedings, and that Mr. Gelety was exposed or had access to confidential case information and materials.  Moreover, Mr. Gelety is undoubtedly quite familiar with Mr. Garcia's work habits and practices, some of which may bear on the ineffectiveness claims raised in these cases.

An informed observer's doubts would only be reinforced by the fact Judge Dimitrouleas has previously recused himself from adjudicating Mr. Gelety's ineffectiveness, and that Judge Scola recused himself from this case because of the potential appearance of partiality in assessing the conduct and credibility of his friend.  A failure to recuse here would be incongruous with those decisions.

A disinterested observer could reasonably believe that Judge Dimitrouleas's close relationship with Mr. Gelety would – consciously or unconsciously – inhibit Judge Dimitrouleas from ruling that a lawyer associated with Mr. Gelety was ineffective in a capital trial, because such a finding "might jeopardize" the personal relationship or, conversely, "create[] the risk that [Judge Dimitrouleas] might bend over backwards to prove he lacked favoritism."  *Kelly*, 888 F.2d at 738.  The dispositive question is not whether Judge Dimitrouleas himself perceives any

impairment to his impartiality, because "[r]eal or not, partiality under these circumstances could fairly be perceived to be an issue." *United States v. Gordon*, 354 F.Supp.2d 524, 528 (D. Del. 2005).

A reasonable observer could also question Judge Dimitrouleas' impartiality based on the nature of the issues in dispute. Mr. Garcia was not a peripheral participant in this case, and this case is not a mundane or routine matter. Mr. Garcia was defense counsel in this capital trial and is now facing multiple allegations of ineffective assistance at both the guilt and penalty phases. Any rulings that Mr. Garcia performed deficiently could result in relief being granted and would undoubtedly generate significant public attention and scrutiny. Under these circumstances, a disinterested observer could perceive that such rulings may jeopardize Judge Dimitrouleas' relationship with Mr. Gelety.

These conclusions are well-supported by the rules of imputed conflicts. Conflicts can be imputed even among independent practitioners when they share office space or when other circumstances indicate a professional association. *See* Restatement (Third) of Law Governing Lawyers § 123 (2000) (Oct. 2016 update); Rules Regulating the Florida Bar, Rule 4-1.10 (comment). Here, multiple circumstances demonstrate that Mr. Gelety's and Mr. Garcia's conflicts should be imputed to one another: their law practices share a phone number, mailing address, some staff, and some office space; they are the only principals in a for-profit corporation based at the law office; and it does not appear that they operate their practices so as to ensure that all confidential client information and records are inaccessible to each other. For these reasons, under the appearance of partiality standard, Judge Dimitrouleas' relationship with Mr. Gelety must be imputed to Mr. Garcia as well.

Finally, an appearance of impropriety in Judge Dimitrouleas presiding over Mr. Troya's case would necessarily create an appearance of impropriety in his presiding over Mr. Sanchez's case.  As the Court is aware, Mr. Sanchez and Mr. Troya were tried in a joint trial in which their defenses were coordinated to some degree; they raise similar claims for relief in these proceedings; and their post-conviction cases have twice been consolidated because they are closely related.  Under these circumstances, a reasonable observer could question whether Judge Dimitrouleas should decide ineffectiveness issues raised by one co-defendant were the Court to recuse itself from deciding similar issues raised by the other co-defendant.

Taken together, the circumstances here compel Judge Dimitrouleas' recusal.  *See Kelly*, 888 F.2d 732 (holding that trial judge improperly failed to disqualify himself when, among other things, a close personal friend was a key defense witness); *Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir. 1988) (holding that trial judge should have disqualified himself where his law clerk's father – who himself had been the judge's law clerk – was a partner in the law firm representing one of the parties); *Murphy*, 768 F.2d 1518 (concluding that judge should have disqualified himself where he and the prosecuting attorney were close friends and planned to vacation together immediately after trial); *Hadler v. Union Bank and Trust Co. of Greenburg*, 765 F. Supp. 976, 978 (S.D. Ind. 1991) (finding recusal necessary where judge's close friend was expected to be key witness, the witness had a financial stake in the case, and the judge was the fact-finder).

WHEREFORE, for the foregoing reasons, Mr. Sanchez respectfully requests that the Honorable Robert Dimitrouleas be recused from this case and that the case be reassigned to another district court judge for all subsequent proceedings.

Respectfully submitted,

/s/ Aren Adjoian
Matthew C. Lawry
Aren Adjoian
Federal Community Defender Office
for the Eastern District of Pennsylvania
Curtis Center, Suite 545-West
601 Walnut Street
Philadelphia, PA 19106
Phone: (215) 928-0520
Fax: (215) 928-0826
Matthew_Lawry@fd.org
Aren_Adjoian@fd.org

Counsel for Ricardo Sanchez, Jr.

Dated: February 7, 2017

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was served electronically by the Court's CM/ECF service on this 7th day of February, 2017, on the following individuals:

Stephen Carlton
United States Attorney's Office
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Phone: (561) 820-8711
Fax: (561) 659-4526
stephen.carlton@usdoj.gov
Counsel for the United States

Brandy Galler
United States Attorney's Office
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Phone: (561) 820-8711
Fax: (561) 659-4526
brandy.galler@usdoj.gov
Counsel for the United States

/s/ Aren Adjoian
Aren Adjoian