**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-80693-Civ-BLOOM**


RICARDO SANCHEZ, Jr.,
                                Movant


v.


UNITED STATES OF AMERICA,
                                Respondent


_____/


## ORDER SUBSTITUTING COUNSEL

THIS CAUSE is before the Court upon a *sua sponte* review of the record. The Movant is in the custody of the United States Bureau of Prisons after having been sentenced to death for the October 13, 2006 murders of two young children: Luis Damian Escobedo (three years old) and Luis Julian Escobedo (four years old). *See* Verdict, Case No. 06-CR-80171 (Hurley, J), ECF No. [796]. The Movant was also sentenced to life imprisonment for the murder of the children's parents, Jose Luis Escobedo and his wife Yessica Escobedo. The Movant's convictions and sentences were affirmed on direct appeal. *United States v. Troya*, 733 F.3d 1125 (11th Cir. 2013). The United States Supreme Court has denied a writ of certiorari. *Sanchez v. United States*, 135 S.Ct. 2048 (2015).

### *Procedural History*

On May 26, 2016, the Movant filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. ("Amended Motion"), ECF No. [16-1]. The Movant argued eleven (11) claims for relief with multiple sub-claims: (I) juror misconduct, (II) death sentence based on impermissibly vague statute (carjacking), (III) ineligible for the death penalty (mental

retardation, brain dysfunction, mental disorders), (IV) trial counsel was ineffective for failing to investigate competency to stand trial, (V) trial counsel was ineffective for failing to object when the government substituted a medical examiner who had not conducted the autopsy of the victims, (VI) *Brady* violations (six specific instances and one cumulative effect), (VII) trial counsel was ineffective during the guilt phase for failing to: challenge the composition of the jury, investigate and challenge "toolmark" evidence, investigate and present the testimony of cellular forensic expert, object to the charges in counts 7-10 and jury instructions, and object to prosecutor's closing arguments, (VIII) trial counsel was ineffective during the penalty phase for failing to: investigate and present personal background and psychological and social development, present evidence of neurological impairments, investigate psychiatric disorders, to investigate intellectual disability, investigate competence to stand trial, properly consult with mental health experts, identify the Movant's traumatic background and disabilities, impeach the testimony of government expert, investigate aggravation evidence, object to prosecutorial misconduct, object to jury instructions, and cumulative effects of errors, (IX) death sentence violates the Eighth Amendment, (X) security measures used during trial denied the Movant due process, a jury trial, and the presumption of innocence, and (XI) cumulative effects of errors. *Id.* The Movant did not assert any claims of ineffective assistance of appellate counsel.

When the Amended Motion was filed, it was assigned to the Honorable Robert N. Scola. Pursuant to Rule 4, *Rules Governing Section 2255 Proceedings*, the Court conducted an initial review of the Movant's claims and determined that certain, but not all, of his claims should be dismissed. ECF No. [29]. The Court dismissed Claim I (juror misconduct) and Claim X (security measures used during trial) as procedurally barred, Claims III (ineligible for the death penalty), VI (*Brady* violations), and IX (death sentence violates the Eighth Amendment) were

procedurally defaulted but also were claims which "plainly appear[] . . . that the moving party is not entitled to relief." ECF No. [29] at 4. Claims II (death sentence based on impermissibly vague statute) and VII(A) (ineffective assistance of trial counsel) were not procedurally barred but were dismissed because they were claims in which the Movant is clearly not entitled to relief. *See id.* at 3-4. The Movant has moved for reconsideration of the Court's Order Dismissing Claims. ECF No. [32]. That motion is currently pending before the Court.

During the course of adjudicating the Movant's motion to reconsider, the Court discovered that the Movant was represented by the same counsel in both his direct appeal and his §2255 proceedings. Given the procedural posture of the case, the Court found this to be a potential conflict and issued an order to show cause why the Court should not relieve the Federal Community Defender's Office ("FCDO") of any further representation of the Movant. ECF No. [45]. It further ordered that counsel shall provide the Court with a detailed list of cases where the FCDO provided legal counsel on both the direct appeal and § 2255 motion to vacate, set aside, or correct sentence to a federal capital defendant.[1] If counsel concurred that a conflict of interest does exist, counsel was ordered provide a proposed course of action for the remainder of the Movant's § 2255 proceedings. ECF No. [45]. On December 19, 2016, the Movant filed his response. ECF No. [54].[2]

---

[1] The FCDO responded that there are no such cases in the FCDO but that other such cases do exist in other jurisdictions. ECF No. [54].

[2] In the interim period between the filing of the response and the date of this order, this matter has been re-assigned twice. On January 13, 2017, Judge Scola recused. ECF No. [57]. The matter was randomly assigned to the Honorable William Dimitrouleas. [*Id.*]. On February 8, 2017, Judge Dimitrouleas recused. ECF No. [61]. The matter was re-assigned to the undersigned. [*Id.*].

