UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-80693-CIV-BLOOM

RICARDO SANCHEZ, Jr.,

       Movant

v.

UNITED STATES OF AMERICA,

       Respondent

_____/

**AMENDED MOTION FOR DISCOVERY AND
CONSOLIDATED MEMORANDUM OF LAW**

Stephen M. Kissinger, WY Bar No.5-2342
Asst. Federal Community Defender

Dana C. Hansen Chavis, TN Bar No.019098
Asst. Federal Community Defender

Federal Defender Services
 of Eastern Tennessee, Inc.
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone: (865) 637-7979
Facsimile: (865) 637-7999

Attorneys for Movant Ricardo Sanchez, Jr.

Dated: February 15, 2018

**Table of Contents**

Table of Contents...........................................................................................................i

Relevant Procedural History...................................................................................... 1

Rules Regarding Discovery ........................................................................................ 2

Instructions................................................................................................................. 5

I.  Information regarding drug cartel involvement and/or third-party
    involvement in the murders of the Escobedo family. ....................................... 8

Request for Production of Documents ..................................................................... 11

   A.  Documents related to Report of Investigation 6-4-2007, date of interview
    5-22-2007 (Request Exhibit A). ...................................................................... 11

   B.  Documents related to Report of Investigation 6-6-2007 date of interview 5-
    23-2007 (Request Exhibit B). .......................................................................... 14

   C.  Documents related to Report of Investigation 6-5-2007, date of interview
    5-23-2007 (Request Exhibit C). ...................................................................... 19

   D.  Documents related to Report of Investigation 6-5-2007, date of interview
    5-24-2007 (Request Exhibit D). ...................................................................... 21

   E.  Documents related to Report of Investigation 10-5-2007, date of interview
    10-1-2007 (Request Exhibit E). ...................................................................... 22

   F.  Documents related to Report of Investigation 10-5-2007, date of interview
    10-2-2007 (Request Exhibit F). ....................................................................... 23

   G.  Documents related to Report of Investigation 10-5-2007, date of interview
    10-2-2007 (Request Exhibit G). ...................................................................... 25

   H.  Documents related to cell phones identified in connection with the
    murders of the Escobedo family. ..................................................................... 26

   I.  Documents related to the accompanying Request for Interrogatories. ...... 27

Third Party Discovery .............................................................................................. 27

Request for Interrogatories ...................................................................................... 27

   J.  Interrogatories regarding Report of Investigation 6-4-2007, date of
    interview 5-22-2007 (Request Exhibit A). ..................................................... 27

   K.  Interrogatories regarding Report of Investigation 6-6-2007, date of
    interview 5-23-2007 (Request Exhibit B). ..................................................... 28

   L.  Interrogatories regarding Report of Investigation 6-5-2007, date of
    interview 5-23-2007 (Request Exhibit C). ..................................................... 32

   M. Interrogatories regarding Report of Investigation 6-5-07, date of interview
    5-24-07 (Request Exhibit D). .......................................................................... 33

N. Interrogatories regarding Report of Investigation 10-5-07, date of interview 10-1-07 (Request Exhibit E). .................................................... 33

O. Interrogatories regarding Report of Investigation 10-5-07, date of interview 10-2-07 (Request Exhibit F). ....................................................... 34

P. Interrogatories regarding Report of Investigation 10-5-2007, date of interview 10-2-2007 (Request Exhibit G). ................................................ 37

Third Party Discovery ........................................................................................ 37

II.    Information regarding ballistics and toolmark evidence. ................................ 37

Request for Inspection of Physical Evidence ..................................................... 40

A. Request for inspection related to Claim VII and the declaration of James Gannalo, 5-02-16 (Request Exhibit H). ........................................................ 40

Third Party Discovery ........................................................................................ 41

Request for Production of Documents ................................................................. 41

A. Documents related to Claims VI and VII and whether Mr. Sanchez was an active shooter at the time of the crime. ...................................................... 41

Third Party Discovery ........................................................................................ 42

Certification of Consultation Pursuant to L.R. 7.1(a)(3) .................................... 42

Conclusion ............................................................................................................. 42

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-80693-CIV-BLOOM

RICARDO SANCHEZ, Jr.,

        Movant

v.

UNITED STATES OF AMERICA,

        Respondent

_____/

## AMENDED MOTION FOR DISCOVERY AND
## CONSOLIDATED MEMORANDUM OF LAW

Movant Ricardo Sanchez, by counsel, hereby moves for discovery pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, the Due Process Clause of the Fifth Amendment, and the Eighth Amendment. In this motion Sanchez asks for leave to request the production of documents, to propound interrogatories, to inspect physical evidence and to issue subpoenas to third parties.

### Relevant Procedural History

Sanchez previously sought discovery after filing his initial § 2255 Motion. ECF No.[25, 25-1]. A hearing on the discovery motions was scheduled but then cancelled so the Court could address prior post-conviction counsel's conflict of interest. ECF No.[48]. Following the appointment of new post-conviction counsel, a scheduling order was entered regarding an amended § 2255 motion and discovery

motions. ECF No.[69]. This Amended Motion for Discovery and Consolidated Memorandum of Law is timely filed pursuant to the scheduling order entered on January 17, 2018. ECF No.[76].

## Rules Regarding Discovery

The Supreme Court mandates that district courts "arrange for procedures which will allow development ... of the facts relevant to disposition of a habeas corpus petition." *Harris v. Nelson*, 394 U.S. 286, 298 (1969). Facts are relevant when a discovery movant establishes the standard of "good cause." Pursuant to Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"): "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rule 6(b) requires the party requesting discovery to "provide reasons for the request. The request must also include any proposed interrogatories and requests for admissions, and must specify any requested documents." The Advisory Committee Notes to Rule 6 of the § 2254 Rules, which are "fully applicable to discovery under the[] rules for § 2255 motions[,]" direct that "when there is a showing of good cause why discovery should be allowed" the district court's discretion to grant discovery is "to be exercised[.]" § 2254 Rules, Advisory Committee Notes to Rule 6 (1976).

"Good cause" for discovery exists when: (1) the movant makes credible allegations of a constitutional violation; and, (2) the requested discovery will enable the movant to investigate and prove his claims. *Bracy v. Gramley*, 520 U.S. 899,

2

904, 908-09 (1997). In *Bracy*, the Supreme Court noted the movant's allegations were "only a theory at this point" and "not supported by any solid evidence[.]" *Id.* at 908. The allegations, however, were specific enough to establish good cause for factual development even if the defendant ultimately "will be unable to obtain evidence sufficient" for actual relief. *Id.* at 909. *See Wellons v. Hall*, 558 U.S. 220, 226 (2010) (noting that the movant's allegations, together with the undisputed facts, determine if discovery is warranted), *on remand*, 603 F.3d 1236, 1237 (11th Cir. 2010) (remanding for discovery and an evidentiary hearing).

A sufficient showing of good cause, as required by Rule 6(a), therefore exists when the movant's allegations go beyond "mere speculation[.]" *Bowers v. United States Parole Comm'n, Warden*, 760 F.3d 1177, 1184-85 (11th Cir. 2014) (holding that the district court abused its discretion in denying discovery); *see also Quesinberry v. Taylor*, 162 F.3d 273, 279 (4th Cir. 1998) (finding discovery should be granted when a movant "makes a specific allegation that shows reason to believe that the petitioner may be able to demonstrate that he is entitled to relief."). In *Blackledge v. Allison*, the Supreme Court described "specific factual allegations" as not "vague (or) conclusory," "palpably incredible," or "patently frivolous or false." 431 U.S. 63, 75-76 (1977) (internal quotation marks and citations omitted). A "plausible indication" that the discovery request "might demonstrate" an entitlement to relief satisfies Rule 6(a). *Hill v. Ozmit*, 339 F.3d 187, 201 (4th Cir. 2003). More specifically, a movant must "state what he hope[s] to find" and how the information will "help him prosecute his [action]." *Smith v. United States*, 618 F.2d

507, 509 (8th Cir. 1980). When good cause is established, discovery must be allowed. *Harris*, 394 U.S. at 299-300; *see also id.* at 291 ("It is now established beyond the reach of reasonable dispute that the federal courts not only may grant evidentiary hearings to applicants, but must do so upon an appropriate showing."); *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991) ("A court should grant discovery in its discretion where there is 'good cause' why discovery should be allowed.").

