*USA Response to Amended Sanchez Petition*

# USA Exh. 3

# Expert Report of Dr. Michael Brannon, Sanchez Examination



The
INSTITUTE
for Behavioral Sciences
and the Law

Office  (954) 766-8826
Fax  (954) 764-3486

750 SE 3rd Avenue, Suite 204
Fort Lauderdale, FL  33316

## Psychological Evaluation
## (Sentencing)

**Defendant's Name:**   Ricardo Sanchez, Jr.
**Case #:**   06-80171-Cr-Hurley
**Evaluation Date:**   12-26-08; 12-27-08; 12-28-08
**Report Date:**   01-01-09
**Assistant U.S. Attorney:**   John S. Kastrenakes, Esquire
**Examiner:**   Michael P. Brannon, Psy.D.

**Referral Information:** Mr. Ricardo Sanchez was evaluated pursuant to a request from Assistant United States Attorney John S. Kastrenakes for a psychological assessment for possible use in the penalty phase.  He was interviewed at the Palm Beach County Jail in West Palm Beach, Florida.  He has been incarcerated since 10-25-06.  *It should be noted that the following conclusions are limited to the information available at the time of this assessment.  Additional information and documentation was requested by this examiner prior to the completion of this report.  However, that information was not received as of the date of this report.  Therefore, the following conclusions are subject to change or modification based upon the possible future receipt of additional relevant information including but not limited to medical records, academic records, mental health records, occupational records, and contact information for collateral sources of data such as relatives, friends, or treating professionals.*

**Sources of Information:** Clinical Interview; Mental Status Examination; Personality Assessment Inventory (PAI); Wechsler Adult Intelligence Scale – III, (WAIS-III); Wide Range Achievement Test (WRAT); Test of Memory Malingering (TOMM); Speech and Language Evaluation Department of Exceptional Student Education Palm Beach County Schools Records; Arrest Records from FCIC/NCIC Database; and Transcripts from Palm Beach County Schools. In addition, various records including police statements, Probable Cause Affidavits, and Incident Reports were reviewed from prior offenses as well as the current allegations.  Several attempts were made to contact the defendant's parents; however, the telephone number provided by Mr. Sanchez was reported as disconnected by a recorded message.

**Notification of Confidentiality Limitations:** The defendant was informed of the purpose of the evaluation and the limits to its confidentiality and he agreed to participate in the interview.

**Relevant Historical Information:** Mr. Sanchez is a 25 year-old, single, Hispanic male who was born in West Palm Beach, Florida.  He reported that he was raised by his parents along with two brothers, one sister, and one stepbrother.  He denied that he was ever physically or sexually abused during his formative years.  In addition, he denied that he ever observed domestic violence in his childhood home.  He was not aware of any family history of mental health or substance abuse problems.  The defendant described his childhood as "good."

1

The defendant denied that he has ever been married. He reported that his longest exclusive relationship was for approximately five years. He denied the occurrence of domestic violence in any of his relationships. He reported that he is the father of one child, a five year old son. He denied that he has ever been homeless. He reported that he was residing with his mother and father in West Palm Beach at the time of arrest.

Academically, the defendant reported he completed 9th grade in special education classes. He reported he earned below average grades in school, and he displayed ongoing behavioral problems in that setting including several suspensions. He reported that he was eventually expelled from school due to "skipping class" and "fighting in school." He denied that he was ever bullied in school, or that he ever bullied others in that setting. He attended adult education classes for a brief period of time, although he did not obtain his high school diploma or General Equivalency Diploma (GED).

Educational testing of the defendant by Palm Beach County Schools on 07-07-92, 07-09-92, and 09-30-92 revealed that the defendant was functioning intellectually in the Low Average range. In addition, he was noted to have "significant processing skill deficits in the immediate sequential, visual and auditory, memory task, which seems to have contributed to the presence of a significant aptitude/academic achievement discrepancy." He was noted to have a relative strength in the "perception of detail and social understanding as well as conceptualization of right and wrong." He was noted to have a relative weakness on a task measuring "short-term memory for visual stimuli" and "attention and concentration." Achievement testing with the Woodcock-Johnson Psycho-Educational Battery – Revised from the 3rd grade revealed the following test scores: Broad Reading – K.9, Broad Mathematics – 1.5, Broad Written Language – K.7. It was concluded that the results of the testing were "consistent with other children who are considered to manifest a learning disability."