*Relevant Facts*

On April 29, 2009, following a guilty verdict and the imposition of the death sentence, trial counsel filed a Motion to Declare Defendants Indigent for Appellate Purposes and for Substitution of Appellate Counsel. Mot., Case No. 06-CR-80171 (Hurley, J), ECF No. [878]. Trial counsel argued to the Court that "[n]one of the counsel appointed for trial purposes" were qualified to provide the experienced legal counsel necessary to file an appeal in this case. (*Id.*) In fact, trial counsel argued that "[i]ndeed, no lawyer in the State of Florida has ever represented a defendant under these unique circumstances." (*Id.*) Trial counsel sought the appointment of the Federal Community Defender Office for the Eastern District of Pennsylvania (FCDO). This public defender's office "is extremely experienced in representing federal capital defendants." (*Id.*) Trial counsel also sought the appointment of Martin McClain, Esq. a Florida lawyer, whose "practice is primarily limited to appellate and habeas corpus matters in capital cases…" (*Id*. at 3). On May 20, 2009, the Court granted the motion and appointed both the FCDO and Mr. McClain as counsel "for appellate purposes." Or., Case No. 06-CR-80171 (Hurley, J), ECF No. [817] at 2. The direct appeal was filed and denied by the Eleventh Circuit on October 2, 2013. *See United States v. Troya, et al.*, 733 F.3d 1125 (11th Cir. 2013). On behalf of the Movant, the FCDO filed a petition for writ of certiorari in the United States Supreme Court.

On July 14, 2014, during the pendency of the certiorari petition, the FCDO filed an Unopposed Motion to Confirm Continued Appointment of Counsel. Mot., Case No. 06-CR-80171 (Hurley, J), ECF No. [1136]. The FCDO argued, pursuant to 18 U.S.C. § 3599(e), that the Movant was entitled to the appointment of counsel in every subsequent stage of any available judicial proceedings unless counsel is substituted upon the motion of counsel. (*Id*. at 3). Rather than seek the substitution of counsel, FCDO sought to continue their representation of the

Movant for "any § 2255 proceeding." (*Id*. at 2).    The FCDO represented to the Court that "[c]ounsel from the FCDO have also consulted with the Federal Capital Habeas Project of the Office of Defender Services of the Administrative Office of the United States Court ('§ 2255 Project'), which similarly encourages the FCDO's continuing representation." (*Id*. at 4).    The FCDO specifically sought the "appointment of the office, rather than a specific individual." (*Id*.). The FCDO advised that they conferred with the Movant and he "desires that the FCDO continue representing him." (*Id*.).  Finally, the FCDO advised that Mr. McClain "intends to seek leave of Court to withdraw as counsel upon the conclusion of proceedings in the United States Supreme Court, at which point he will have completed his appellate representation." (*Id*. at 6).

On July 15, 2014, the Court granted the motion and confirmed "the continuing appointment of the Federal Community Defender Office for the Eastern District of Pennsylvania (FCDO) to represent [the Movant] in all post-conviction proceedings." Or., Case No. 06-CR-80171 (Hurley, J), ECF No. [1137].  On October 23, 2015, Matthew Lawry and Aren Adjoian filed their appearances on behalf of the FCDO. Notice, Case No. 06-CR-80171 (Hurley, J), ECF No. [1164]).  Mr. Lawry and Mr. Adjoian have filed the Amended Motion in this case. *See* ECF No. [16].  As such, the FCDO has represented the Movant in both his direct appeal and his § 2255 proceedings.

On November 23, 2016, Judge Scola raised the issue of a potential conflict of interest and ordered counsel to show cause why counsel was not operating under a conflict of interest which would prohibit their continued representation.  ECF No. [45].  Counsel responded that the Court's concerns were based on "the theoretical possibility that the FCDO may have missed or defectively presented direct appeal claims." ECF No. [54] at 6.  Counsel further argued that the application of a Rule 4 dismissal to certain of the Movant's claims, in essence, created the

alleged conflict which could be obviated should the Court grant the pending motion for reconsideration. (*Id*.). Nonetheless, counsel did recognize "that a potential conflict could ripen should the Court adhere to its prior ruling in the order dismissing the claims, because under that ruling the only vehicle for raising certain claims may be to allege that direct appeal counsel were ineffective, and undersigned counsel may not allege the ineffectiveness of counsel from the FCDO." (*Id*. at 7).  Having conducted an independent review of the record, the undersigned finds that an actual conflict of interest exists between counsel and the Movant such that a substitution of counsel is required.

### *Analysis*

The Court appreciates the inclination to have counsel represent a capital defendant in his direct appeal and his 28 U.S.C. §2255 motion to vacate conviction and sentence.  Capital cases are complex and require a significant commitment of time, energy, and resources.   Nonetheless, given the complexity of the issues and the significant devotion of resources, it is imperative that the Movant be represented by counsel not operating under a conflict of interest.  Such a conflict is not simply speculative but inevitable when the opportunity to assert ineffective assistance of appellate counsel, either as a free-standing substantive claim or to overcome a procedural bar, would have to be made by the person who is the impetus of the claim. *See Christeson v. Roper*, 135 S.Ct. 891 (2015).