Once good cause is established, the type and scope of discovery is broad. A § 2255 motion is "a continuing part of the criminal proceeding" and the remedy is "analogous to habeas corpus by state prisoners" under § 2254, making both the civil and criminal discovery rules applicable. § 2255 Rules, Advisory Committee Notes to Rule 6 (1976). In addition to formal discovery rules, "district court judges [are to] fashion their own rules in the context of individual cases" § 2254 Rules, Advisory Committee Notes to Rule 5 (1976).  This is consistent with the Supreme Court's decision in *Harris v. Nelson*, 394 U.S. at 300, which held:

> it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry. Obviously, in exercising this power, the court may utilize familiar procedures, as appropriate, whether these are found in the civil or criminal rules or elsewhere in the 'usages and principles of law.'

Accordingly, "district courts have power to require discovery when essential to render a habeas corpus proceeding effective." *Id.* at 300 n.7. This is never more so than in the context of a capital case, where the unique finality and irreversibility of the sentence require heightened procedural safeguards. *See, e.g., Deck v. Missouri*, 544 U.S. 622, 632 (2005); *Kyles v. Whitley*, 514 U.S. 419, 422 (1995) (Court's "duty to

4

search for constitutional error with painstaking care is never more exacting than it is in a capital case[.]") (internal quotation marks and citation omitted); *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) ("[T]he penalty of death is qualitatively different from any other sentence. We are satisfied that this qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed.") (internal quotation marks and citation omitted).

For the reasons set forth below, Sanchez has good cause for each item of requested discovery.

### Instructions

This request invokes methods of discovery available under both the criminal and civil rules of procedure, including production of documents, interrogatories, inspection of physical evidence and third-party subpoenas.

The term "**documents**" is used in its broadest sense and includes copies, different versions, and drafts; and includes, without limitation: writings, drawings, graphs, charts, photographs, audiotapes, videotapes, CDs, DVDs, ledgers, records, diaries, receipts, forms, messages, notes, and any other data compilation (including messages and data stored in a computer, mobile device, or external storage device) from which information can be obtained.

The terms "**relating to**" "**regarding**" or "**referring to**" a given subject matter shall mean a document or statement that constitutes, embodies, comprises, reflects, identifies, states, incorporates, deals with, comments on, concerns,

responds to, describes, analyzes, contains information concerning, or is in any way pertinent to, that subject matter.

The terms "**gang**" or "**cartel**" shall mean *Los Zetas*, the Gulf cartel, a drug cartel, or any other group, gang, or organization defined as a criminal street gang by Federal or State law, including, but not limited to, 18 U.S.C. § 521(a).

The terms "**identity**" or "**identify**" shall mean: (a) when used in reference to an individual—to state the full name, all known aliases, present or last known address, age (or, if unknown, approximate age); the full name and present, or last known, address of the individual's employer or business; (b) when used in reference to a criminal entity—criminal enterprise, gang or cartel, to state its full name and present, or last known, location of operation, and fully describe the activity in which it is engaged; and, (c) when used in reference to a document—to state the date, author, type of document (e.g., letter, memorandum, electronic document, photograph, email, tape recording, etc.), the person or persons to whom it, or copies of it, were sent, and its present, or last known, location and custodian. If any such document was, but is no longer in your possession or control or custody or subject to your control, state what disposition was made of it.

The term "**murders of the Escobedo family**" shall mean the crimes for which Ricardo Sanchez has been convicted and the killing of Jose Luis, Yessica, Luis Damien and Luis Julian Escobedo on the Florida Turnpike on October 13, 2006.

The term "**Officers and/or Government Agents Involved**" is defined as set forth in the discovery requests below.

**With respect to the production of documents:** Sanchez requests that Respondent produce and permit undersigned to inspect or copy documents in Respondent's possession or control, custody, or control at a time and in a manner designed to reasonably reduce any burden of production. Sanchez requests exact copies of such documents (excluding duplicates) in either paper or electronic format (.pdf). Respondent need not produce the same document in more than one form. Both sides of any double-sided document must be provided. For spreadsheets, Sanchez requests exact copies that display all horizontal and vertical gridlines and column headers and an electronic copy of the native file. For electronic documents in audio format, Sanchez requests exact copies in MP3 format. For electronic documents in video format, Sanchez requests exact copies in MPEG2 format.

As to any document previously destroyed, Respondent is requested to specify the author thereof, its date, its content, the identity of persons who received copies, and when and under what circumstances the document was destroyed. As to any destroyed document that was previously stored in electronic format, Respondent is additionally requested to identify the agency or company (if any) that may have a recoverable or archive copy of the document.

If there is an objection to any document request or a failure to answer any request on the grounds that either the attorney-client privilege or the work-product doctrine, or both, or any other claim of privilege applies, then as to such documents

7

allegedly subject to such asserted privilege, the Respondent is requested to supply the following information: (i) the nature of the document; (ii) the sender or author; (iii) the sender's agency or institutional affiliation as shown on the document; (iv) the date of the document; (v) the name of each person to whom the original or any copy was circulated; (vi) the names occurring on any circulation list associated with such document; (vii) a summary statement of the subject matter of the document; and, (viii) the privilege(s) claimed with respect to the document.

If in answering any of these discovery requests, Respondent encounters any ambiguity in construing a request or any ambiguity in construing a definition or instruction relevant to a request, Respondent is requested to set forth the matter deemed ambiguous and the construction selected or used in answering the request. *In that regard, undersigned are available and willing to provide clarification regarding any discovery request.*

**I.      Information regarding drug cartel involvement and/or third-party involvement in the murders of the Escobedo family.**

In Claim VI, Sanchez has alleged that the prosecution failed to disclose evidence material to Sanchez's theory of defense at the guilt and penalty phases of trial case. If these allegations are true, Sanchez is entitled to a new guilt and/or penalty phase trial. ECF No.[80:119-50 of 365].

The right to due process of law is violated when the prosecution withholds from a criminal defendant evidence that is material to his guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). A *Brady* violation has three elements: (1) the evidence must be favorable to the accused; (2) it must have been suppressed

8

by the government, either willfully or inadvertently; and (3) the suppression must have been material, i.e., it must have prejudiced the defense at trial. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Evidence is material when it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). With respect to the penalty phase of trial, materiality is determined under "the far lesser standard that a defendant must satisfy to qualify evidence as mitigating in a penalty hearing in a capital case." *Cone v. Bell*, 556 U.S. 449, 474 (2009).

"[T]he prosecutorial obligation to turn over material exculpatory or impeachment evidence continues throughout the judicial process," *Carter v. Bigelow*, 787 F.3d 1269, 1282 (10th Cir. 2015) (internal quotation marks and citation omitted),[1] and Sanchez specifically requests discovery regarding information believed to be within the Government's possession or control. The requested information might demonstrate that Sanchez is entitled to relief on his *Brady* claim.[2]

---

[1] *See also High v. Head*, 209 F.3d 1257, 1274 n.8 (11th Cir. 2000) ("The State's duty to disclose exculpatory material is ongoing.") (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987)).

[2] To the extent that counsel was ineffective for failing to investigate and present the information requested, this discovery request is properly granted because it is reasonably calculated to lead to the discovery of evidence relevant to Claims VII and VIII of Sanchez's § 2255 motion. In those claims, Sanchez alleges, *inter alia*, that counsel's performance was deficient and prejudicial under *Strickland v. Washington*, 466 U.S. 668, 692 (1984). In Claim VII, that (if indeed they were discoverable), counsel failed to investigate cell phone records, that those records would have allowed trial counsel to discover at least a portion of the evidence set forth in Claim VI, and that there exists a reasonable probability that, had trial counsel presented that evidence to Sanchez's jury, at least one juror would have

The requested information is calculated to lead to the discovery of evidence relevant to those allegations set forth in Claim VI(A), and directly undercutting the prosecution's theory of the case and substantially supported the defense, so much so, that confidence in the guilty verdict is undermined.