Transcripts from Palm Beach County revealed the defendant received passing grades in elementary school while enrolled in ESOL and Specific Learning Disabled classes. However, those same records revealed poor academic performance (4 Fs, 5 Ds) in the 6th grade with an improvements in his grades (2 Fs, 2 Ds, 2 Cs, 1 B) in 7th grade. Academic performance in 8th grade revealed a similar range of grades (2 Fs, 1 D, 2 Cs, 2 Bs) and 9th grade revealed a wide range of grades with most of his academic difficulty occurring in academic subjects (8 Fs, 2 Ds, 3 Cs, 1 B, 1 A). The defendant was noted to have been retained in 9th grade and his academic performance worsened in the following year (10 Fs, 3 Ds, 1 C, 1 B). The same pattern occurred in 10th grade with his first year producing poor grades (7 Fs, 3 Ds, 4 Cs) resulting in retention, although there was a slight improvement in grades during the following year (3 Fs, 3 Ds, 3 Cs, 1 B). It also should be noted that the defendant's school records revealed a patterns of excessive absences beginning in 7th grade. The defendant appeared to have terminated from school prior to the completion of 10th grade.

Occupationally, the defendant reported he was employed part-time as a lawn maintenance worker at the time of his arrest. He reported that he has been fired from several jobs, mostly due to attendance problems. He denied that he ever received Social Security disability benefits. He denied that he has ever served in the United Stated military. The defendant expressed that he "was planning on joining the Army but I didn't graduate high school."

2

Socially, the defendant reported that he has "a lot of friends" and he indicated that he "gets together with them a lot when I am on the outside." Recreationally, he reported that he mostly enjoyed "going to strip clubs with my friends and spending time with my girl(friend)."

Legally, the defendant reported he has been arrested in the past as a juvenile on status offenses (truancy) and several traffic tickets. He reported that he was incarcerated in Juvenile Detention Center on one occasion for "not paying tickets." He denied that he was ever a member of a youth gang. As an adult, he reported that he was previously arrested on charges including Possession of Drug Paraphernalia and Possession of Cocaine with Intent to Deliver. He denied that he has ever been sentenced to prison.

Correctional records from FCIC/NCIC revealed the defendant has been previously charged with the following offenses: Criminal Mischief (juvenile), Battery (two counts as a juvenile), Failure to Appear, Possession of a Weapon on School Grounds, Carrying a Concealed Weapon, Domestic Battery, Disorderly Conduct, Resisting Officer without Violence, Battery, Possession of Cocaine, Trafficking in Cocaine, Fleeing or Attempting to Elude, and Resisting Officer without Violence. In addition, the defendant was noted to have received 20 separate traffic offenses.

In regard to his mental health history, the defendant reported he "saw the school counselor a few times for problems in school." He denied that he has ever received psychiatric or psychological treatment services in the community. For example, he denied that he has ever been psychiatrically hospitalized, received outpatient counseling, or been prescribed psychotropic medication. He denied that he has ever attempted suicide. He denied that he has ever experienced auditory or visual hallucinations. He denied anger control problems. He did not report any symptoms of depression, anxiety, or mania. He denied exposure to any traumatic events.

The defendant acknowledged the use of cocaine, alcohol, marijuana, Xanax, and MDMA. He reported he initially abused substances when he was 17 years of age. He reported he was using alcohol and marijuana on a daily basis, and cocaine 3-4 times per week at the time of this arrest. The defendant reported that he used MDMA approximately 10 times and Xanax on one occasion. He reported that he has abused substances when he was alone and while in the company of his peers. He reported his longest period of abstinence from substances while residing in the community was for approximately two months. He identified his mother and father as his primary sources of emotional support. The defendant denied that he has ever received substance rehabilitation treatment. When asked if he believed that he had a substance abuse "problem," the defendant stated, "No, because I could stop any time I wanted."