In *Christeson,* appointed attorneys, who had missed the filing deadline, could not be expected to argue that the defendant was entitled to the equitable tolling of the statute of limitations based on their own ineffectiveness. Therefore, the defendant requested substitute counsel who would not be laboring under a conflict of interest. "Advancing such a claim would have required [the lawyers] to denigrate their own performance. Counsel cannot reasonably be

expected to make such an argument, which threatens their professional reputation and livelihood. *See* Restatement (Third) of Law Governing Lawyers § 125 (1998)." *Id*. at 894. The Court observed that in a similar context in *Maples v. Thomas*, 132 S.Ct. 912, 925, n. 8 (2012), a "significant conflict of interest" arises when an attorney's "interest in avoiding damage to [his] own reputation" is at odds with his client's "strongest argument—i.e., that his attorneys had abandoned him." *Id*.

The Constitution requires that the Movant has the effective assistance of counsel. "When an actual conflict of interest exists, the client is denied effective assistance of counsel, and the attorney may be disqualified." *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994)(citing *United States v. Martinez*, 630 F.2d 361 (5th Cir. 1980)). Here, the FCDO argued that any assertion that the FCDO may have missed or defectively presented direct appeal claims is "theoretical." The Court disagrees. While it may be that the FCDO did not miss or defectively present direct appeal claims, without substituting counsel to review the record and determine if any viable claims of ineffective assistance of appellate claims exist, the Court would have to rely on the FCDO to police itself in determining if it performed deficiently. Moreover, the conflict is not solely limited to claims identified and dismissed by the Court but extends to claims which may have not been identified by the FCDO. It is axiomatic that if a claim was missed on direct appeal, then it likely was also missed when analyzing substantive claims pursuant to 28 U.S.C. § 2255. Thus, substitution of counsel warranted. *See Holloway v. Arkansas*, 435 U.S. 475, 482 (1987). ("A court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel."); *see also Cuyler v. Sullivan*, 446 U.S. 335 (1980).

While there is a presumptive Sixth Amendment right to counsel of choice, that right must be balanced with the Sixth Amendment right to an attorney who is free of conflict. *See Ross*, 33 F.3d at 1523. Here, the Court finds that an actual conflict exists which is insurmountable and cannot be waived. Although a defendant may waive a conflict of interest and elect to have the attorney continue representation, so long as that waiver is knowing, intelligent, and voluntary, the court may also refuse waivers of conflicts of interest. "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them..." *Wheat v. United States*, 486 U.S. 153, 160 (1988).

In response to the Order to Show Cause, counsel did not assert that the Movant desires to waive the conflict despite having fully discussed the conflict issue with the Movant.[3] Counsel has indicated, and a claim has been made in the Amended Motion, that the Movant is intellectually disabled. ECF No. [16-1]. Counsel has described the Movant's intellectual disability as being a "limited ability to understand and process information . . . [and a limited ability] to engage in logical reasoning." (*Id.* at 29). Counsel further advised that the Movant is "not able to understand even simple directions…d[oes] not seem to even understand when situations were risky or dangerous." (*Id*. at 34). Based on the representations of counsel, it is unclear that the Movant would have been in a position to make a knowing, intelligent, and voluntary waiver had the Court been inclined to entertain a waiver of the conflict. Regardless, the Court finds that a waiver would be insufficient to cure the existing conflict.

---

[3] On November 29, 2016, the FCDO filed a motion requesting an enlargement of time in which to file the response to the Order to Show Cause so that counsel could travel to Terre Haute, Indiana to explain "the implications of the [Order to Show Cause] to [the Movant]" in an "in-depth, in person conversation." ECF No. [46] at 3.

In the instant case, the United States Government has sought and obtained the ultimate punishment against the Movant. Indeed, it would be hard to find a case with higher stakes than this one.  It is not enough to consider but then dismiss, without review, the possibility that there are meritorious claims for relief that would be available to the Movant if his counsel did not have a conflict of interest. *See Woodson v. North Carolina,* 428 U.S. 280, 305 (1976)("Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.")

It is **ORDERED AND ADJUDGED** as follows:

1.  The Federal Community Defender Office for the Eastern District of Pennsylvania is hereby relieved of any further representation of the Movant before this Court.

2.   The Federal Defender Services of Eastern Tennessee will be substituted as counsel of record for the Movant.

3.  Within fourteen days of this Order, counsel for the Movant shall meet and confer with counsel for the Respondent and provide the Court with a proposed briefing schedule for amended pleadings **no later than March 17, 2017.**

**DONE AND ORDERED** in Chambers, at Miami, Florida, on February 24, 2017.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Cc: Counsel of record

**CASE NO. 16-80693-Civ-BLOOM**

Ricardo Sanchez, Jr.
USP Terrre Haute
U.S. Penitentiary
P.O. Box 33
Terre Haute, IN 47808

Federal Defender Services of Eastern Tennessee
800 South Gay Street
Suite 2400
Knoxville, TN 37929