Moreover, as set forth in Claim VI(A)(3), there is a reasonable probability that the withheld evidence would have caused one or more of Sanchez's sentencing jurors to reject the statutory aggravator of pecuniary gain. Also undermined would have been aggravating factors including: substantial planning and premeditation; intentional killing of multiple victims; and, witness elimination. On the other side of the sentencing scale, this withheld evidence could have established the statutory mitigating factors of duress, minor participant and equally-culpable defendants. 18 U.S.C. § 3592(a)(2), (3) & (4). This information could have also added substantial weight to the mitigating factor that Escobedo's criminal conduct contributed to his family's death (Mitigator #7), found by eleven jurors. ECF No.[860:13]. Had the jurors received specific evidence supporting the uncharged third-party defense it is likely proposed Mitigator #43 (Sanchez's exact role in the offense is not sufficient to justify the death penalty) would have been accepted (as opposed to rejected). ECF

---

acquitted him of all charges underlying his capital convictions. Sanchez has alleged in Claim VIII that counsel failed to investigate and present evidence to counter the aggravating circumstances with facts reducing their weight and evidence to substantiate mitigating circumstances. For example, Sanchez has alleged that counsel failed to investigate and present evidence and argument removing, or reducing, the weight of the "substantial planning" statutory aggravating circumstance. If the facts set forth in either Claim VII or Claim VIII are true, Sanchez is entitled to a new guilt phase trial and/or a new sentencing hearing.

No.[860:16]. In addition, evidence demonstrating a reasonable possibility that Sanchez was not involved in the actual killings may have undermined eligibility factors, including: intentional killing; and intentional infliction of serious injury resulting in death. There is a reasonable probability that such evidence would have changed the sentencing balance for at least one of Sanchez's jurors.

If the facts set forth in Claim VI are true, Sanchez is entitled to a new guilt phase trial and/or a new sentencing hearing.

## **Request for Production of Documents**

For the reasons set forth above, Sanchez requests production of the following documents and he anticipates this discovery will show the information was in the prosecution's possession or control and was favorable and material to Sanchez's defense:

**A.** **Documents related to Report of Investigation 6-4-2007, date of interview 5-22-2007 (Request Exhibit A).**

Request Exhibit A is a DEA-6 Report of Investigation on a "Debriefing of Brownsville RO CS-07-12 on 05-22-2007" in the Brownsville Resident Office in Brownsville, Texas, and prepared on June 4, 2007. Officers and/or Government Agents involved included David Weeks (DEA West Palm Beach Resident Office Task Force Officer), Richard Birch (West Palm Beach Police Department Agent), Fred Wilson (St. Lucie County Sheriff's Office Detective) and AUSA Stephen Carlton, (hereinafter "Officers and/or Government Agents Involved").

1. All documents, reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified as Martin Soto in numbered paragraph 2, page 1 of 3 of the DETAILS section of Request Exhibit A for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

11

2.      All documents, reports and other materials in the possession or control of the United States Government related to that individual identified as Martin Soto in numbered paragraph 2, page 1 of 3 of the DETAILS section of Request Exhibit A.

3.      All documents in the possession or control of the United States Government tending to show the source of Martin Soto's knowledge regarding the drug trafficking of Jose Luis Escobedo.

4.      All documents in the possession or control of the United States Government tending to show the source of Martin Soto's knowledge of the killings of the Escobedo family.

5.      All documents in the possession or control of the United States Government regarding contacts between that individual identified as Brownsville RO CS-07-12 and Martin Soto.

6.      All documents in the possession or control of the United States Government regarding contacts between that individual identified as Brownsville RO CS-07-12 and Oscar "Muneco" Venegas.

7.      All documents, reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified as Oscar Venegas (a/k/a "Muneco") in numbered paragraph 2, page 1 of 3 of the DETAILS section of Request Exhibit A for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

8.      All documents, reports and other materials in the possession or control of the United States Government related to that individual identified as Oscar Venegas (a/k/a "Muneco") in numbered paragraph 2, page 1 of 3 of the DETAILS section of Request Exhibit A.

9.      All documents, reports and other materials in the possession or control of the United States Government related to that individual identified as Brownsville RO CS-07-12 Request Exhibit A and the investigation and/or prosecution of: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

10.    All documents, reports and other materials in the possession or control of the United States Government related to the initial contact between any agent of the United States Government and/or Officers and/or Government Agents Involved and that individual identified as Brownsville RO CS-07-12 regarding the murders of the Escobedo family.

11.    All documents, reports and other materials in the possession or control of the United States Government related to that individual identified as Brownsville RO CS-07-12.

12.    All documents, reports and other materials in the possession or control of the United States Government related to the identity of, and contact information for, that individual identified as Brownsville RO CS-07-12.

13.    All documents, reports and other materials (whether personal or professional documents) in the possession or control of Stephen Carlton related to the interview documented in Request Exhibit A.

14.    All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the interview documented in Request Exhibit A.

15.    All documents, reports and other materials (whether personal or professional documents) in the possession or control of Stephen Carlton related to the interviewee (Brownsville RO CS-07-12) documented in Request Exhibit A.

16.    All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the interviewee (Brownsville RO CS-07-12) documented in Request Exhibit A.

17.    All documents, reports and other materials (whether personal or professional documents) in the possession or control of Stephen Carlton related to the subject matter documented in Request Exhibit A.

18.    All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the subject matter documented in Request Exhibit A.

19.    All documents, reports and other materials (whether personal or professional documents) in the possession or control of Larry J. Reavis

13

(Group Supervisor) related to the subject matter documented in Request Exhibit A.

20.     All documents comprising the Related Files in box 2 of Request Exhibit A and designated as "M9-07-0008" and "CS-07-124037."

21.     An un-redacted copy of page 2 of Request Exhibit A. In particular, page 2 of 3 contains paragraphs numbered 4-9 followed by blank space. Request Exhibit A, page 3 of 3 contains paragraphs numbered 3-5. Upon information and belief, a heading and paragraphs 1-2 have been redacted from Request Exhibit A, page 2 of 3.

**B.      Documents related to Report of Investigation 6-6-2007 date of interview 5-23-2007 (Request Exhibit B).**

Request Exhibit B is a DEA-6 Report of Investigation on a "Debrief of I.C.E. Confidential Source on 05-23-2007" in Brownsville, Texas, and prepared on June 6, 2007. Officers and/or Government Agents involved included David Weeks (DEA West Palm Beach Resident Office Task Force Officer), Richard Birch (West Palm Beach Police Department Agent) and AUSA Stephen Carlton, (hereinafter "Officers and/or Government Agents Involved").

1.      All documents, reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified as Carlos Garcia in numbered paragraph 3, page 1 of 3 of the DETAILS section of Request Exhibit B for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

2.      All documents, reports and other materials in the possession or control of the United States Government related to that individual identified as Carlos Garcia in numbered paragraph 3, page 1 of 3 of the DETAILS section of Request Exhibit B.

3.      All documents, reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified as Felipe Guerrero in numbered paragraph 4, page 2 of 3 of the DETAILS section of Request Exhibit B for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

14

4.    All documents, reports and other materials in the possession or control of the United States Government related to that individual identified as Felipe Guerrero in numbered paragraph 4, page 2 of 3 of the DETAILS section of Request Exhibit B.

5.    All documents, reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified as "the associate" in numbered paragraph 5, page 2 of 3 of the DETAILS section of Request Exhibit B for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

6.    All documents, reports and other materials in the possession or control of the United States Government related to that individual identified as "the associate" in numbered paragraph 5, page 2 of 3 of the DETAILS section of Request Exhibit B.

7.    All documents, reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified as Martin Sosa in numbered paragraph 7, page 2 of 3 of the DETAILS section of Request Exhibit B for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

8.    All documents, reports and other materials in the possession or control of the United States Government related to that individual identified as Martin Sosa in numbered paragraph 7, page 2 of 3 of the DETAILS section of Request Exhibit B.