Medical health was reported as remarkable due to several head injuries. For example, the defendant reported that he fell from his bicycle and hit his head on a rock when he was "5 or 6 years of age." The defendant further indicated that he was hospitalized at that time and "a couple of staples were put in my head." On another occasion, Mr. Sanchez reported that "a basketball backboard came down on top of my head when I was about 14 years of age." Mr. Sanchez reported an additional medical problem during childhood when he accidentally overdosed on his brother's anticonvulsant medication. He reported that he suffered a seizure time and was hospitalized for a brief period of time. The defendant reported recent memory loss and problems "paying attention." He denied the occurrence of seizures, dizziness, or headaches.

3

**Mental Status Examination:** The defendant was appropriately groomed and attired in the standard uniform of Federal inmates. He was of average height and weight with a goatee and close-cropped hair. Eye contact was direct. His general attitude was cooperative and his demeanor was pleasant. He responded appropriately to humor and sarcasm. Motoric responses were within normal limits. Attention span was mildly impaired as he was occasionally distracted by extraneous stimuli. Memory functions were intact on brief measures of those cognitive skills. He was oriented to time, place, person, and situation. Speech content was appropriate in volume, pacing, and word production. Thought content was rational and relevant. He did not display any behaviors that were suggestive of imaginary internal stimuli (hallucinations). He did not verbalize any statements that were consistent with the presence of an active delusional belief system. Affect was expressed in a full range and mood was congruent with the content of the interview. He denied suicidal or homicidal ideations or plans.

**Intelligence Testing:** The Wechsler Adult Intelligence Scale – Third Edition (WAIS-III) yields an objective estimate of an individual's present level of intellectual functioning. The WAIS-III is composed of various subtests that measure different aspects of general intellectual performance. The scores of the subtests are converted to scaled scores and index scores which allow for comparisons in performance between the examinee and a normative group. In addition, the scaled scores are summarized into various indices including Verbal, Performance, and Full Scale Intelligence Quotients (IQ) estimates. Mr. Sanchez earned the following scores:

| *Scale* | Sum of SS | IQ Score | 95% Confidence Interval | Percentile Rank | Qualitative Description |
|---|---|---|---|---|---|
| Verbal | 40 | **80** | 76-86 | 9 | Low Average |
| Performance | 52 | **102** | 95-109 | 55 | Average |
| Full Scale | 92 | **89** | 85-93 | 23 | Low Average |

| Verbal Subtests | Scales Scores | Percentile Rank | Performance Subtests | Scaled Scores | Percentile Rank |
|---|---|---|---|---|---|
| Vocabulary | 5 | 5 | Picture Completion | 12 | 75 |
| Similarities | 6 | 9 | Digit Symbol - Coding | 6 | 9 |
| Arithmetic | 7 | 16 | Block Design | 11 | 63 |
| Digit Span | 8 | 25 | Matrix Reasoning | 11 | 63 |
| Information | 5 | 5 | Picture Arrangement | 12 | 75 |
| Comprehension | 9 | 37 | Symbol Search | 7 | 16 |
| Letter-Number Sequencing | 11 | 63 | Object Assembly | 10 | 50 |

4

| Index Scores | Index Score (IQ Equivalent) | Percentile Rank |
|---|---|---|
| Verbal Comprehension | 74 | 4 |
| Perceptual Organization | 107 | 68 |
| Working Memory | 92 | 30 |
| Processing Speed | 81 | 10 |

Mr. Sanchez's Verbal and Performance IQ Scores are significantly different with only 4.9% of the standardization sample receiving the same 22-point split. This finding can be attributed in part or in whole to a variety of reasons including: English as a second language, practice effects from possible prior I.Q. testing (more likely to affect non-verbal scales), a learning disability, and / or preference for non-verbal activities. The differences between his verbal and non-verbal abilities are more pronounced when comparing his Verbal Comprehension and Perceptual Organization scores. In addition, there were significant differences found between Perceptual Organization scores and Processing Speed, and Perceptual Organization Scores and Working Memory.