9.    All documents, reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified as Adolfo LNU in numbered paragraph 8, pages 2-3 of 3 of the DETAILS section of Request Exhibit B for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

15

10. All documents, reports and other materials in the possession or control of the United States Government related to that individual identified as Adolfo LNU in numbered paragraph 8, pages 2-3 of 3 of the DETAILS section of Request Exhibit B.

11. All documents, reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified as Adolfo LNU's brother "Robert LNU" who owned a car wash in Naples, Florida, in numbered paragraph 8, pages 2-3 of 3 of the DETAILS section of Request Exhibit B for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

12. All documents, reports and other materials in the possession or control of the United States Government related to that individual identified as Adolfo LNU's brother "Robert LNU" who owned a car wash in Naples, Florida in numbered paragraph 8, pages 2-3 of 3 of the DETAILS section of Request Exhibit B.

13. All documents, reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified as a female in Bonita Springs, Florida "FNU Cisneros" in numbered paragraph 8, pages 2-3 of 3 of the DETAILS section of Request Exhibit B for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

14. All documents, reports and other materials in the possession or control of the United States Government related to that individual identified as a female in Bonita Springs, Florida "FNU Cisneros" in numbered paragraph 8 of the DETAILS section of Request Exhibit B.

15. All documents, reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified as a second male in Naples, Florida, "Cesar LNU" in numbered paragraph 8, pages 2-3 of 3 of the DETAILS section of Request Exhibit B for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States

16

Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

16. All documents, reports and other materials in the possession or control of the United States Government related to that individual identified as "I.C.E. Confidential Source identified in DEA Form 6, page 1, box 10 of Request Exhibit B and the investigation and/or prosecution of: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

17. All documents, reports and other materials in the possession or control of the United States Government related to the initial contact between any agent of the United States Government and that individual identified as "I.C.E. Confidential Source" identified in DEA Form 6, page 1, box 10 of Request Exhibit B.

18. All documents, reports and other materials in the possession or control of the United States Government related to that individual identified as "I.C.E. Confidential Source" identified in DEA Form 6, page 1, box 10 of Request Exhibit B.

19. All documents, reports and other materials in the possession or control of the United States Government related to the identity of, and contact information for, that individual identified in DEA Form 6, page 1, box 10 of Request Exhibit B.

20. All documents, reports and other materials (whether personal or professional documents) in the possession or control of Stephen Carlton related to the interview documented in Request Exhibit B.

21. All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the interview documented in Request Exhibit B.

22. All documents, reports and other materials (whether personal or professional documents) in the possession or control of Stephen Carlton related to the interviewee ("I.C.E. Confidential Source") documented in Request Exhibit B.

23. All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or

17

Government Agents Involved related to the interviewee ("I.C.E. Confidential Source") documented in Request Exhibit B.

24. All documents, reports and other materials (whether personal or professional documents) in the possession or control of Stephen Carlton related to the subject matter documented in Request Exhibit B.

25. All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the subject matter documented in Request Exhibit B.

26. All documents, reports and other materials (whether personal or professional documents) in the possession or control of Larry J. Reavis (Group Supervisor) related to the subject matter documented in Request Exhibit B.

27. All documents in the possession or control of the United States Government regarding contacts between that individual identified as I.C.E. Confidential Source and Jose Luis Escobedo.

28. All documents in the possession or control of the United States Government regarding contacts between that individual identified as I.C.E. Confidential Source and Manuel Escobedo (brother of Jose Luis Escobedo).

29. All documents in the possession or control of the United States Government regarding contacts between that individual identified as I.C.E. Confidential Source and Carlos Garcia.

30. All documents in the possession or control of the United States Government regarding contacts between that individual identified as I.C.E. Confidential Source and Felipe Guerrero.

31. All documents in the possession or control of the United States Government regarding contacts between that individuals identified as I.C.E. Confidential Source and the individual identified in paragraph 5, page 2 of 3 of Request Exhibit B as "the associate."

32. All documents in the possession or control of the United States Government regarding contacts between that individual identified as I.C.E. Confidential Source and Martin Sosa.

33. All documents in the possession or control of the United States Government regarding contacts between that individual identified as

18

I.C.E. Confidential Source and that individual identified in paragraph 8, page 2 of 3 of Request Exhibit B as "Adolfo LNU."

34.     An un-redacted copy of page 3 of Request Exhibit B. In particular, page 2 of 3 contains paragraphs numbered 4-8 followed by bullet points which continue to page 3 of 3. Following the last bullet point on page 3 is a blank space and then paragraphs numbered 2-3. Upon information and belief, a heading and paragraph 1 have been redacted from Request Exhibit B, page 3 of 3.

**C.     Documents related to Report of Investigation 6-5-2007, date of interview 5-23-2007 (Request Exhibit C).**

Request Exhibit C is a DEA-6 Report of Investigation on an "Interview of Victor Cortinas on 05-23-2007" in Brownsville, Texas, and prepared on June 5, 2007. Officers and/or Government Agents involved included David Weeks (DEA West Palm Beach Resident Office Task Force Officer), and Fred Wilson (St. Lucie County Sheriff's Office Detective), (hereinafter "Officers and/or Government Agents Involved").

1.     All documents, reports and other materials in the possession or control of the United States Government related to that individual identified in DEA Form 6, page 1 of 3, box 10 of Request Exhibit C as "Victor Cortinas."

2.     All documents, reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified as Victor Cortinas on page 1 of 3, box 10 of Request Exhibit C for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

3.     All documents, reports and other materials in the possession or control of the United States Government related to that individual identified in the DETAILS section, paragraph 2, pages 2-3 of 3 of Request Exhibit C as the brother-in-law of Victor Cortinas, "Juan Santos."

4.     All documents, reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified in the DETAILS section, paragraph 2, pages 2-3 of 3 of Request Exhibit C as the brother-in-law of Victor Cortinas, "Juan Santos" for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any

19

other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

5.     All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the interview documented in Request Exhibit C.

6.     All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the interviewee ("Victor Cortinas") documented in Request Exhibit C.

7.     All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the subject matter documented in Request Exhibit C.

8.     All documents, reports and other materials (whether personal or professional documents) in the possession or control of Larry J. Reavis (Group Supervisor) related to the subject matter documented in Request Exhibit C.

9.     All documents, reports and other materials (whether personal or professional documents) in the possession or control of the United States Government or Officers and/or Government Agents Involved related to the statement on page 3 of 3 of Request Exhibit C: "Believed to have been associated with the delivery of 15 kilograms of cocaine on 10-12-06 to Jose Luis ESCOBEDO in Florida."

10.    All documents comprising File No. G8-06-002.

11.    All documents related to G-DEP Identifier YNC1B.

12.    All documents comprising File Title "ROMAN-SALGADO, Demetrio."

13.    An un-redacted copy of pages 2 and 3 of Request Exhibit C. In particular, page 2 of 3 contains paragraphs numbered 3-6, followed by blank space and then a paragraph 2. Page 3 of 3 contains a paragraph numbered 3 and a sentence preceded by and followed by blank space. Upon information and belief, a heading and paragraph 1 has been redacted from Request Exhibit C, page 2 of 2 and content has been redacted from Request Exhibit C, page 3 of 3.

**D.      Documents related to Report of Investigation 6-5-2007, date of interview 5-24-2007 (Request Exhibit D).**

Request Exhibit D is a DEA-6 Report of Investigation on a "Debriefing of Juan Carlos SANTOS on 05-24-2007" in Brownsville, Texas, and prepared on June 5, 2007. Officers and/or Government Agents involved included David Weeks (DEA West Palm Beach Resident Office Task Force Officer), Richard Birch (West Palm Beach Police Department Agent), and AUSA Stephen Carlton, (hereinafter "Officers and/or Government Agents Involved").

1.      All documents, reports and other materials in the possession or control of the United States Government related to that individual identified in box 10 of Request Exhibit D as "Juan Carlos Santos."

2.      All documents reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified in box 10 of Request Exhibit D as Juan Carlos Santos for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

3.      All documents, reports and other materials (whether personal or professional documents) in the possession or control of Stephen Carlton related to the interview documented in Request Exhibit D.