With regard to his verbal reasoning abilities, relative to his other obtained scores on verbal subtests, Mr. Sanchez showed a weakness in his ability to define vocabulary words and provide basic information. He displayed a relative strength on a sorting task requiring simultaneous processing of information on a problem-solving task. With regard to his nonverbal reasoning skills, Mr. Sanchez displayed a relative weakness in his ability to remember various designs and work at a rapid pace in reproducing those designs in an organized written format.

**Achievement Testing:** Mr. Sanchez was administered the Wide Range Achievement Test: Fourth Edition (WRAT4) to assess his level of basic academic skills necessary for effective learning, communication, and thinking. The WRAT4 assesses an individual's ability to read words, comprehend sentences, spell, and perform basic mathematical calculations. The defendant obtained the following Scores on the WRAT4:

| Subtest/ Composite | Age Standard Score | Percentile Rank | 95% Confidence Interval | Grade Equivalent | Classification |
|---|---|---|---|---|---|
| Word Reading | 75 | 5 | 68-84 | 4.9 | Borderline |
| Sentence Comprehension | 78 | 7 | 71-87 | 7.1 | Borderline |
| Spelling | 68 | 2 | 60-79 | 3.3 | Extremely Low |
| Math Computation | 80 | 9 | 71-92 | 5.6 | Below Average |
| Reading Composite | 74 | 4 | 69-80 | N/A | Borderline |

5

**Personality Testing:** The Personality Assessment Inventory (PAI) is one of the most frequently administered tests in forensic settings due to its multiple clinical and validity scales. The PAI Professional Manual 2nd Edition reported that the PAI requires a 4th grade reading levels (see WRAT scores above). Validity Scales revealed a tendency towards defensive responding (elevated PIM) to test items. Individuals who score in a similar manner are often attempting to deny or minimize common shortcomings that most other individuals readily endorse. As a result, it is possible that scores on the Clinical Scales may underestimate the actual severity of any problems areas. Clinical Scales did not reveal any significant elevations that would be suggestive of a major mental disorder. Individuals who score in a similar manner often report a consistent and positive self-concept. Interpersonally, they are often described as friendly and outgoing. However, they may report heightened levels of stress due to a major event occurring in their lives. Social support is often perceived as an effective buffer for stress in their lives. Treatment receptiveness was noted to be below average when compared to other adults not currently receiving treatment services.

**Malingering Testing:** The Test of Memory Malingering (TOMM) is one of the most frequently utilized instruments in discriminating between genuine memory loss and individuals feigning memory loss. The test involves the presentation of 50 line drawings on two separate occasions with opportunities to recognize the previous designs from 50 cards containing two drawings (one correct response, one incorrect response). In addition, corrective feedback is provided in the first two of three trials in order to further expedite accurate responding on successive trials. Individuals who respond to the TOMM in a purely random manner without regard to item content, generally score in the approximate range of chance (25). However, all groups studied in the standardization research for this test discovered most individuals were able to score above 40 on each of the clinical trials, with scores above 45 on the last two trials. This includes individuals diagnosed with Dementia, Alzheimer's Disease, and Traumatic Brain Injury (TBI). The defendant's scores on the TOMM (49, 50, 50) are reflective of an adequate effort on this test. Individuals who score in a similar manner are rarely diagnosed with Malingering.

**DSM-IV-TR Diagnoses:**

| | |
|---|---|
| **Axis I:** | Polysubstance Dependence Disorder |
| | Learning Disorder NOS |
| **Axis II:** | R/O Antisocial Personality Disorder |
| **Axis III:** | No medical problems reported |
| **Axis IV:** | Legal |
| **Axis V:** | 80 |

Thank you for the opportunity to participate in this interesting case and please feel free to telephone me if you require additional information in this matter.

*Michael P. Brannon*

Michael P. Brannon, Psy.D.
Licensed Psychologist
PY0004289

6