4.      All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the interview documented in Request Exhibit D.

5.      All documents, reports and other materials (whether personal or professional documents) in the possession or control of Stephen Carlton related to the interviewee ("Juan Carlos Santos") documented in Request Exhibit D.

6.      All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the interviewee ("Juan Carlos Santos") documented in Request Exhibit D.

7.      All documents, reports and other materials (whether personal or professional documents) in the possession or control of Stephen Carlton related to the subject matter documented in Request Exhibit D.

21

8. All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the subject matter documented in Request Exhibit D.

9. All documents, reports and other materials (whether personal or professional documents) in the possession or control of Larry J. Reavis (Group Supervisor) related to the subject matter documented in Request Exhibit D.

10. An un-redacted copy of page 3 of Request Exhibit D. In particular, page 3 of 3 contains a heading titled "INDEXING," followed by blank space and paragraphs numbered 2-3. Blank space follows the name of Juan Carlos Santos at paragraph 3 and the statement "Believed to have been associated with the delivery of 15 kilograms of cocaine on 10-12-06 to Jose Luis ESCOBEDO in Florida." Upon information and belief, a paragraph 1 and other content has been redacted from Request Exhibit D, page 3 of 3.

**E.** **Documents related to Report of Investigation 10-5-2007, date of interview 10-1-2007 (Request Exhibit E).**

Request Exhibit E is a DEA-6 Report of Investigation on an "Interview of Norma Guzman on 10-01-2007" at her place of employment and prepared on October 5, 2007. Officers and/or Government Agents involved included David Weeks (DEA West Palm Beach Resident Office Task Force Officer) and Fred Wilson (St. Lucie County Sheriff's Office Detective).

1. All documents, reports and other materials in the possession or control of the United States Government related to that individual identified in box 10 of Request Exhibit E as "Norma Guzman."

2. The photograph of Gus Martin that Task Force Officer David Weeks showed Norma Guzman, as set forth in paragraph 11, page 3 of 4 of Request Exhibit E.

3. All documents, reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified in box 10 of Request Exhibit D as Norma Guzman for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

4.    All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the interview documented in Request Exhibit E.

5.    All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the interviewee ("Norma Guzman") documented in Request Exhibit E.

6.    All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the subject matter documented in Request Exhibit E.

7.    All documents, reports and other materials in the possession or control of the United States Government related to that individual identified in paragraph 11, page 3 of 4 of Request Exhibit E as "Gus Martin."

8.    All documents, reports and other materials (whether personal or professional documents) in the possession or control of Larry J. Reavis (Group Supervisor) related to the subject matter documented in Request Exhibit E.

9.    An un-redacted copy of pages 3 and 4 of Request Exhibit E. In particular, page 3 of 4 contains a heading titled "Indexing" that is preceded and followed by blank space. Upon information and belief, paragraph 1 under the heading "Indexing" and other content has been redacted from Request Exhibit D, pages 3 and 4.

F.    **Documents related to Report of Investigation 10-5-2007, date of interview 10-2-2007 (Request Exhibit F).**

Request Exhibit F is a DEA-6 Report of Investigation on an "Interview of Juana Beltran on 10-02-2007" in Pierson, Florida and prepared on October 5, 2007. Officers and/or Government Agents involved included David Weeks (DEA West Palm Beach Resident Office Task Force Officer) and Fred Wilson (St. Lucie County Sheriff's Office Detective).

1.    All documents, reports and other materials in the possession or control of the United States Government related to that individual identified in box 10 of Request Exhibit F as "Juana Beltran."

2.    All documents reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified in box 10 of Request Exhibit F

as Juana Beltran for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

3.     All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the interview documented in Request Exhibit F.

4.     All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the interviewee ("Juana Beltran") documented in Request Exhibit F.

5.     All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the subject matter documented in Request Exhibit F.

6.     All documents, reports and other materials (whether personal or professional documents) in the possession or control of Larry J. Reavis (Group Supervisor) related to the subject matter documented in Request Exhibit F.

7.     All documents, reports and other materials in the possession or control of the United States Government related to that individual identified in paragraph 5, page 2 of 2 of Request Exhibit F as "Jose Candelario Beltran."

8.     All documents reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified in paragraph 5, page 2 of 2 of Request Exhibit F as "Jose Candelario Beltran" for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

9.     All documents, reports and other materials in the possession or control of the United States Government related to that individual identified in paragraph 5, page 2 of 2 of Request Exhibit F as "Edgar Beltran."

24

10.   All documents reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified in paragraph 5, page 2 of 2 of Request Exhibit F as " Edgar Beltran" for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

11.   All documents, reports and other materials in the possession or control of the United States Government related to that individual identified in paragraph 5, page 2 of 2 of Request Exhibit F as "Cecilio Beltran."

12.   All documents reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified in paragraph 5, page 2 of 2 of Request Exhibit F as "Cecilio Beltran" for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

13.   An un-redacted copy of page 2 of 2 of Request Exhibit F. In particular, page 2 of 2 contains paragraphs numbered 4-7 followed by blank space and then paragraphs numbered 2-3. Upon information and belief, a heading, paragraph 1 and other content has been redacted from Request Exhibit F, page 2.

**G.   Documents related to Report of Investigation 10-5-2007, date of interview 10-2-2007 (Request Exhibit G).**

Request Exhibit G is a DEA-6 Report of Investigation on an "Interview of Juana Caro on 10-02-2007" in Pierson, Florida and prepared on October 5, 2007. Officers and/or Government Agents involved included David Weeks (DEA West Palm Beach Resident Office Task Force Officer) and Fred Wilson (St. Lucie County Sheriff's Office Detective).

1.   All documents, reports and other materials in the possession or control of the United States Government related to that individual identified in box 10 of Request Exhibit G as "Juana Caro."

2.   All documents reports and other materials in the possession or control of the United States Government related to the investigation and/or prosecution of that individual identified in box 10 of Request Exhibit G

25

as Juana Caro for: (i) any drug trafficking offense and/or conspiracy to commit a drug trafficking offense; and/or (ii) any other felony offense believed by any agent of the United States Government to have been committed during the course of a drug trafficking offense and/or conspiracy to commit a drug trafficking offense.

3. All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the interview documented in Request Exhibit G.

4. All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the interviewee ("Juana Caro") documented in Request Exhibit G.

5. All documents, reports and other materials (whether personal or professional documents) in the possession or control of Officers and/or Government Agents Involved related to the subject matter documented in Request Exhibit G.

6. All documents, reports and other materials (whether personal or professional documents) in the possession or control of Larry J. Reavis (Group Supervisor) related to the subject matter documented in Request Exhibit G.

7. An un-redacted copy of page 2 of 2 of Request Exhibit G. In particular, page 2 of 2 contains the heading "Indexing," followed by blank space and then paragraphs numbered 2-3, followed by blank space and the statement: "Possible Associates: Santos, Juan Carlos 10/07 Identified as the user of telephone number 386-785-5684 during the period of October 2006." Upon information and belief, paragraph 1 and other content has been redacted from Request Exhibit G, page 2.

**H. <u>Documents related to cell phones identified in connection with the murders of the Escobedo family.</u>**

1. Documents tending to show Manuel Escobedo's cell phone use at all times relevant to his brother Luis Escobedo's cocaine trafficking in Florida and/or the murders of the Escobedo family.

2. Documents tending to show cell phone use of that individual identified as Martin Soto, in numbered paragraph 2, page 1 of 3 of the DETAILS section of Request Exhibit A, at all times relevant to Luis Escobedo's cocaine trafficking in Florida and/or the murders of the Escobedo family.

26

3.  Documents tending to show cell phone use of that individual identified as Oscar Venegas (a/k/a "Muneco"), in numbered paragraph 2, page 1 of 3 of the DETAILS section of Request Exhibit A, at all times relevant to Luis Escobedo's cocaine trafficking in Florida and/or the murders of the Escobedo family.

**I.  Documents related to the accompanying Request for Interrogatories.**

1.  Please produce copies of all documents identified in response to the Request for Interrogatories set forth below.

2.  Please produce copies of all documents related to the interrogatories propounded below, whether or not identified in response to a specific interrogatory.

## Third Party Discovery

To the extent that such evidence responsive to Sanchez's Requests for Production of Documents subsection A through subsection I, is beyond the control of the Government, Sanchez requests authorization for issuance of third-party subpoenas.

## Request for Interrogatories

For the reasons set forth above, Sanchez requests that the Government provide written answers to the following interrogatories and he anticipates this discovery will show the information was in the prosecution's possession or control and was favorable and material to Sanchez's defense:

**J.  Interrogatories regarding Report of Investigation 6-4-2007, date of interview 5-22-2007 (Request Exhibit A).**

1.  Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as Brownsville Resident Office BRO CS-07-12 in the SYNOPSIS section of Request Exhibit A.

2.  Identify any gang or cartel that the United States Government knows or suspects is or was connected to the individual identified as

27

Brownsville Resident Office BRO CS-07-12 in the SYNOPSIS section of Request Exhibit A.

3. Identify all documents related to both the individuals identified as Brownsville Resident Office BRO CS-07-12 in the SYNOPSIS section of Request Exhibit A and the investigation of the murders of the Escobedo family.

4. Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as Martin Soto in numbered paragraph 2, page 1 of 3 of the DETAILS section of Request Exhibit A.

5. Identify any gang or cartel that the United States Government knows or suspects is or was connected to the individual identified as Martin Soto in numbered paragraph 2, page 1 of 3 of the DETAILS section of Request Exhibit A.

6. Identify all documents related to both Martin Soto and the investigation of the murders of the Escobedo family.

7. Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as Oscar Venegas (a/k/a "Muneco") in numbered paragraph 2, page 1 of 3 of the DETAILS section of Request Exhibit A.

8. Identify any gang or cartel that the United States Government knows or suspects is or was connected to the individual identified as Oscar Venegas (a/k/a "Muneco") in numbered paragraph 2, page 1 of 3 of the DETAILS section of Request Exhibit A.

9. Identify all documents related to both Oscar Venegas (a/k/a "Muneco") and the investigation of the murders of the Escobedo family.

10. Identify and describe with specificity the redacted contents from Request Exhibit A, page 2 of 3. In particular, page 2 contains paragraphs numbered 4-9 followed by blank space. Request Exhibit A, page 3 of 3 contains paragraphs numbered 3-5. Upon information and belief, a heading and paragraphs 1-2 have been redacted from Request Exhibit A, page 2 of 3.

K. **Interrogatories regarding Report of Investigation 6-6-2007, date of interview 5-23-2007 (Request Exhibit B).**

1. Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as

28

"Immigration and Customs Enforcement (ICE) Confidential Source (CS)" in the SYNOPSIS section of Request Exhibit B.

2. Identify any gang or cartel that the United States Government knows or suspects is or was connected to the individual identified as "Immigration and Customs Enforcement (ICE) Confidential Source (CS)" in the SYNOPSIS section of Request Exhibit B.

3. Identify all documents related to both that individual described as "Immigration and Customs Enforcement (ICE) Confidential Sources (CS)" in the SYNOPSIS section of Request Exhibit B and the investigation of the murders of the Escobedo family.

4. Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as Carlos Garcia in numbered paragraph 3, page 1 of 3 of the DETAILS section of Request Exhibit B.

5. Provide the identity of persons who have interacted with Carlos Garcia regarding illegal drug activity in Florida, including any gang or cartel affiliations.

6. Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified as Carlos Garcia in numbered paragraph 3, page 1 of 3 of the DETAILS section of Request Exhibit B.

7. Identify all documents related to both Carlos Garcia and the investigation of the murders of the Escobedo family.

8. The identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as Felipe Guerrero in numbered paragraph 4, page 2 of 3 of the DETAILS section of Request Exhibit B.

9. Provide the identity of persons who have interacted with Felipe Guerrero regarding illegal drug activity in Florida, including any gang or cartel affiliations.

10. Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified as Felipe Guerrero in numbered paragraph 4, page 2 of 3 of the DETAILS section of Request Exhibit B.

11. Identify all documents related to both Felipe Guerrero and the investigation of the murders of the Escobedo family.

29

12. Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as "the associate" in numbered paragraph 5, page 2 of 3 of the DETAILS section of Request Exhibit B.

13. Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual described as "the associate" in numbered paragraph 5 of the DETAILS section of Request Exhibit B.

14. Provide the identity of persons who have interacted with the person described as "the associate" regarding illegal drug activity in Florida, including any gang or cartel affiliations.

15. Identify all documents related to both that individual described as "the associate" and the investigation of the murders of the Escobedo family.

16. Provide the identity (and/or all known aliases) and last known address and/or other contact information for those individuals identified as "occupants of a green Chevrolet Suburban" in numbered paragraph 6, page 2 of 3 of the DETAILS section of Request Exhibit B.

17. Identify any gang or cartel that the United States Government knows or suspects is or was connected to those individuals identified as "occupants of a green Chevrolet Suburban."

18. Identify all documents related to each individual described as an "occupant[] of a green Chevrolet Suburban."

19. Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as Martin Sosa in numbered paragraph 7, page 2 of 3 of the DETAILS section of Request Exhibit B.

20. Provide the identity of persons who have interacted with Martin Sosa regarding illegal drug activity in Florida, including any gang or cartel affiliations.

21. Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified in numbered paragraph 7, page 2 of 3 of the DETAILS section of Request Exhibit B as Martin Sosa.

22. Identify all documents related to both Martin Sosa and the investigation of the murders of the Escobedo family.

30

23. Explain whether that individual identified in numbered paragraph 7, page 2 of 3 of the DETAILS section of Request Exhibit B as "Martin Sosa" is the same person as that individual identified as Martin Soto in numbered paragraph 2, page 1 of 3 of the DETAILS section of Request Exhibit A.

24. Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as "Adolfo LNU" in numbered paragraph 8, pages 2-3 of 3 of the DETAILS section of Request Exhibit B.

25. Provide the identity of persons who have interacted with "Adolfo LNU" regarding illegal drug activity in Florida, including any gang or cartel affiliations.

26. Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified in numbered paragraph 8, pages 2-3 of 3 of the DETAILS section of Request Exhibit B as "Adolfo LNU."

27. Identify all documents related to both "Adolfo LNU" and the investigation of the murders of the Escobedo family.

28. Provide the address of the car wash described on page 3 of 3 of Request Exhibit B as located in Naples, Florida, and allegedly owned by "Adolfo LNU's" brother, "Robert LNU."

29. Provide the identity of persons who have interacted with "Robert LNU" regarding illegal drug activity in Florida, including any gang or cartel affiliations.

30. Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified as "Robert LNU."

31. Identify all documents related to both "Robert LNU" and the investigation of the murders of the Escobedo family.

32. Provide the address of the trailer park described on page 3 of 3 of Request Exhibit B as where "FNU Cisneros" allegedly lived.

33. Provide the identity of persons who have interacted with "FNU Cisneros" regarding illegal drug activity in Florida, including any gang or cartel affiliations.

31

34.    Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified as "FNU Cisneros."

35.    Identify all documents related to both "FNU Cisneros" and the investigation of the murders of the Escobedo family.

36.    Identify and describe with specificity the redacted contents from Request Exhibit B, page 3 of 3. In particular, page 2 of 3 contains paragraphs numbered 4-8 followed by bullet points which continue to page 3 of 3. Following the last bullet point on page 3 is a blank space and then paragraphs numbered 2-3. Upon information and belief, a heading and paragraph 1 have been redacted from Request Exhibit B, page 3 of 3.

**L.    Interrogatories regarding Report of Investigation 6-5-2007, date of interview 5-23-2007 (Request Exhibit C).**

1.    Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as Victor Cortinas in box 10 of Request Exhibit C.

2.    Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified as Victor Cortinas in box 10 of Request Exhibit C.

3.    Provide the names and last known addresses and/or other contact information for those individual identified as "fellow investigators" in the SYNOPSIS section of Request Exhibit C.

4.    Identify and describe with specificity the redacted contents from pages 2 and 3 of Request Exhibit C. In particular, page 2 of 3 contains paragraphs numbered 3-6, followed by blank space and then a paragraph 2. Page 3 of 3 contains a paragraph numbered 3 and a sentence preceded by and followed by blank space. Upon information and belief, a heading and paragraph 1 has been redacted from Request Exhibit C, page 2 of 2 and content has been redacted from Request Exhibit C, page 3 of 3.

5.    Describe with specificity the basis for the statement on page 3 of 3 of Request Exhibit C, "Believed to have been associated with the delivery of 15 kilograms of cocaine on 10-12-06 to Jose Luis ESCOBEDO in Florida."

6.     Provide the identity of persons who have interacted with Victor Cortinas regarding illegal drug activity in Florida, including any gang or cartel affiliations.

7.     Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified as Victor Cortinas in box 10 of Request Exhibit C.

8.     Identify all documents related to both Victor Cortinas and the investigation of the murders of the Escobedo family.

**M.     Interrogatories regarding Report of Investigation 6-5-07, date of interview 5-24-07 (Request Exhibit D).**

1.     Identify and describe with specificity the redacted contents from page 3 of 3 Request Exhibit D. In particular, page 3 contains a heading titled "Indexing," followed by blank space and paragraphs numbered 2-3. Blank space follows the name of Juan Carlos Santos at paragraph 3 and the statement "Believed to have been associated with the delivery of 15 kilograms of cocaine on 10-12-06 to Jose Luis ESCOBEDO in Florida." Upon information and belief, paragraph 1 and other content have been redacted from Request Exhibit D, page 3 of 3.

2.     Describe with specificity the basis for the statement on page 3 of 3 of Request Exhibit D, "Believed to have been associated with the delivery of 15 kilograms of cocaine on 10-12-06 to Jose Luis ESCOBEDO in Florida."

3.     Provide the identity of persons who have interacted with Juan Carlos Santos regarding illegal drug activity in Florida, including any gang or cartel affiliations.

4.     Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified as Juan Carlos Santos in the SYNOPSIS section of Request Exhibit D, page 1 of 3.

5.     Identify all documents related to both Juan Carlos Santos and the investigation of the murders of the Escobedo family.

**N.     Interrogatories regarding Report of Investigation 10-5-07, date of interview 10-1-07 (Request Exhibit E).**

1.     Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as Norma Guzman in box 10 of Request Exhibit E.

33

2.  Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified as Norma Guzman in box 10 of Request Exhibit E.

3.  Identify all documents related to both Norma Guzman and the investigation of the murders of the Escobedo family.

4.  Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as "Gus Martin" in paragraph 11, page 3 of 4 of Request Exhibit E.

5.  Explain why Task Force Officer David Weeks showed Norma Guzman a photograph of Gus Martin, as set forth in paragraph 11, page 3 of 4 of Request Exhibit E.

6.  Describe the connection between Gus Martin and Juan Carlos Santos.

7.  Identify all documents relating to the connection between Gus Martin and Juan Carlos Santos.

8.  Provide the identity of persons who have interacted with Gus Martin regarding illegal drug activity in Florida, including any gang or cartel affiliations.

9.  Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified as Gus Martin in paragraph 11, page 3 of 4 of Request Exhibit E.

10. Identify all documents related to both Gus Martin and the investigation of the murders of the Escobedo family.

11. Identify and describe with specificity the redacted contents from pages 3 and 4 of Request Exhibit E. In particular, page 3 of 4 contains a heading titled "Indexing" that is preceded and followed by blank space. Upon information and belief, paragraph 1 under the heading "Indexing" and other content has been redacted from Request Exhibit D, pages 3 and 4.

**O.  Interrogatories regarding Report of Investigation 10-5-07, date of interview 10-2-07 (Request Exhibit F).**

1.  Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as Juana Beltran in the SYNOPSIS section of Request Exhibit F.

34

2.     Provide the identity of persons who have interacted with Juana Beltran regarding illegal drug activity in Florida, including any gang or cartel affiliations.

3.     Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified as Juana Beltran in the SYNOPSIS section of Request Exhibit F.

4.     Identify all documents related to both Juana Beltran and the investigation of the murders of the Escobedo family.

5.     Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as Juana Caro in numbered paragraph 2, page 1 of 2 of the DETAILS section of Request Exhibit F.

6.     Provide the identity of persons who have interacted with Juana Caro regarding illegal drug activity in Florida, including any gang or cartel affiliations.

7.     Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified as Juana Caro in numbered paragraph 2, page 1 of 2 of the DETAILS section of Request Exhibit F.

8.     Identify all documents related to both Juana Caro and the investigation of the murders of the Escobedo family.

9.     Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as Jose Candelario Beltran in numbered paragraph 5, page 2 of 2 of the DETAILS section of Request Exhibit F.

10.    Provide the identity of persons who have interacted with Jose Candelario Beltran regarding illegal drug activity in Florida, including any gang or cartel affiliations.

11.    Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified as Jose Candelario Beltran in numbered paragraph 5, page 2 of 2 of the DETAILS section of Request Exhibit F.

12.    Identify all documents related to both Jose Candelario Beltran and the investigation of the murders of the Escobedo family.

35

13.	Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as Edgar Beltran in numbered paragraph 5, page 2 of 2 of the DETAILS section of Request Exhibit F.

14.	Provide the identity of persons who have interacted with Edgar Beltran regarding illegal drug activity in Florida, including any gang or cartel affiliations.

15.	Identify all documents related to both Edgar Beltran and the investigation of the murders of the Escobedo family.

16.	Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified as Edgar Beltran in numbered paragraph 5, page 2 of 2 of the DETAILS section of Request Exhibit F.

17.	Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as Cecilio Beltran in numbered paragraph 5, page 2 of 2 of the DETAILS section of Request Exhibit F.

18.	Provide the identity of persons who have interacted with Cecilio Beltran regarding illegal drug activity in Florida, including any gang or cartel affiliations.

19.	Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified as Cecilio Beltran in numbered paragraph 5, page 2 of 2 of the DETAILS section of Request Exhibit F.

20.	Identify all documents related to both Cecilio Beltran and the investigation of the murders of the Escobedo family.

21.	Identify and describe with specificity the redacted contents from page 2 of 2 of Request Exhibit F. In particular, page 2 of 2 contains paragraphs numbered 4-7 followed by blank space and then paragraphs numbered 2-3. Upon information and belief, a heading, paragraph 1 and other content has been redacted from Request Exhibit F, page 2

36

**P.**    **Interrogatories regarding Report of Investigation 10-5-2007, date of interview 10-2-2007 (Request Exhibit G).**

1.    Provide the identity (and/or all known aliases) and last known address and/or other contact information for that individual identified as Juana Caro in box 10 of Request Exhibit G.

2.    Provide the identity of persons who have interacted with Juana Caro regarding illegal drug activity in Florida, including any gang or cartel affiliations.

3.    Identify any gang or cartel that the United States Government knows or suspects is or was connected to that individual identified as Juana Caro in box 10 of Request Exhibit G.

4.    Identify and describe with specificity the redacted contents from page 2 of 2 of Request Exhibit G. In particular, page 2 of 2 contains the heading "Indexing," followed by blank space and then paragraphs numbered 2-3, followed by blank space and the statement: "Possible Associates: SANTOS, Juan Carlos 10/07 Identified as the user of telephone number 386-785-5684 during the period of October 2006." Upon information and belief, paragraph 1 and other content has been redacted from Request Exhibit G, page 2 of 2.

### Third Party Discovery

To the extent that such information is beyond the control of the Government, Sanchez requests authorization to conduct depositions of any party identified as having possession of the same.

**II.    Information regarding ballistics and toolmark evidence.**

In Claim VII, Sanchez has alleged that the trial counsel failed to investigate and present available evidence supporting the theory of defense. In particular, counsel failed to properly challenge the admissibility of the Government's toolmark experts and failed to present available expert testimony demonstrating that the testimony of the Government's experts was unscientific and unreliable. If these allegations are true, Sanchez is entitled to a new guilt and/or penalty phase trial.

37

To prevail, Sanchez must demonstrate that counsel's performance was deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 692 (1984). Trial counsel have been found ineffective for not investigating and presenting ballistics evidence that is inconsistent with the prosecution's case. *See, e.g., Draughon v. Dretke*, 427 F.3d 286 (5th Cir. 2005) (counsel's failure to retain a ballistics expert was prejudicial where the prosecution relied on ballistics evidence); s*ee also Hinton v. Alabama*, 134 S. Ct. 1081 (2014) (counsel ineffective where his investigation into ballistics evidence was unreasonably limited). Here, the only physical evidence of guilt was purportedly established through the testimony of the Government's toolmark experts who opined that scratches on empty casings found at the scene of the Escobedo murders were made by the same "tool," *i.e.* the same clip, that also made scratches found on unfired rounds found at Varela's house. Defense counsel's performance was deficient due to an inadequate investigation into the prosecution's toolmark evidence. Had counsel investigated the ballistics issue and/or consulted with a ballistics and toolmark expert, the jurors would have learned that the testimony of Government's toolmark "experts" was materially false, that no physical evidence existed to connect Sanchez or any other defendant to the weapons used in the murders of the Escobedo family, and that the ballistic/toolmark evidence collected at the crime scene tended to demonstrate that someone other than Sanchez was responsible for those murders.

The fact that bullets from the crime scene could not be matched to bullets at Varela's house might not have been absolute proof of Sanchez's innocence, but had

38

it been made known, "it might well have nurtured, even generated, a reasonable doubt as to guilt." *See Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842, 847 (4th Cir. 1964). Since no other evidence directly places Sanchez as an active shooter at the crime scene there is a reasonable probability that at least one juror—presented with evidence that Sanchez did not possess bullets involved in the murders—would have found Sanchez not-guilty. *Soffar v. Dretke*, 368 F.3d 441, 478-79 (5th Cir. 2004), *amended on reh'g in part on other grounds*, 391 F.3d 703 (5th Cir. 2004) (counsel's failure to consult with a ballistics expert was prejudicial where there was no "clear objective evidence" of guilt as demonstrated through forensics); *see also United States v. Bates*, 590 F. App'x 882, 891 (11th Cir. 2014) ("Given the technical nature of the evidence against [the defendant], there can be no doubt that the help of a qualified expert [wa]s necessary to assist in his defense."). If these allegations are true, Sanchez is entitled to a new trial.

It is anticipated that physical inspection of the ballistics evidence and production of the documents requested below will support the claim that Sanchez's defense was prejudiced by counsel's failure to investigate.

The allegations supporting Claim VII establish good cause for factual development regarding the ballistics evidence because additional information "might demonstrate" Sanchez is entitled to relief based on trial counsel's ineffectiveness in this aspect of the case. *Hill v. Ozmit*, 339 F.3d 187, 201 (4th Cir. 2003). *See also Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997) (denial of discovery was an abuse of discretion where it may establish the prejudice required

39

for an ineffective assistance of counsel claim); *Toney v. Gammon*, 79 F.3d 693, 696 (8th Cir. 1996) (denial of discovery was an abuse of discretion where it was requested to support counsel's ineffectiveness for failing to "highlight lack of evidence linking [the defendant] to the crime[.]").

**Request for Inspection of Physical Evidence**

For the reasons set forth above, Sanchez requests permission for his expert to physically inspect evidence and he anticipates this discovery will show counsel rendered ineffective assistance:

**A.**      **Request for inspection related to Claim VII and the declaration of James Gannalo, 5-02-16 (Request Exhibit H).**

In his May 3, 2016 declaration, Sanchez's expert, Joseph Gannalo states:

> 4.      In order to perform a comprehensive evaluation, and to reach reliable forensic conclusions about the firearms and toolmark evidence in this case, it is necessary to inspect the weapons, projectiles and cartridge casings at issue. It also is necessary as part of my evaluation [to] review the correspondence, case files, photographic records, interim reports, and bench notes relating to the forensic evaluations conducted by law enforcement personnel in this case, as well as the laboratory accreditations, protocols, examiner proficiency results, and firearms identification manuals, including but not limited to the quality, training, and technical manuals, for the Indian River Crime Lab and the Palm Beach County Sherriff s Office from 2006 to present. I have not yet been provided access to all of the physical evidence and documentation listed in this paragraph.
>
> . . .
>
> 17.      In order to reach reliable forensic conclusions about the firearms and toolmark evidence in this case, I would need to inspect and review the items and records identified in paragraph 4, above.

Request Exhibit H.

Sanchez requests an order permitting Sanchez's expert, currently Mr. Gannalo, access to the physical evidence described in paragraph 4 of Request Exhibit H, for the purpose of inspection and non-destructive testing.

### Third Party Discovery

To the extent that such evidence is beyond the control of the Government, Sanchez requests authorization for third-party subpoenas.

### Request for Production of Documents

For the reasons set forth above, Sanchez requests production of the following documents and he anticipates this discovery will show counsel rendered ineffective assistance:

A.   **Documents related to Claims VI and VII and whether Mr. Sanchez was an active shooter at the time of the crime.**

On July 20, 2016, the Government voluntarily responded to a written request for information. Responding to this category of information the Government stated only that it "provided a *Brady* notice concerning a statement made by Juan Gutierrez … [where he] allegedly uttered a statement that Sanchez was present when the killings occurred but Troya was responsible for the shootings."[3] ECF No.[78-1:9 of 210].

---

[3] The recitation of information provided at the time of trial pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), is not dispositive of this discovery request that is also made to support a claim of ineffective assistance of counsel. The scope of relevant information to an ineffective assistance of counsel claim is different, and arguably much broader, than a prosecutor's pre-trial review of evidence under *Brady*. For example, in a pre-trial filing the Government indicated it would provide evidence that is "materially favorable to the accused either as direct or impeaching evidence." CR-ECF No.[338-1:5]. Regardless whether that is a correct interpretation of *Brady*,

41

All documents containing information that Mr. Sanchez did not fire a weapon at the time of the murders of the Escobedo family and/or had a lesser role in the murders.

### Third Party Discovery

To the extent that such information is beyond the control of the Government, Sanchez requests authorization to conduct depositions of any party identified as having possession of the same.

### Certification of Consultation Pursuant to L.R. 7.1(a)(3)

Counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion.

### Conclusion

WHERFORE, Mr. Sanchez respectfully requests leave of the Court (as set forth herein) to request the production of documents, to propound interrogatories, to inspect physical evidence, to conduct depositions of any party identified in the Government's written answers to interrogatories, and to issue subpoenas to third parties.

---

the instant discovery request encompasses information and/or evidence that also falls outside that definition.

42

Respectfully submitted,

s/Stephen M. Kissinger
Stephen M. Kissinger, WY Bar No.5-2342
Asst. Federal Community Defender
Stephen_Kissinger@fd.org

s/Dana C. Hansen Chavis
Dana C. Hansen Chavis. TN Bar No.019098
Asst. Federal Community Defender
Dana_Hansen@fd.org

Federal Defender Services
 of Eastern Tennessee, Inc.
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone: (865) 637-7979
Facsimile: (865) 637-7999

Attorneys for Movant Ricardo Sanchez, Jr.

Dated: February 15, 2018

43

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically by the Court's CM/ECF service on February 15, 2018, on all counsel or parties of record on the Service List below.

<u>s/Stephen M. Kissinger</u>
Stephen M. Kissinger

## Service List

Stephen Carlton, Assistant United States Attorney
Stephen.Carlton@usdoj.gov
United States Attorney's Office
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Telephone: (561) 820-8711
Facsimile: (561) 659-4526

Stephanie D. Evans, Assistant United States Attorney
Stephanie.D.Evans@usdoj.gov
United States Attorney's Office
500 South Australian Avenue, Suite 400
West Palm Beach, FL 33401
Telephone: (561) 820-8711
Facsimile: (561) 659-4526

Attorneys for Respondent United States of America